_Jenny Baker_
Name and Prisoner/Booking Number

_Solano Jail_
Place of Confinement

_2450 Claybank Rd._
Mailing Address

_FF CA 94533_
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

# FILED

## JUL 22 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA

_Jenny Baker_ ,
(Full Name of Plaintiff)                  Plaintiff,

v.

(1) _(J. Mashburn, 90 mj/map)_
(Full Name of Defendant)

(2) _____ ,

(3) _____ ,

(4) _____ ,
                          Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

**2:18 - CV - 1 3 7 8    CKD PC**

**CASE NO.** _____
(To be supplied by the Clerk)

### CIVIL RIGHTS COMPLAINT
### BY A PRISONER

☐ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   - ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   - ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
   - ☐ Other: _____.

2. Institution/city where violation occurred: _____.

_500 Union rd_
_FF CA 94533_

## B. DEFENDANTS

1. Name of first Defendant: _____. The first Defendant is employed as:
   _____at_____.
              (Position and Title)                                      (Institution)

2. Name of second Defendant: _____. The second Defendant is employed as:
   _____at_____.
              (Position and Title)                                        (Institution)

3. Name of third Defendant: _____. The third Defendant is employed as:
   _____at_____.
              (Position and Title)                                      (Institution)

4. Name of fourth Defendant: _____. The fourth Defendant is employed as:
   _____at_____.
              (Position and Title)                                      (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?    ☐ Yes    ☐ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
          _____.

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
          _____.

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
          _____.

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D. CAUSE OF ACTION

**CLAIM I**

1. State the constitutional or other federal civil right that was violated: *1ST - AMENDMENT*

2. **Claim I. Identify the issue involved. Check only one. State additional issues in separate claims.**
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments. *JAIL DENIED M.Y 1ST-AMENDMENT.*
   *SEE EXHIBIT A - D*

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☐ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim I? ☐ Yes ☐ No
   c. Did you appeal your request for relief on Claim I to the highest level? ☐ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

**CLAIM II**

1. State the constitutional or other federal civil right that was violated: _____
_____.

2. **Claim II.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities      ☐ Mail        ☐ Access to the court      ☐ Medical care
   - ☐ Disciplinary proceedings   ☐ Property     ☐ Exercise of religion     ☐ Retaliation
   - ☐ Excessive force by an officer   ☐ Threat to safety   ☐ Other: _____.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
_____
_____
_____.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your
      institution?                                                              ☐ Yes   ☐ No
   b. Did you submit a request for administrative relief on Claim II?            ☐ Yes   ☐ No
   c. Did you appeal your request for relief on Claim II to the highest level?   ☐ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you
      did not. _____
      _____.

4

## CLAIM III

1. State the constitutional or other federal civil right that was violated: _____
_____.

2. **Claim III.** Identify the issue involved. Check **only one.** State additional issues in separate claims.

☐ Basic necessities      ☐ Mail      ☐ Access to the court      ☐ Medical care

☐ Disciplinary proceedings      ☐ Property      ☐ Exercise of religion      ☐ Retaliation

☐ Excessive force by an officer      ☐ Threat to safety    ☐ Other: _____.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

_____
_____.

5. **Administrative Remedies.**

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?      ☐ Yes ☐ No

   b. Did you submit a request for administrative relief on Claim III?      ☐ Yes ☐ No

   c. Did you appeal your request for relief on Claim III to the highest level?      ☐ Yes ☐ No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
_____.

**If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.**

5

## E. REQUEST FOR RELIEF

State the relief you are seeking:

_____
_____
_____
_____
_____
_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____        _____
              **DATE**                **SIGNATURE OF PLAINTIFF**


_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)


_____
(Signature of attorney, if any)

_____
_____
_____
(Attorney's address & telephone number)


## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

6

EXHIBIT A

fairly the merits of his defenses. Fed.Rules Evid.Rules 106, 611, 28 U.S.C.A.

8 Cases that cite this headnote

[19] Criminal Law
← Power to grant immunity
110 Criminal Law
110II Defenses in General
110k42 Immunity to One Furnishing Information or Evidence
110k42.2 Power to grant immunity
(Formerly 110k42)
FBI agents had actual authority to promise defendant, a longstanding FBI informant, that any evidence obtained if certain premises was bugged would not be used against him; thus, defendant, who performed his part of the bargain and rendered a very valuable service to the government by providing information that was significant for the feasibility of the bugging and that was used to establish issuance of the warrant, had an enforceable express and implied in fact agreement that precluded the use and derivative use against him of any of the intercepted evidence.

12 Cases that cite this headnote

[20] Criminal Law
← Performance and breach
110 Criminal Law
110II Defenses in General
110k42 Immunity to One Furnishing Information or Evidence
110k42.5 Agreements Granting Immunity
110k42.5(3) Performance and breach
(Formerly 110k42)
If the government informally promises that statements will not be used against a defendant, it is also precluded from using the statements to uncover other incriminating evidence, unless the agreement expressly provides otherwise.

Cases that cite this headnote

[21] Attorney General
← Powers and Duties

District and Prosecuting Attorneys
← Agreements with suspects, convicts, prisoners; effect of such agreements
46 Attorney General
46k5 Powers and Duties
46k6 In general
131 District and Prosecuting Attorneys
131k8 Powers and Proceedings in General
131k8(8) Agreements with suspects, convicts, prisoners; effect of such agreements
(Formerly 131k8)
Attorney General and the United States Attorney each have the implied actual authority to enter into plea bargains and comparable agreements, including agreements to grant immunity informally, without the participation of the other.

Cases that cite this headnote

[22] Criminal Law
← Validity
110 Criminal Law
110II Defenses in General
110k42 Immunity to One Furnishing Information or Evidence
110k42.5 Agreements Granting Immunity
110k42.5(2) Validity
(Formerly 110k42)
Failure of defendant, an FBI informant, to provide FBI with accurate and complete information concerning his own criminal activity did not constitute fraudulent concealment rendering unenforceable government's agreement that any evidence obtained from bugging of certain premises would not be used against him; defendant was under no obligation to disclose to the FBI all of his criminal activity.

5 Cases that cite this headnote

[23] Criminal Law
← Validity
110 Criminal Law
110II Defenses in General
110k42 Immunity to One Furnishing Information or Evidence
110k42.5 Agreements Granting Immunity
110k42.5(2) Validity

(Formerly 110k42)
Defendant, an FBI informant who had an enforceable express and implied in fact agreement that precluded the use and derivative use against him of any of evidence intercepted from a certain premises, had an equally valid agreement implied in fact that the evidence intercepted at two other locations would not be used against him in any way; conduct of the parties manifested the meeting of the minds necessary to infer a valid, tacit understanding in fact.

Cases that cite this headnote

[24] Criminal Law
← Hearing
110 Criminal Law
110II Defenses in General
110k42 Immunity to One Furnishing Information or Evidence
110k42.7 Enforcement of Grant of Immunity
110k42.7(3) Hearing
(Formerly 110k42)
Hearing was necessary to determine whether case would be dismissed because defendant's due process rights were violated because intercepted evidence was presented to the grand juries that indicted defendant in violation of promises of confidentiality; at that hearing, government would have burden of proving that the information it presented to secure the indictments of defendant was not tainted by showing that it had an independent, legitimate source for that evidence, and if government failed to prove that all of the evidence presented to the grand juries was untainted, the case against defendant would be dismissed unless government proved that its error was harmless beyond a reasonable doubt. U.S.C.A. Const.Amend. 5.

Cases that cite this headnote

[25] Federal Courts
← Supervisory powers
170B Federal Courts
170BII Jurisdiction, Powers, and Authority in General
170BII(A) In General
170Bk2021 Supervisory powers
(Formerly 170Bk3.1)
Court's supervisory powers must be exercised sparingly.

Cases that cite this headnote

[26] Federal Courts
← Supervisory powers
170B Federal Courts
170BII Jurisdiction, Powers, and Authority in General
170BII(A) In General
170Bk2021 Supervisory powers
(Formerly 170Bk3.1)
Court's supervisory power can be used to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of clear rules to ensure the integrity of the grand jury's functions.

Cases that cite this headnote

[27] Indictment and Information
← Incompetent or insufficient evidence
210 Indictment and Information
210X Motion to Dismiss
210k144.1 Grounds
210k144.1(3) Incompetent or insufficient evidence
Except in certain circumstances, remedy for presenting to a grand jury evidence obtained directly or indirectly as a result of a grant of immunity is dismissal of the indictment.

Cases that cite this headnote

[28] Grand Jury
← Scope of proof; admissibility
193 Grand Jury
193k36 Witnesses and Evidence
193k36.8 Scope of proof; admissibility
Principle that the government may not present to the grand jury that indicted a defendant information obtained, directly or indirectly, as a result of a grant of immunity is not limited to cases involving formal immunity provided

by operation of immunity statute; it is equally applicable to informal promises of immunity, including oral promises. 18 U.S.C.A. § 6002 et seq.

**Cases that cite this headnote**

**[25]** **Criminal Law**
⬥ Compelling Self-Incrimination

110 Criminal Law
110XVII Evidence
110XVII(I) Compulsory Self-Incrimination
110K393(1) In general

Protection against self-incrimination is violated whenever the prosecution presents a witness whose testimony is shaped, directly or indirectly, by immunized information regardless of how or by whom the witness was exposed to that information. U.S.C.A. Const.Amend. 5.

**Cases that cite this headnote**

**[26]** **Criminal Law**
⬥ Effect of grant of immunity

110 Criminal Law
110XVII Evidence
110K393 Self-Incrimination
110K393 Immunity as One Furnishing Material for Evidence
110K412.4 Effect of grant of immunity

(Formerly 110k412)

Information obtained as a result of a grant of immunity may not be used as an "investigatory lead."

**Cases that cite this headnote**

**[27]** **Criminal Law**
⬥ What constitutes voluntary statement, admission, or confession

110 Criminal Law
110XVII Evidence
110XVII(M) Statements, Confessions, and Admissions by or on Behalf of Accused
110XVII(M)4 Voluntariness in General
110K412.47 What constitutes voluntary statement, admission, or confession

(Formerly 110k412.41(3))

A defendant's incorrect perception that he in fact that there was not probable cause, among other things, the failure to provide the court information that any reasonable person to believe that evidence of any Title 21 drug offense would be interrupted if a warrant was issued; thus, under other Pervilc of Government, suppression of electronic surveillance evidence, imprudence of electronic surveillance evidence to make the full and complete statement concerning sincerity required by statute. 18 U.S.C.A. § 2518(1)(c).

2. **Cases that cite this headnote**

**[28]** **Criminal Law**
⬥ Electronic surveillance

110 Criminal Law
110XVII Evidence
110XVII(I) Compulsory Self-Incrimination
110K392.1 Electronic surveillance;
telecommunications

(Formerly 110k394.3)

Suppression of electronic surveillance evidence was not required where federal Justice Department official to authorize an application for a warrant to conduct electronic surveillance were not, but purpose of statute was subverted when Assistant Attorney General who authorized application was wrong in belief, making the representation to be true or that they in fact contemplated by the statute. 18 U.S.C.A. § 2518(1).

**Cases that cite this headnote**

**[29]** **Criminal Law**
⬥ Presumptions and burden of proof

110 Criminal Law
110XVII Evidence
110XVII(I) Compulsory Self-Incrimination
110K392.1 Electronic surveillance
110K392.1 Presumptions and burden of proof

(Formerly 110k394.3)

In order to demonstrate that government has acted with reckless disregard for the truth in authorizing application, that show making representation in good faith, that knowing for the government did not believe the representation to be true or that they in fact contemplated "serious doubt" as to the truth of the matter asserted. 18 U.S.C.A. § 2518(1)(c).

---

and confusing manner which obscured the fact that there was not probable cause, among other things, the failure to provide the court information that any reasonable person would understand the court would want to have. 18 U.S.C.A. § 2518(1)(c).

**Cases that cite this headnote**

**[30]** **Telecommunications**
⬥ Interception or Disclosure of Electronic Communications; Electronic Surveillance

372 Telecommunications
372X Interception or Disclosure of Electronic Communications; Electronic Surveillance
372k1455 Authorization by Courts or Public Officers
372k1465 Nondisclosure of Affidavit

Nondisclosure of affidavit.

(Formerly 372k1539)

Where FBI was participating in a joint investigation with Drug Enforcement Administration (DEA) whose wiretap application was submitted, the use and confusion was subverted when Assistant Attorney General who authorized application, required knowledge of the relevant information pursued by these participating in the matter on behalf of the FBI, as well as DEA. 18 U.S.C.A. § 2518(1)(c).

**Cases that cite this headnote**

**[31]** **Telecommunications**
⬥ Review of proceedings; standing

372 Telecommunications
372X Interception or Disclosure of Electronic Communications; Electronic Surveillance
372k1455 Authorization by Courts or Public Officers
372k1470 Review of proceedings; standing

(Formerly 372k1539)

In general, reviewing courts are instructed to read affidavits submitted in support of wiretap applications in a practical and commonsense manner, where their sufficiency hypertechnical manner; where suggestion to establish probable cause or security is at issue. 18 U.S.C.A. § 2518.

[3]

**Telecommunications**
↪ **Compilation of Information/History**

- **110** Telecommunications
  - **110X** Interception of Disclosure of Electronic Communications; Electronic Surveillance
    - **110XII(B)** Authorization by Court or Public Officers
      - **110k1444** Application or Affidavit
      - **110k1447** Competency of Information;
        Hearsay
        **110k1447(1)** In general
        (Formerly 372k161)

It is appropriate to focus on the force of an affidavit submitted in support of wiretap application as a whole when false and misleading representations and omissions permeate the government's submission. If

**Cases that cite this headnote**

[4]

**Telecommunications**
↪ **Probable cause**

- **110** Telecommunications
  - **110X** Interception or Disclosure of Electronic Communications; Electronic Surveillance
    - **110XII(B)** Authorization by Court or Public Officers
      - **110k1444** Application or Affidavit
      - **110k1446** Probable cause
        (Formerly 372k161)

In order to issue a warrant for a wiretap, court must find both that (1) there is probable cause to believe that an individual has committed, or is committing a designated offense, and (2) there is probable cause to believe that "particular communications concerning that offense will be obtained" if the warrant is issued. 18 U.S.C.A. § 2518(3)(a, b).

**Cases that cite this headnote**

[5]

**Criminal Law**
↪ **Good Faith or Objectively Reasonable Conduct Doctrine**

- **110** Criminal Law
  - **110XVII** Evidence

---

**110XVII(D)** Competency in General
**110k392.1** Wrongfully Obtained Evidence
**110k392.21** Good Faith or Objectively Reasonable Conduct Doctrine
(Formerly 110k394.4(4), 110k394.4(5.1))

When warrants are involved, good faith exception to the exclusionary rule relies substantially on the efficacy and integrity of the warrant procedure. U.S.C.A. Const.Amend. 4.

**Cases that cite this headnote**

[6]

**Criminal Law**
↪ **Good Faith or Objectively Reasonable Conduct Doctrine**

- **110** Criminal Law
  - **110XVII** Evidence
    - **110XVII(D)** Competency in General
      - **110k392.1** Wrongfully Obtained Evidence
      - **110k392.21** Good Faith or Objectively Reasonable Conduct Doctrine
        (Formerly 110k394.4(1))

Good faith exception to the exclusionary rule is available only when the government has properly performed its duty of disclosure to the court. U.S.C.A. Const.Amend. 4.

**Cases that cite this headnote**

[7]

**Criminal Law**
↪ **Electronic eavesdropping**

- **110** Criminal Law
  - **110XVII** Evidence
    - **110XVII(D)** Competency in General
      - **110k392.1** Wrongfully Obtained Evidence
      - **110k392.26** Extent of Exclusion; "Fruit of the Poisonous Tree"
        (Formerly 110k394.3)

Once electronic surveillance evidence has been suppressed, that evidence cannot constitute, directly or indirectly to a conviction. If U.S.C.A. § 2515.

**Cases that cite this headnote**

---

↪ **Person entitled to object**

- **110** Criminal Law
  - **110XVII** Evidence
    - **110XVII(D)** Competency in General
      - **110k392.1** Wrongfully Obtained Evidence
        (Formerly 110k394.5(2))

Person entitled to object

**110k392.1** Wrongfully Obtained Evidence

Defendant, who was not an overnight visitor and who stayed solely in a business-oriented location, did not have a reasonable expectation of privacy at premises where he was overheard and superintended while participating in a "La Cosa Nostra" induction ceremony; thus, defendant's conversation did not constitute an "oral communication" within the meaning of Title III, and therefore, defendant was not an "aggrieved person" with standing to maintain motion to suppress the electronic surveillance. 18 U.S.C.A. § 2510.2.

**1 Case that cite this headnote**

[8]

**Searches and Seizures**
↪ **Standing to Object**

- **349** Searches and Seizures
  - **349V** Standing to Object
    - **349k161** In general

As a general rule, Fourth Amendment rights are personal rights which, by some other constitutional rights, may not be vicariously asserted. U.S.C.A. Const.Amend. 4.

**Cases that cite this headnote**

[9]

**Searches and Seizures**
↪ **Privacy interest or expectation, in general**

- **349** Searches and Seizures
  - **349V** Standing to Object
    - **349k161** Privacy interest or expectation, in general

An individual has a Fourth Amendment right that may have been violated only if the person or something in which he has a legitimate expectation of privacy has been the subject of a search. U.S.C.A. Const.Amend. 4.

**Cases that cite this headnote**

[10]

**Criminal Law**

---

**Attorneys and Law Firms**

**\*146   Earl M. Winbush, Jr., Brian T. Kelly, U.S.
Attorney's Office, Boston, MA, James D. Herbert, U.S.
Attorney's Office, Boston, MA, for U.S.**

MaryEllen Kelhar, Law Office of Richard Egbert,
Boston, MA, Anthony M. Cardinale, Boston, MA, John
Mitchell, Law Office of John Mitchell, New York City,
for Francis P. Salemme, Sr.

Martin G. Weinberg Oteri, Weinberg & Lawson, Boston,
MA, Anthony M. Cardinale, Boston, MA, Frank L.
Chieffone, Chieffone & Sullivan, Boston, MA, for John V.
Martorano.

Randolph Gioia, Boston, MA, for Robert F. DeLuca

Kenneth J. Fishman, Fishman, Ankner & Horstmann,
LLP, Boston, MA, Kimberly Homan, Sheketoff &
Homan, Boston, MA, for Stephen J. Flemmi.

A. Hugh Scott, Choate, Hall & Stewart, Boston, MA, for
James A. Ring.

---

Jonathan M. Albano, Thomas J. Rosenser, Bingham, Dana & Gould, Boston, MA, for Globe Newspaper Co.
Shelby Murphy, Kevin Cullen.

*WOLF, District Judge.*

**MEMORANDUM AND ORDER**

I. SUMMARY ............................................................................................. 148

  1. The Facts Concerning Defendant Stephen Flemmi's Motion to Dismiss Based on Immunity ............................................................. 148
  2. The Motion to Dismiss Based on Immunity .............................................. 146
  3. Flemmi's Motion to Suppress the 1984-85 Electronic Surveillance ........... 183
  4. DeLuca's Motion to Suppress Concerning the LCN Induction Ceremony ..... 170
  5. Conclusion of Summary ........................................................................ 172

II. FINDINGS OF FACT ............................................................................. 176

  1. The Standards Applied ......................................................................... 175
  2. Rico and Flemmi .................................................................................. 178
  3. Flemmi as a Fugitive ............................................................................ 183
  4. The Development of Bulger as an Informant .......................................... 185
  5. The FBI Forges the Flemmi-Bulger Partnership ..................................... 186
  6. Attorney General Levi's Memorandum on FBI Informants ...................... 188
  7. Bulger and Flemmi Begin to Perform as a Team ................................... 197
  8. Morris Becomes Chief of the Organized Crime Squad ........................... 198
  9. The Race-Fix Case .............................................................................. 199
  10. The FBI Does Not Investigate Bulger or Flemmi .................................. 201
  11. The Lancaster Street Garage and 98 Prince Street ............................. 202
  12. Sarhatt Extends Bulger and Flemmi As Informants ............................ 207
  13. The Wheeler, Halloran, and Callahan Murders ................................... 208
  14. The FBI Identified Other Informants for Flemmi and Bulger ................. 213
  15. The South Boston Liquor Mart ........................................................... 215
  16. Greenleaf Becomes SAC and Ring Becomes Supervisor of the Organized Crime Squad ................................................... 216

  17. The 1984-85 Electronic Surveillance .................................................. 220
  18. Morris Tells Bulger and Flemmi That They Can Do Anything They Want as Long as They Do Not "Clip" Anyone ......................... 242
  19. Dining with "Donnie Brasco" ............................................................... 244
  20. Vanessa's ........................................................................................ 244
  21. Flemmi Becomes A Top Echelon Informant Again ............................... 246
  22. Raymond Slinger ............................................................................... 250
  23. Bulger and Flemmi Are Protected From Investigation in the Hobart Willis Case ............................................................... 254
  24. The Grand Rota at the South Boston Liquor Mart ............................... 255
  25. Joseph Murray .................................................................................. 256
  26. John Bahorian ................................................................................... 258
  27. The Leak and the Threat to The Boston Globe .................................... 259
  28. Flemmi and Salemme ........................................................................ 262
  29. Mercurio as an Informant .................................................................. 263
  30. The LCN Induction Ceremony ............................................................ 269
  31. Mercurio as a Fugitive ....................................................................... 289
  32. The Investigation of Flemmi and Bulger ............................................. 293
  33. The Indictment of Bulger and Flemmi and its Aftermath ..................... 301

III. CONCLUSIONS OF LAW ...................................................................... 315

  1. Flemmi's Motion to Dismiss or Suppress Based on Immunity ............... 315
    A. The Court is Now Considering Only the Issue of Immunity ............... 316
    B. The Applicable Standards Concerning Immunity ............................. 317
    C. Dismissal of This Case is Not Now Justified Because Flemmi Was Not Promised Immunity From Prosecution ................... 321
    D. The Issue of Use and Derivative Use Immunity .............................. 325
      (1) Flemmi Does Not Have An Agreement Providing Use Immunity Generally For His Statements to the FBI .............. 328
      (2) The Promise of Confidentiality Means Statements to the FBI Which Have the Effect of Identifying Flemmi as an Informant Cannot Be Used Against Him Unless His Defense Makes Them an Issue ............................................. 335

   (3) Flemmi Had an Enforceable Agreement Relating to 98 Prince Street, Vanessa's, and 34 Guild Street............. 320

   (4) A Hearing Will Be Necessary to Determine If This Case Must Be Dismissed and, If Not, Whether Any Evidence Must be Excluded at Trial............. 341

   (5) If Morris and Connolly Were Not Authorized to Promise Flemmi that the Evidence Intercepted at 98 Prince Street, Vanessa's, and 34 Guild Street Would Not Be Used Against Him, Flemmi's Statements to the FBI Relating to Those Interceptions May Have Nevertheless Led, in Addition, Use of Any Evidence Interrupted At Those Locations May Violate Flemmi's Right to Due Process............. 345

2. The Motion to Suppress the 1984-85 Electronic Surveillance............. 351

   A. Summary............. 351

   B. Suppression is Not Justified Based on Any Alleged Violation of 18 U.S.C. § 2516(1)............. 353

   C. The Electronic ... to be Applied in Deciding Whether to Suppress for a Failure to Satisfy the Requirements of 18 U.S.C. § 2518(10)(a) Concerning the Necessity for Electronic Surveillance............. 359

   D. The Necessity Provision of Title III, § 2518(1)(c), Is Constitutional in Origin............. 364

   E. The Motion to Suppress the 1984-85 Electronic Surveillance............. 360

   F. A Hearing is Necessary to Identify the Evidence Which Must be Suppressed Because of the Government's Unlawful Conduct Concerning the 1984-85 Electronic Surveillance and to Determine If Any Other Remedy is Required............. 390

3. Flemmi is Not an "Aggrieved Person" With Standing to Seek Suppression of the Interceptions at Vanessa's Under Title III............. 381

4. DeLuca Does Not Have Standing to Move to Suppress the Evidence Intercepted at 34 Guild Street For a Violation of Title III Because the 1968 Supreme Court Decision in Minnesota v. Carter Indicates That Although His Conversation was Intercepted, It Did Not Constitute an "Oral Communication" As Defined in the Statute, and DeLuca's Fourth Amendment Rights Were Not Violated............. 384

IV. CONCLUSION............. 400

V. ORDER............. 401

I. SUMMARY

*148 In 1861, Lord Acton wrote that, "[e]very thing secret degenerates, even the administration of justice." John Emerich Edward Dalberg Acton, Lord Acton and His Circle 166 (Abbot Gasport, ed., 1968). This case demonstrates that he was right.

---

Balger, Kaufman, and four other defendants were indicted on multiple charges of racketeering and extortion, among other crimes. A complaint authorizing Flemmi's arrest prior to indictment was obtained by the prosecution because they were concerned that Balger and Flemmi would be informed of their imminent indictment and flee. This fear was not founded.

Beginning in 1965, Flemmi secretly served as a very valuable and valued confidential informant for the Federal Bureau of Investigation (the "FBI" or "Bureau"). In the thirty years prior to his arrest, Flemmi was, among other things, instrumental in the FBI's penetration of and eventual effort to destroy the La Cosa Nostra (the "LCN" or "Mafia"). Flemmi had also served as a leader of the Patriarca Family, and attended an LCN induction ceremony, for the first time, an LCN induction ceremony, § II.30.

In 1976, the FBI played a pivotal role in forging a friendship, enduring partnership *149 between Flemmi and Balger, who had in 1975 also become an FBI informant. The FBI made Balger and Flemmi, who were previously acquainted but not close, a perfect match. In Boston, Flemmi and Balger shared an interest in the LCN, a desire to profit criminally from its destruction, and, most notably, the promised protection of the FBI. § II.5.

As described in detail in this Memorandum, and as summarized below, many members of the FBI participated in honoring the promise to protect Flemmi and Balger. Prominent among them was John Connolly, who from 1975 until his retirement in 1990 was their FBI "handler." Although retired in 1995, Connolly remained in contact with his close friends and former colleagues on the Organized Crime squad in the Boston office of the FBI. As it meant, he learned that Balger and Flemmi were scheduled to be indicted on about January 10, 1995. Connolly shared this information with Balger, who, as Connolly expected, warned Flemmi so that he could flee. Flemmi, however, mistakenly believed he would be charged and subject to arrest. Not expecting to be charged and subject to arrest so soon, Flemmi was still in Boston when the criminal complaint against him was issued on January 4, 1995. § II.21.

Flemmi's arrest represented a radical departure from his historic relationship with the government. At the

urging of Attorney General Robert Kennedy, in the mid-1960's, a previously reluctant FBI became committed to combating the LCN. FBI Special Agent H. Paul Rico recruited Flemmi to serve as an asset in that effort, which has since the mid-1960's been the FBI's highest national priority. Flemmi was, among other things, known to Rico as a member of the Winter Hill Gang, which was in the midst of a violent gang war, and as a reputed murderer. Flemmi then had close contact with key members of the Patriarca Family, to meaningful measure because of his partnership with a prominent codefendant, Francis Salemme. Although rightly regarded as a potential source of the Patriarca Family, Flemmi did not then have meaningful sanctioned motivation for the LCN. Thus, Flemmi was responsive to the relationship that Rico proposed. § II.2.

Because of Flemmi's ability to provide information concerning leaders of the LCN, Rico counted on the FBI to designate him as a Top Echelon informant, the highest status a Bureau source can achieve. Flemmi, however, was never told that he was opened or closed administratively as an informant. Nor was Flemmi advised that any of the information that he was providing was being recorded in writing. Rather, instead of treating Flemmi as a criminal to be dealt with cautiously, Rico assiduously sought to cultivate in Flemmi the sense that he was an ally in common cause, primarily a war against the LCN. § II.2. That is a sense that was later mentioned by Connolly, when he succeeded Rico as Flemmi's handler. Connolly, in fact that Connolly too understood that Flemmi had committed many serious crimes, including murder. § II.5, II.33.

As the alliance between the FBI and Flemmi and Balger developed, Flemmi and Balger were invited to deal periodically with the members of the FBI engaged in investigating the LCN, including Connolly, several of his colleagues on the Boston Organized Crime squad, Connolly's supervisors, John Morris and James Ring, and Joe Prince, an FBI agent from New York who succeeded Connolly as the undercover infiltration of the LCN as "Donnie Brasco." The timing of these relationships suggested that they were arranged by codefendants such as the FBI's relationship with the LCN and Flemmi, each in the successful insertion of the LCN. Flemmi, such as the successful insertion of Boston developments at 98 Prince Street in 1981, and the frustration of an investigation of Balger and Flemmi that had been led by the Drug Enforcement Administration

(the "DEA") in 1984–85. At these dinners, the agents, Bulger, and Flemmi at times exchanged gifts. Although FBI procedures required that all contacts with informants be documented, *150 there is only one, 1979 report reflecting matters discussed at these dinners. There is no record of the gifts exchanged. §§ II.10, II.11, II.16, II.17, II.18.

Rico made several promises to Flemmi in the course of developing him as an informant. Among other things, Rico promised Flemmi that his cooperation would be confidential and that his service as a source would not be disclosed to anyone outside of the FBI. This was a customary assurance that the FBI has provided to its informants at least since 1965. It is a promise that Rico and the many other past and present members of the FBI agents who testified in this case regarded as "sacred." §§ II.2, II.8.

There was good reason for agents of the FBI to believe in the importance of the promise of confidentiality that is regularly made by the Bureau to its informants. As the Supreme Court has recognized, providing potential sources reasonable assurances regarding the confidentiality of their cooperation encourages them to provide information and protects their safety. Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Moreover, the FBI Manual has long instructed agents to exercise constant care to assure that an informant's identity not be disclosed to anyone, intentionally or inadvertently. §§ II.6 and III.1.D(3). Strictly adhering to this principle, unless authorized by the informant, the FBI has regularly refused to identify its sources even to prosecutors and other Department of Justice officials with a legitimate need to know whether, among other things, subjects of investigations were cooperating with the FBI and, therefore, might assert, or indeed have, certain foreseeable defenses to prosecution, including that they had been promised immunity or authorized to commit acts that would otherwise be criminal. §§ II.2, II.17, II.20, II.30, II.32, II.33.

Officials of the Department of Justice have historically accepted the fact that the FBI would refuse any request to confirm or deny that an individual was an informant. For example, William F. Weld, a former United States Attorney in Boston and a former Assistant Attorney General in charge of the Criminal Division, testified that he expected that if he asked the FBI to identify an informant, he would be told to "go pound sand." §§ II.17, III.1.D(3). As a formal reflection of this attitude, in 1976, when the Attorney General first issued Guidelines for the FBI to use in exercising its discretion with regard to dealing with informants, the Guidelines provided no role for the United States Attorney or the Department of Justice in authorizing an informant to engage in what would otherwise be criminal activity. They were later revised to require consultation with the United States Attorney before the FBI authorized an informant to engage in criminal activity that involved a significant risk of violence, but stated that any such consultation be conducted in a manner that would not reveal the identity of the source. § II.6.

It was the understanding of the present and former members of the FBI who testified in this case that information which Flemmi or any other informant provided the FBI could not properly be used against him or, in any event, that it would not be used against him. Thus, it was the consistent practice of the FBI not to use information received from an informant to investigate him.[1] Nor would the Bureau *151 disclose information provided by a source to any other agency or any prosecutor investigating him. §§ II.2, II.8, II.14, II.16, II.20, II.21, II.33, III.1.D(2)-(3).

While the repeated promises of confidentiality which Flemmi received were customary and generally regarded as appropriate, Rico also made Flemmi a promise that was irregular, but not unique. He promised Flemmi that if he served as an FBI informant, the Bureau would protect him. § II.2. This is a promise that was expressly reiterated and amplified by Connolly and Morris. §§ II.5, II.11, II.18. As summarized below, the assurance that Flemmi would be protected by the FBI was also communicated by the conduct of Rico, Connolly, and Morris, and was confirmed by the actions of many, but not all, of their colleagues in the FBI.

Flemmi, however, was never told that the protection that he was promised included immunity from prosecution. The word "immunity" was never mentioned. §§ II.2, II.5, II.16. Flemmi understood that it was permissible for agencies other than the FBI, or FBI agents ignorant of his relationship with the Bureau, to investigate him. He also knew that he could properly be prosecuted if any such investigation succeeded despite the best efforts of his FBI handlers to protect him. §§ II.2, II.9, II.17, II.32, III.1.C.

Relying upon the promises made to him by the FBI, and on the repeated performance of those promises, Flemmi rendered exceptional service in the Bureau's war against the LCN and other matters. In the 1960's, Flemmi regularly provided information, that Rico rated as "excellent," regarding the activities of Raymond L.S. Patriarca, and other members and associates of the Family that bore his name, including Gennaro Angiulo, Ilario Zannino, who was also known as Larry Baione, and Salemme. Flemmi was also instrumental in Rico's successful effort to develop LCN member Joseph Barboza into a cooperating witness. Barboza's testimony led to the convictions of Patriarca and several of his associates, and earned him national renown. In addition, in the mid-1960's, Flemmi furnished Rico with an appreciated warning of a threat to the life of Suffolk County District Attorney Garrett Byrne. § II.2.

In 1969, Rico told Flemmi that he and Salemme would soon be indicted for the attempted murder of Barboza's lawyer, John Fitzgerald, and suggested that they flee. Flemmi and Salemme acted on that advice. While a fugitive, Flemmi stayed in touch with Rico. Rico, however, did not tell the agents responsible for the Flemmi fugitive investigation that he had spoken to him. It appears that after separating from Salemme because of a series of disagreements, Flemmi told the FBI where Salemme could be found. Thus, Connolly was able to apprehend Salemme in New York. §§ II.2, II.3.

After Salemme was convicted of the Fitzgerald bombing and incarcerated to serve a lengthy sentence, at Rico's request Flemmi returned to Boston in 1974. As Rico promised, Flemmi was immediately released on bail and the charges against him were dropped. § II.3.

In 1975, with assistance from Bulger, Connolly revived Flemmi's relationship with the Bureau. Flemmi promptly proved his continued value as a source. After Barboza was murdered in 1976, Flemmi provided information that permitted Connolly to convert a coconspirator into a cooperating witness who identified Patriarca Family member Joseph Russo as Barboza's killer. In 1992, Russo pled guilty to that charge and was sentenced by *152 this court to what turned out to be life in prison. § II.7.

In 1980, Flemmi provided Connolly with information concerning the assassination of federal Judge James Wood by a group of major drug dealers. Connolly later advised his superiors that he believed that the contacts Flemmi had made at his direction in that investigation may have created the false impression that Flemmi was involved in narcotics. § II.11.

In 1980, Flemmi and Bulger made a critical contribution to the FBI's ambitious and ultimately successful effort to bug Angiulo's headquarters at 98 Prince Street. The location was viewed as virtually impenetrable. Connolly and Morris asked Flemmi and Bulger to visit 98 Prince Street and obtain information important to the physical feasibility of the proposed bugging. Bulger justifiably feared that he and Flemmi might be killed if they went to that location. Flemmi expressed the additional concern that the bugging of 98 Prince Street would likely result in the interception of information concerning criminal activity in which he and Bulger were engaged. Morris and Connolly, however, assured Flemmi and Bulger that the 98 Prince Street tapes would not be a problem for them; they would be protected for anything intercepted at 98 Prince Street rather than prosecuted. Thus, Flemmi reasonably understood that if he assisted the FBI, none of the evidence intercepted at 98 Prince Street would be used against him, directly or indirectly. §§ II.11, III.1.D(3).

As a result of the promises made by Morris and Connolly, Flemmi went with Bulger to 98 Prince Street, and returned with a diagram of the premises and the other information that the FBI had requested. Subsequently, Bulger and Flemmi were two of the informants relied upon in the application for the warrant which was issued authorizing the installation of a bug at 98 Prince Street. *Id.*

In 1991, Morris assessed for his superiors Flemmi's value as an informant, writing that the information Flemmi provided had been utilized in six successful applications for electronic surveillance, involving, among other things, the two highest priority Organized Crime investigations in Boston. The 98 Prince Street investigation, Morris wrote, "is one of the highest priority organized crime cases in the FBI today and involves what has been characterized by [FBI Headquarters] officials as one of the most important and successful Title IIIs to have been conducted by the FBI in the past ten years." *Id.*

In 1985, at a dinner at Morris' home, in Connolly's presence, Morris again told Flemmi and Bulger that they would not be prosecuted for anything on the 98 Prince

77 A.L.R.3d 1363 (Originally published in 1977)

American Law Reports : The ALR databases are made current by the weekly addition of relevant new cases.

ALRs
Jack L. Litwin, LL.B

Relating of money lost at gambling as robbery or larceny

**TABLE OF CONTENTS**
Article Outline
Index
Table of Cases, Laws, and Rules
Research References

**ARTICLE OUTLINE**

I. Preliminary Matters
§ 1[a] Introduction—Scope
§ 1[b] Introduction—Related matters
§ 2[a] Summary and comment—Generally
§ 2[b] Summary and comment—Practice pointers

II. General considerations
§ 3[a] Requirement of felonious intent—View that resulting under bona fide claim of right does not negate intent
§ 3[b] Requirement of felonious intent—View that resulting under bona fide claim of right does negate intent
§ 4[a] Ownership of money lost—View that winner gains no title
§ 4[b] Ownership of money lost—View that winner does gain title
§ 4[c] Ownership of money lost—View that title is irrelevant
§ 5[a] Doctrine of unclean hands—Conviction unheld
§ 5[b] Doctrine of unclean hands—Conviction upheld

III. Recovery in particular circumstances
§ 6[a] Recovery of gambling losses only—Conviction imported
§ 6[b] Recovery of gambling losses only—Conviction upheld
§ 7 Money lost by fraud under semblance of game
§ 8 Recovery of more than amount lost
§ 9 Money lost by fraud under semblance of game

Research References

INDEX

Actual title in issue §§ 6[a], 6[b]
Amount of recovery §§ 6-9

Bona fide claim of right, retaining under §§ 3[a], 3[b], 4[a]
Claim of title in loser §§ 4[a], 4[b]
Content and summary § 2
Common debt §§ 3[b], 5[b]
Deception under semblance of game, money taken by § 7
Delivery of money by loser to winner § 4[b]
Excess money, efforts to retain § 9
Felonious intent, requirement of § 3
Fraud under semblance of game, money lost by §§ 2, 7
General considerations §§ 3-5
Good faith §§ 3, 4[a]
Identical money lost, recovery of § 6
In pari delicto § 5[a]
In statu quo, leaving the parties § 5[a]
Intent required § 3
Interpretation of claim of right § 3[b]
Introduction § 1
Larceny § 1, 2
Married cards § 7
Only gambling losses recovered §§ 6, 7
Ownership of money lost § 4
Possessor, loss of money to § 4[b]
Pari delicto § 5[a]
Particular circumstances for recovery §§ 6-9
Possession of money, sufficiency to constitute offense § 4[a]
Practice pointers § 2[b]
Preliminary matters §§ 1, 2
Public policy of setting disagreements § 4[b]
Reasonability of good faith § 3[b]
School matters § 3[b]
Requirement of felonious intent § 3
Retention of title by loser § 4[a]
Return of excess money, efforts to effect § 9
Rules of game, loss of money under §§ 6[b], 7, 8
Scope § 1[a]
Short debt § 7
Statu quo, leaving the parties in § 5[a]
Statute providing for recovery of losses §§ 6[a], 8
Summary and comment § 2
Title to money § 4
Unclean hands, doctrine of § 5
Voluntary delivery of money by loser to winner §§ 4[b], 6[b]

Table of Cases, Laws, and Rules

Alabama
Jackson v. State, 30 Ala. App. 466, 8 So. 2d 290 (1942) — 8

Arizona

**Relating to money lost at gambling as robbery or larceny, 77 A.L.R.3d 1363 (Originally...**

State v. Hardin, 99 Ariz. 56, 406 P.2d 406 (1965) — §§4, 5

**Arkansas**
Durbins v. State, 280 Ark. 463, 139 S.W.2d 497 (1980) — §§3, 4[a], 4[a], 5
Turner v. State, 268 Ark. 690, 177 S.W.2d 173 (1980) — §§4, 6[b], 5

**California**
People v. Lake, 57 Cal. App. 2d 122, 134 P.2d 284 (3d Dist. 1943) — §§4, 5
People v. Williams, 25 Cal. App. 3d 95, 101 Cal. Rptr. 483 (2d Dist. 1972) — 4[a]
People v. Rosen, 1 Cal. 2d 615, 36 P.2d 431, 95 A.L.R. 580 (1934) — §§4, 5
People v. Roman, 1 Cal. 2d 62, 78 P.2d 727, 116 A.L.R. 991 (1938) — §§4, 4[a], 4[a], 5[a], 5[b]

**Georgia**
State v. State, 115 Ga. 705, 41 S.E. 695 (1902) — §4[a], 5

**Idaho**
State v. Price, 38 Idaho 149, 219 P. 1069, 35 A.L.R. 1658 (1923) — §§4[a], 4[a], 6[a], 6[a]

**Kentucky**
Marcum v. Com., 473 S.W.2d 122 (Ky. 1971) — 5
Shaw v. Com., 17 K.L.J. 891, 1933, 34 S.W. 50 (Ky. 1896) — §§4, 4[a], 6[a], 6[a]
Thompson v. Com., 13 K.L.J. Rptr. 916, 18 S.W. 1022 (Ky. 1892) — §§4, 4[a], 6[a], 6[a]

**Maryland**
Cales v. State, 21 Md. App. 363, 320 A.2d 475, 77 A.L.R.3d 1353 (1974) — §§3, 4[a], 5[b]

**Michigan**
People v. Henry, 202 Mich. 450, 168 N.W. 534 (1918) — §§3, 4[a], 6[a]

**Mississippi**
Turner v. State, 177 Miss. 272, 171 So. 21 (1936) — 5

**New York**
People v. Coston, 64 A.D.2d 1, 407 N.Y.S.2d 864 (2d Dept. 1978) — 4[a], 6[a]
People v. Stewart, 162 A.D.2d 169, 471 N.Y.S.2d 69 (3d Dept. 1984) — 5

**Pennsylvania**
Com. v. Donohoughtan, 724 Pa. Super. 432, 418 A.2d 692 (1980) — 4[b]
Com. v. Mushrall, 139 Pa. Super. 461, 45 A.2d 264 (1946) — 5

**Texas**
Blaire v. State, 24 Tex. Crim. 448, 315 S.W. 355 (1893) — 4[a], 5
Carr v. State, 55 Tex. Crim. 132, 116 S.W. 591 (1909) — §§4, 6[a]
Curtell v. State, 41 Tex. Crim. 30, 57 S.W. 99 (1900) — 4[b], 6[a], 6[a], 7
Culver v. State, 71 Tex. Crim. 504, 160 S.W. 96 (1913) — 4[b], 6[a], 5
Ooks v. State, 194 Tex. Crim. 533, 286 S.W. 284 (1925) — 3[b], 5
Elsey v. State, 192 Tex. Crim. 222, 271 S.W. 384, 47 A.L.R. 740 (1925) — 7
Johnson v. State, 151 Tex. Crim. 394, 207 S.W.2d 320 (1948) — 5
Kirkman v. State, 193 Tex. Crim. 302, 214 S.W.2d 119 (1948) — 4[a], 5
Murphy v. State, 133 Tex. Crim. 189, 109 S.W.2d 488 (1937) — 2, 5
Pinckard v. State, 62 Tex. Crim. 403, 260 S.W. 322 (1922) — 4[a], 6[b]

**Utah**
Toone v. State, 86 Tex. Crim. 218, 215 S.W. 965 (1919) — 6[a], 7

---

People v. Hindon, (11 Utah 160, 39 P. 492 (1895) — 4[b], 6[a], 6[a]

# I. Preliminary Matters

## § 1[a] Introduction—Scope

This annotation collects and analyzes the cases in which the courts have considered whether or under what circumstances, the forcible retaking of gambling losses constitutes either robbery or larceny.[1]

For cases involving whether one who takes money or property by force with intent to collect or secure a supposedly debt or claim is guilty of robbery or larceny, see the annotation at 46 A.L.R.3d 1222. Also beyond the scope of the present annotation are cases involving the question whether gambling or bribery paraphernalia[2] may be the subject of burglary, larceny, or robbery.[3]

Since relevant statutory provisions are discussed herein only to the extent that they are reflected in the reported cases within the scope of this annotation, the reader is advised to consult the latest statutory enactments in his jurisdiction.

## § 1[b] Introduction—Related matters

Related Annotations are located under the Research References heading of this Annotation.

# § 2[a] Summary and comment—Generally

The offenses of robbery and larceny, at common law, both involve a felonious taking and carrying away of the personal property of another without the taker's consent.[4] The crime of robbery is distinguishable in that the taking is accomplished by force or violence, actual or constructive.[5]

In both robbery and larceny the taking of the property must be "animo furandi," that is, there must be the specific intent to wholly and permanently deprive the owner of his property.[6] Thus, the courts have held that one who takes property in good faith, under a bona fide claim of title or of right of possession, is guilty of neither larceny[7] nor robbery.[8] Evidence that the defendant intends to obtain that which he believes to be his, and nothing more, rebuts the inference of a felonious intent that would arise from a forcible and unlawful taking.[9]

Although there is authority to the contrary,[10] generally a charge of robbery or larceny has failed where one who had lost money at gambling compelled by force or threat the return of his gambling losses only.[11] The latter decisions have been based either on the theory that the retaking of gambling losses, under a bona fide claim of right, does not constitute robbery or larceny because there is no felonious intent,[12] or on the theory that title to the money won at gambling does not pass to the winner, and, therefore, the loser is merely an owner retaking his own specific property.[13] At least one court has ruled on an additional ground, the unclean hands doctrine, to justify an acquittal,[14] although this doctrine has also been applied to justify a conviction.[15] However, if the loser compels the surrender of more than the amount which he lost, the courts have held that he is ordinarily guilty of robbery.[16]

The courts of at least one jurisdiction have held that a person who uses force to reclaim his gambling losses is not guilty of robbery, because money lost at gambling has been held to be the property of the winner if it is not passed into his possession, and, accordingly, it has been regarded as robbery if the loser thereafter retakes the money by force or duress. If, however, this rule has been applied only to money lost fairly and in accordance with the rules of the game.

and it has not been regarded as robbery if the loser forcibly retakes money taken from him by fraud or deception, under the semblance of a game.[18]

And, in a modern decision, one court, recognizing that the public interest in a peaceful and orderly society dictates that debt disputes be resolved by agreement or by the courts rather than by force or stealth, has taken the position that the "intent to steal" should be evaluated objectively, and not subjectively, and within the framework of rights and obligations given and imposed by the law,[19] and that the fact of possession is a more accurate guide than title in resolving the question of felonious intent.[20]

## § 2[a] Summary and comment—Practice pointers

Defense counsel should consider all evidentiary circumstances that are relative to, or tend to shed light on, the defendant's motive or intent, or which and likely to capitalize, since such intent or motive may be proved by either direct or circumstantial evidence.[21] Counsel should be aware that it may be competent for the defendant himself to testify that at the time of the alleged robbery he honestly believed that the money was his and that he had a right to it.[22]

The issue of felonious intent is one of fact, and its determination is therefore within the exclusive province of the jury, under appropriate instructions from the court.[23] Accordingly, the jury may find, if the facts justify it, that the defendant's expressed intent to retake money lost in an illegal gambling game was a mere pretext resorted to as a cover for an attempt to steal.[24] Where the evidence is susceptible of conflicting inferences on the question of intent, counsel should request the trial judge to fully and specifically instruct the jury on this phase of the case.[25]

Where the right of the defendant to retake gambling losses is recognized, it is not necessary that he prove that the money retaken was the identical money won from him.[26]

## II. General considerations

## § 2[a] Requirement of felonious intent—View that retaking under bona fide claim of right negates felonious intent

In the following cases it was held or recognized that retaking gambling losses by force or threats under a bona fide claim of right does not constitute robbery or larceny because there is no felonious intent.

Even though it may not be larceny or robbery for a loser to retake his gambling losses by force or violence, the act may be punishable as an unlawful assault or trespass.[27] Accordingly, where the evidence in a prosecution for robbery or assault with intent to rob would warrant a conviction of assault or assault and battery, counsel for the defendant should request an instruction on the lesser offense.[28] It has been held that such an instruction should be given where the defendant admits the taking of something from the prosecuting witness but denies felonious intent,[29] or where the defendant shows a reason for the assault other than robbery.[30]

---

State v. Price (1923) 38 Idaho 149, 219 P. 1049, 35 A.L.R. 1458

**Ky**

Thompson v. Commonwealth (1932) 11 K.y.L.R. 916, 18 SW 1024 (recognizing rule)

Riley v. Commonwealth (1936) 12 Ky.L.R. 1153, 34 S.W. 592 (recognizing rule)

**Neb**

People v. Henry (1918) 202 Mich. 450, 168 N.W. 534

**Tex**

Cary v. State (1907) 51 Tex. Crim. 153, 116 S.W. 291

Deckard v. State (1922) 91 Tex. Crim. 603, 240 S.W. 926 (recognizing rule)

**Utah**

People v. Hamber (1893) 11 Utah 189, 39 P. 692

Thus, in People v. Henry (1918) 202 Mich. 450, 168 N.W. 534, the court, in reversing a larceny conviction, held that instruction that the jury might convict of robbery or larceny if they found that the defendant forcibly retook his gambling losses constituted prejudicial error because if the defendant in good faith believed that the money which he demanded was his money and that he was entitled to its possession, he could not be guilty of either robbery or larceny in taking it since there would be no felonious intent.

## § 3[a] Requirement of felonious intent—View that retaking under bona fide claim of right does not negate felonious intent

**[Consulting Statement]**

In the following case it was held that the forcible retaking of gambling losses constituted robbery even though the taker honestly believed himself to be entitled to the property.

A forcible retaking of gambling losses was held to be robbery in Crane v. State (1974) 21 Md.App. 369, 320 A.2d 75, 77 A.L.R.3d 1353, where the defendant, who had lost money in a crap game, armed himself with a pistol and retook his losses from the winner. The court stated that the phrase "claim of right" and "honestly believes himself to be entitled," when applied to an intentional taking of property, should be given a limited meaning and not a broad interpretation and should be taken to require a legally recognizable right which can be successfully asserted in the courts. The "intent to steal", the court said, should be evaluated objectively and not subjectively, and within the framework of rights and obligations given and imposed by the law. The court concluded that a state statute which provided that a gambling loser could recover his losses as if they constituted a common debt was the sole remedy for the recovery of gambling losses, and that one who undertook to recover such losses through force of arms was guilty of robbery regardless of his claim of right of possession.

## CUMULATIVE SUPPLEMENT

**Cases:**

Successful gambler possessed of his winnings was deemed owner thereof, and subsequent intent to deprive owner of his winnings, no matter motivations, constituted larcenous intent. People v. Coston (1979, 2d Dept) 66 App Div 2d 1, 402 NYS2d 566 (Gaboy murder conviction sustained based on forcible retaking of gambling losses is robbery).

Where defendant physically took money from person who won it from him in dice game, public policy precluded defendant's assertion of claim of right defense to charge of theft by unlawful taking. Commonwealth v Dombkowski (1980, Pa Super) 418 A.2d 493 (citing annotation).

**[End of Section]**

[END OF SUPPLEMENT]

**§ 4[a] Ownership of money lost—View that winner gains no title**

In the following cases it was held or recognized that the winner in an illegal gambling game acquires no title to the property so won, so that the loser does not commit robbery merely by forcibly retaking what still belongs to him. [1]

**Ark.**
Davidson v State (1940) 200 Ark 495, 139 SW2d 409

**Cal.**

**Ky.**
State v Price (1921) 38 Idaho 149, 219 P 1049, 33 ALR 1458

Thompson v Commonwealth (1927) 19 KyLR 916, 18 SW 1022

Silcox v Commonwealth (1896) 17 KyLR 1353, 34 SW 902

**Mich.**
Davidson v Mercy (1918) 202 Mich 458, 168 NW 534

**Mo.**

Thus, the court, in Davidson v State (1940) 200 Ark 495, 139 SW2d 409, in reversing a robbery conviction, held that the defendant not only had a claim of title but also the actual title to the money won from him in a game of craps, and that it was not, therefore, robbery to have retaken possession of his own money by force or by putting the winner in fear.

And in Doyle v Reese (1938) 11 Cal 2d 147, 78 P2d 172, 116 ALR 593, where the defendant forcibly retook gambling losses, the court, in reversing a robbery conviction, stated that it was the law in its state that certain games of chance are illegal, that the winner gains no title to the property at stake nor any right of possession thereof, and that the participants have no standing in a court of law or equity. The court reasoned that the forcible retaking of money in such a case would not be robbery because the winner obtains no valid title or right to possession of the money won, the loser cannot have a fictitious interest in taking it.

**§ 4[b] Ownership of money lost—View that winner does gain title**

In the following Texas case it was held or recognized that where money lost in a gambling game passed into the possession of the winner, title also passed to the winner, so that the loser would be guilty of robbery if he regained the loss by force. [2]

Where the defendant voluntarily delivered the money lost in a card game to the winner prior to forcibly retaking his losses, the court, in Carroll v State (1900) 42 Tex Crim 30, 57 SW 99, in affirming a robbery conviction, held that the trial judge properly charged the jury that where two persons engage in a game of cards, betting money thereon, and one of the parties wins the other's money, and the party losing delivers the money to him voluntarily to lose it, then, within the meaning of the law, the winner is the owner of the money passed into the actual possession of the winner, then, within the meaning of the law, the winner is the owner of the money then passing into his possession.

See also Cobery v State (1911) 71 Tex Crim 504, 160 SW 364, infra § 8 (characterizing rule as settled law of Texas).

7

---

**CUMULATIVE SUPPLEMENT**

**Cases**

Although gambling was unlawful in New York, once individual voluntarily entered dice game and thereby assumed risk of losing, that individual was precluded from relying on illegality of his own activity as justification for violent self-help in recovering his losses. People v Coates (1979) 74 Misc2d 4 AppDiv 241, 407 NYS2d 846 (felony murder conviction sustained based on forcible retaking of gambling losses as robbery).

**[End of Section]**

[END OF SUPPLEMENT]

**§ 5[a] Doctrine of molnm lonelo—Conviction improper**

In the following case the court recognized, as a factor to be considered in its reversal of a robbery conviction, that both the winner and the loser in an illegal gambling game came into court with unclean hands.

Thus, in reversing a robbery conviction, the court stated, in Doyle v Reese (1938) 11 Cal 2d 147, 78 P2d 172, 116 ALR 593, that the complaining witness, being in a pari delicto with the defendant, should not be heard in a court of justice on a charge of robbery against one whom only purpose was to retake money lost at an illegal game.

**§ 5[b] Doctrine of molnm lonelo—Conviction upheld**

The unclean hands doctrine has been interpreted to support conviction for robbery where the defendant forcibly retook money lost by him in a gambling game.

Thus, in State v State (1911) 71 Tex Crim 448, 31 SW 364, the court, in affirming a robbery conviction for the forcible retaking of gambling losses, stated that in such a case, in a civil suit, the law would have the parties in status quo, and considered, in a criminal charge, it would not recognize a retaking of the property which involved all the elements of a premeditated robbery.

For other cases recognizing the same rule, see Carroll v State (1900) 42 Tex Crim 30, 57 SW 99, infra § 8[b]; Cobery v State (1911) 71 Tex Crim 504, 160 SW 364, infra § 8.

**III. Recovery in particular circumstances**

**§ 6[a] Recovery of gambling losses only—Conviction improper**

8

In the following cases convictions of robbery or larceny were held or recognized to be improper where, or if, the defendant forcibly retook only the property lost by him in an illegal gambling game.

In *Davidson v State* (1940) 200 Ark. 495, 139 SW2d 409, the defendant, after summoning leave to the prosecuting witness in a crap game, forcibly ordered the prosecuting witness to surrender his money. A state statute provided that a theft in a gambling game could recover his losses by action against the winner instituted within 90 days of the loss. In reversing a robbery conviction, the court held that the trial judge had erroneously refused to instruct the jury that under state law a person who may thereby, due could recover known his had property that was lost in the prosecuting witness and acquit it as found that the defendant only took from the prosecuting witness that property that he had previously won from him in gambling. The court stated that the prosecuting witness and to do, especially in some cases where the money was obtained by gambling and that property to which he could be guilty of assault, it was not robbery to retake possession of his own money by force or by putting the witness in fear. Although the defendant could not, under the present of taking the money he had lost, the court said, the defendant would not be guilty of robbery.

In *Banks v State* (1931) 11 Cal 2d 417, 28 P2d 772, 116 A.L.R. 969, the defendant, by force of arms, took $196 from the possession of the prosecuting witness, who owed only $35, he had lost about $1,000 to a game of chance called "Faro." Although the defendant could evidence prior to the date of the alleged offense. In reversing a robbery conviction, the court held that it was prejudicial error for the trial judge to refuse to admit evidence on the legality of the game at which the money lost money and to refuse to instruct the jury on the defense theory that it was the defendant's bona fide belief that the money taken was his own. The court stated that fictitious issue, an essential element of the crime of robbery, may be absent when one seeks the redemption of money lost by him at an illegal gambling game, even in the absence of a statute giving a loser a right to recover gambling losses, and even though the money retained was not the identical money lost by the defendant. The court reversed on the weight of authority that the retaking of money lost in an illegal gambling game was not robbery, although the act might be punishable as an unlawful assault or trespass, inasmuch as the winner at such an illegal game obtains no valid title or right to possession of the money so won. The court concluded that the question of fictitious intent was for the jury, which could find, if the facts justified it, that the defendant expressed intent to get back his own money was from fictitious, or because of any other reason, was merely a pretext for an act of robbery.

In affirming a robbery conviction, the court, in *Cates v State* (1907) 111 Ga 301, 41 SE 495, held that it was not error to charge that if two persons play and bet at cards, and the loser wrongfully, fraudulently, and by force and violence compels the winner to surrender to the loser the money won, this, but this if the winner is at the same time and in like manner was compelled to surrender not only his winnings, but also some of his individual money, then the loser would be guilty of robbery.

In reversing robbery convictions, the court, in *State v Price* (1921) 38 Idaho 149, 219 P 1049, 35 A.L.R. 1458, held that it was erroneous error to instruct the jury that "if a person losing at cards voluntarily delivers the money lost to the winner's actual possession, the winner owns the money, so that the forcible taking of it from his possession may constitute robbery." The court stated that if the victim won the money mentioned in the information is but with one of the defendants, the victim acquired no right or title to it, and that if the defendants forced the surrender of the money under a claim that it belonged to one of the defendants, the defendants would not be guilty of robbery, although they would be guilty of a criminal offense.

Where the loser in a gambling game compelled the winner, at the point of a pistol, to surrender his winnings, the court, in *Thompson v Commonwealth* (1923) 15 Ky L R 316, 18 SW 1022, in reversing a robbery conviction, stated that it is

a uniform rule that a person is not guilty of stealing that which belongs to him and to his a right. Holding that under a state statute neither the title to the property won nor the right to its possession passed to the winner, or from the defendant, the court concluded that the fact that the defendant was entitled to the money, and that the victim's possession of it was not rightful, as against the defendant, stripped the defendant's act of being a fictitious intent of permanently depriving the owner of it.

In following *Thompson v Commonwealth* (Ky) supra, the court, in *Blair v Commonwealth* (1896) 17 Ky L R 1353, 34 SW 972, in reversing a robbery conviction, held that the trial judge ought to have instructed the jury to acquit if the money which the defendant discovered and forced from the victim had been won from the defendant by the victim at the game of craps. The court stated that the money taken was the identical money lost.

After taking money in a crap game, the defendant, in *Rambo v Henry* (1910) 202 Mo 456, 100 SW 554, went loose, and in a short time thereafter effected the return of the money by threats and the display of a weapon. Reversing a larceny conviction, the court held that a state statute gave a right to the loser to recover, by replevin or similar action, the money or property lost in a gambling game, thus recognizing the money or property as belonging to him; and that this fact, when considered with the rule that the winner of money in a gambling game acquired no title or legal possession thereof. The court further held that this there was prejudicial error in the charge (most if the defendant believed in good faith that the money which he demanded was his, and that he was entitled to its possession, he could not be guilty of either robbery or larceny because there would be no fictitious intent.

The court reversed a robbery conviction in *Cary v State* (1900) 35 Tex Crim 352, 116 SW 291, where, while engaging in a game of cards, the defendant forced the prosecuting witness, by threats and threats, to turn over certain money that had been picked up as a wager. The court held that although a claim of ownership is not always or necessarily a defense in cases of robbery, since it was sharply controverted as to whether the defendant or the prosecuting witness was entitled to the money, the question should have been submitted to the jury as to whether the defendant had any fictitious intent. If the defendant honestly believed the money had been fairly and properly won and belonged to him, the court said, it would not be robbery.

Reversing a robbery conviction and granting a motion for rehearing, the court, in *Littlejohn v State* (1940) 15 Tex Crim 302, 214 SW2d 119, held that the issue raised by the defendant's testimony relating to whether the defendant forcibly took money from the winner when the defendant lost in a crap game, allegedly through the use of crooked dice, should have been submitted to the jury.

Where the defendant forcibly retook a gambling table and the proprietor thereof, after losing money at the table in a card game called "Mexican Monte," the court, in *Franks v Houston* (1893) 11 Utah 108, 39 P 422, in reversing a robbery conviction, held that it was prejudicial error for the trial judge to exclude the defendant's testimony as to his intent at the time of the alleged robbery and to refuse to charge the jury that if they honest that the defendant acted under a bona fide impression and honest belief that the money taken was his own, and that he had a right to it, they should render a verdict of not guilty. The court further held that the trial judge erroneously charged that jury that it was not material for its own possession to prove who owned the money or that the loser right to it. The court stated that it was material and for the purpose of the case to show that money was owned by some person other than the defendant, because if the money really belonged to the defendant, in the possession of another, the actions forcibly would be wanting and the defendant would not be guilty of robbery.

§ 6[b] Recovery of gambling losses only—Conviction upheld

In the following cases convictions of robbery were upheld where the defendant forcibly retook only the property lost by him in an illegal gambling game.

And see Trotter v State (1944) 206 Ark 690, 177 SW2d 173, where the defendant, an unmarried female, contended that the man with whom she lived, without benefit of clergy or civil condonation, purloined her money and lost it to the prosecuting witness in a card game, and that her recovery of the money by force was merely an act of repossession within the rule of Davidson v State (1940) 200 Ark 495, 139 SW2d 409, supra § 6(a). In affirming a robbery conviction, the court stated that the Davidson Case was "not a judicial blueprint authorizing complete freedom of action for Pistol Packing Mamas," and that, in view of the conflicting testimony in the case, ownership of the money retaken was a jury question. There was testimony that the defendant had loaned some of the money to her paramour. In that event, the court said, title passed to the paramour and the defendant did not have the right to recapture what her paramour had lost, although the court conceded that the rule would have been different if the paramour himself had been the motivating force in the robbery.

Where the defendant, by the use of a weapon, forcibly retook his gambling losses from the winner in a crap game, the court, in Cates v State (1974) 21 Md App 363, 320 A2d 75, 77 ALR3d 1353, in affirming a conviction of robbery with a dangerous and deadly weapon, held that a state statute, providing that a gambling loser could recover his losses as if they constituted a common debt, was the sole remedy for the recovery of gambling losses, and that one who undertook to recover such losses through force of arms was guilty of robbery. The court considered, but expressly declined to follow, decisions in other jurisdictions authorizing "self-help" to recoup gambling losses. Noting that many of the contrary decisions were decided well over a half-century ago, and most of them in states in the western part of the country, the court stated that it did not want to substitute the "rule of the gun" for the "rule of reason." Conceding that animus furandi is an essential element of a robbery, the court said that this element must be evaluated objectively and not subjectively, and within the framework of rights and obligations given and imposed by the law. The court stated that basic public policy dictated that debt disputes be resolved by agreement or by the courts, not by stealth or force.

In affirming a robbery conviction, the court, in Carroll v State (1900) 42 Tex Crim 30, 57 SW 99, held that where the defendant lost some money in a game of cards and delivered it to the winner, the winner decided to and did quit the game, whereupon the defendant charged him with unfairness in winning the money, and the defendant subsequently retook his losses from the winner by means of an assault and by violence, the trial judge did not err in refusing to give the defendant's requested instruction that the jury should acquit if it believed from the evidence that the defendant had reason to believe he was swindled out of his money by an unfair game of cards and was only by force taking back his lost money. The court held that there was no error in the trial judge's charge that if the loser in a game of cards voluntarily delivered the money so lost to the winner, the winner became the legal owner of the money which thereby passed into his actual possession.

See also Temple v State (1919) 86 Tex Crim 219, 215 SW 965, infra § 7, where the court recognized that if a person playing at a gambling game lost money under the rules of the game and surrendered his losses to the winner, he might be guilty of robbery if he regained his losses by force.

In affirming a robbery conviction, the court, in Punchard v State (1922) 91 Tex Crim 603, 240 SW 939, held that where the defendant claimed that he had only taken back his own money from another, whom he had permitted to win at gambling in order to induce a third person to gamble and lose his money, an instruction that the jury should find the defendant not guilty if they believed that the defendant took the money believing in good faith that it was his, adequately presented the defendant's theory of the case.

§ 7. Money lost by fraud under semblance of game

In the following cases it was held or recognized that the forcible retaking of gambling losses only would not constitute robbery if the money were taken by deception or fraud under the semblance of a game.

But see Carroll v State (1900) 42 Tex Crim 30, 57 SW 99, supra § 6(b), where the court, in affirming a robbery conviction, held that the trial judge did not err in refusing to give the defendant's requested instruction that the jury should acquit

if it believed from the evidence that the defendant had reason to believe he was swindled out of his money by an unfair game of cards and was by force taking back his lost money only.

In reversing a robbery conviction, the court, in Temple v State (1919) 86 Tex Crim 219, 215 SW 965, held that where the defendant alleged that he recovered his gambling losses when he discovered that the prosecuting witness had played cards with a short deck, it was prejudicial error not to have the jury instructed as to this defense. The court stated that if the defendant was induced to part with his money and place it under the control of the prosecuting witness through his deception and fraud, the prosecuting witness would have acquired no title or right to the money, and the defendant would have lost no right to its control. One cannot be guilty of robbery, the court said, by taking his own specific property from the possession of another, even though the taking is accomplished under such circumstances as would amount to robbery if the property belonged to the person from whom it was taken. The court distinguished the situation where one playing at a gambling game loses money under the rules of the game and surrenders his losses to the winner; in that event, the court said, the loser might be guilty of robbery when he regained his losses by force.

Where the defendant claimed that any assault made was made solely for the purpose of retaking money belonging to him which the prosecuting witness had acquired, not according to the rules of the game, but by the fraudulent use of marked cards, the court, in Fisher v State (1925) 102 Tex Crim 229, 277 SW 386, 42 ALR 740, in reversing a robbery conviction, held that the defendant was entitled to a charge presenting this defense. The court stated that it was well settled that one cannot be guilty of robbery by taking his own specific property from the possession of another who had acquired it unlawfully, even though the retaking was by force.

See also Murphy v State (1937) 133 Tex Crim 189, 109 SW2d 488, infra § 8, where the court recognized that where a person was induced to part with his money, not according to the rules of the game, but by reason of the fraudulent practice of his adversary in using marked cards or crooked dice, he would not be guilty of robbery in forcibly regaining possession of his property.

§ 8. Recovery of more than amount lost

[Cumulative Supplement]

In the following cases it was held or recognized that a loser at gambling was guilty of robbery where, or if, he compelled the surrender of more than the amount that he lost.

Where a few hours after a crap game in which he lost about $260, the defendant took from the person of the winner, by force of arms, around $400, the court, in Jackson v State (1942) 30 Ala App 468, 8 So 2d 990, held that there was sufficient evidence to sustain a conviction for grand larceny. The court stated that a statute, which provided that contracts founded on a gambling consideration were void and that any person who paid or delivered any money or thing of value lost upon any game or wager could recover such money, thing or its value by action within 6 months of such payment or delivery, provided the only legal method or manner to recover gambling losses and could not be construed to either justify or condone the loser in recovering, vi et armis, not only the identical money he lost himself, but also money which actually belonged to the victim with which he entered the game.

Where there was evidence that the defendant, by force of arms, took money from other gamblers in a dice game, in addition to his own losses from the winner, the court, in State v Hardin (1965) 99 Ariz 56, 406 P2d 406, held that there was sufficient evidence to sustain a robbery conviction. Although recognizing that property taken by force under a claim of right of ownership does not constitute robbery, the court stated that whether the defendant had the intent to limit his lawless act to the retaking of the amount lost in gambling was indisputably a fact question for the jury's determination.

In reversing a robbery conviction because the trial judge erroneously refused to instruct the jury that, under a statute authorizing an action to recover gambling losses, it would not be robbery for the loser to compel the winner by force to surrender to him the money won, the court, in Davidson v State (1940) 200 Ark 495, 139 SW2d 409, supra § 6[a], stated that if the loser intended to take not only the money he had lost, but also some of the winner's individual money, and if he did take such additional money, then he would be guilty of robbery.

In affirming a robbery conviction for forcible retaking of gambling losses, the court, in Trotter v State (1944) 206 Ark 690, 177 SW2d 173, supra § 6[b], held that the trial judge correctly declined to give certain requested instructions which incompletely told the jury that if the defendant took from the prosecuting witness only the money he had won in gambling at any time within 90 days, there should be an acquittal, since the prosecuting witness might have gambled with others and won. What was probably meant was inferable, the court said, but it was not accurately expressed.

Where the defendant and his confederate had not confined or limited their demands for money to the proprietor of a gambling club, but had robbed all persons present in the establishment, several of whom had no connection with the dealer, who had previously left the premises with the proceeds of the gaming table, the court, in People v Rogan (1934) 1 Cal 2d 615, 36 P2d 631, 95 ALR 560, in affirming a robbery conviction, held that whether the defendant and his confederate had intended to rob the club merely for the purpose of regaining money which the confederate had lost at blackjack was a jury question, and that a finding that they had not intended to so limit their holdup of the club, but had intended to rob everybody there, was warranted.

In affirming a robbery conviction, the court, in People v Lain (1943) 57 Cal App 2d 123, 134 P2d 284, held that where, following a stud poker game, the defendant ordered the victim to take the money from his pocket and place it on the bar, and persisted in ordering him to do so after another had knocked the victim down, and in view of the further fact that the jury might well have inferred from the testimony that the defendant had lost not more than $35 in the game and that the victim had not been cheating, the jury might properly have concluded that the defendant did not in good faith intend to take only the money that he had lost, but that he had made the demand that all the money be placed on the bar and the accusation that the victim had been cheating as a mere pretext to cover up an intent to steal.

In affirming a robbery conviction, the court, in Gant v State (1902) 115 Ga 205, 41 SE 698, supra § 6[a], approved a jury instruction that, although it is not robbery for the loser in a gambling game to compel by force the return of the money lost, if the loser compels the surrender of more than the amount he lost, he is guilty of robbery.

In affirming a robbery conviction, the court, in Marcum v Commonwealth (1971, Ky) 473 SW2d 122, held that the verdict was supported by sufficient evidence where there was testimony that in forcibly retaking his gambling losses, the defendant took more than the money which passed in gambling.

Stating that he was going to get his own money, which he had allegedly lost in a fraudulent poker game, the defendant, in Turner v State (1936) 177 Miss 272, 171 So 21, forcibly took all the money which had been put into the game, including that which the players had on the side. In affirming a robbery conviction, the court held that it was a jury question whether the defendant feloniously took more money than he lost in the game, and in view of the conflicting evidence, the jury was not bound to accept the defendant's version of his losses.

Following a crap game in which he was the loser, the defendant, in Commonwealth v Magliarditi (1946) 158 Pa Super 461, 45 A2d 244, threw the winner to the floor, grabbed him by the throat, and took $1,165 from his pocket. In affirming a robbery conviction, the court held that since the defendant had taken more money from the winner than the defendant himself had lost, it was not error for the trial judge to fail to charge the jury that the forcible retaking of money lost at gambling is not robbery.

A robbery conviction was affirmed by the court, in Blain v State (1895) 34 Tex Crim 448, 31 SW 368, where the defendant and the victim played a game of cards called "Monte" for three days; the victim, after initial losses, not only won his own money back, but also some of the defendant's money; the defendant peaceably and without any protest settled his losses with the victim; and as the parties were on their way back to town, the defendant by a preconceived design compelled the victim, at the point of a pistol, to surrender the money to him. The court stated that in such a case, in a civil suit, the law would leave the parties in statu quo; and certainly, in a criminal charge, it would not recognize a retaking of the property which involved all the elements of a premeditated robbery.

After losing around $9 to $9.75 to the prosecuting witness in a card game, the defendant, in Coker v State (1913) 71 Tex Crim 504, 160 SW 366, quit the game and left the room, but soon returned with a drawn and cocked pistol and forced the prosecuting witness to deliver to him all the money he had, around $30 to $35, which the defendant carried off and appropriated. In affirming a robbery conviction, the court stated that it was the settled law of the state that where money lost in a game of cards passes into the possession of the winner, he is, in law, the owner thereof, and it is robbery if the owner thereafter takes it from him by force or by putting him in fear. The court added that although the trial judge improperly charged the jury that if the defendant took the money under an honest claim of right, believing it was his property, he should be found not guilty, this charge was more favorable to the defendant than he was entitled to, and he had no ground to complain.

In affirming a robbery conviction and overruling a motion for rehearing, the court, in Murphy v State (1937) 133 Tex Crim 189, 109 SW2d 488, held that the evidence was sufficient to justify the conviction where there was testimony that the defendant, having lost $1 at a dice game, demanded its return and cut the winner with a knife, and the winner, fearing that he would be killed, thereupon gave the defendant a $10 bill, where the state's testimony warranted the conclusion that the game had been played according to the rules and the winner was not guilty of any fraudulent practice, and where the jury was instructed to acquit the defendant if it entertained a reasonable doubt as to whether the winner had used crooked dice.

In affirming a robbery conviction, the court, in Johnson v State (1948) 151 Tex Crim 308, 207 SW2d 392, held that the trial judge had properly refused to charge the jury that if the defendant was unlawfully deprived of his money by the prosecuting witness in a crap game, and if the defendant parted with his money under protest and not under the rules of the game, the defendant would not be guilty of robbery in retaking his losses even by force. The court refused to extend the general Texas rule regarding fraudulent gambling transactions[35] beyond those limits already recognized. The court explained that, regardless of the $10 the defendant claimed the prosecuting witness had taken from the defendant in the crap game in violation of the rules of the game and the excess of the $20 which the defendant claimed he took by mistake, the fact remained that the defendant took, and intended to take, by robbery from the prosecuting witness $10 involved in the defendant's bet with the "house man," no part of which the prosecuting witness had taken or for which he was responsible. In doing this, the court stated, the defendant did not "rob Peter to pay Paul," but robbed "Peter" to pay the defendant what he claimed "Paul" owed the defendant.

In reversing a robbery conviction and granting a motion for a rehearing, the court, in Livingston v State (1948) 152 Tex Crim 302, 214 SW2d 119, held that the issue raised by the defendant's testimony relating to whether the defendant forcibly took more money from the winner than the defendant lost in a crap game, allegedly through the use of crooked dice, should have been submitted to the jury.

CUMULATIVE SUPPLEMENT

Cases:

Evidence that defendant intended to commit robbery in the first degree was sufficient where defendant was seeing in crap game, attempted to steal proceeds of dice bet won by victim, and took all of victim's money after victim was shot by another man to whom defendant had handed rifle which defendant brought to game. People v Elliott (1961, 2d Dept) 181 AD2d 892, 471 NYS2d 49.

§ 9. Money lost by fraud under control of game

In the following case it was held that if money won taken from the defendant by means of fraudulent dice, he might not be guilty of robbery in forcibly retaking the money from the possession of the winner.

In reversing a robbery conviction and granting a motion for a rehearing, the court, in Cole v State (1922) 196 Ind 509, 137 NE 96, stated that if money won taken from the defendant and a companion by means of fraudulent dice, as contended, title to the money thus acquired would not pass to the winners, and the losers would not be guilty of robbery in endeavoring to repossess the money by use of firearms, although they might be guilty of an unlawful assault. The court held that the question whether the defendant and his companion acted with a fraudulent intent in acquiring money which did not belong to them, or whether they were moved alone by a desire to recover the money which had been stolen from them, was a crucial issue for the decision of the jury, and that the trial judge had erroneously excluded testimony relating to their acts and declarations immediately after their discovery that they took money in excess of the losses sustained by them and their efforts to return the crown.

---

## RESEARCH REFERENCES

**A.L.R. Library**

- A.L.R. Quick Index, Gambling
- A.L.R. Quick Index, Larceny
- A.L.R. Quick Index, Robbery
- A.L.R. Quick Index, Gambling
- A.L.R. Federal Quick Index, Larceny
- A.L.R. Federal Quick Index, Robbery
- What is "Trespass of Another" Within Statute Providing Larceny, Theft, or Embezzlement of Property of Another, 37 A.L.R.6th 465
- Use of force or intimidation in asportation of goods or articles to attempt to collect or secure debt, as element of robbery, 32 A.L.R.3d 463
- Robbery, attempted robbery, or assault to commit robbery, as affected by intent to collect or secure debt or claim, 88 A.L.R.3d 1309
- Robbery by means of toy or simulated gun or pistol, 81 A.L.R.3d 1006

---

---

- Robbery of persons other than one robbed as robbery or larceny, 53 A.L.R.3d 889
- Robbery, larceny, or theft as affected by the owner's design to entrap robber or thief, 57 A.L.R.3d 1314
- Circumstances in which robbery or larceny of property by use of force, 12 A.L.R.3d 1305
- Right, and remedies of owner of property stolen or lost, against person in whose possession it is found, 49 A.L.R.3d 1222
- Recovery of money or property lost through cheating at illegal game, 48 A.L.R.3d 1292
- Right of owner to recover for property gambled away by another without authority, 58 A.L.R.3d 1211
- Recovery of money or property lost through cheating or fraud in otherwise lawful gambling, 39 A.L.R.3d 1211
- Action to recover money or property lost and paid, against winner, as affected by statute, 22 A.L.R.3d 299
- Endowment of, or permission to maintain, right of action for recovery of money lost at gambling, 57 A.L.R.3d 1403
- Recovery of money or bet deposited with stakeholder, 51 A.L.R.3d 1360
- Right, and remedies of loser, for failure to make good a bet illegal wager, 72 A.L.R.3d 1307
- Right, and remedies in respect of property obtained for or through illegal gambling debt, 17 A.L.R.3d 261
- Conflict of laws as to validity and construction of wagering contract, 120 A.L.R.3d 687
- Knowledge intended to conceal tort act of another Knowledge of identity of person making conversion, as affected by statute of limitations, 22 A.L.R.3d 789
- Distinction between larceny and embezzlement, 146 A.L.R.3d 532
- Who is accomplice within rule requiring corroboration of testimony of accomplice larceny which is crime
- As to concealing defendant was robber and to possession of stolen property, 111 A.L.R.3d 341
- Late duration of claim to defend property after claimed conversion, 102 A.L.R.3d 361
- Criminal law—Larceny as affected by distinction between custody and possession, 125 A.L.R.3d 362
- Offense of larceny, robbery, or theft as crime, whether as affected by distinction between custody and possession, 139 A.L.R.3d 297
- Larceny or embezzlement of property as affected by fact that owner participated therein, 130 A.L.R.3d 341
- Transfer of money or commercial paper with the owner's consent, obtained by fraud as larceny, 93 A.L.R.3d 577
- Larceny of checks and evidences of indebtedness, or similar risks capable of certain conversion, 89 A.L.R.3d 351
- "Claim of right" as a defense to larceny, trespass, or malicious acts or exceptions in larceny or as defense to maintenance thereof at larceny, 42 A.L.R.3d 334
- Unauthorized use or conversion of car, 97 A.L.R.3d 577
- Mere detention or failure to deliver which owner has demanded conversion, 97 A.L.R.3d 429
- Criminal liability, or conversion, for larceny, 95 A.L.R.3d 58
- Larceny or theft of property which another has a special interest or right of possession, 62 A.L.R.3d 211
- Robbery of property in custody or possession, 43 A.L.R.3d 1336
- Robbery of owner was larceny or robbery of money, 43 A.L.R.3d 1341
- Practice of conversion as such without intention to pay for it as larceny, 26 A.L.R.3d 381
- Abandonment of property (if obtaining essential by fraud as larceny, 18 A.L.R.3d 1271
- Larceny: effect of variation, by means of course it on a matter as to value of property, 18 A.L.R.3d 1321
- Larceny of concealment for unauthorized receipt or transfer of money or other substantial defense, in store of the goods due or taken for it, 14 A.L.R.3d 88
- Larceny or embezzlement as affected by intention to make good property as element of larceny, 17 A.L.R.3d 89
- Intent to return currency in don't pass as one or at the end of third person as element of larceny, 17 A.L.R.3d 162

---

Retyping of money lost at gambling as robbery or larceny, 77 A.L.R.3d 1363 (Originally…

17

**Administrative of evidence that are charged with burglary, larceny, or robbery not in possession of property and identified as part of that claim, 3 A.L.R. 1212**

**Legal Encyclopedias**
- Am. Jur. 2d Larceny §§ 41, 82
- Am. Jur. 2d Robbery § 18

**Trial Strategy**
- Unlawful Gambling Games, 19 Am. Jur. Proof of Facts 647
- Investigation Particular Crimes, 2 Am. Jur. Trials 171

**Treatises and Practice Aids**
- 2 Anderson, Wharton's Criminal Law and Procedure (1957) §§ 457, 551

**Forms**
- 12 Am. Jur. Pleading and Practice Forms, Gambling, Forms 1 et seq.

**Law Reviews and Other Periodicals**
- Joseph, Should the Possible Recovery of Gambling Losses Constitute Robbery? 41 J. Crim. L 467

**Footnotes**

We-cite · © 2011 Thomson Reuters. No Claim to Orig. U.S. Gov. Work.

17

---

Retyping of money lost at gambling as robbery or larceny, 77 A.L.R.3d 1363 (Originally…

18

24 See Daniels v. Lutkus (1972) 25 Cal.App.3d 94, 101 Cal.Rptr.496, wherein the court, reversing a burglary conviction, stated that "nothing in Foster justifies the imposition of a requirement that the good faith must be reasonable."

25 See §2, supra; §5, infra.

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

74 A.L.R.3d 271 (Originally published in 1976)

American Law Reports   The ALR databases are made current by the weekly addition of relevant new cases.

ALR3d

James O. Pearson, Jr., J.D.

**What constitutes larceny "from a person"**

## TABLE OF CONTENTS

Article Outline
Index
Table of Cases, Laws, and Rules
Research References

## ARTICLE OUTLINE

§ 1[a] Introduction—Scope
§ 1[b] Introduction—Related matters
§ 2[a] Summary and comment—Generally
§ 2[b] Summary and comment—Practice pointers
§ 3 View that property must be taken from person of victim—generally
§ 4[a] Property not on person of victim—Generally
§ 4[b] Property not on person of victim—Property in defendant's possession by consent of victim
§ 4[c] Property not on person of victim—Property concealed within other property connected to victim—money stolen from clothing used as pillow
§ 4[d] Property not on person of victim—Purse stolen from abandoned cart
§ 4[e] Property not on person of victim—Property forcibly removed from victim by defendant before theft
§ 5 Property on person of victim
§ 6 View that property may be taken from immediate presence of victim
§ 7 Alabama cases
Research References

## INDEX

Apparel, Clothing, infra
Area of contract, property in as property on person § 2[a]
Bus, theft of money placed on top of as not larceny from person § 4[e]
Below theft, property forcibly removed from victim by defendant § 4[e]
Car seat, property taken by victim, taking of property from as larceny from person § 4
Cash drawer of bank, property taken from as larceny from person § 5
Circumstantial evidence as sufficient to convict of larceny from person § 5
Clothing
Items on person of victim, clothing as among § 2[a]

Consent and summary § 2
Confrontation between thief and victim, threat of as rationale for larceny from person statutes § 5
Concealed, property of, effect of on larceny from person
Concealment of victim, property in defendant's possession by § 2[a]
Construction of statute, effect of liberal construction be "on person" § 6
Construction of statute, effect of equivalent to "on the person" § 6
Control of property without physical contact as sufficient for larceny from person § 6
Construction control or possession as not equivalent to "on the person" § 6
Danger to person, prevention of as purpose of statute § 2[b]
Dock in store, taking property from as not larceny from person § 7
English, larceny from person as § 3
Felony, larceny from person as § 3
Forcible removal of property from victim by defendant before theft § 4[e]
Gaming tokens, theft of from neck as not "larceny from person" § 4[e]
Hands, property held or carried in as on person of victim § 2[b]
Horses in stable occupied by owner, theft of as theft from person of owner § 4[e]
Immediate physical control, property within as on person § 2[a]
Immediate presence of victim

property stolen from as larceny from person § 6
scope of expansion § 2[a]

Indictment charging victim "from possession and person" as sufficient to sustain charge of larceny from person § 5
Inference, larceny from person may be established by circumstantial evidence sufficiently strong to create § 5
Instruction to jury, erroneous refusal to instruct as to larceny of property not actually on person § 4[a]
Introduction §§ 1, 2
Knocking property from victim prior to picking up § 2[a]
Legislative intent of statute consolidating crimes against property, effect on interpretation of larceny against person § 5
Manual contact with plea from which property stolen, effect of § 4[a]
Michigan cases § 2
Money stolen from clothing used as pillow § 4[c]
Ornaments as items on person of victim § 2[a]
Pocket property concealed in victim, property contained within § 4[c]
Purse containing wallet, deliberate removal from victim prior to taking of wallet as larceny from person § 4[e]
Person of victim
danger to person, prevention of as purpose of statute § 2[b]
"on" the person, defined § 2[a]
presence and person, taking from both in one continuous transaction as larceny from person § 2
property not on person of victim
generally § 4[a]
before theft, property forcibly removed from victim by defendant, § 4[e]
clothing used as pillow, money stolen from § 4[c]
consent of victim, property in defendant's possession by § 4[b]
forcible removal of property from victim before theft § 4[e]
other property connected to victim, property contained within § 4[c]
pillow, money stolen from clothing used as § 4[c]
possession by consent of victim § 4[b]
purse stolen from shopping cart § 4[d]
removal from victim by force before theft § 4[e]

shopping carts, purse stolen from § 5[d]
property on person of victim
  generally § 3
  particular instances § 5
  removal from person, intent
  view that property must be taken from § 3
Pickpocketing, prevention of as purpose of statute § 2[a]
Pillow
  taking property from under pillow upon which victim slept as larceny from person § 6
Pretexts as distinct from "on person" § 5[c]
Prandial position § 2[b]
Presence of victim
  taking from person, taking from book as constituting transaction as larceny from person § 7
  view that taking property from immediate presence as larceny from person § 6
Prevention of victim's regaining control of property prior to actual taking as larceny from person § 6
Purse stolen from shopping cart §§ 2[a], 5[d]
Related sections § 1[b]
Removal from person caused by defendant before theft, forcible removal of property § 6
  larceny from person established by § 5
  when actual taking not from person § 5[d]
Robbery, similarity of larceny from person to crime of § 2[b]
Safe in store, taking property from person as not larceny from the person § 2
Scope
  association, scope of § 1[a]
  "immediate presence", scope of expression § 2[a]
Shopping cart, purse stolen from §§ 2[a], 5[d]
Summary and comment § 2
Victim, property in defendant's possession by consent of § 5[a]
Views of what constitutes larceny from the person
  property may be taken from immediate presence of victim § 6
  property must be taken from person of victim § 3

I

## Table of Cases, Laws, and Rules

**Alabama**
Walker v. State, 30 Ala. App. 107, 1 So. 2d 117 (1941) — 6[a]

**California**
People v. Carroll, 20 Cal. App. 4 1170, P.4(2d Dist. 1912) — 6[a]
People v. Vasquez, 61 Cal. App. 613, 218 P. 1002(2d Dist. 1923) — 5
People v. Huggins, 11 Cal. App. 4th 1654, 60 Cal. Rptr. 2d 177(3d Dist. 1997) — 5
People v. McElroy, 116 Cal. 583, 48 P. 718(1897) — 2[a], 2[b], 3, 4[a]
People v. Smith, 288 Cal. App. 2d 117, 23 Cal. Rptr. 859(2d Dist. 1968) — 6[a]
People v. Stofer, 3 Cal. App. 416, 84 P. 734(2d Dist. 1906) — 4[b]
People v. Williams(1992, 9th Dist.) Cal. App. 4th 1465, 12 Cal. Rptr. 2d 243, 92 CDOS 8162, 92 Daily Journal DAR 13435 — 5[d]

**Colorado**
People v. Davis, 935 P.2d 79(Colo. App. 1996) — 6[a]
People v. Bowen, 44 Colo. App. 385, 613 P.2d 1031(Colo. 1980) — 4[b]
People v. Smith, 121 P.3d 243(Colo. App. 2005) — 5[d]
People v. Warren, 80 P.3d 194(Colo. App. 2003) — 2
People v. Winters, 789 P.2d 366(Colo. 1990) — 6[a]

**Connecticut**
State v. Anton, 31 Conn. 468, 636 A.2d 78(1994) — 5
State v. Owen, 119 Conn. 174, 174 A.2d 340(1972) — 6[a]
State v. Faller, 55 Conn. 348, 397 A.2d 641(2005) — 2
State v. Little, 31 Conn. App. 47, 623 A.2d 503(1993) — 6[a]
State v. Reel, 56 Conn. App. 632, 745 A.2d 1257(2000) — 5

**Georgia**
Banks v. State, 74 Ga. App. 449, 40 S.E.2d 103(1946) — 2[b], 2[b], 6

**Illinois**
People v. Huyrel, 342 Ill. App. 3d 894, 277 Ill. Dec. 354, 795 N.E.2d 1022(2d Dist. 2003) — 6[a]
People v. Purce, 367 Ill. App. 3d 409, 304 Ill. Dec. 366, 850 N.E.2d 341(1st Dist. 2006) — 6
People v. Elms, 245 Ill. App. 3d 221, 185 Ill. Dec. 432, 614 N.E.2d 897(3d Dist. 1992) — 6[a]

**Iowa**
State v. Kobylasz, 242 Iowa 1161, 47 N.W.2d 167(1951) — 2[a], 2[b], 6
State v. Morris, 211 N.W.2d 278(Iowa 1973) — 6

**Massachusetts**
Com. v. Subilosky, 352 Mass. 153, 224 N.E.2d 197(1967) — 2[b], 6, 7

**Michigan**
Claxton v. United States, 917 F.2d 895(6th Cir. 2019)(applying Michigan law) — 6
People v. Rose, 520 N.W.2d 660(Mich. Ct. App. 1994) — 6[a]
People v. Gould, 384 Mich. 71, 179 N.W.2d 471(1970) — 6.7
People v. Johnson, 21 Mich. App. 258, 181 N.W.2d 425(1970) — 7
People v. Perkins, 262 Mich. App. 267, 686 N.W.2d 417(2004) — 7
People v. Smith-Anthony, 494 Mich. 669, 837 N.W.2d 415(2013) — 2
People v. Smith-Anthony, 295 Mich. App. 413, 811 N.W.2d 171(2012) — 3, 6[a]
People v. Sisms, 9 Mich. App. 531, 157 N.W.2d 45(1968) — 2

**Minnesota**
State v. Eze, 8 Minn. 229, 1 Gil. 190, 1861 WL 1370(1861) — 2[b], 3, 4[a]
Walford v. D.D.S., Matter of, 395 N.W.2d 431(Minn. 1986) — 5

**Missouri**
State v. Jones, 499 S.W.3d 236, 74 A.L.R.3d 265(Mo. Ct. App. 1977) — 2[b], 6

**Nevada**
Terral v. State, 84 Nev. 412, 442 P.2d 465(1968) — 2[b], 3, 6[a]

**New Jersey**
State v. Byrd, 133 N.J. Super. 457, 338 A.2d 341(App. Div. 1975) — 6

**New York**

**Page 5 (case list)**

Pandy v. Blume, 48 A.D.2d 616, 368 N.Y.S.2d 171 (1st Dep't 1975) — §[a]
Pandy v. Haynes, 91 N.Y.2d 396, 671 N.Y.S.2d 848, 694 N.E.2d 714 (1998) — §[a]
Pandy v. Senor, 172 A.D.2d 63, 570 N.Y.S.2d 233 (2d Dep't 1991) — §[a]
Pandy v. Villanueva, 148 A.D.2d 210, 46 N.Y.S.2d 415 (1st Dep't 2017) — §[a]
Pandy v. Washington, 155 A.D.2d 63, 546 N.Y.S.2d 69 (2d Dep't 1989) — §[a]
U.S. v. Thorpe, 2012 WL 7011 (C.D. 2007) (applying New York law) — 2
West Distribution Technology, Inc. v. Busin& Roser Packaging, P.C., 158 A.D.3d 633, 503 N.Y.S.3d 151 (3d Dep't 1993) — §[b]

**North Carolina**

State v. Buyno, 343 N.C. 163, 478 S.E.2d 188 (1996) — §
State v. Barton, 1613 N.C. App. 690, 690 S.E.2d 863 (2010) — 2
State v. Buckom, 328 N.C. 313, 401 S.E.2d 362 (1991) — §
State v. Carter, 186 N.C. App. 329, 650 S.E.2d 650 (2007) — §[a]
State v. Green, 793 S.E.2d 815 (N.C. Ct. App. 2017) — §[a]
State v. Huff, 336 N.C. App. 413, 762 S.E.2d 915 (2014) — 2
State v. Lee, 88 N.C. App. 478, 363 S.E.2d 656 (1988) — §[a]
State v. Shepard, 228 N.C. App. 396, 744 S.E.2d 149 (2013) — §[a]; §
State v. Wilson, 154 N.C. App. 686, 573 S.E.2d 191 (2002) — §[a]; §
U.S. v. Jarmon, 596 F.2d 228 (4th Cir. 2019) (applying North Carolina law) — 2

**Oklahoma**

Holland v. State, 29 Okla. Crim. 69, 232 P. 454 (1925) — §[a]

**Pennsylvania**

Com. v. Monroe, 451 Pa. Super. 192, 678 A.2d 1208 (1996) — §[b]

**Rhode Island**

State v. Sheard, 726 A.2d 1138 (R.I. 1999) — §

**Tennessee**

Busby v. State, 191 Tenn. 566, 411 S.W.2d 702 (1966) — 2[a]; §
Primrose v. State, 545 S.W.2d 817 (Tenn. Crim. App. 1977) — 2

**Texas**

Barnett v. State, 83 Tex. Crim. 470, 204 S.W. 117 (1918) — §[a]
Dow v. State, 53 Tex. Crim. 444, 111 S.W. 458 (1908) — §[a]; §[b]
Earls v. State, 707 S.W.2d 82 (Tex. Crim. App. 1986) — §
Gusev v. State, 158 Tex. Crim. 577, 201 S.W.2d 820 (1947) — §[a]; §
Glover v. State, 195 S.W. 734 (Tex. Crim. App. 1917) — §[a]
Johnson v. State, 83 Tex. Crim. 201, 201 S.W. 187 (1918) — §[a]
Neil v. State, 465 S.W.2d 941 (Tex. Crim. App. 1971) — §[a]; §[b]
Mahler v. State, 891 S.W.2d 195 (Tex. App. Houston 14th Dist. 1990) — 2
White v. State, 83 Tex. Crim. 31, 201 S.W. 186 (1918) — §[a]; §

**Utah**

State v. Larson, 78 Utah 341, 498 P.2d 359 (1972) — 2[a]; 3[a]

**Virginia**

Garland v. Commonwealth, 18 Va. App. 706, 446 S.E.2d 628 (1994) — §[a]

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

**Page 6**

## § 4[a] Introduction—Scope

This annotation collects and analyzes the cases in which the courts have discussed what constitutes the distinct statutory offense of larceny "from a person." As suggested by the phrase in quotes, the specific issue with which this annotation is concerned is whether larceny from the person requires that the property stolen actually be on or attached to the person of the victim when taken, or whether there are circumstances under which the offense may be committed even though the property when taken was not on the victim's actual possession.[1] Beyond the scope of this annotation are other problems concerning, but not confined to, larceny from the person, including such frequently arising issues as whether the taking must be private or to what degree appropriation is necessary.[2]

Since larceny from the person is a statutory offense, relevant statutes are discussed only insofar as they are reflected in the reported cases within the scope of this annotation. The reader is advised, therefore, to consult the most recent legislation in the jurisdiction in which he is interested.

## § 4[b] Related matter

Related Annotations are located under the Research References heading of this Annotation.

## § 2[a] Summary and comment—Generally

In many jurisdictions, there are statutes imposing a penalty greater than for larceny for larcenies involving, in a typical instance,[3] a taking "from a person of another." In cases involving such statutes, the question of what constitutes a taking "from a person" has frequently arisen, especially where the property involved was not actually on the person of the victim when it was taken, but instead was merely close to him.[4] In answering this question, the courts have split, one group taking the position that the property must have been on the victim's person when taken[5] and the other group holding that it is sufficient if the property was merely within the victim's immediate presence.[6] In Michigan, the position taken is neither since, simple statements in two Court of Appeals cases that a taking directly from the person is required, a state Supreme Court case suggests that immediate presence may be sufficient.[7]

## § 2[b] Summary and comment

The rationales put forth to justify the view that the property must be taken directly from the victim's person include the purpose behind the original larceny from the person statute, that is, to prevent pick-pocketing and similar offenses, the general purpose behind such statutes of imposing a greater penalty for thefts endangering the person of the victim, and analogy to robbery statutes defining robbery as a taking from the victim or from his immediate presence, thereby suggesting that "from the person" is different from "immediate presence."[8] On the other hand, analogy to cases in which the courts have held that robbery, although statutorily defined only in terms of a taking from the person, nevertheless included a taking from the victim's immediate presence,[9] and a legislative attempt to eliminate technical distinctions between various types of theft,[10] has been offered to justify the view that the property need not be taken from the victim's immediate presence.[12]

In general, the courts taking the position that the property involved must have been on the victim's person when stolen have not discussed what constitutes the dividing line between property that is "on," as opposed to "off," the person, probably since the cases typically involved property that was clearly "off" the person when taken.[13] The closest definition of what constitutes "on" the person is a statement by one court that larceny from the person requires that the property, at the time it was taken, must have in some way been actually upon or attached to the person, or carried or held in

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

actual physical possession, examples being clothing, apparel, and ornaments, or property or things contained therein or attached thereto, or property held or carried in the hands, or by other means, upon the person. [18]

Despite the breadth of the above statement, it was held in that case, as well as in another case, both of which involved property stolen from clothing being used as a pillow by the victim, that larceny from the person had not been committed. In another case, however, it was held, without specifically stating that the property was "on" the victim, that larceny from the person had been committed where a purse was stolen from a shopping cart on which the victim had his hand. [18] Larceny from the person has also been held to have been committed even though the property was clearly "off" the victim when taken, where the person committing the crime had knocked the property from the victim during a scuffle and shortly thereafter had picked it up from the ground near the victim. [18] But in a case where the evidence did not foreclose the possibility that the property was in the defendant's possession with the victim's consent at the time the intent to steal was formed, it was held that there was no "taking from the person." [18]

The courts which have taken the position that a taking from the victim's immediate presence constitutes larceny from the person have not discussed the scope of "immediate presence," since the item stolen were apparently so close to the victim that the issue of the extent of immediate presence was not raised. Thus, the only implication of the scope of "immediate presence" are statements to the effect that it is sufficient if the property taken was in the victim's "possession and immediate presence." [18] "within his area of control," [19] or within his "actual and immediate physical control." [21]

## § 291 Summary of content—Practice pointers

Since larceny from the person is a statutory offense, [22] counsel on both sides should, of course, pay particular attention to both the statutory language and the legislative history for clues as to the meaning of those "from the person" in this connection, defense counsel, in attempting to limit the offense to property taken directly from the person of the victim, may benefit from cases pointing out that the Statute of Elizabeth, passed in the 16th century, which was the first statute providing for a greater penalty for larceny from the person than for simple larceny, was intended to apply to not crimes of pickpocketing and has been construed to require an actual taking from the person. [22] English precedents seem to be of some use, especially to a jurisdiction considering, as a question of first impression, the meaning of "from the person."

Defense counsel may also benefit from cases in which the courts, in limiting larceny from the person to instances of property taken directly from the victim, have pointed out that such conduct shows a cunning more than simply larceny because it threatens not only the property of the victim, but also his person. [22] Counsel for the prosecution may counter, however, with the argument that property taken from the immediate presence of a victim poses a threat to his personal safety that is as great as that created by a direct taking from his person.

Larceny from the person is similar to robbery in that both crimes involve the taking of property from a person. Thus, counsel may be able to use an appropriate robbery statutes and interpretive cases as analogies to support his position as to the meaning of the phrase "from the person" in a larceny from the person statute. For example, if a applicable robbery statute merely defines robbery in terms of a taking "from the person of another," but the cases in the jurisdiction construe that phrase as including the immediate presence of the victim, counsel for the prosecution may argue that the same construction should be placed on the same words in the larceny from the person statute. [22] On the other hand, defense counsel may point to robbery statutes which define robbery as a taking from either the victim's person or his immediate presence as indicating that a taking "from the person of another," as that phrase is used in larceny from the person statutes, is not the same as a taking "from his immediate presence." [23]

Since robbery is generally held to include a taking from the victim's immediate presence, [22] the exact meaning of this phrase is often an issue in a robbery case. [23] Thus, in jurisdictions taking the position that larceny from the person includes a taking from the victim's immediate presence, [23] counsel may find the robbery cases beneficial if the scope of "immediate presence" is an issue.

## § 3. That the property used is taken from the owner of victim—namely

### Cumulative Statement

All of the cases in §§ 2 and 3, infra, support, either expressly or by implication, the view that the offense of larceny from the person requires that the stolen property be taken directly from the person of the victim. The following cases, in addition to supporting this view, also provide rationales for its existence.

Thus, as justification for the view that larceny from the person requires that the property stolen actually be on the person of the victim, the court, in People v. McElroy (1897) 116 Cal. 583, 48 P. 718, after holding that stealing $17 from the trousers of the victim while such trousers were being used by the victim as a pillow did not constitute larceny from the person, explained that the reason why larceny from the person was insisted as a graver offense than ordinary [is] that the victim, where the thing stolen is on his person, is thereby subjected to greater peril, which it could be perpetrated, the difficulty of guarding against it, and the greater liability of endangering the person or life of the victim. Thus, the court concluded, the purpose behind larceny from the person statutes was to protect persons against such criminals as the pickpocket and the purse snatcher, and such statutes, therefore, required a physical connection between the property stolen and the victim.

See State v. Eno ((1931) 8 Wash. 228, infra § 6(a), where the court, in apparent accord with the view that the property stolen must be taken from the person of the victim whose stolen, pointed out that since that reason that larceny from the person was considered by the legislature to be a higher offense than other stealing was because the crime involved an invasion of the person of the victim.

In holding that the statutory offense of "larceny from the person of another" did not include property taken from the immediate presence or constructive control of the victim, the court, in Terral v. State (1963) 84 Nev. 412, 442 P.2d 465, emphasized, as a justification for its holding, that larceny from the person was a felony in which the value of the property taken was immaterial so long as it had some value, while a theft of little value taken from the person of another would subject the offender to punishment as felon, whereas the same item, if taken from the premises, and not from his person, would constitute the misdemeanor of petty larceny, the court reasoned that to construe the statutory language "from the person of another" as also meaning "from the presence of another," would lead to situation where an accused not intended the possibility to exist and had carefully provided by clear language. The court further pointed out that in some instances could be charged with either a felony or a misdemeanor. The court concluded that the legislature had not intended the English statute of § Elizabeth, which had first recognized larceny from the person as a crime distinct from simple larceny, larceny from the person was meant to cover the common crime of pickpocketing and from this beginning repelled an actual taking from the person, rather than a taking from his presence as was sufficient for robbery.

In State v Loven (1972) 24 Utah 2d id, 498 P.2d 359, the court, in holding that stealing a purse resting on a bar one or one and a half feet from its owner did not constitute larceny from the person, justified its conclusion that stealing from the immediate presence of a person was not the same as stealing from the person, justified its conclusion by referring to robbery statute which defined "robbery" as a taking of personal property in the possession of another from his person, or immediate presence. The court reasoned that the legislature would not have included the phrase "immediate presence" in the definition of robbery if it had intended such words to have the same meaning as "from his person."

CUMULATIVE SUPPLEMENT

Cases:

Theft by means of short-changing victim was theft by deception rather than theft from person. People v Warner (1990, Colo) 801 P2d 1187.

"Larceny" involves theft from a person, and to take property from the person of another means that the item taken was actually on the body or held by or in some manner attached to the person of the victim. C.G.S.A. § 53a-123(a)(3). State v. Fekler, 95 Conn. App. 248, 897 A.2d 614 (2006).

The larceny from the person statute punishes pickpockets, purse- and wallet-snatchers, and others who invade the person or immediate presence of the victim to accomplish a theft. M.C.L.A. § 750.357. People v. Smith-Anthony, 296 Mich. App. 413, 821 N.W.2d 172 (2012).

A larceny "from the person," as required for a fourth-degree grand larceny conviction, occurs when the victim is forced to hand over property against his will. McKinney's Penal Law § 155.30(5). People v. Villanueva, 46 N.Y.S.3d 615 (App. Div. 1st Dep't 2017).

Under New York law, larceny from the person requires a physical nexus between the person and the property, meaning physical contact between the victim and either the property taken or, at least, the article from which the property was taken. N.Y.McKinney's Penal Law § 155.30(5). U.S. v. Thrower, 584 F.3d 70 (2d Cir. 2009) (applying New York law).

Under North Carolina law, larceny from the person requires proof of an additional element other than elements of larceny: the property stolen must be in the immediate presence of and under the protection or control of the victim at the time the property is taken. U.S. v. Jarmon, 596 F.3d 228 (4th Cir. 2010) (applying North Carolina law).

It is larceny from the person if the property is taken from the victim's person or within the victim's protection and presence at the time of the taking. State v. Hull, 762 S.E.2d 915 (N.C. Ct. App. 2014).

For larceny to be "from the person," the property stolen must be in the immediate presence of and under the protection or control of the victim. State v. Boston, 600 S.E.2d 863 (N.C. Ct. App. 2004).

[Top of Section]

[END OF SUPPLEMENT]

§ 4[a] Property not on person of victim—Generally

[Cumulative Supplement]

In the following cases supporting the view that the crime of larceny from the person requires that the property stolen be on the person of the victim, where the stolen property, although nearby, was not actually on or attached to the victim at the time it was taken, the courts held that the allegations or evidence did not establish larceny from the person.

Thus, in Wilder v State (1941) 30 Ala App 107, 1 So 2d 317, the court, in reversing a conviction for grand larceny, held that the trial court had erred in refusing to instruct that the defendant could not be convicted of larceny from the person if the jury believed all of the evidence, where the evidence showed that a theater patron had placed her purse in the empty seat beside her and that the defendant, after taking a seat immediately behind her, grabbed her purse from the seat where

she had placed it and hurried out of the building. The court stated that if the property was not stolen from the "person" of the theater patron, the conviction for grand larceny based upon an indictment charging the defendant with larceny from the person was unwarranted. The court observed that unless the property stolen is actually on or attached to the victim by his clothing or otherwise, or is in some manner in his actual physical possession, the offense of larceny from the person has not been committed. The statutory offense of larceny from the person was not, the court continued, intended to include property removed from the person and laid aside, however immediately it might be retained in the presence or constructive control or possession of the owner.

For Michigan cases, see § 7, infra.

Noting that the statutory words "from the person" meant precisely that, the court, in Terral v State (1968) 84 Nev 412, 442 P2d 465, held that the defendant was improperly convicted of larceny from the person where the evidence showed that he snatched gaming tokens of the value of $250 from a crap table rack immediately in front of the victim who was gambling at a casino. In rejecting the contention that the statutory phrase "from the person of another" should be construed to embrace property taken from the "presence" of another, the court, in reversing the conviction, pointed out that larceny from the person was first recognized as a crime distinct from simple larceny by the Statute of 8 Elizabeth in the sixteenth century and that, from the beginning, the statute, which was meant to cover the common crime of pickpocketing, required an actual taking from the person, a taking from his presence not being sufficient as it was in robbery. Noting that the gravamen of the offense of larceny from the person was that the person of another had been violated and his privacy directly invaded, the court pointed out that an item of small value, if snatched from the person of another, would subject the offender to punishment as a felon, whereas the same item, if taken from his presence, and not from his person, would constitute the misdemeanor of petit larceny. The court thus concluded that to confuse the statutory language and rule that "from the person of another" also meant "from the presence of another" would mean in some instances that an accused could be charged with either a felony or a misdemeanor, a possibility which, the court noted, the legislature had not intended and had carefully precluded by clear language.

See also, People v Blume (1975) 48 App Div 2d 616, 368 NYS2d 4, where, although not presented with the question what constitutes larceny "from a person," the court, by stating that the trial court had erred by not giving an instruction to the jury concerning the lesser included offense of petit larceny along with its instruction concerning grand larceny in the third degree, implied that property must be taken from the person of the victim in order to constitute grand larceny in the third degree. Indicating that third degree grand larceny was the equivalent of "larceny from the person", the court asserted that, on a reasonable view of the evidence, the jury could have found that the stolen watchband had not been taken from the person of the victim, but had been picked up from the floor after a fight between the victim and the defendant.

In reversing a conviction for grand larceny, the court, in Holland v State (1925) 29 Okla Crim 69, 232 P 454, held that the evidence was insufficient to establish larceny from the person where the defendant had picked up the victim's watch while it was lying on the ground near the side of a cot on which the victim was lying.

In reversing a conviction of theft from the person, the court, in Day v State (1908) 53 Tex Crim 648, 111 SW 408, held that evidence showing that, while the parties were drinking in a saloon and were apparently drunk, the defendant took $10 in currency from the victim after the victim had placed the money on top of the bar in order to count it, as well as approximately $3 or $4 in silver from the victim's purse, which was also on top of the bar, was insufficient to show that the money was taken from his person privately, without his knowledge, and without his consent. The court pointed out that if the defendant took the money from the bar, then theft from the person was clearly not shown.[20]

In reversing a judgment for conviction of theft, the court, in White v State (1918) 83 Tex Crim 31, 201 SW 186, held that an indictment charging that the defendant took property "from the possession of the person" of the victim was insufficient in that it did not charge that the property was taken "from the person" of the victim. The court pointed out that to constitute theft from the person, property must be taken from the person. It was not sufficient, the court

continued, that the property was taken from the person's possession, since property might be in the possession of the person and yet not be upon his person or in his manual or bodily possession.[31] In sufficing a judgment of conviction for theft, the court, in Bennett v. State (1910) 83 Tex. Crim. 472, 204 S.W. 110, held that the defendant, who was charged with stealing money from the person of a victim while they were in a saloon, could not be convicted of larceny from the person upon evidence that the victim had lost his money and that the defendant had then picked it up from the floor.

The court pointed out that a special instruction to the effect that the defendant could not be convicted of theft from the person if the evidence showed that the victim had lost his money by carelessly handling or throwing the money upon the counter and if it was then picked up in the saloon caused a defect in the general instruction which had left the impression that the defendant could have been convicted of larceny from the person if he had picked up money that the victim had dropped upon the floor.

In remanding the case to the trial court with instructions to change the conviction and sentence from grand larceny to petit larceny, the court, in State v. Leonard (1972) 33 Utah 2d 41, 495 P.2d 159, held that larceny from the person was not committed where the defendant grabbed a purse from a bar in a tavern, the purse at the time being one or more feet from its owner. In so holding, the court pointed out that stealing from the immediate presence of a person, as distinct from the person, is not larceny from the person. Noting that robbery was defined by statute as a felonious taking of the property in the presence of another from the person, the court reasoned that if the phrase "from the person" in the larceny statute meant "from the person or immediate presence," the legislature would not have included the phrase "or immediate presence" in the definition of robbery.

•

In the following cases where the property stolen was neither on the victim's person nor in his immediate presence and where it was held that larceny from the person was not established, the person was stolen while the property stolen was on the victim, or in his manual presence, then merely in his immediate presence.

Thus, in State v. Eno (1963) 8 Miss. 220, the court held that an indictment charging the defendant with stealing horses "from the person and premises of [the victim, from a stable occupied [by the victim],.... and wherein and where was stabled at the time of the larceny" was sufficient to state the offense of larceny from the person. Although noting that the horses were at the time of the theft in a stable owned by the owner, the court concluded that there was something inconsistent in this fact with the owner being, with them and in the immediate charge and manual possession of them.

The court pointed out that the reason that larceny from the person was considered by the legislature to be a higher offense than other stealing was because the crime involved an invasion of the citizen. Such offence, the court continued, included not only all cases of pickpocketing and similar offences but also extended to every case of stealing where the property stolen was on the person or in the immediate charge and custody of the person from whom it was stolen. As example, the court pointed out that should a case or umbrella be taken from the hand of a person, or a horse that he was walking, or tool with which he was employed, or a horse that he was driving, leading, or holding by a bridle, the theft would be larceny from the person since in each of these cases the rights of the person would be as much invaded, and the personal security endangered quite as much as if the watch or purse had been taken from the pocket. In the present case, however, the defendant established during the trial that, at the time of the theft, the victim was in his dwelling, some distance from the stable, and knew nothing of the affair until the next morning. Noting that the jury convicted the defendant by rendering a general verdict of guilty, the court concluded that the jury meant to find the defendant guilty of stealing from the person, the evidence failed to sustain the verdict. However, the court pointed out that the defendant could be convicted of the lesser included offense of simple larceny, and thus remanded the case to the trial court with instructions to sustain an objection or refusing to enter a nolle prosequi for the grave charge of larceny from the person, and to sentence the defendant for simple larceny if the evidence established his conviction for such offense.

---

## CUMULATIVE SUPPLEMENT

**Case:**

Defendant's use of series of short-change transactions to obtain $55 from store cashier, whereby defendant repeatedly received change for 10 and 20 dollar bills in his possession until cashier became confused and refused to make more change, did not constitute statutory offense of theft from person of another by means of stealth other than use of force, threat, or intimidation. People v. Warner (1989, Colo App) 793 P.2d 865.

Removal of moneybag, car keys and car from presence and control of gas station attendant lacked consent to person of attendant and was insufficient to constitute larceny from person. State v. Crow (1977) 124 Conn. 129, 384 A.2d 138.

Indirect contact with the victim may constitute larceny from the person. M.Cl.A. § 750.357; People v. Smith-Anthony, 281 Mich. App. 413, 821 N.W.2d 172 (2012).

Defendant's removing coins from coin box on trolley warranted conviction for larceny from person. People v. Bassi (1991, A8th App.) 520 N.W.2d 660.

Property is under the protection of a person, such that it can be the subject of a larceny from the person, so long as, among other things, it is under the person's eye. State v. Gunn, 705 S.E.2d 113 (N.C. Ct. App. 2011).

Money was taken from victim's presence and control, so as to support conviction for larceny from the person, even though money was in a shopping cart to the side of victim, who was replenishing an automatic teller machine (ATM) at a grocery store; victim had money close at hand and was in the middle of replenishment transaction when money was removed from his possession. State v. Cross, 690 S.E.2d 480 (N.C. Ct. App. 2010).

Evidence that defendant forcefully reached into cash register and removed money, which was in immediate presence and protection of cashier, was sufficient to support charge for larceny "from the person." Ward v. N.C.G.S.A. § 14-72; State v. Wims, 373 S.E.2d 193 (N.C. Ct. App. 2003).

Evidence supported conviction of larceny from person where defendant reached over countertop and took money out of open cash register within inches of employee, at time of theft, money was in employee's immediate custody and control, and constitute conduct of defendant frightened employee. Guillard v. Commonwealth (1994, Va App) 446 SE2d 62.

## [End of Section]

## [END OF SUPPLEMENT]

## § 4[d] Property not on person of victim but under control of victim—Further proof that defendant's possession be consent of victim

## Cumulative Supplement

In the following cases supporting the view that the offense of larceny from the person requires that the property stolen be taken from the person of the victim, where there was evidence that the stolen property was in the defendant's possession by reason of his victim at the time the issue to steal was formed, the court held that larceny from the person was not established.

CUMULATIVE SUPPLEMENT

Cases

[End of Section]

[END OF SUPPLEMENT]

§ 44[...] Property sold as means of title—...

CUMULATIVE SUPPLEMENT

Cases

[End of Section]

[END OF SUPPLEMENT]

§ 44[...] Property sold as means of title—...

What constitutes larceny "from a person". 74 A.L.R.3d 271 (Originally published in 1976)

## C. Descriptive, Sustained

### Colo.

In the following case supporting the view that larceny from the person requires that the property stolen be on the person of the victim, where such property, a purse, was, at the time it was taken, contained in other property which was being held by the victim, namely, a shopping cart, the court held that larceny from the person was established.

### Colo.

**People v. Evans (1986, Colo. App.) 612 P.2d 1153** — Theft involving a purse which was in a grocery store shopping cart was held to constitute larceny from the person, in **Mack v. State (1977, Tex. Crim.) 465 S.W.2d 941**, where the court found there was no larceny from the person, it. Noting that the trial court had correctly instructed the jury that the theft must be from the person and that it was not sufficient that the property be merely in the presence of the person from whom it was taken, the court reasoned that since the theft of the shopping cart under the circumstances presented would have been theft from the person, it would be difficult to argue that the theft of the purse from the cart upon which the victim had her hand would not constitute theft from the person. In affirming a conviction for larceny from the person, the court distinguished the case of **Day v. State (1969, Fla.) 217 So.2d 834** on the ground that the evidence in that case indicated that the victim had placed the money on a counter and had left her wallet in his possession and was not touching it when it was stolen.

Also recognizing or holding that purse stolen from shopping cart does not constitute larceny "from a person".

### NC

**State v. Lee (1985) 88 NC App. 478, 365 SE2d 696**

## [End of Section]

[END OF SUPPLEMENT]

## § 9[d] Property not on person of victim—Property forcibly removed from victim by defendant before theft

### C. Descriptive, Sustained

In the following case supporting the view that larceny from the person requires that the property stolen be on the person of the victim, where property involved either had, or could have been, forcibly removed from the person of the victim before it was actually taken, the courts held that larceny from the person was established.

Thus, in affirming a conviction of grand larceny, the court, in **People v. Carroll (1922) 20 Cal.App.41, 128 P.** held that even if the victim's purse had been picked up off the ground, at the time of larceny from the person had been committed since the evidence showed that the purse could not have dropped to the ground except for the efforts of the thieves to accomplish the larceny from the person.

Similarly, it was held, in **People v. Smith (1936) 59 Cal.App.2d 1187, 21 Cal.Rptr. 88**, that larceny from the person had been committed even though the articles stolen, the victim's purse and wallet, were picked up from the snow. According to an eyewitness, the defendant and an accomplice were scuffling with the victim and were trying to get their hands into his pocket. During the struggle, the victim's wallet fell to the street and his pants were torn off, both articles then picked up by the defendant's accomplice, who, accompanied by the defendant, carried them in the rear of a nearby hotel.

## CUMULATIVE SUPPLEMENT

### Cases:

Forcible purse-snatching was robbery rather than larceny from person. **People v. Davis, 935 P.2d 79 (Colo. Ct. App. 1996), reh'g denied, (Aug. 9, 1996) and cert. denied, (Apr. 7, 1997).**

Defendant's requiring victim to hand over articles of clothing being worn by victim constituted larceny "from the person" of another. **State v. Kilfoy (1993) 31 Conn.App.17, 623 A.2d 569, app. den 227 Conn.902, 630 A.2d 72.**

**[Top of Section]**

**[END OF SUPPLEMENT]**

**§ 5. Presence as means of victim**

**[Cumulative Supplement]**

**Cases:**

In the following cases supporting the view that larceny from the person required that the property stolen was on the person of the victim, where the allegations of evidence indicated that the property stolen was on the victim at the time it was taken, the courts held that larceny from the person was established.

In People v. De Vaughn (1921) 61 Cal.App. 513, 215 P. 1026, the court, in affirming a conviction for larceny from the person, held that there was sufficient circumstantial evidence to establish that the victim's pocketbook while they were on a streetcar, even though the actual taking was not seen. Noting that the offense of taking from the person required evidence to support the conclusion that at the time the property was taken it was actually upon or attached to the person by his clothing or otherwise, or that it was in some manner in his actual physical possession, the court pointed out that the evidence showed that the victim, after removing his pocketbook to pay the streetcar fare, put it back into his pocket and that, after transferring his pocketbook from one pocket to the other, as riding, he paid his fare by use of a transfer ticket and did not again remove his pocketbook. The court further pointed out that evidence was introduced that the victim could feel someone behind him, after which he felt a tug at his side, then the victim turned and saw that the streetcar, the defendant crowded him, after which he immediately put his hand in his pocket from the direction crowded and his pocket was empty. Finding that the evidence was sufficient to establish that the property was in the victim's actual possession and that the street corner, and that as soon as he left the streetcar, he was arrested by the two directions, one of whom immediately took from the defendant's pocket the pocketbook of the victim. On the basis of that evidence, the court concluded that the inference that the pocketbook was actually in the victim's trousers pocket and that the defendant had abstracted it therefrom.

In Garv v. State (1967) 150 Tex.Crim. 397, 201 SW2d 176, the court, in affirming a conviction of theft from the person, held that an indictment charging that the defendant took "from the possession and the person" of the victim a certain amount of money was sufficient to charge the offense of theft from the person.[32]

**CUMULATIVE SUPPLEMENT**

**Case:**

Defendant took victim's purse from her person when he grabbed it as it lay on floor with victim's foot against it, as victim was purposefully maintaining dominion over purse by placing her foot against it. People v. Huston, 51 Cal.App. 4th 1664, 60 Cal. Rptr. 2d 177 (2d Dist. 1997).

Jury instruction on fifth-degree larceny and lesser-included offenses of second-degree larceny was not warranted, in prosecution arising from incident in which defendant obtained money from victim, who was cashing a check, through ruse involving use of train station locker, staff, a roll of newspaper wrapped under a one dollar bill, and a "robber" that defendant allegedly sought to avoid with victim's help, where there was no doubt that money was taken from victim's person by defendant. C.G.S.A. § 53a-122(a), 53a-123, 53a-125; State v. Ross, 54 Conn. App. 452, 741 A.2d 1281 (1999).

---

Evidence supported required element of trespass to person in conviction for theft from person, where, in course of committing robbery, defendant was evidence able to get money from victim, then grabbed money from clerk's hand. State v. Avina (1991) 13 Conn.App. 466, 436 A.2d 168, app gr, 4a part 220 Conn 918.

Snatching of purse from woman seated on public bench with purse by side and with arm extended over it was properly found to constitute offense of larceny from person as opposed to other form of larceny. Primeau v. State (1977, Tex. Crim.) 665 SW2d 802.

Notwithstanding that defendant officer had authority to remove arrestee's wallet and to inventory contents, defendant's intent at time of taking was to permanently deprive victim of money and then his conduct in removing money from wallet and placing it in his own wallet constituted theft from person. Matthis v. State (1990, Tex.App. Houston (14th Dist.)) 803 SW2d 195, petition for discretionary review ref (Apr 24, 1991) and motion for rehearing on PDR denied (Jan 15, 1991).

**[Top of Section]**

**[END OF SUPPLEMENT]**

**§ 6. What the property must be taken from immediate presence of victim**

**[Cumulative Supplement]**

**Cases:**

The following cases involving a theft of property which was not on the victim's person at the time it was taken, but in which it was held that larceny from the person was established, support, either directly or by implication, the view that larceny from the person does not require that the property stolen be on the person of the victim, but instead that it is sufficient if the property stolen was in the victim's immediate presence at the time it was taken.

Thus, in construing a statute defining larceny from the person as the taking of an article of value from the person of another, privately, without his knowledge, in any place whatever, with intent to steal the same, the court, in Banks v. State (1966) 74 Ga.App. 449, 40 SE2d 103, held that the statutory offense was committed when the victim's pocketbook containing $350 was taken from under his pillow while he slept, even though the pocketbook and money were not directly taken from the person of the victim. In affirming a conviction of larceny from the person, the court ruled on case interpreting an earlier robbery statute, which had defined "robbery" as the wrongful taking of money, goods, or chattels from the person of another by force or intimidation, without the consent of the owner. The court pointed out that in these cases the courts had held that to constitute robbery it was unnecessary that the taking of the property be directly from one's person, but held that it was sufficient if it was taken while in his possession and immediate presence. In view of the similarity of language between the earlier robbery statute and the present larceny from the person statute, the court concluded that the decision construing the robbery statute were controlling in the present case.

Where the defendant and the victim were in the front seat of a car with the victim's purse on the seat between them, the court, in Shaw v. Yohrling (1961) 243 Iowa 1186, 47 NW2d 167, held that the taking of the purse from the seat constituted larceny from the person, even though it was not taken directly from the victim. In reaching this conclusion and affirming a conviction of larceny from the person, the court noted that the taking of the property "from the person," even though it was attached to the person of the individual robbed, or in his immediate presence, but that if it was away from the owner, yet under his control, in another room of the house, it was nevertheless in his personal possession and could be said to have been taken from his person. In refusing to construe the defining larceny from the person statute as requiring that the property be actually taken "off" the person of the victim, the court

## CUMULATIVE SUPPLEMENT

### Cases

For Michigan cases, see §2, infra.

Evidence that defendant demanded and took property from victim's immediate possession, that is, her hand, was sufficient to constitute theft from a person, even in absence of actual touching. Earls v State (1986, Tex Crim) 707 SW2d 82.

[Top of Section]

[END OF SUPPLEMENT]

§ 7. Michigan cases

[Cumulative Supplement]

In Michigan, the status of the law on the question of whether larceny from the person requires the property stolen to be in the victim's actual possession or merely in his immediate presence is not certain, with two decisions supporting one view and another perhaps holding to the contrary. The courts in the following cases, in holding that stealing property which was not actually on the victim's person did not constitute larceny from the person, clearly stated that larceny from the person requires that the object stolen be on the person of the victim.

Thus, in affirming a conviction of armed robbery of money from a store, the court, in People v Stevens (1968) 9 Mich App 531, 157 NW2d 495, held that the trial court had not erred in failing to instruct on the lesser included offense of larceny from the person. Noting that the evidence established that the robbers took money from a safe located in the back of the store and also from under a desk in the store, and not from the store owner, the court pointed out that it is an essential element of larceny from the person that the object stolen be from the person of another. Since no evidence of the lesser included offense of larceny from the person had been presented, and since no request for such an instruction had been made at trial, the court concluded the trial judge was not required to instruct the jury on such offense.

Although concluding, on other grounds, that the trial judge had not erred in accepting the defendant's plea of guilty to larceny from the person, the court, in People v Johnson (1970) 25 Mich App 258, 181 NW2d 425, affirming a conviction, held that the evidence, which showed that the defendant and two others had taken property, such as a stereo set and a camera, from the victim's apartment while the victim was in the bathroom, did not establish larceny from the person. The court pointed out that larceny from the person requires that the property in question actually be taken from the person of another and that a taking of property from the immediate presence of the owner is insufficient.

However, the court in the following case held that larceny from the person was established where, as part of a single transaction, some of the stolen property was taken from the person of one victim, while the rest of the stolen property was taken from the immediate presence of the other victim, thereby raising the question whether "immediate presence" is sufficient in Michigan to constitute larceny from the person.

Thus, in reversing a judgment of the Court of Appeals, which had held that, since the money stolen had not been taken directly from the person of the victim, the defendant could not be convicted of larceny from the person, the court, in People v Gould (1970) 384 Mich 71, 179 NW2d 617, held that the offense of larceny from the person had been established where the evidence revealed that while the defendant waited outside in a car, his two accomplices entered a restaurant, forced the waitress and her sole customer to lie face down on the floor of another room, and proceeded to take about $77 from the cash register and a cigar box and $7 from the wallet of the customer. The court pointed out that the Court of Appeals had erred in holding that, since the criminal information on which the defendant was tried alleged only the taking of the money from the cash register and the cigar box in the presence of the waitress, the testimony concerning the money taken from the wallet of the customer was irrelevant in determining whether the crime of larceny from the person had been committed. Rather, the court reasoned, since the criminal information had actually only stated that approximately $77 had been taken, without naming the place from which it was taken, the sum named could be construed

to include the money taken from the customer. The court thus concluded that the Court of Appeals had erroneously construed the information to exclude larceny from the person of the customer. On the basis of this conclusion, as well as an earlier robbery decision and the case of Commonwealth v Subilosky (1967) 352 Mass 153, 224 NE2d 197, supra § 6, which decisions had held, in cases of robbery and larceny from the person respectively, that it was sufficient if the stolen property was taken from the area of control of the victim, the court held that the taking of property in the possession and immediate presence of the waitress and customer in this case was sufficient to sustain a verdict of guilty of larceny from the person. In so holding, the court noted with approval the language from the state's brief to the effect that the taking from the waitress and from the customer were one continuous action by the holdup men and that there was no claim, either before or during the trial, that the acts against the customer were a separate and distinctly chargeable offense.

CUMULATIVE SUPPLEMENT

Cases:

Defendant who allegedly took a fragrance box from a retail store without paying did not commit larceny from the person, although the store's loss-prevention detective saw defendant select the box, place it in a bag, and walk out of the store, where the detective was in an office watching the defendant remove the box from the display, and thus was not in defendant's immediate presence; abrogating, People v. Perkins, 262 Mich.App. 267, 686 N.W.2d 237, People v. Gadson, 348 Mich. 307, 83 N.W.2d 227, People v. Stevens, 9 Mich.App. 531, 157 N.W.2d 495, People v. Johnson, 25 Mich.App. 258, 264, 181 N.W.2d 425. M.C.L.A. § 750.357. People v. Smith-Anthony, 494 Mich. 669, 2013 WL 3924319 (2013).

The constructive presence exception applicable in robbery cases, pursuant to which courts treat victims as constructively present with the property, presuming that a victim would have retained possession of their property if not overcome by violence or prevented by fear, from retaining his possession of it, could apply in larceny-from-the-person cases, provided there was evidence that defendant or an accomplice had used force or threats of force to keep a victim away from his property. M.C.L.A. § 750.357. People v. Smith-Anthony, 494 Mich. 669, 837 N.W.2d 415 (2013).

The offense of larceny from a person does not have as an element the use, attempted use, or threatened use of physical force against the person or property of another; the lack of force or violence distinguishes larceny from a person from robbery. M.C.L.A. § 750.224f(6). People v. Perkins, 262 Mich. App. 267, 686 N.W.2d 237 (2004).

[Top of Section]

[END OF SUPPLEMENT]

—

RESEARCH REFERENCES

A.L.R. Library

- A.L.R. Quick Index, Larceny

A.L.R. Federal Quick Index, Larceny

- What is "intent to deprive" sufficient to sustain conviction for larceny, 33 A.L.R.7th 20, 61, 81
- What is "property of another". What is. Robbery. Possession. Larceny. Theft, or Embezzlement of Property of Another. 57 A.L.R.6th 645
- What constitutes "taking" possession of stolen goods to sustain offense of burglary or other felonies
- [several illegible index entries]

...

Legal Encyclopedias
- Am. Jur. 2d, Larceny § 6

Trial Strategy
- Defendant's Mens Rea or Intent, 13 Am. Jur. Trials 465
- Sentencing Procedure, Criminal, 2 Am. Jur. Trials 121

Treatises and Practice Aids
- 2 Anderson, Wharton's Criminal Law and Procedure (1957) § 562

Footnotes

1   [footnote text largely illegible]

15  L.Ed. infra.
16  L.Ed. infra.
17  L.Ed. infra.
18  L.Ed. infra.
19  L.Ed. infra.
20  Baker v State (1968) 74 Ga App 449, 49 SE2d 10; State v Kobylaski (1911) 242 Iowa 1161, 47 NW2d 623.

21  Id.

Commonwealth v Subilosky (1967) 352 Mass 153, 224 NE2d 197.

22  State v Jones (1971) 5a Ariz 409, 507 P2d 324, 74 ALR3d 266.

23  L.Ed. supra.

24  See, for example, People v State (1968) 84 Nev 412, 443 P2d 455.

25  See, for example, People v McElroy (1897) 116 Cal 583, 48 P 718; State v Eno (1901) 8 Idaho 320.

26  (apparently supporting view that property must be on person of victim when taken).

See, for example, State v State (1968) 74 Ga App 449, 49 SE2d 10; State v Kobylaski (1911) 242 Iowa 1161, 47 NW2d 623.

See, for example, People v McElroy (1897) 116 Cal 583, 48 P 718; State v Eno (1901) 8 Idaho 320.

27  41 SE P3d 10.

28  See § 6a, Tex 3d, Robbery § 1.

29  See § 6a, Tex 3d, Robbery § 1.

30  L.Ed. infra.

Se e also State v State (1971), The Com 455 SW2d 494), infra § 6a), in which the court, in holding that snatching a purse from a shopping cart which was being held by the victim at the time constituted larceny from the person, distinguished the Day Case on the basis that in the Day Case the stolen property was taken while in the victim's possession not touching him when it was stolen.

See also Johnson v State (1918) 83 Tex Crim 31, 201 SW 187, involving the same facts as in the White Case, including the same victim, and reaching the same conclusion. But see Clark v State (1917) 79 Tex Crim 307, 201 SW2d 624, which § 5, where an indictment charging that the property involved was taken "from the possession and the person" of the victim was held sufficient to constitute that charge of theft from the person.

31  But see White v State (1918) 83 Tex Crim 31, 201 SW 187, supra § 6(a), where an indictment charging only that the defendant took property "from the possession of the person" of the victim was held insufficient to constitute a charge of larceny from the person.

32  See People v Gould (1870) 36 Mich 71, 179 NW2d 652, infra § 7, where the court relied on the Subilosky Case as support for the proposition that larceny from the person may be committed if the property stolen was in the immediate presence of the victim.

End of Document

ALR3d
Dag P. Vrenberg, J.D.

67 A.L.R.3d 1021 (Originally published in 1975)

American Law Reports · The ALR databases are made current by the weekly addition of relevant new cases.

What constitutes "property" obtained within extortion statute:

## TABLE OF CONTENTS

Article Outline
Index
Table of Cases, Laws, and Rules
Research Reference

## ARTICLE OUTLINE

§ 1[a] Preliminary matter—Scope
§ 1[b] Preliminary matter—Related matters
1.2 Background and summary
1.3 Rights and positions not considered "property"
1.4 Rights and positions not considered "property"
Research Reference

## INDEX

Advisory charge as mens of extortion §3
Background and summary §2
Business relation considered property §3
Check considered property §3
Conspiracy to commit extortion §3
Contract right, not considered property §4
Customer considered property §3
Debt considered property §3
Definition of property §2
Force or threat used in extortion §§ 3, 4
Grand larceny in first degree by extortion §3
Indictment for extortion §4
Intent in extortion §3
Labor right considered property §3
Letter used as mens of extortion §3
Maltreatment and being held as prisoner for advisory charge considered extortion §3
Milk route considered property §3
Non-union caritman, picketing organization for hiring §§...

Painter, realtor extorting §3
Personal property considered property §3
Physical injury, threats of §3
Picketing business of non-union caitman as extortion §4
Position not considered property §4
Possession considered property §3
Prefatory matters §1
Realtor extorting painter with payment from weekly salary §3
Recordership not considered property §4
Related matters § 1[b]
Relation considered property §3
Relation or act not considered property §§ 3, 4
Right to construct or not considered property §4
Right to work, or labor considered property §3
Scope § 1[a]
Summary and background §2
Tangible property used in crime of extortion §3
Threat or force used in extortion §§ 3, 4
Work right considered property §3

## Table of Cases, Laws, and Rules

United States
18 U.S.C.A. § 1951: Sec 3
18 U.S.C.A. § 1951: See 1[b], 3
18 U.S.C.A. § 1951(a): Sec 4
18 U.S.C.A. § 1951(b)(2): Sec 4

Supreme Court
Scheidler v. U.S. 570 U.S. 729, 133 S. Ct. 2721 186 L. Ed. 2d 254 (2013)—4

First Circuit
United States v. Brissette, 919 F.3d 670 (1st Cir. 2019)—2

Second Circuit
Martin v. Aircraft, 99 F. Supp. 3d 530 (W.D. N.Y. 2015)—3
U.S. v. Pellman, 116 F.3d 583, 53 Fed. R. Evid. Serv. 1129 (2d Cir. 1993)—3
U.S. v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO, 765 F. Supp. 708 (S.D. N.Y. 1991)—2

Fourth Circuit
U.S. v. Santoni, 585 F.2d 667 (4th Cir. 1978)—3

Sixth Circuit
U.S. v. Debs, 949 F.2d 199 (6th Cir. 1991)—3

Seventh Circuit
United States v. Harris, 916 F.2d 542 (11th Cir. 2019)—2

Arizona
State v. Freil, 21 Ariz. App. 269, 517 P.2d 1246 (Div. 1 1973)—2, 3

**California**
People v. Baker, 88 Cal.App.3d 115 [151 Cal.Rptr. 362 (1st Dist. 1978)] — 2
People v. Cadman, 57 Cal. 562 [1881 WL 1762 (1881)] — 2
People v. Robinson, 130 Cal.App. 664, 20 P.2d 369 (2d Dist. 1933) — 2 4

**New York**
People v. Barondess, 14 N.Y.S. 252, 16 N.Y.S.2d 436, 133 N.E.2d 34, 67 A.L.R.3d 1016 (1926) — 2 3
People v. Spaulding, 15 Misc. 2d 461, 181 N.Y.S.2d 350 (Sup. 1959) — 1[b] 2 4
People v. Wisch, 58 Misc.2d 766, 296 N.Y.S.2d 882 (Sup. 1969) — 2 3
Short, People ex rel. v. Warden of City Prison, 145 A.D. 861, 130 N.Y.S. 698 (1st Dep't 1911) — 1[b] 2 3

**Tennessee**
State v. Smith, 197 Tenn. 350, 273 S.W.2d 143 (1954) — 2 3

**Washington**
State v. Pcre, 67 Wash. 67, 120 P. 568 (1912) — 2 3
State v. Taylor, 30 Wash.App. 89, 632 P.2d 892 (Div. 3 1981) — 1

**Wisconsin**
State v. Manthey, 169 Wis.2d 673, 487 N.W.2d 44 (Ct.App. 1992) — 2

## § 1[a] Introduction—Scope

This annotation collects the cases dealing with the construction of the word "property" as used in state statutes making it a criminal offense to obtain the property of another through extortion.[1] The annotation is limited to extortion or attempted extortion or conspiracy to extort by private individuals. It does not include extortion or oppression under color of office or right,[2] and does not discuss the liability of a corporation for extortion.[3] The scope of the annotation is limited to the construction of the word "property" obtained or sought to be obtained by the extortioner, and does not discuss the construction of the word "property" as used in another part of many extortion statutes making it an offense to threaten to injure someone in his person or "property," except to the extent that the courts discuss "property" injured to help define "property" obtained.[4]

## § 1[b] Introduction—Related matter

Related Annotations are located under the Research References heading of this Annotation.

## § 2. Background and summary

[Cumulative Supplement]

A number of modern statutes which define extortion have enlarged the scope of the common-law definition of the taking of money unjustly by an official or by color of right, to include any obtaining of property of another with the consent of the victim's consent, and the wrongful use of force or fear, under circumstances not amounting to robbery. To constitute extortion, the obtaining of the money or property must be with the victim's consent, and the wrongful use of force or fear must be the operating or controlling cause compelling the surrender of the thing extorted. Fear, such as would constitute an element of extortion, may be induced by a threat either to do an unlawful injury to the person of the individual threatened, or to accuse him of or impute to him any crime, or to expose him to any disgrace.[5]

A threat is defined as to be a menace that will unsettle the mind of the extortion victim, and which operates to take away from his mind that element of voluntariness. A threat may be oral, written, or printed, and may be made by intonation or by suggestion. The circumstances under which the threat is uttered and the relation between the person threatening and the person threatened may be taken into consideration in order to determine whether the threat was of an extortion nature.[6]

In the process of deciding what constitutes "property" obtained within extortion statutes, the courts have stated certain broad principles. It has been held that the word "property" is intended to embrace every species of valuable right and interest, and that whatever tends, in any degree, no matter how small, to deprive one of that right, deprives him of his "property."[7] Furthermore, "property" need not be tangible, but may consist of intangible property,[8] and it need not have actual cash value in order to qualify as "property" obtained in violation of an extortion statute.[9] Finally, it has been held that the obtaining of property from another through extortion means not only that the person threatened give up something, but that the person making the threat actually receive something, as well.[10]

Applying the above-stated principles, the courts have held certain rights and positions, such as a receivership,[11] and the right to contract,[12] not to constitute "property" obtained within the meaning of that word as used in the extortion statute.[13] On the other hand, certain other rights, and certain relations and types of tangible, physical possessions have been held to constitute "property" obtained in violation of extortion statutes.[14] These include a chose in action, such as a debt,[15] a soft loan,[16] a check,[17] a business relation or customer,[18] employment and labor and the right to labor,[19] as well as the right to present a judicial appeal.[20]

## CUMULATIVE SUPPLEMENT

**Cases:**

Under the Hobbs Act's extortion provision, obtaining property requires not only the deprivation but also the acquisition of property. 18 U.S.C.A. § 1951(a), 1951(b)(2). United States v. Harris, 816 F.3d 548 (11th Cir. 2016).

## [Top of Section]

## END OF SUPPLEMENT

## § 3. Persons, rights, and relations constituting "property"

[Cumulative Supplement]

Under the following decisions certain possessions, rights, and relations have been held to constitute "property" obtained in violation of extortion statutes. These include a chose in action, such as a debt, a soft room, a check, a business relation or customer, the right to work or labor, and the right to present a judicial appeal.

The focus in State v. Poff (2012) 21 A3d.App.269, 317 P2d 1256, was on fisher. During the marriage of the defendant and the defendant's then husband, the extortion victim's husband rendered services to them. The defendant and the defendant's then husband agreed that this obligation arising out of the services would be their joint and several obligation. At a time when the overall objective of the services had been partially compensated with preliminary success, the defendant became divorced. The termination of the services, and there was a sum of money due and owing to the victim's husband. After the divorce the defendant's former husband went through bankruptcy, listing the obligation owing to the victim's husband as one of his debts. The victim's husband, without recourse, sought to collect the debt from

the defendant, and finally placed the debt in the hands of a collection agency. The defendant resented the collection agency's effort to collect from her, and thereafter the alleged acts of extortion took place. Attached to each of the bills of particulars was a copy of a statement of the debt due from the defendant to the victim's husband, signed by him, followed by an acknowledgment of payment in full, also signed by him. No money had been paid on the debt. This document was executed by the victim's husband and delivered by the victim to the defendant solely by reason of threats made by the defendant which were addressed to the person of the victim. The relevant statute provided in part that extortion was the obtaining of property from another with his consent induced by wrongful use of force or fear. Although affirming the decision of the court below granting the defendant's motion to quash the indictment charging the defendant with extortion, the court held that it had no difficulty in classifying the defendant's debt to the victim's husband as a chose in action and therefore "property" within this part of the extortion statute.

Reversing the judgment of the court below with directions to overrule the demurrer to the information and permit the defendant to plead thereto, the court in People v Cadman (1881) 57 Cal 562, under a statute which made it a criminal offense to send or deliver to a person a letter or other writing expressing or implying or adapted to imply a threat to expose any secret affecting him with intent to extort any money or other property from another, held that the right to take and prosecute an appeal was property within the meaning of this provision, and that the threat made by the defendant for the purpose of inducing an appellant to dismiss an appeal, was a threat made with the intent to extort property from another.

One of the defendants in People v Spatarella (1974) 34 NY2d 157, 356 NYS2d 566, 313 NE2d 38, 67 ALR3d 1016, had been found guilty of, inter alia, grand larceny in the first degree by extortion based on his successful demand to the victim of the extortion that the latter give up a business customer to the defendant, accompanied by a threat of a physical injury if the business was not relinquished. The statute in question provided that a person obtained property by extortion when he compelled or induced another person to deliver such property to himself or to a third person by means of instilling in him a fear that if the property was not so delivered, the actor or another would cause physical injury to some person in the future. Defendant contended that a customer was not a thing or property capable of delivery; that the statute contemplated the delivery of a tangible item such as money or objects of value; that there was no actual delivery of the customer, nor was there a taking; and that neither the customer nor his business was "owned" by the victim. Referring to earlier cases in the jurisdiction holding that the term "property" for one purpose under the extortion statute, that is, for the purpose of defining the kind of property which could be threatened, included intangible rights, the court held that the successful demand to give up the business customer, accompanied by a threat of physical injury if the business was not relinquished, amounted to the delivery of "property" through fear of physical injury under the extortion statute, and stated that it was not disposed to construe the term differently in defining the sort of property which could be demanded under pain of injury to the person or other property within the contemplation of the statute. The court was of the opinion that the defendant's demand for the business itself, or a part of it, was, if anything, more egregious than the demand simply for money, and that the overly literal arguments raised by defendant did not meet the overriding logic of the statute's application to the facts. The court went on to point out that the victim possessed an advantageous business relationship which was based on an at-will arrangement and which, because of the defendant's forceful and illegal behavior, deprived the victim of that business arrangement, the advantage of which was obtained by and accrued to the defendant directly in consequence of his extortive activity.

In People ex rel. Short v Warden of City Prison (1911) 145 App Div 861, 130 NYS 698, affd 206 NY 632, 99 NE 1116, in which the court reversed an order sustaining a writ of habeas corpus discharging a relator from custody, dismissed the writ, and ordered the relator remanded to custody, it appeared that the relator had been charged with the crime of extortion based on the fact that, having secured a position for the complainant as a painter with a building contracting company, he thereafter demanded that complainant give him 50 cents a day from his weekly salary, or he would be discharged, which event actually happened after the complainant finally refused to continue to pay the 50 cents a day. The relevant statutory provisions provided that the obtaining of property from another with his consent induced by a wrongful use of force or fear constitutes extortion, and that threats might constitute extortion, inter alia, as follows: to

do an unlawful injury to the person or property of the individual threatened. The main holding in the case dealt with the construction of the word "property" in this latter provision, but the court also specifically stated that the word "property," as here used, meaning in both provisions, was intended to embrace every species of valuable right and interest, and that whatever tended in any degree, no matter how small, to deprive one of that right, or interest, deprived him of his property. The court went on to point out that numerous authorities held that labor constituted property, and that if labor constituted property, it necessarily followed that the right to labor must also constitute property, and that whatever deprived him of this right, deprived the complainant of property.

Denying the defendants' demurrer to the indictment under which they were charged, the court in People v Wisch (1969) 58 Misc 2d 766, 296 NYS2d 882, held, inter alia, that counts 2 to 8 in the indictment did not fail to allege facts constituting crimes of conspiracy to commit extortion, attempted extortion, and extortion because the counts failed to allege the obtaining of the kind of property which could be the subject of extortion under the applicable statute. The defendants contended that the only kind of property which could be the subject of an extortion or attempted extortion was tangible property. However, the court did not agree with the contention and specifically found that property has a much broader meaning than that contended for by the defendants, and that intangible property could be the subject of extortion, in this case the "property" being a milk route, the continuation of which the defendants jeopardized by threatening to cut off the supply of milk to the complainants. A milk route which has a pecuniary value was held to be property which could be the subject of an extortion.

Reversing the judgment of the trial court sustaining a demurrer to an indictment charging conspiracy, and remanding the case for necessary proceedings, the court in State v Smith (1954) 197 Tenn 350, 273 SW2d 143, held that the charges in the first count of the indictment to the effect that certain named defendants conspired to take away the pecuniary advantage of the right to work of certain named people, did constitute an offense under a statute which made it an offense through threats to obtain from a person any "pecuniary advantage whatever, or to compel the person so threatened to do any act against his will." Although the court quoted only the above portion of the statute, it went on to say that upon studying the statute, and referring to one of its earlier cases where it had held that labor was property, the court was of the opinion that employment and labor and the right to labor constituted property within the meaning of the statute, and that whatever deprived one of his right to labor, deprived him of his property. Although the word "property" did not appear in any of the quoted part of the statute, it would appear that the court probably had in mind the word "property," which appeared in the statute immediately preceding the phrase "or pecuniary advantage whatever."

The statutes under which the defendants were convicted in State v Barr (1912) 67 Wash 87, 120 P 509, provided, inter alia, that every person who, under circumstances not amounting to robbery, should extort or gain any money, property, or advantage by means of force, or any threat to accuse any person of a crime, was guilty of extortion. A companion statute provided in part that in construing the provisions of the above statute the word "property" included both real and personal property, and the term "personal property" included all instruments or writings completed and ready to be delivered or issued by the maker, whether actually delivered or issued or not, by which any claim, privilege, right, obligation or authority, or any right or title to property real or personal, was, or purported to be, or upon the happening of some future event might be evidenced, created, acknowledged, transferred, increased, diminished, encumbered, defeated, destroyed, or affected, and every right and interest therein. The defendants had accused the prosecuting witness of adultery, and demanded that he pay them money. He first refused, but after maltreatment and being held a prisoner in the defendants' room, he yielded to their demand and executed a check. The cashier of the bank upon which the check was drawn testified that he would not have cashed the check because of the apparent irregularity of the signature. The check was not presented for payment, since the defendants were arrested before they had had an opportunity to do so. The trial court struck out the evidence to the effect that the cashier would not have cashed the check, and on appeal the defendants argued that this was error because his evidence showed that the check obtained was of no value, and for that reason the case should have been dismissed. The court, stating that it was satisfied that the trial court did not err in striking this evidence or in refusing to dismiss the case, stated that the statute did not require that the property obtained must have actual cash value. The court was of the opinion that the fact that the property obtained

was a check or a writing, by which a claim against the bank or the drawer could have been made, or a right charged or affected by an indorser or holder, imported value and therefore was sufficient under the statute.

## CUMULATIVE SUPPLEMENT

### Cases:

For the obtaining of property element of Hobbs Act extortion, it is enough if defendant directs property to a third party, even if defendant does not enjoy a personal benefit from that directed transfer. 18 U.S.C.A. § 1951(b)(2). United States v. Rainone, 816 F.3d 678 (1st Cir. 2019).

The right of the members of a union to democratic participation in a union election is "property," and the fact that the right is intangible does not divest it of protection under the Hobbs Act. 18 U.S.C.A. § 1951. Northeast Women's Ctr., Inc. v. McMonagle, 868 F.2d 1342 ... 131 L.A. Cas. (CCH) ¶ 10,913, R.I.A.F.T.R.M.P.-0139-2329 (3d Cir. 1989), cert. denied, 1989 WA 819351 (U.S. 1989).

Teamsters' right to democracy and self-government are enforceable property under Hobbs Act, and exercise of those rights may constitute act of racketeering. United States v. International Brotherhood of Teamsters, etc. (1991, SD NY) 767 F.Supp 1206.

Property obtained through extortion may be intangible property. 18 U.S.C.A. § 1951(b)(2). Martin v. Asbestos, 2LP, Supp. 2d 158 (N.D. N.Y. 2019).

Contention that defendant which was of no benefit to extortionist was not "property" capable of being extorted within meaning of Hobbs Act, 18 U.S.C.A § 1951, was without merit; further, property extorted was not material element of party to make business decision free from outside pressure wrongfully imposed. United States v. Spano (1978, CA7 Md) 361 F.2d 660; cert den (1985) 92 L Ed 2d 130, 95 S Ct 1231.

In prosecution of union leader for soliciting bribers to do wrongful violence to deprive membership of its right to vote/on and vote for candidates for union president, intangible property such as national rights of unions is property under Hobbs Act. United States v. Enmons (1992, CA4 Mich) 900 F2d 135 III N/A I.A R.M 19310, 130 CCH L.C 11108.

In prosecution for the extortion of money or other property by use of force or threats, which arose when defendant, investor in and general manager of bar, attempted to pay by neighboring property owner into dropping his protest with Alcoholic Beverage Control, trial court properly construed "other property" as including statutory right to the administrative process with licensing board. People v. Baker (1978, 1st Dist) 88 Cal App 3d 115, 151 Cal Rptr 500.

Death-threat commissioned by tavern owner to rival whose establishment displayed topless female dancing, to effect that if rival did not close down and leave town in ten days he was "dead," constituted attempt to obtain "property" from victim by means of extortion. State v Tuter (1981) 30 Wash App 59, 632 P2d 892 (citing annotation).

Interest in legal malpractice lawsuit was "property" under state extortion statute, sufficient to support charge of extortion against real estate agent who refused to testify honestly in former divorce client's action against her attorney unless agent was paid real estate agent on deposition and trial. State v Manafee (1992, App) 169 Wis 2d 627, 487 NW2d 44.

## § 4. Right to public post; constituted "property"

### Constitutive Statement

The courts have held that certain rights and positions, such as a receivership and the right to a contract, do not constitute the use of threat or force.

Although affirming the judgment on another count, the court in People v. Robinson (1921) 130 Cal App 664, 20 P2d 265, reversed that part of the judgment of conviction entered on a count charging the defendant with an attempt to extort property by threatening to expose to a superior court judge to disgrace that the did not appoint the defendant a receiver. The relevant statute provided that extortion was the obtaining of property from another, with the consent induced by a wrongful use of force or fear, and that a fear, such as would constitute extortion, might be induced by a threat to expose or to impute to any defect... Noting a mere position as receiver is intangible, the court stated, could not be any "property." The court held, that such property and which could ever be created and held by the appointment of a court judge or officer. Thus, the court admitted that he intended to obtain an appointment as a receiver from the superior court judge by a threat to expose him to disgrace, did not constitute an attempt to extort property. The court went on to state that even if a receivership were deemed a public office, the subject-matter of the extortion still would not fall within the statutory definition alleged in the indictment since it had been stated law for many years that a public office, qua official or otherwise, was not property within the contemplation of the statutes or the constitution.

In People v. Scaffidar (1929) 18 Mic. 24 561, 182 NYS2d 357, the court granted an application for a certificate of reasonable doubt and the fixation of bail as to three defendants who had been convicted on three counts of an extortion indictment. The theory of the indictment was that they aided and abetted under and a fourth person in obtaining from certain stores named in the indictment sums of $29 or more per month by threatening under threat of picketing and the more over, dealing with a nonunion contractor and instead retained a nonunion corporation and other union contracts, while in truth the named contractor and the other those named by the defendant were non-union businesses. The defendants urged that the only money paid was for services rendered, that the amount paid was the same as that paid to the previous contractor, and that the services were, therefore, clearly worth the amount paid, and that consequently no "property" was obtained from the meaning of the statute which defined extortion in part as the obtaining of property from another by certain specified and unlawful means. The charge on which the case had been tried was that they aided and abetted another person who had been convicted on three counts of the named extortion service corporation and other named firms were non union, the picketing was not advancing unionism, that is, was not for a lawful purpose, but if they were union, the intent to picket could be more fide. The court stated that, as here, nothing was paid except for services, there would appear to be a substantial question whether the trial court should not have charged as requested, that if the firms were union the intent to picket was not lawful and if the payments were for services then goodly and that there found to their substantial question whether the trial court should not have charged as requested, that if firms were union the intent was lawful, but if the payments were for other, defendant was not guilty, and that where further it clouds whether the ... gov a one count, with the verse of their check, and the right was "property" within the statutory provision under discussion. While the case was not tried on this theory, the court took this approach with consideration and held that, although it would appear that the right to continue might be property injured under another section of the extortion statute, it was difficult to consider the right to contract to be property obtained under the section prohibiting the obtaining of property through extortion means. The court was of the opinion that the statutory phrase "obtaining of property from another," foretold not only that the person threatened give up something, but that the obtainer receive something, and that, given the above-stated facts and the theory on which the indictment was tried, a substantial question existed as to this contention as well, and provided an additional reason why the application for a

## CUMULATIVE SUPPLEMENT

### Cases

The United States Supreme Court held in *Sekhar v. U.S., 2013 WL 3306026 (U.S. 2013)*, that attempting to compel a person to recommend that his employer approve an investment does not constitute "the obtaining" of transferable "property" from another through extortion, for purposes of the Hobbs Act. That federal law subjects to criminal liability if he "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so." 18 U.S.C.A. § 1951(a). The Hobbs Act defines "extortion" to mean "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C.A. § 1951(b)(2). Accordingly, the Second Circuit erred in affirming the conviction of a managing partner in a venture fund, for threatening to disclose rumors that the General Counsel of the New York State Comptroller's Office, was conducting an extramarital affair, unless the General Counsel recanted a recommendation to the State Comptroller to reject a proposal for a state employee pension fund to make an investment through the venture fund. On the verdict form, the jury had specified that the property the managing partner attempted to extort was the General Counsel's recommendation that his employer, the Comptroller, approve a nonbinding commitment to make the investment. As Justice Scalia explained, the Second Circuit had reasoned that the General Counsel had a property right in rendering sound legal advice to the State Comptroller and, specifically, to recommend, free from threats, whether the Comptroller should issue a commitment for an investment. What was charged in this case was not extortion, Justice Scalia concluded, whether viewed through the standpoint of the common law, the text and precedent of the statute, or the jurisprudence of the Court's prior cases. Applying the settled principle that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses, Justice Scalia said that as far as is known, no case prosecuting the Hobbs Act, whether English, federal, or state, ever identified the conduct charged in this case as extortion. Rather, extortion required the obtaining of items of value, typically cash, from the victim, and it did not cover mere coercion to act or to refrain from acting. Under Supreme Court precedent in Hobbs Act cases, "obtaining property" requires not only the deprivation but also the acquisition of property, that is, the victim must "part with" his property and the extortionist must "gain possession" of it. The extorted property must be transferable. A recommendation that an employer approve an investment lacked that defining feature of extorted property, Justice Scalia noted that the Hobbs Act was modeled after a New York penal law, from which Congress borrowed nearly verbatim the definition of extortion. But while Congress adopted the New York penal law's felony crime of extortion, which did not exist at common law, and which merely required the use of threats to compel another person to do or to abstain from doing an act, which must have been following an act "which the injured person has a legal right to do or to abstain from doing." Congress chose not to copy this conviction provision and have, Justice Scalia said, Justice Scalia rejected the theory that the General Counsel was performing his legal duty right to give his disinterested legal opinion to his client free of improper outside interference, concluding that this theory collapsed the longstanding distinctive between extortion and coercion and ignored Congress's choice to penalize one but not the other.

**[End of Section]**

**[END OF SUPPLEMENT]**

---

## RESEARCH REFERENCES

### A.L.R. Library

- A.L.R. Quick Index, Extortion
- A.L.R. Quick Index, Racketeering
- A.L.R. Quick Index, Threats
- A.L.R. Federal Quick Index, Extortion
- A.L.R. Federal Quick Index, Racketeering
- A.L.R. Federal Quick Index, Threats
- *What is "Property of Another" Within Scope Proscribing Larceny, Theft, or Embezzlement of Property of Another*, 57 A.L.R.4th 645
- *Initiation to Reputation of Mental Well-Being as Within Penal Extortion Statutes Treating Threat of "Injury to the Person"*, 87 A.L.R.4th 714
- *What criminal prosecution of union officer or member for extortion related property or state criminal prosecution with intent to incriminate with penal demon-matters one*, 41 A.L.R.4th 1145
- *Damage to reputation as within penal statutes requiring threat of "injury to the person"*, 92 A.L.R.3d 1255
- *What constitutes the taking of money or other chattel under color of office*, 30 A.L.R.3d 1193
- *Construction, construction, and application of statute expressly relating to refund, return or return under circumstances (Hobbs) compromises act as art of knowledge of defendant in connection for bankers or positions*, 110 A.L.R.4th 495
- *Knowledge intended to constitute sum art as art of knowledge of defendant in connection for bankers or positions*, 110 A.L.R.4th 525
- *Distinction between bribery and embezzlement*, 146 A.L.R. 532
- *Construction, construction, and application of Federal Act relative to extortion in connection with trade or commerce (Anti-Racketeering Act), 139 A.L.R. 811*
- *Extortion predicated upon summoning or obtaining monies under criminal liability in connection with attempt to collect or settle a claim which defendant believed to be valid*, 135 A.L.R. 726
- *Larceny of real property or things attached thereto or part of realty*, 110 A.L.R. 158
- *Mere detention of or failure to deliver goods after demand as conversion*, 139 A.L.R. 63
- *Common Note—Larceny or (Robbery) distinction between custody and possession*, 125 A.L.R. 367
- *Offense of larceny, embezzlement, robbery, or theft as committed where, as afield by defendant's intention to take or return money or property in nature of a crime or crime(s) where, as afield by defendant's intention to take or return money or property*, 114 A.L.R. 797
- *Transfer of possession of stolen property with intent to return (owner, obtained by fraud, as constituting theft)*, 81 A.L.R. 814
- *Necessity of demand and refusal to constitute, for larceny, embezzlement, or obtaining under pretenses that "owner" of property, if not a mutual parcel, was incorporated or otherwise to lend entity speaks of realty*, 81 A.L.R. 495
- *Unauthorized use of another's property by an individual is somehow thereof in larceny*, 67 A.L.R. 61

- Criminal liability or conviction for larceny, 37 A.L.R. 737
- Larceny by general owner of property which another has a special interest or right of possession, 58 A.L.R.2d 330
- Larceny of services, 55 A.L.R.3d 538
- What is "property" or "thing of value" within statute, 40 A.L.R.2d 784
- Waiver of immunity as condition of release on parole, ...
- Larceny by bailee of property, 35 A.L.R. ...
- Robbery or attempt to rob, or offense of larceny, 35 A.L.R.3d 1266
- Purchaser of money, credit, subject to interest or value of larceny, 35 A.L.R.3d 331
- Appropriation of property after obtaining consent by fraud as larceny, 26 A.L.R. 381
- Larceny, effect of restitution in cases of animus to one for larceny, 35 A.L.R. 1821
- Larceny or embezzlement as affected by larceny in the sale of larceny by payment of ... or similar, deferred in cases of ... not or bailed, 14 A.L.R. 55
- Larceny or obtaining money or goods under ... a claim, 13 A.L.R. 62
- Intent to convert money, goods etc as an alternative of their nature in connection with ... of property, 17 A.L.R. 394
- Availability of evidence that one charged with burglary, larceny, or robbery was in possession of property an identified as one of the stolen, 3 A.L.R. 1213
- What Constitutes Obtaining Money or Other Commerce for Payment of Hobbs Act (18 U.S.C.A. 1951)—Elements of, 26 A.L.R. Fed. 361
- What Constitutes Obtaining, Delay, or Effect as Commerce for Payment of Hobbs Act (18 U.S.C.A. 1951)—Employee Cases, 28 A.L.R. Fed. 941
- Construction and application of Consumer Credit Protection Act, provisions (18 U.S.C.A. 1601 et seq.)—Robbery Cases, 26 A.L.R. Fed. 341
- What is lack of extortion sufficient Under color of official right" so as to be in violation of Hobbs Act (18 U.S.C.A. 1951), 16 A.L.R. Fed. 180
- What constitutes extortion within Consumer Credit Protection Act provisions (18 U.S.C.A. 891 et seq.), ...
- What constitutes "extortion" within Consumer Credit Protection Act provisions (18 U.S.C.A. 891 et seq.) ..., 7 A.L.R. Fed. 341
- Elements of offense proscribed by the Hobbs Act (18 U.S.C.A. 1951) against extortion in interstate commerce, 4 A.L.R. Fed. 881
- Robbery or extortion based on effect of (18 U.S.C.A. 1951), making it a federal offense to use interstate or foreign travel or transportation in aid of racketeering and crimes, 1 A.L.R. Fed. 678

**Legal Encyclopedias**
- Am Jur 2d, Extortion, Blackmail and Threats §§ 19, 21, 24, 25

**Trial Strategy**

---

---

- Hornblowing, Extortion Crimes, 7 Am. Jur. Trials 171 § 50

**Law Reviews and Other Periodicals**
- Obtar, Criminal Law—A Study of Statutory Blackmail and Extortion in the Several States, 44 Mich L. Rev 461 (1943)

---

**Footnotes**

Westlaw. © 201 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

1    The annotation excludes cases otherwise within its scope but decided under the Hobbs Act (18 U.S.C.A. 1951). For 4 A.L.R. Fed. 881: Other A.L.R. Fed annotations involving federal statutes relating to various aspects of extortion of racketeering may be found listed in 1 Mich Info.

2    See also, Am Jur 2d Extortion, Blackmail and Threats § 19-25. Generally as to extortion under color of office, see Am. Jur. 2d Extortion, Blackmail and Threats §1-2.

3    See §2 A.L.R. 1 §17.

4    See Doering et al. Bowl v Works ... of City Prince (1911) 145 App Div 861, 130 NYS 456, affd 204 NY 611, 97 NE 1110; Jenkins v Works ... (1929) 230 A.D. 123, ... ; Ferris Parks Info § 11 and Threats §18.

     See Sands in 1 and Doering et al. of ... (1929) ...

     Am Jur 2d Extortion, Blackmail and Threats §18

9    See Doering et al. Bowl v Works of City Prince (1911) 145 App Div 861, 130 NYS 456, affd 204 NY 612, 99 NE 1110 both info §1

8    Parks v Work (1910) 78 Misc 34 795, 78 NYS 957, info §1

2    Stacy Bray (1912) 67 Wash 87, 122 P. 22, info §1

3    Parks v Kaufman (1929) 12 Misc 34 561, 195 NYS 957, info §1

     See also §1 Info.

11   Parks v Robinson (1911) 145 C.A. App 664, 21 P.2 92, info §1

12   Stacy v Dodd (1927) 31 Ariz App 208, 311 P.2 1264, info §1

13   Parks v Webb (1929) 32 Misc 34 342, 231 P.2 392, info §1

14   Parks v Collins (1931) 62 Wash 83, 118 P. 22, info §1

15   Parks v Serrantis, (1974) 14 NYS 3 197, 34 NYS3d 444, 312 NE2d 34, 67 A.L.R.3d 1051, info §1

16   Parks and Stacy v Webber of City Prince (1911) 145 App Div 861, 130 NYS 456, affd 204 NY 612, 99 NE 1110

17   Stacy v Smith (1950) 197 Tean 159, 773 SW2d 141, both info §1

18   Parks v Colton (1911) 37 C.A. 561, info §1

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

**77 A.L.R.6th 631 (Originally published in 1989)**

American Law Reports    The ALR databases are made current by the weekly addition of relevant new cases.

ALR6th
Jay M. Zitter, J.D.

Conviction of receiving stolen property, or related offenses,
where stolen property previously placed under police control

---

**TABLE OF CONTENTS**

**Article Outline**
Table of Cases, Laws and Rules
Research References

---

**ARTICLE OUTLINE**

§ 1[a] Introduction—Scope
§ 1[b] Introduction—Related matters
§ 2 Summary and comment
§ 3 [View that property outside the stolen status when merely placed under police surveillance but not control
§ 4 [View that property recovered by police thereby lost its stolen status
§ 5 Related cases
§ 6[a] Particular allegations as to nature of police control—Mere surveillance found
§ 6[b] Particular allegations as to nature of police control—Recovery or control found
Research References

---

**Table of Cases, Laws and Rules**

**Second Circuit**
U.S. v. Muzii, 676 F.2d 919 (2d Cir. 1982) — § 6[a]

**Third Circuit**
Copeland v. U.S., 236 F. 319 (C.C.A. 3d Cir. 1919) — § 6[a]
U.S. v. Cawley, 255 F.2d 338 (3d Cir. 1958) — § 4, 5

**Fourth Circuit**
U.S. v. Dove, 629 F.2d 325 (4th Cir. 1980) — § 6[a], 6[b]

**Sixth Circuit**
U.S. v. Monasterski, 567 F.2d 677 (6th Cir. 1977) — § 6[a]

**Eighth Circuit**
U.S. v. Henderson, 719 F.2d 934, 14 Fed. R. Evid. Serv. 193 (8th Cir. 1983) — § 6[a]
U.S. v. Johnson, 767 F.2d 1259, 18 Fed. R. Evid. Serv. 621 (8th Cir. 1985) — § 3, 5, 6[a]

**Ninth Circuit**
U.S. v. Brewer, 470 F.2d 1170 (9th Cir. 1972) — § 6[a]

**Alabama**
Walk, Ex parte, 711 So. 2d 490 (Ala. 1997) — 6[b]

**Arkansas**
Felter v. State, 254 Ark. 185, 492 S.W.2d 442 (1973) — 4

**California**
Rozek v. State, 55 Cal. 2d 252, 10 Cal. Rptr. 465, 358 P.2d 921, 85 A.L.R.2d 252 (1961) — 4
Lisuk v. Tower, 174 Cal. App. 3d 1114, 220 Cal. Rptr. 673 (5th Dist. 1985) — § 6[a]

**Illinois**
Rozek v. Dabrowski, 168 Ill. App. 3d 684, 114 Ill. Dec. 74, 515 N.E.2d 1245, 72 A.L.R.4th 821 (1st Dist. 1987) — 3, 6[a]
Rozek v. Zemsko, 188 Ill. 2d 36, 195 Ill. Dec. 632, 628 N.E.2d 792 (1990) — 4

**Nevada**
Darnell v. State, 92 Nev. 680, 558 P.2d 624 (1976) — 4

**New Jersey**
State v. Troisson, 154 N.J. Super. 452, 381 A.2d 474 (Law Div. 1977) — 4

**New York**
People v. Exhibition, 21 Misc. 2d 723, 197 N.Y.S.2d 311 (Sess. 1960) — 4
People v. Zaborski, 59 N.Y.2d 863, 465 N.Y.S.2d 932, 452 N.E.2d 1255 (1983) — 4

**North Carolina**
State v. Hageman, 307 N.C. 1, 296 S.E.2d 433 (1982) — 4

**Ohio**
State v. Denham, 55 Ohio App. 2d 93, 563 N.E.2d 521 (1st Dist. Hamilton County 1990) — 4
State v. Schuldt, 29 Ohio Op. 3d 264 (C.P. 1981) — § 6[b]

**Oklahoma**
Booth v. State, 1964 OK 123, 398 P.2d 163 (Okla. Crim. App. 1964) — 4

**Oregon**
State v. Niehuser, 21 Or. App. 33, 533 P.2d 834 (1975) — 4

**Tennessee**
Bandy v. State, 575 S.W.2d 278 (Tenn. 1979) — 4

---

**§ 1[a] Introduction—Scope**

This annotation collects and discusses the state and federal cases in which the courts have considered whether and under what circumstances a defendant may be convicted of receiving stolen property, or similar offenses,[1] where the stolen property was recovered by the police,[2] was placed under surveillance, or was otherwise under police control prior to the alleged receipt of the property.

---

**§ 1[b] Introduction—Related matters**

Related Annotations are located under the Research References heading of this Annotation.

## § 2. Summary and comment

Law enforcement effort to deter crimes of theft and larceny frequently involve "sting" operations or other undercover operations designed to trap a thief. One of the ways that may be utilized is police surveillance of property believed to be stolen, which has proven to be a useful investigative tool in apprehending the original thief as well as "fences" and others who intend to permanently deprive the owner of the property's use. Similarly, in exchange for clemency, a participant in a theft ring who has been caught by the police is sometimes in possession of stolen goods may continue handling the stolen goods under the guidance of the police, with the result that those to whom the participant entrusts the stolen goods may be charged with having received stolen property.

However, cases frequently arise in such situations in that the goods may not in fact be considered stolen anymore, since, at common law, the recovery of goods by the owner or his agent takes the property out of the category of stolen goods for the purpose of a conviction for receiving stolen property.[ ] Similarly, it has been maintained that, where a police officer has recovered the proceeds of a theft, since they could then have been returned to the owner before they were restored to the thief or his agent, they are no longer stolen, and, accordingly, those receiving them could not be found guilty of receiving stolen property. On the other hand, a number of courts, in order to avoid handicapping the pursuit of thieves, have distinguished between mere surveillance and actual control, finding that the mere presence of the police would remove the stolen character of the property, but mere surveillance would not.[ ] Federal courts are divided between these two views.[ ] And a number of courts adhering to the view that the nature of the police action is to be considered have determined whether, under the particular circumstances presented, police control constituted mere surveillance or was sufficiently exerted over the particular stolen property so as to render the property no longer "stolen," and have reached varying conclusions.

## § 3. View that property is stolen when merely placed under police surveillance but not control

In the following cases, the courts ruled that for the purpose of a conviction for receiving stolen property or similar charges, property recovered by the police would retain its status as stolen property, where the police merely intended to place that property under surveillance, but not where it came under police possession, ownership, or control.

**US**

For cases applying federal law, see § 5

**Cal**

For a California case, see § 4

**...**

People v Deberry [1981, 2d Dist] 118 Cal App 3d 664, 174 Cal Rptr 344, 72 A.L.R.4th 821

State v Schmid (1981, CP) 20 Ohio Ops 3d 364

In People v Deberry [1981, 2d Dist] 118 Cal App 3d 664, 174 Cal Rptr 344, 72 A.L.R.4th 821, the court rejected a claim that a motor had lost its status as stolen when a police officer verified who it belonged to and placed it under surveillance, and thus ruled that police custody of stolen property does not necessarily result in that property's being in status as stolen for purposes of conviction of possession of stolen property. Rejecting contrary case law from foreign jurisdictions, the court ruled that a better approach was taken in United States v Johnson (1983, CA9 Ore) 767 F2d 1259, in which the court ruled the distinction between recovery or actual physical possession of property on behalf of the rightful owner, and mere observation or surveillance of the property for the purpose of apprehending the person who later takes possession of it. Pointing out that the test in the Johnson Case was whether the police took possession of the property with the intent to recover it on behalf of the rightful owner, the court said that in the

---

the instant action, the officer merely examined the property in the place in which it was found to verify that it was the stolen motor, but he did not take physical possession of it on behalf of the owner, nor did he control it. Because of this, the court held that the mere observation of property to ascertain the identity of the owner, and the intent to permanently deprive him of its use, did not end the stolen character of the property, such that the police officer who inspected the original thief and others with the intent to permanently deprive the owner of the property's use, the court said that if the officer recovered the motor when he placed it under surveillance would be a significant subset to law enforcement, especially with regard to apprehending and bringing to justice persons who purchase or otherwise obtain stolen motor vehicles with the intent to permanently deprive the owner of its use.

## § 4. View that property recovered by police therein lost its stolen status

### Cumulative Supplement

The courts in the following cases took the position that it became stolen property had been recovered by the police before it came into the possession of the defendants, such property had lost its character as stolen property, and the defendants accordingly could not be found guilty of receiving stolen property and similar offenses.

**US**

For cases applying federal law, see § 5

**Ark**

Elder v State [1972] 254 Ark 181, 492 SW2d 442

**Cal**

People v Rojas [1961] 55 Cal 2d 252, 10 Cal Rptr 465, 358 P2d 921, 85 A.L.R.2d 252

For an apparently contrary California case, see § 3

DeWalt v State [1976] 92 Nev 698, 558 P2d 624, habeas corpus proceeding [CA9 Nev] 603 F2d 723, later proceeding [5 Nev] 513, 656 P2d 1009, habeas corpus proceeding [DC Nev] 657 F Supp 526, affd [CA9 Nev] 821 F2d 790, cert den [US L Ed 2d 470, 108 S Ct 1022 (apparently recognizing rule)

**NJ**

State v Trenton [1977] 14 NJ Super 417, 381 A2d 432

**NY**

People v Zahorski [1981, 3d NY2d 85, 466 NY2d 927, 452 NE2d 1255

People v Faranblom [1960] 31 Misc 2d 771, 197 NY2d 31

**NC**

State v Hargrave [1982] 307 NC 1, 296 SE2d 433

**Okla**

Bock v State [1984, Okla Crim] 781 P2d 862

**Or**

State v Pohmer [1975] 21 Or App 33, 533 P2d 834

**Tex**

Brady v State [1975, Tenn] 575 SW2d 373

Chang United Sales v Courts [1983, CA3 Pa] 353 F2d 338 (disagreed with United States v Johnson (CA9 Mo) 767 F2d 1259). In Ford Rubin Bail Serv (CA3 Pa) 353 F2d the court in Elder v State [1972] 254 Ark 181, 492 SW2d 442, ruled that due to the fact that stolen property had been recovered by the police before it was sold, such property had lost its character as stolen property, and thus the defendants who had stolen it by police acting in an undercover capacity for purchasing, stolen goods which had been recovered by the police could not be found guilty of receiving stolen goods and that the question had been passed upon in several jurisdictions, and the courts were unanimous in ruling that one cannot be guilty of receiving stolen property under such circumstances. The court reasoned that at the time they were recovering stolen goods, the goods in question must have retained their stolen character at the time they were recovered by the account, so that if they were stolen, they would continue to be stolen until they were recovered by the

owner or someone for him. Thus, it reasoned, where the actual physical possession of stolen goods has been recovered by the owner or his agent and afterward carried to the receiver either by the original thief or the instrumentality through which the thief originally intended to convey them, at the express election of the owner or his agent, for the purpose of entrapping the receiver, his receiving of the goods is not a receiving of stolen goods.

In People v Rojas (1961) 55 Cal 2d 252, 10 Cal Rptr 465, 358 P2d 921, 85 ALR2d 252, the court ruled that property which has been the subject of larceny and has been recovered by law enforcement officers does not remain "stolen" while it is under the surveillance of the police, and thus the defendants could not be guilty of receiving stolen property under such circumstances. Such property is held by the police in trust for, or for the account of, the owner, reasoned the court, rejecting the prosecution's claim that the undercover police officer was acting as an agent of the police and not the true owner.[4]

CUMULATIVE SUPPLEMENT

Cases:

Although purpose of statute was to break up fencing operations, statute that defined offense of theft as obtaining or exerting control over property in custody of any law enforcement agency, which was explicitly represented to recipient as being stolen, was unconstitutional since it did not require culpable mental state. People v Zaremba (1994) 158 Ill 2d 36, 196 Ill Dec 632, 630 NE2d 797.

Defendant who bought cigarettes from informant which had been stolen, recovered by store security guard, and taken to police station to be used in "sting" operation was not guilty of receiving stolen property, where cigarettes had been recovered on behalf of owner and placed under control of police until they were delivered to defendant. State v Dicohans (1989, Hamilton Co) 55 Ohio App 3d 90, 562 NE2d 523 (citing annotation).

[Top of Section]

[END OF SUPPLEMENT]

§ 5. Federal cases

Federal courts have apparently taken contrary positions, in applying federal law, as to the effect of police possession or control of stolen property, for the purpose of a subsequent conviction of the defendant for receiving stolen property or similar charges. Thus, the courts in the following cases ruled that because, at common law, property recovered by the owner or its agent ceased being stolen property, police recovery of stolen goods similarly rendered the goods no longer stolen property.

In United States v Cawley (1958, CA3 Pa) 255 F2d 338 (disagreed with United States v Johnson (CA8 Mo) 767 F2d 1259, 18 Fed Rules Evid Serv 625), the court ruled that parcel post packages which were stolen from the United States mail did not retain their character as stolen goods after they were recovered by United States postal inspectors, for purposes of convictions of charges of purchasing and possessing stolen goods. The court explained that it was well established that when stolen goods are recovered by the owner or his agent before they are sold, the goods are no longer to be considered stolen, and the purchaser cannot be convicted of receiving stolen goods. Rejecting a claim that since the postal inspectors were not agents of the railroad which carried the mail, the goods retained their stolen character even after having been recovered by the inspectors, the courts explained that such goods ceased to be stolen if recovered by the owner or anyone who had a right to possession or control over them. It concluded that the postal inspector certainly had a right to possession of the parcel post packages.

In United States v Monasterski (1977, CA6 Mich) 567 F2d 677 (disagreed with United States v Johnson (CA8 Mo) 767 F2d 1259, 18 Fed Rules Evid Serv 625), the court reversed a judgment of conviction of the defendant for possessing goods stolen from an interstate shipment, since the goods, which had been placed under police surveillance, had lost their status as stolen goods. Pointing out that in the instant case, which involved placing thieves who were caught stealing tires under police control and surveillance in order to deliver the tires to the defendant, all would agree that at some point the goods ceased being stolen goods, the court said that the best and only workable rule was the common-law rule of the goods' losing their stolen character immediately upon being recovered by the owner or his agent. Trying to choose some later point to support the conviction would necessitate a strained reading of the stolen goods statute and would yield unnecessary uncertainty, the court opined. It said that it was bolstered in its conclusion by the general rules that criminal statutes are to be strictly construed against the government, and are to be interpreted with reference to the common law. Noting the government's claim that the common-law rule punishes efficient police work and negates the important societal value in apprehending the "fences" who finance the theft of property, the court said that the government's arguments ignored the relevant statutory requisite that goods be stolen. Recognizing that the beneficiaries of its rule likely had the precise culpable state of mind required for conviction of receiving stolen goods, the court noted that the law did not punish bad purposes standing alone. The court disagreed with United States v Egger (1972, CA9 Wash) 470 F2d 1179, cert den 411 US 949, 36 L Ed 2d 410, 93 S Ct 1931 and cert den 411 US 954, 36 L Ed 2d 416, 93 S Ct 1931 and (disagreed with United States v Monasterski (CA6 Mich) 567 F2d 677 (disagreed with United States v Johnson (CA8 Mo) 767 F2d 1259, 18 Fed Rules Evid Serv 625)), § 6[a], which refused to follow the common-law rule, reasoning that the conclusion in the Egger Case that the Federal Bureau of Investigation (FBI) agents in that case never assumed actual physical possession of the stolen money even though they counted and inventoried it was based on tortured reasoning. The court concluded that there were three alternatives open to the government in its attempt to apprehend "fences" when faced with similar facts: (1) it could petition Congress for a statute clearly drawn to encompass the disfavored activity, (2) it could survey the stolen goods until delivered to the "fence," or (3) it could charge the "fences" with conspiracy.

In the following cases, the courts ruled that whether stolen property which was recovered by the police retained its status as stolen property for the purpose of charging a subsequent receiver with receiving stolen property charges depended on the nature of the control, so that mere surveillance by the police would not affect the status of the property, but actual control and ownership of the property by the police would change the status of stolen property.

To the same effect, see Copertino v United States (1919, CA3 NJ) 256 F 519; United States v Egger (1972, CA9 Wash) 470 F2d 1179, cert den 411 US 949, 36 L Ed 2d 410, 93 S Ct 1931 and cert den 411 US 954, 36 L Ed 2d 416, 93 S Ct 1931 and (disagreed with United States v Monasterski (CA6 Mich) 567 F2d 677 (disagreed with United States v Johnson (CA8 Mo) 767 F2d 1259, 18 Fed Rules Evid Serv 625)); United States v Muzii (1982, CA2 NY) 676 F2d 919, cert den 459 US 863, 74 L Ed 2d 118, 103 S Ct 139; and United States v Henneberry (1983, CA8 Mo) 719 F2d 941, 14 Fed Rules Evid Serv 820, cert den 465 US 1107, 80 L Ed 2d 141, 104 S Ct 1612.

Pointing out that there was a significant inconsistency among the modern cases, the court in United States v Dove (1980, CA4 SC) 629 F2d 325, ruled that there was a distinction between recovery of goods by the police, whereby stolen goods lose their character as such and the goods cannot be the subject of a conviction for receiving stolen property, and mere observation of the goods by the police. The court explained that there must come a time when goods recaptured by the police cease being "stolen" in the contemplation of the law, but that on the other hand, the principle should not be applied in such a way that the difficulties in apprehending criminals in such cases would be immeasurably increased, and without reason.

In United States v Johnson (1985, CA8 Mo) 767 F2d 1259, 18 Fed Rules Evid Serv 625, the court ruled that when law enforcement officers gain control of stolen property, the character of the goods stolen will be lost for purposes of convictions of receiving stolen property only where there is an actual recovery of stolen goods by the police, not where

there is a mere observation of those goods for the purpose of apprehending persons who take possession of them. The court rejected the holdings in *United States v. Crettol* (1958, CA1 D) 215 F2d 218, and *United States v. Maybandi* (1977, CA4 Md) 557 F2d 427, in which there was an arrest of thieves in possession of the stolen property, who officers utilizing and directing those thieves to deliver the property to a subsequent purchaser, since these cases did not analyze the distinction between recovery and surveillance.

## § 4[a] Particular situations as a mixture of surveillance—police surveillance found

In the particular circumstances of the following cases, the courts ruled that the evidence did not support a finding that the police had exercised control over stolen property, and so the property retained its status as stolen for the purpose of charging a subsequent receiver with receiving stolen property.

In *United States v. Muzii* (1982, CA3 NJ) 676 F2d 919, cert den 459 US 863, 74 L Ed 2d 118, 103 S Ct 139, the court ruled that a theft company by detectives at an undercover trucking company did not prevent recovery of the goods for their rightful owner and stamens the stolen character of the goods for the purpose of a conviction for receiving stolen goods. Rather, the court reasoned, the use of the company's facilities as a "drop" for stolen pharmaceuticals merely facilitated surveillance of the unlawful transaction and enabled detectives to apprehend the ultimate purchaser. The detectives did not convert their limited role of observation onto "recovery" of the stolen goods, the court reasoned, pointing out that at no time did the detectives exercise control over the cargo on behalf of its rightful owner, act at his owner's agent to recover the goods, or direct their delivery to the defendants. The court stated that the cargo was stolen property and remained so until its eventual surrender to the defendants, and the overall transaction did not lose its criminal character simply because the transaction was under constant detective surveillance. The court reasoned, moreover, that the watchful transaction and resultant detectives to apprehend the ultimate purchaser. The detectives did not convert their limited role of observation onto "recovery" of the stolen goods, the court reasoned, pointing out that at no time did the detectives exercise control over the cargo on behalf of its rightful owner. The court noted...

Affirming a judgment convicting the defendants of receiving stolen property, the court in *Cepulonis v United States* (1983, CA1 Mass) 705 F2d 919, denied a claim that copper which had been stolen had lost its character of stolen property before it came into the possession of the defendants, where a railroad detective discovered the stolen property and placed it under surveillance, when the defendants arrived and began to load the copper in the automobile. While acknowledging the commonplace rule that recovery by the owner or his agent of stolen property causes it to lose its character as such, the court reasoned that such principle was inapplicable once the detectives did not take or attempt to take the stolen copper in their possession, nor did they convert or attempt to exercise any control or dominion over it. The court thus reasoned that such power, presumably no was what would happen to it if anything, and to permit its eventually being carried away, until "relief" for which they had also could arrive. The copper had not, therefore, come into either the actual or the constructive possession of the detectives, the court noted; to the contrary, before the detectives intended to exercise any control over it, the defendants appeared upon the scene and took actual possession of it.

In an undercover investigation into the trafficking of stolen automobiles, the court in *United States v Dove* (1986, CA11 Fla) 812 F2d 933, ruled that when the thief and an undercover agent came to construction sites, and the agent started two bulldozers with a distance key and maneuvered them onto the trailer, with the two men sharing the driving of the truck, the property was not converted by the police and thus it did not lose its character as stolen for the purposes of a subsequent conviction of defendants for receiving and transporting stolen goods. The court ruled that there was a distinction between recovery of goods by the police, whereby stolen goods lose their character as such and the goods continue to be the subject of a conviction for receiving stolen goods, and mere observation of the participation of an undercover in the court explained that under property does not lose its stolen character by mere observation of another. Noting that the agent was at all times acting under the general criminal design of the thief, the court...

reasoned that the agent's possession of the bulldozers, whether or not in the immediate presence of the thief, was not recovery for the owner lest part of that criminal design, and was a form of observation.

Distinguishing *United States v. Monasterski* (1977, CA6 Mich) 567 F2d 677 (charged with *United States v. Johnson* (CA10) 767 F2d 1272, 18 Fed Rules Evid Serv 635), and *United States v Cowart* (1992, CA11) 715 F2d 1140 (charged with *United States v. Monasterski* (1977, CA6 Mich) 567 F2d 677, 18 Fed Rules Evid Serv 635), which ruled that property lost its status as stolen once it was recovered because the officials involved took actual possession of the goods and gained cooperation of some of the thieves before the defendants became involved, the court in *United States v. Monasterski* (1991, CA6 Mo) 919 F2d 981, 14 Fed Rules Evid Serv, cert den 661 US 1107, 101, 114 L Ed 144, 184 S Ct 1142, pointed out that in the instant case, the agents merely observed the property and surveyed it until they could recover it, so as not to reveal their true identity, so that the property remained stolen property. The undercover agents were led to the stolen property, and at that time, they observed the goods and an inventory but did not in any fashion take possession of them, nor any attempt to make an arrest at that time or to aide the property would have ceded any other pointing agent's investigation. The court reasoned that for that the agents recovered the property when they observed it would distort law enforcement to the extent that the difficulties in apprehending criminals in such cases would be immediately increased without.

In *United States v Johnson* (1985, CA8 Mo) 767 F2d 1272, 18 Fed Rules Evid Serv 635, the court denied a claim that a vehicle lost its stolen character when a federal investigatory agent saw what he thought was a stolen vehicle, where he did not intend to take custody or exclusive possession of it, but merely delayed in delivery for inspection and identification purposes. The court pointed out that, although the agent notified that he constrained a desire to seize the vehicle, he determined that a seizure of the vehicle at that time would jeopardize undercover operations that had taken some time to establish, and he accordingly decided that the vehicle should not be seized.

Reasoning that the risk that the physical possession of stolen property had been recovered by the owner or his agent, its character as stolen property was lost too inapposite in the possession of the case, the court in *United States v. Monasterski* (1977, CA6 Mich) 567 F2d 677, 18 Fed Rules Evid Serv 652), ruled that when a bank robber, in the company of FBI agents, obtained money from a bank robbery which had been placed in a safety deposit box and delivered the money to the defendant, the defendant could still be convicted of possession of money stolen in a bank robbery, since the FBI never assumed actual, physical possession of the stolen property. While acknowledging that a government agent invested with that bank's robber, commated the money, and recorded serial numbers, the court said that these actions were performed as a form of observation and surveillance rather than as possession on behalf of the rightful owner. The stolen money was not being returned to its owner when the government agent counted the money instead of asking the bank robber to count the bills and call out their serial number, the court reasoned.

The court held in *Brooke v Tower* (1985, 5th Distr) 174 Cal App.3d M 1134, 220 Cal Rptr 475, cert den 478 US 1006, 92 L Ed 2d 712, 106 S Ct 3297, that the money held previous stolen for resale were not contradictory represented by the police, or as to which the reseller's true owner was unknown, once the property became the property's true owner and that the buyer under police surveillance. Citing as precedent *United States v Dove* (1986, CA11 Fla) 812 F2d 933, the court said that it was guided by doctrines which declined to extend the rule that property recovered by the police lost its character as stolen property beyond these cases in which the police had actually recovered financial before on the rest hand willing to put on owner. The court pointed out that the nature of the offices involved financial before on the one hand willing to sell and on the other hand willing to sell all in the stolen vehicle. To effectively disrupt this type of criminality, the court noted, the police must reach toward both ends of the chain, and that it justified the police involving themselves in it unmercifully or through informers and permitting criminal conduct to be carried on for almost 2 months. The court said that this was not a case where the police were merely interested in...

arresting a "fence" who had himself received and taken possession of the stolen property. Continuing, the court said that the defendant's interest was not in keeping or using the car but purely the profits to be made from resale, so that proof of this involvement required that the police to permit the stolen fuel oil to proceed to its intended destination.

In Dansie v. Dobrowski (1987, 2d Dist) 162 Ill.App.3d 664, 114 Ill.Dec. 74, 515 N.E.2d 1345, 77 A.L.R.6th 121, the court rejected a claim that a motor jack lost its status as stolen when a police officer verified who it belonged to and placed it under surveillance. Rejecting contrary case law from foreign jurisdictions, the court said that a better approach was taken in United States v Johnson (1981, CA5 Fla) 767 F2d 1259, in which the court noted the distinction between recovery or actual physical possession of property on behalf of the rightful owner, and mere observation or surveillance of the property for the purpose of apprehending the persons who later take possession of it. Pointing out that this test in the Johnson Case was whether the police took possession of the property with the intent to recover it on behalf of its rightful owner, the court said that in the instant action, the officer merely examined the property in the place in which it was found to verify that it was the stolen motor, but he did not take physical possession of it on behalf of the owner, nor did he contact the owner to advise him that the motor had been recovered.

## § 6[b] Particular allegation as to status of police: recovery or control found

### [Condition Sentence]

In the particular circumstances of the following cases, the courts ruled that the evidence supported a finding that the police had recovered or exercised control over stolen property, so that the property no longer retained its status as stolen for the purpose of charging a subsequent receiver with receiving stolen property.

Reasoning that goods recovered by the police lost their character as stolen, but goods merely observed by the police were still stolen goods and could serve as the predicate for stolen property offenses, the court in United States v Dove (1980, CA4 SC) 629 F2d 325, found no basis on which to hold that a stolen vehicle retained its status as such where the vehicle was originally purchased by the undercover agent-seller with funds provided to him by the Federal Bureau of Investigation and it remained for a month on his lot in his actual and exclusive possession. While acknowledging that the defendant undoubtedly believed that he was buying a stolen vehicle, the court said that that had purpose, standing alone, would not support a conviction. The court explained that a balance should be struck in determining when goods captured by the police cease being "stolen," so as not to handicap the apprehension of criminals without reason.

Where a stolen typewriter was recovered by the police, during which time the police was engaged in a "sting" operation and they returned the typewriter to an informant who sold it to the defendant, the court in State v Sheriff (1981, CP) 20 Ohio Ops 3d 264, ruled that the property lost its character as stolen property when it was recovered by the police. The court noted that at the time, they were holding it as agents for the true and lawful owner, and a primary obligation was to return it to that owner.

## CUMULATIVE SUPPLEMENT

### Cases

These radios which had previously been stolen lost their stolen character when police officers took actual physical possession of them and used them with owner's consent as part of police set-up, and therefore defendant's actions in purchasing the radios during police set-up could not support conviction for receiving stolen property, even if defendant had reasonable grounds to believe that radios were stolen. Code 1975, §§ 13A-8-1(7), 13A-8-16. Ex parte Walls, 711 So. 2d 490 (Ala. 1997), reh'g denied, (Jan. 23, 1998).

---

### [Use of Section]

### [END OF SUPPLEMENT]

I

## RESEARCH REFERENCES

### West's Key Number Digest

- West's Key Number Digest, Receiving Stolen Goods ⟨~⟩1
- West's Key Number Digest, Receiving Stolen Goods ⟨~⟩2
- West's Key Number Digest, Receiving Stolen Goods ⟨~⟩5
- West's Key Number Digest, Receiving Stolen Goods ⟨~⟩6

### A.L.R. Library

- Index to Annotations, Larceny or Theft
- Index to Annotations, Police and Law Enforcement Officers
- Index to Annotations, Receiving and Transporting Stolen Property
- What is "Property of Another" Within Statute Proscribing Larceny, Theft, or Embezzlement of Property of Another, 57 A.L.R.6th 445
- Construction and application of state statute governing impossibility of consummation in defense to prosecution for attempt to commit crime, 41 A.L.R.4th 588
- What constitutes "constructive" possession of stolen property to establish requisite element of, possession supporting offense of receiving stolen property, 30 A.L.R.4th 488
- What constitutes "receipt" within receiving stolen property statutes, 30 A.L.R.4th 488
- What constitutes "receiving" within meaning of statute penalizing receipt of gift from attorneys of reward, 50 A.L.R.4th 429
- Modern status: Instruction allowing presumption or inference of guilt from possession of recently stolen property as violation of defendant's privilege against self-incrimination or right of due process, 88 A.L.R.3d 1178
- Receipt of stolen money or goods purchased with such money as subject of prosecution for receiving stolen property, 57 A.L.R.3d 1181
- What amounts to "exclusive" possession of stolen goods to support inference of burglary or other felony, 51 A.L.R.3d 727
- Right of husband and/or wife to assert in domestic relations action nonmarital tort claim against spouse, 6 A.L.R.4th 1072
- Sufficiency of evidence of order to sustain charge of receiving stolen property knowing it to have been stolen, 68 A.L.R.4th 94
- Receipt of property stolen in another state or country as receiving stolen property, 67 A.L.R.3d 1322

- Knowledge imputed to principals on a use of custodian of defendant in prosecution for larceny or receiving stolen property. 147 A.L.R. 1058
- Definition between larceny and embezzlement. 146 A.L.R. 532
- Larceny of real property at time and receipt of real property. 131 A.L.R. 166
- Larceny of one spouse of the other's personal property. 131 A.L.R. 458
- Criminal liability of one attempting to obtain money or property by means of extortion. 135 A.L.R. 247
- Offense of larceny, embezzlement, robbery, or similar to commit robbery, as affected by defendant's intention to take or retain money or currency or an security for a claim, or to collect a debt, or to procure another to do so. 116 A.L.R. 997
- Admissibility in prosecution for receiving stolen property, of evidence of transactions other than that referred to in the count on which the accused is based, for purpose of proving scienter or intent, 105 A.L.R. 1288
- Transfer of possession of property to one obtaining it with intent to steal as constituting larceny. 95 A.L.R. 613
- Necessity of stolen and return in prosecution for larceny, embezzlement, or receiving stolen property, the "issue" of property, or that a natural person, was intercepted or obtained and delivered by fraud upon the owner. 89 A.L.R. 484
- Admissibility of another's property by one lawfully in possession thereof a larceny, 82 A.L.R. 194
- Distinction between larceny by trick and larceny by obtaining money or property. 62 A.L.R. 621
- Criminal liability or conviction for larceny. 51 A.L.R. 1139
- Larceny by bailed power of property in which another has a social interest or right of possession. 54 A.L.R. 556
- Larceny or embezzlement by one owner of other's property. 55 A.L.R. 558
- Break of larceny bailee to maintain an action or larceny. 46 A.L.R. 241
- Wrongful payment or concealment of this as constituting larceny. 48 A.L.R. 294
- Larceny by finder of property. 36 A.L.R. 372
- Refusal of servant but a employee and custody of larceny. 30 A.L.R. 1164
- Refusal of property wrongfully sold without intention to pay for it as larceny. 30 A.L.R. 1396
- Association of property after obtaining possession by fraud as larceny. 26 A.L.R. 381
- Larceny, effect of variance in stealing money or chattels as subject of larceny stolen property. 15 A.L.R. 1121
- Larceny of fixtures as property. 17 A.L.R. 884
- Larceny or embezzlement as affected by intention to take or use as security for debt. 11 A.L.R. 142

**Legal Encyclopedias**

11

---

- Am. Jur. 2d Articles and Treatises/Related Topics 17

**Treatises and Practice Aids**

- 4 Wharton's Criminal Law 15th §§ 465

**Trial Strategy**

- Defending Minor Felony Cases, 13 Am. Jur. Trials 465

**Additional References**

- Boolean Search Query (proph v2 index) v2 (goods or property) m/50 (police m/10 observation or surveillance or recover)

Westlaw. © 2011 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

**Footnotes**

As to the closely related question of a conviction of attempting to receive stolen property, see the Westlaw. 82 A.L.R. 3d 523

For purposes of this annotation, the term "police" includes sheriffs, federal investigation agents, marshals and enforced police, and postal inspectors, but not private security agencies. See Am. Jur. 2d Receiving Stolen Property § 17.

However, in People v. Tenney (1985, 5th Dist.) 174 Cal App 3d 518, 220 Cal Rptr 676, cert den 478 US 1006, 92 L Ed 2d 712, 106 S Ct 2907, the court declined to extend this rule in the Rogin Court beyond cases in which the police actually recovered stolen goods and held them as agents of the owner, noting that what was involved was mere surveillance of the goods.

**End of Document**

12

# MEMO FROM LEGAL RESEARCH ASSOCIATES (LRA)

## INCORRECT OR INCOMPLETE REFERENCE

**REQUEST # 146**

YOUR REQUEST(S) FOR LEGAL ASSISTANCE INCLUDES INCOMPLETE OR INCORRECT REFERENCES/CITATIONS TO A CASE, STATUTE, TOPIC, OR ARTICLE. PLEASE CHECK YOUR SOURCES AND, IF STILL DESIRED, SUBMIT A NEW REQUEST SLIP (SUBJECT TO THE RULES AND POLICIES OF YOUR FACILITY).

**SPECIFICALLY:**

55 ALR 4th 108 or 1089

48 ALR 4th 819

ALL REQUESTS FOR CASES SHOULD INCLUDE AS MANY OF THE FOLLOWING AS POSSIBLE: FULL CASE NAME ("PEOPLE V SMITH"; NOT JUST "SMITH"); YEAR OF THE CASE; FULL CASE CITATION (EXAMPLE: PEOPLE V. SMITH (1989) 43 CAL.3D 152). IF YOU DO NOT KNOW THE YEAR OR CITATION, PLEASE INDICATE BRIEFLY THE TOPIC OF THE REQUESTED CASE.

ALL REQUESTS FOR STATUTES <u>MUST</u> INCLUDE THE NAME (OR ABBREVIATION) OF THE CODE FOR STATE STATUTES (EXAMPLE: PENAL CODE (P.C.), VEHICLE CODE (V.C.), ETC.) OR THE TITLE & SECTION NUMBERS FOR U.S. CODE STATUTES (EXAMPLES: 18 USC §2001; 21 USC §941; 42 USC §1983).

ALL REQUESTS FOR CHAPTERS AND/OR SECTIONS FROM REFERENCE BOOKS OR VOLUMES SHOULD INCLUDE THE NAME OF THE REFERENCE WORK.

LRA IS NOT RESPONSIBLE PROVIDING MATERIALS BASED ON INCORRECT CITATIONS, MISSPELLED NAMES OR WORDS, OR INACCURATE TITLES OF STATUTES, CASES, OR REFERENCE SOURCES.

23 A.L.R.4th 1025 (Originally published in 1983)

American Law Reports    The A.L.R. decisions are made current by the weekly addition of relevant new cases.

A.L.R4th
Wade Elmo Wakefield, J.D.

Validity, construction, and application of lost or abandoned goods statutes

# TABLE OF CONTENTS
Article Outline
Table of Cases, Laws, and Rules
Research References

## ARTICLE OUTLINE
I. Preliminary Matters
§ 1[a] Introduction—Scope
§ 1[b] Introduction—Related matters
§ 2. Summary and comment

II. Validity
§ 3. Generally

III. Construction and application of particular terms and provisions
§ 4[a] Terms—"Domestic"
§ 4[b] Terms—"Lost"
§ 4[c] Terms—"Instrument"
§ 4[d] Terms—Other terms
§ 5. Requirement that owner compensate finder
§ 6. Requirement that found property be turned over to authorities
§ 7. Treasure trove
§ 8. Rights of finder of property as against one other than true owner
§ 9. Miscellaneous

Research References

## Table of Cases, Laws and Rules

**Alabama**
Automobile Ins. Co. of Hartford, Conn. v. Kirby, 25 Ala. App. 245, 144 So. 121 (1932) — §§ 5
Frederick v. Sun. 719 So. 2d 133 (Ala. Civ. App. 1998) — §8[d]

**Arkansas**
Terry v. Lock, 343 Ark. 452, 37 S.W.3d 202 (2001) — 2

**California**
Bartlemus v. Doe, 33 Cal. App. 78, 121 P. 516 (1st Dist. 1913) — 5

**California**
Collins v. Wenzel, 136 Idaho 417, 24 P.3d 1100 (Ct. App. 2001) — §5

**Florida**
Rierson v. Doe, 179 So. 2d 190 (Fla. 3d DCA 1980) — 8

**Delaware**
Campbell v. Cochran, 416 A.2d 211 (Del. Super. Ct. 1980) — §§8, 8

**Iowa**
Benjamin v. Lindner Aviation, Inc., 534 N.W.2d 400 (Iowa 1995) — §8[d], 8
De Vaux v. Foster, 292 Iowa 762, 12 N.W.2d 664 (1944) — §8[d], 8[d]
Bledsoe v. Herman, 261 N.W.2d 319 (Iowa 1980) — 8
Flood v. City Nat. Bank of Clinton, 218 Iowa 898, 253 N.W. 509, 93 A.L.R. 1168 (1934) — 3, 8[d]
Slate v. Couch, 720 Iowa 34, 62 N.W.2d 380 (1958) — 8[d]

**Illinois**
Bishop v. Ellsworth, 91 Ill. App. 2d 386, 234 N.E. 2d 49 (2d Dist. 1968) — §8[d], 8
Development Ins. of Wireman v. Plain Interp., Inc., 480 F.2d 486 (7th Cir. 1965) (applying Illinois law) — 8[d]
Paset v. Old Orchard Bank & Trust Co., 62 Ill. App. 3d 534, 19 Ill. Dec. 389, 378 N.E.2d 1264 (1st Dist. 1973) — 8[d]

**Massachusetts**
Treasure and Recover, General v. John Hancock Mut. Life Ins. Co., 388 Mass. 410, 446 N.E.2d 1376 (1983) — §§8, 8

**Michigan**
U.S. v. 5764,500 in U.S. Currency more or less, 291 F. Supp. 24 923 (S.D. Iowa 2004) (applying Michigan law) — 8
Willsmore v. Oceola Tp., 106 Mich. App. 671, 308 N.W.2d 796, 33 A.L.R. 4th 1012 (1981) — §§4, 7, 8

**Missouri**
Foster v. Fidelity Safe Deposit Co., 264 Mo. 89, 174 S.W. 376 (1915) — 8[d]

**Montana**
K.G. v. Smith, 48 Mont. 489, 138 P. 1088 (1914) — 5

**New Hampshire**
Jones v. Smith, 111 N.H. 110, 1146 W.L. 4756 (1866) — 8[d]

**New Jersey**
Ho v. Battin, 333 N.J. Super. 599, 736 A.2d 641 (Ch. Div. 1999) — 3, 8[d]

**New York**
Bldg. v. v. Riverdale Central School Dist., 111 P. Supp. 2d 591, 147 Ed. Law Rep. 570 (S.D. N.Y. 2000) (applying New York law) — 5
Farina v. Bastianich, 33 Misc. 2d 212, 238 N.Y.S.2d 128 (N.Y. City Ct. Ct. 1963) — 8[d]
Ganter v. Kapiloff, 516 A.2d 1093, 45 U.C.C. 24 801 (Sup. 1981) — 8[d]
Georgeatos v. Simmons, 172 Misc. 130, 30 N.Y.S.2d 651 (Sup. 1941) — 8, 8
Hurley v. City of Niagara Falls, 30 A.D.2d 89, 289 N.Y.S.2d 889 (4th Dept. 1968) — 8
Amex v. City of New York, 344 A.D.2d 188, 664 N.Y.S.2d 141 (1st Dept. 1997) — 8[d]
Kaufl v. Roselli, 24 N.Y.2d 63, 356 N.Y.S.2d 425, 312 N.E.2d 167 (1974) — 8[d]
Matteucci v. Farley, 202 A.D. 72, 194 N.Y.S. 586 (1st Dept. 1922) — 6

**Oklahoma**

Manufacturers Safe Deposit Co. v. Cohn, 1955 OK 193, 289 P.2d 648 (Okla 1948) — 6

Ball v. Insurance Co. of North America, 211 Misc. 24 961, 221 N.Y.S.2d 180 (App Term 1961) — 6

Ronshdn't v. Chemical Bank & Trust Co., 91 Misc. 2d 107, 398 N.Y.S.2d 787 (N.Y. City Civ. Ct. 1977) — 4b 1, 4b 1

Vetor v. Bogenli, 56 Misc. 2d 674, 289 N.Y.S.2d 797 (N.Y. City Civ. Ct. 1968) — 6b 1

**Oklahoma**

Morris Co. v. Cockrel, 1955 OK 179, 267 P.2d 223 (Okla. 1953) — 5

Powell v. Four Thousand Six Hundred Dollars (\$4,600.00) U.S. Currency, 1995 OK CIV APP 47, 904 P.2d 153 (Ct. App. Div. 1 1995) — 6b 9

**Oregon**

Brown v. Yom, 16 Or. 249, 20 P. 100 (1888) — 7

Katz v. Weich, 291 Or. App. 47, 403 3 M16z (2012) — 6b 2

**Pennsylvania**

Com. v. \$7,000.00 in U.S. Currency, 742 A.2d 711 (Pa. Commw. Ct. 1999) — 6

**Wisconsin**

Zech v. Accola, 253 Wis. 80, 33 N.W.2d 232 (1948) — 2

---

## I. Preliminary Matters

### § 1[a] Introduction—Scope

The purpose of this annotation[1] is to collect and discuss the state and federal cases wherein the courts determined the validity of, construed, and applied statutes relating to rights of finders of lost or abandoned[2] goods.[3]

Since relevant statutes are stated or discussed herein only insofar as they are reflected in the reported cases within the scope of the annotation, the reader is advised to consult the most recent enactment of the particular jurisdiction in which he or she may be interested.

### § 1[b] Introduction—Related matters

Related Annotations are located under the Research References heading of this Annotation.

### § 2. Summary and comment

Although at common law, the finder of lost property had a duty to look for the owner and was absolutely liable if he delivered it to anyone other than the true owner, the duties and obligations of finders of lost property have been modified by statute in many states.[4] The meaning of various terms in the statutes dealing with the rights and obligations of the finders of lost or abandoned goods has often been challenged by those asserting title to found property. For example, the term "instrument" has been held to apply to a found bearer bond, so that the finder of the bond could not recover it from the police where it had been deposited. In other cases, bonds, coupons, and indicia of commercial indebtedness have also been disposed of in different ways depending on whether they were deemed instruments within the meaning of statutes making a distinction between instruments and other types of found property (§ 4[a] infra). The disposition of other property has also been affected by the interpretation of terms in the statute such as "cashier" and "finder" by the courts (§ 4[b] infra).

Mistaken credits made to a depositor's checking account and assigned traveler's checks have been held not to be property within the meaning of general statutes providing for the disposition of lost or abandoned goods (§ 4[c] infra). Other

---

found property, such as money stolen from its true owner, has been held to be "lost" within the meaning of a statute, although registered and nonnegotiable savings bonds and corporate stock certificates stolen from the owner have been held not to be lost since they were of no value to the finder (§ 4[b] infra). Thus, the meaning and interpretation given by the courts to terms such as "property," "lost," "instrument," "finder," and "cashier" have often been dispositive as to whether the finder of lost or abandoned goods, or some other person or entity, should be allowed to keep the found property.

Some statutes impose upon the owner of lost property a duty to compensate the finder for his costs and expenses in caring for the property (§ 5 infra), while other statutes provide for a reward to the finder. A statute providing that the owner reward the finder has been held constitutional against the contention that it operated to deprive the owner of his property without due process of law (§ 5 infra).

Some statutes require the finder of lost or abandoned goods to turn the found property over to the police or other authorities for a period during which the true owner of the property can return to claim it (§ 6 infra). Other statutes make specific provisions for the disposition of found property in the absence of the true owner (§ 6 infra). Finally, some statutes completely abrogate the common-law concept of treasure trove, while other statutes have been held not to eliminate the common-law rules with regard to property found intentionally concealed or buried (§ 7 infra). It has also been held that the common-law concept of treasure trove has not been adopted in a particular state (§ 7 infra).

---

## II. Validity

### § 3. Generally

### § 3[a] Constitutional

It has been held that a statute providing for a reward to the finder of lost goods or property does not unconstitutionally deprive the true owner of that property without due process of law.

The court in Flood v. City Nat. Bank (1929) 218 Iowa 898, 253 NW 509, reversing the judgment of the trial court, held that a statute requiring the true owner of lost property to reward its finder with 10 percent of its value was not unconstitutional. The court rejected the argument made by a bank, which had had its property returned to it by its finder, that the statute deprived it of its property without due process of law. The court stated that the statute reflected the public policy of the state to provide a reward to the finder of lost goods in order to encourage finders to make contact with true owners, noting that the bank had been benefited by the finder's action in discovering the money which had been lost. Thus, the court stated that since the bank had been benefited it could not be said that the bank was being unconstitutionally deprived of any property which it would have had absent the finder's actions.

---

### CUMULATIVE SUPPLEMENT

**Cases:**

Property owner's insanity in believing that she could protect her family if she left cash on the doorstep of a person believed to be stalking a satellite at her home did not rid the account period of the abandoned property statute which deems the finder of tangible personal property to be the sole owner, if the property is unclaimed for six months. N.J.S.A. 2A:16-1, 2A:16-21, 46A:14-1520; Ho v. Robo, 331 N.J. Super. 399, 756 A.2d 611 (App. Div. 2000).

N.J. Super., 399, 756 A.2d 611 (App. Div. 2000).

**[End of Section]**

---

**[END OF SUPPLEMENT]**

**III. Construction and application of acclaim; intent and provision**

**§ 4[a] Term—"Found"**

**Cumulative Supplement**

In the following cases, the courts construed or applied the term "property" to determine whether certain found items were within the purview of statutes providing for the disposition of lost or abandoned property.

The court in State v Couch (1958) 129 Iowa 56, 93 NW2d 163, held that a lost or abandoned goods statute which provided for a 10-percent reward for one who found lost "property" and returned it to the owner did not entitle the finder of traveler's checks to the reward, since the found check had not been signed by the payee as required and therefore could not be lawfully cashed or negotiated. The court analogized the case to De Voss v Foster (1948) 239 Iowa 762, 31 NW2d 665, 5 ALR2d 684, in which the court determined that the statute did not apply to the finder of lost, incompletable paper.

Stating that money deposited with a bank belongs to the bank and is not the property of the depositor, the court in Rambish v Chemical Bank & Trust Co. (1977) 91 Misc 2d 811, 398 NYS2d 762, held that a depositor whose checking account was credited with a substantial sum was not entitled to that sum under the statute providing for the disposition of lost property. Rejecting the depositor's argument that the funds were "property" that could have been found by him within the meaning of the statute, the court explained that the funds credited to his account were not the property of any true owner but only represented an acknowledgment of a debt owed by the bank.

**CUMULATIVE SUPPLEMENT**

**Case**

"Lost property" is that property which the owner has involuntarily and unintentionally parted with through neglect, carelessness, or inadvertence and does not know the whereabouts. Corliss v Wenner, 34 P.3d 1100 (Idaho Ct. App. 2001), review denied, (Nov. 27, 2001).

Uncashed checks issued by insurer for insurance payments, agents' commissions, salaries, and vendor payments were found to be intangible property subject to Massachusetts abandoned property law, and insurer would be required to report and remit funds to Treasurer and Receiver General of Commonwealth. Treasurer & Receiver General v John Hancock Mut. Life Ins. Co. (1983) 388 Mass 410, 446 NE2d 1376.

Lost property is property that an owner has involuntarily parted possession with through neglect, carelessness, or inadvertence for purposes of statute setting forth responsibilities of finders of goods; put another way, lost property is property which the owner has unwittingly suffered to pass out of his possession, and of the whereabouts of which he has no knowledge. Dr. Ray Sid, 158,665. State v. Wood, 280 Or. App. 67, 466 P.3d 107 (2017).

**End of Section**

**[END OF SUPPLEMENT]**

**§ 4[b] Term—"Lost"**

**Cumulative Supplement**

The term "lost" as used in statutes dealing with lost or abandoned property was construed or applied by the courts with varying results in the following cases.

The court in Automobile Ins. Co. v Kirby (1934) 25 Ala App 245, 144 So 123, reversing the judgment of the trial court, held that a stolen car was "lost" within the meaning of the statute dealing with the rights of finders of lost or abandoned goods, stating that an item could be considered to have been lost if parted with involuntarily and that a stolen item could clearly be considered to have been deposited with involuntarily. Thus, one who discovered a stolen car was entitled to be reimbursed for his expenses incurred in taking care of the vehicle, pursuant to a statutory provision requiring that finder of lost goods to be so compensated.

Reversing the judgment of the trial court, the court in Peet v Old Orchard Bank & Trust Co. (1978) 62 Ill App 3d 434, 19 Ill Dec 389, 378 NE2d 1264, held that a statute providing for the disposition of lost property applied to the situation where an individual discovered currency on the seat of a chair in an examination booth at a safety deposit vault, thus entitling the finder, who had complied with the statutory requirements, to the property as against all others. In reaching that result, the court rejected the bank's argument that the currency was not "lost" as meant by the statute. The court construed the statute liberally in harmony with its purpose of providing incentives for a finder to report discovery of lost goods by rewarding the finder if the true owner does not appear within the statutorily determined time limit. The court also asked that the finder of the currency did not appear within the statutory time, and there was no evidence that the property did not belong to a finder who was also entitled to the money's discovery of the lost currency and none of those individuals who claimed the vault on the day of, or the day preceding, the discovery of the lost currency had stepped forward to assert their own title to it.

Reversing the judgment of the trial court, the court in Flood v Cox Mut. Bank (1930) 218 Iowa 898, 251 NW 560, held that money which was stolen from a bank and later recovered by an individual who found the property in a junkyard, where it had been buried by the thieves was "lost" property within the meaning of the statute which provided that the finder of lost property should recover 10 percent of its value as a reward. The court rejected the bank's argument that the property was not lost since it had been intentionally hidden by the robbers, stating that the robbers were not the owners of the property and that the bank, during the time that the money was gone, had no knowledge or control over its whereabouts.

In De Voss v Foster (1948) 239 Iowa 762, 31 NW2d 665, the court held that seven bank stock certificates and United States savings bonds could not be "lost" within the meaning of a statute providing for a reward for the individual finding lost property and returning it to its rightful owner. Noting that the certificates and bonds only represented the obligation on the part of the issuers to pay the holders, and that the right of the holders to be paid had not been affected by the theft of the paper in question, the court stated that the finder had not found anything that was truly lost. The court distinguished Flood v Cox Mut. Bank (1930) 218 Iowa 898, 251 NW 560, supra, in which an individual was given a reward for finding money which had been stolen from a bank, with the court noting that in that case the individual had found currency, which was specifically mentioned in the statute as being the kind of lost property for which a reward would be appropriate.

The court in Brisbee v Hermes (1890, Iowa) 261 NW2d 319, held that a cache of money which was discovered by a tenant in the midst of pieces of wood and other debris in the house's basement was "lost" within the meaning of a statute providing for the disposition of lost or abandoned property. The court stated that property is considered to be lost when the owner involuntarily and unintentionally parts with its possession and that it was clear from the negligence of the owner of the money, who had indicated that she did not know the money was going to be draining the basement before the money testimony of the other tenant, who was informed that the finder was going to be cleaning the basement before the money

Validity, construction, and application of lost or abandoned... 25 A.L.R.6th 1025...

7

---

Validity, construction, and application of lost or abandoned... 25 A.L.R.6th 1025...

8

tions, rather than at the time of finding the property in question. Thus, the court concluded that the statutory amendment was designed to avoid the effect of the decision in *Kaehn v Russell* (1974) 34 NYS2d 66, 336 NYS2d 29, 319 NE2d 147, **supra**, which had held that the finder of a master bond could never recover that bond from the statute required such instruments to be held by the police until delivered to "the person entitled thereto."

## § 4[d] Terms—Other terms

### [Cumulative Supplement]

The court in the following cases construed or applied other terms used in statutes providing for the disposition of lost or abandoned property.

Stating that the burden would be upon the state to prove by a preponderance of the evidence that money found by a police informant was stolen within the meaning of a statute providing for the disposition of lost or abandoned property, the court in *Dumbak v Cochran* (1988, Ind) 416 A.M 311, construed the finder's action for the return of the money to the trial court for a determination of whether it was "stolen," also the statute provided for a distinct disposition of stolen money, which, in the absence of the true owner, would become the property of the state police retirement fund one year after being found.

A taxicab driver who took possession of a bracelet from one of the passengers who had discovered the bracelet lying on the back seat of the taxicab was held by the court in *Forman v Russell* (1982) 93 Misc 2d 117, 29 NYS2d 128, entitled to the return of the bracelet from the police department where he had deposited it in compliance with the statutory requirement that any lost property be turned over to the police for a period during which the true owner may return and claim it, rejecting the police department's argument that the driver was not the true "finder" of the bracelet since his passenger first discovered it and turned it over to him. The court said that the statute apparently intended that the "finder" of lost goods be the one who takes possession of the goods for the purpose of depositing them with the police. In addition, the court stated that the passenger was clearly a finder within the meaning of the statute and that her relinquishing the goods to the driver constituted an assignment of her right or interest in the bracelet. The court noted that a particular section of the statute specifically recognized the right of an assignee to claim delivered property from the police department.

## CUMULATIVE SUPPLEMENT

**Cases:**

Illinois law is not "finders keepers," where the property found has been abandoned, which is to say unless relinquished, not merely lost or misplaced. *Paulson Inc. of Wisconsin v Theimann, Inc.*, 460 F.3d 346 (7th Cir. 2006) (applying Illinois law).

Claimant failed to satisfy his burden of demonstrating entitlement to currency found in bag on front seat of livery cab, two officers submitted uncontested affidavits establishing that they retrieved bag from cab and vouchered it as "found property" after claimant, a passenger in cab, disclaimed ownership of bag or knowledge of its contents. *New York City Administrative Code*, § 14-140, subd. f. *Rose v City of New York*, 264 A.D.2d 108, 684 N.Y.S.2d 111 (1st Dept 1977), leave to appeal denied, 91 N.Y.2d 805, 670 N.Y.S.2d 402, 693 N.E.2d 750 (1998).

Two automobile passengers who came across currency scattered along roadway and, after reporting discovery to police, returned to money's location in order to secure area and prevent others from taking or disturbing currency, qualified as "finders" under state lost-property statute, although they did not actually pick up money, as they "took charge" of

---

aconu, *Powell v Four Thousand Six Hundred Dollars United States Currency* (1995, Okla App) 904 P2d 153, cert den (Sep 26, 1995).

## End of Section

### [END OF SUPPLEMENT]

## § 5. Reimbursement of finder; other terms

In the following cases, the court construed or applied statutory provisions regarding an owner to compensate the finder of his lost or abandoned property for the finder's costs and expenses in taking charge of the property and caring for it.

Reversing the judgment of the trial court, the court in *Automobile Ins. Co. v Kirby* (1931) 25 Ala App 245, 144 So 123, held that an individual who discovered a car which had been stolen from its rightful owner in a distant city and took charge of that car was entitled to be reimbursed for his costs in towing the car at the request of a distant city owner, and ordered the return of the reward to the insurance company for the true owner which had paid the reward and the towing and garage fees under protest.

See *Boehhimer v Dort* (1917) 22 Cal App 79, 137 P 531, in which the court said that the existence of a statute providing for a reward to the finder of lost property did not affect the liability of the owner on a contract arising from his offer of a reward for the return of lost property and the acceptance of such offer by the finder. Thus, the court stated that the statutory requirement that the owner of lost goods compensate the finder for his expenses in taking charge of and caring for the property was entirely independent of, and could have no effect on, the owner's contractual duty to pay the reward that the owner had offered to pay to the finder of her lost jewelry.

Remanding to the trial court for a determination of the value of labor and food provided by the finder in caring for lost sheep, the court in *Kirk v Smith* (1914) 45 Mont 489, 139 P 1002, held that lost goods statute considered did not provide for the recovery of a reward by the finder of any lost goods, but was only intended to provide for compensation to a finder of his reasonable costs and expenses incurred in taking and caring for the property. Stating that the law does not give something for nothing, the court rejected the theory that the finder of the sheep should be entitled to special compensation beyond the theory than was recoverable, in directing toward consideration, noting that the law, except in those rare cases where punitive damages are recoverable, is directed toward a determination of the matter apart and that the individual who found the strayed cattle could be restored to the status quo by having his costs reimbursed.

An individual who had taken charge of a stolen vehicle when it was found abandoned and towed it to his garage at the direction of the police was held by the court in *Morel Ins. Co. v Cochran* (1995, Okla) 255 P2d 252, to be entitled to compensation for his services performed in preserving and protecting the stolen vehicle pursuant to a statute providing that the finder of a lost thing should be compensated for expenses incurred. Thus, the court stated that a finder of a lost thing was a bailee for hire of the true owner.

## § 6. Reimbursement that found property be turned over to authorities

### [Cumulative Supplement]

The courts in the following cases considered the effect of a statutory requirement that the finder of lost or abandoned property must turn the property over to either the police or to other authorities to allow the true owner time to return and claim the property.

Validity, construction, and application of lost or abandoned..., 23 A.L.R.4th 1032...

The finders of a cache of gold coins were held to have acquired no right to the coins under a statute dealing with lost and abandoned goods in J.Jay. v. Lund (1943) 61 Cal.App.2d 24, 141 P.2d 27, since the finders failed to make a list of the property they found for deposit with the clerk of the court. Therefore, the court said that it was appropriate for the trial court to decide under general legal principles the ownership of the property and to grant to the owners of the property title to the receipt which the finders had received acknowledging their deposit of the gold coins with the government.

Reviewing the judgment of the trial court, the court in Melerski v. Parks (1922) 203 App.Div. 27, 196 NYS 469, held that a police officer who, while off duty, discovered on the street 14 apparently lost liberty bonds, and who turned these bonds over to his lost and found regulations of his police department, was an official statutory bailee entrusted with the value and regulations of true statutory property. There, was not of duty when he found the bonds, and so he would not be required to abide by the police department's rules. The court said that the duty of the police department to dispose of by public auction and the proceeds thereof turned over by policemen upon discovery should be delivered to the true owner if known... the court rejected the argument that the policeman should have been intended to be the ultimate beneficiary of the property. The court rejected the argument that the policeman should have been the individual officers discovering the property. The court said that the rules and regulations of the police department that the individual duty, in any case, was to comply with the rules and regulations of the police department.

It was held in Carrameno v. Simon (1941) 177 Misc 330, 30 NYS2d 464, that a statute requiring notice or attested proof to be given over to the police property clerk to enable the true owner to be ascertained by advertisement did not require found property to be turned over as well.

In Manufacturers Sub Deposit Co. v. Colou (1948) 193 Misc 900, 85 NYS2d 650, revd on other grounds 277 App.Div. 54, 98 NYS2d 457, the court held that the applicable lost or abandoned goods statute required "any person who finds any lost money or property" to turn that property over to the property clerk of the public department and rejected the suggestion that a distinction should be made between property found in public or private places or partial or semi-quasi-public places. The court stated that the obligation to report was plainly stated and should have been complied with and ordered a bank to whom a safety deposit box with the contents had been found to turn it over to the property clerk for the purpose of determining whether the true owner of the property could be found. The court also stated that the words "money or property" in the statute should be construed to mean lost in the genesis of those sense and that no distinction should be made for the purpose of the statute between lost and mislaid property.

The court in Edit v. Insurance Co. of North America (1961) 33 Misc 2d 561, 221 NYS2d 810, held that a criminal statute requiring the deposit of lost goods or mislaid articles for failure to report the discovery of the goods to the police and to make a deposit of the goods with the police property clerk within 10 days of finding did not prevent the finder of a bar ring from asserting title to it pursuant to the common-law rights, and stated that in the absence of a true finder's conviction for violating the statute, he would have an insoluble interest in the found ring and would be presumed to have found it under innocent circumstances.

**CUMULATIVE SUPPLEMENT**

**Cases**

See Treasury & Receiver General v John Hancock Mut. Life Ins. Co. (1983) 388 Mass 410, 446 NE2d 1376, § 4[a].

Police officer lacked standing to contest forfeiture of $7,800 in cash he found in the middle of a borough road while on duty, in that he had no right to the money under the Escheat Act, regardless of whether money was "lost" or "abandoned"; the property was insufficient to support a conviction of its theft.

Validity, construction, and application of lost or abandoned..., 23 A.L.R.4th 1032...

public faith in law enforcement would be undermined by allowing the officer to assert a claim against the property. 72 P.S. § 1301.1. Com. v. $7,000.00 U.S. Currency, 742 A.2d 711 (Pa. Commw. Ct. 1999).

**[Top of Section]**

**[END OF SUPPLEMENT]**

**§ 7. Treasure trove**

The court in the following cases construed the application or effect of the common-law doctrine of treasure trove.

In Williams v Creel (1961) 106 Mich.App 671, 308 NW2d 156, 23 ALR4th 1032, the facts of which are fully discussed in a super-limit, the court rejected the argument that certain money, which had apparently been buried and concealed for only a short time, should be the also and over the concealment of treasure trove. Buried, and that decision had never been since abandoned and the man ... that, on the facts, it had, the doctrine of treasure trove would operate against its application in the present case, the court ruled that the right of parties were governed by the applicable lost goods statute.

Concluding that lost money met the common-law definition of treasure trove, the court in Zornes v Vorga (1888) 16 Or 268, 20 P 269, held that a statute providing for the disposition by the finder of lost goods did not apply to the situation where the finder discovered lost currency buried in a glass jar on ... there. Thus, the court stated that the finder of certain property which had been buried beneath the floor of a barn was not enabled to take possession of that property as against the true owner, even though the finder complied with all the statutory requirements concerning lost property. In addition, the court stated that the finder of the property could not be held liable for conversion under the criminal statute since he had, apparently, believed that he was complying with the statutory requirement when he notified the clerk of the county of his discovery of the property.

The court in Zech v Accola (1946) 253 Wis 80, 33 NW2d 232, held that the common-law concept of treasure trove had not been superseded by a statute providing for the disposition of lost goods which required the finder of lost goods to post notice of their discovery. Thus, the court stated that the finder of paper currency concealed by the true owner in a half of rags was not entitled to the possession of the currency where the true owner could not be found.

**§ 8. Rights of finder of property as against one other than true owner**

**[Cumulative Supplement]**

In the following cases, the courts construed or applied particular statutory provisions in determining whether the finder, or other claimants, should succeed to the title to lost or abandoned property or other claimants.

Citing a particular statute giving the finder of lost money the right of possession against all the world except the true owner, the court in Paset v Old Orchard (1949) 62 Cal.App.3d 881, 147 P2d 685, sustained a defendant's conviction of stealing the property in question from the finder, rejecting the defendant's argument that the finder's ownership interest in the property was insufficient to support a conviction of its theft.

A statute providing for the disposition of "any lost, abandoned or stolen money" was held by the court in Chisholm v Cochran (1960, Del) 164 A2d 211, to not require the "good faith" delivery of any found money to the state or its agent with the court also holding that the failure to deliver money found would not preclude the finder from asserting rights to the money superior to that of any but the true owner. Thus, the court stated that the plaintiff, who had discovered the...

money while acting as an informer for the police, was entitled to possession of the money pursuant to the statute since he had complied with the requirement that the true owner of the money not be located within one year from its discovery.

A statute providing that title to all personal property found in a public place be vested in "the finder unless the same be called for or claimed by the rightful owner thereof within 6 months after the finding thereof" was held by the court in Paset v. Old [1980, Ill. App.], 390 N.E.2d 500, to require the true owner to call for or claim the property within 6 months after the finding so that an owner who had made a complaint with the hotel employees was not entitled to return of the property since it was discovered by a third party, the hotel employees, and the court reversed the trial court, concerning the lost property before. It was discovered by the court, the court reversed the trial court, which had denied judgment in favor of the true owner who had failed to inquire about his lost property until 13 months after the finding and more than 7 months after a register was said filed for its return by the finder.

Reversing the judgment of the trial court, the court in Bishop v. Ellsworth [1980], 9 Ill.App.2d 365, 324 N.E.2d 49, held that the statute governing the procedure whereby a discoverer of "lost" property could be vested with the ownership of the lost property over an against the true owner did not (cutoff) abrogate the common law with respect to discovered property since the statute assumed that the discoverer had a right to to whom he or she was when he or she was the discovered the lost property. Noting then the presumption that the owner or occupant of land or premises has custody of property found on it or actually embedded in the land, the court ruled that since the owner of the land upon which the lost property was discovered asserted that the discoverers of the lost property would be here and had no rights on the property, the property owner's right to the lost property discovered on his land could not be abrogated by the terms of the statute.

The court in Willsmore v. Oceola [1980], 106 Mich.App. 671, 308 N.W.2d 796, 23 A.L.R.4th 1012, held that where lost goods statute was applicable to the situation where an individual, while hauling on another's unposted and unoccupied land, found a case full of money concealed beneath some brush on the property. The court rejected the argument that the finder, as a trespasser, was not entitled to recover the property, stating that particularly in the instant situation where the property was unoccupied and unposted there would be little danger of people escaping in inappropriate behavior in order to become "finders" under the provisions of the act. The court also noted that the finder immediately commenced the statute police concerning his find and that he complied with all the notice and publicity provisions of the lost goods statute so that the public benefit of encouraging finders of lost goods to seek out the true owners thereof was served.

A statute eliminating the distinction between lost and mislaid property for the purpose of determining whether the finder of money or the owner of the property on which the money is found has superior rights to it was held by the court in Hurley v. Niagara Falls [1968, 4th Dept], 30 App.Div.2d 89, 289 N.Y.S.2d 889, affd 21 N.Y.2d 457, 30 N.Y.S.2d 469, 241 N.E.2d 917, reversing the judgment of the trial court on the ground that the finder of lost property has rights superior thereto as against all the world but the true owner. Thus, the court said that an individual who was employed to build a recreation room and who discovered a large amount of currency while attempting to remove a pipe in the basement of the room on which he was working was entitled to its given the money by the police upon the expiration of the statutory waiting period, and no other party had come forward asserting title to the lost currency. The court rejected the homeowners' argument that the currency should properly belong to them since it was mislaid rather than lost, and, under the common law, a mislaid property is presumed to have been left with the owner of the owner of the premises upon which it is found, with that court noting that the statute had been designed to abrogate the common-law rules concerning lost and abandoned property.

The court in Campagna v. Simone [1941], 177 Misc.359, 30 N.Y.S.2d 665, held that a large diamond which had been found and turned over to a police property clerk, as required by the statute dealing with the disposition of lost or abandoned property, belonged to the finder and not to the police since the finder of lost property has a right to it superior to that of all others but the true owner.

13

---

## CUMULATIVE SUPPLEMENT

**Cases:**

Currency found in airplane wing by aircraft mechanic was "mislaid" rather than "lost" property, as result of which statute governing lost property was inapplicable, and currency belonged not to mechanic as finder, but, rather, to bank that had repossessed plane at time currency was found, actual owner not having put in claim for it. Benjamin v. Lindner Aviation [1995, Iowa] 534 N.W.2d 400.

Under Michigan law, the finder of abandoned property has a superior claim to said property than does the owner of the locus in quo. M.C.L.A. § 434.21 et seq.; U.S. v. $765,128 in U.S. Currency, Morr.et Loc, 297 F. Supp. 24 971 [S.D. Iowa 2003] (applying Michigan law).

[End of Section]
[END OF SUPPLEMENT]

### § 9. Miscellaneous

[Cumulative Supplement]

The following authority adjudicated other construction and application issues concerning lost or abandoned goods statutes.

## CUMULATIVE SUPPLEMENT

**Cases:**

The right of a finder of property depend on how the found property is classified, and the character of the property should be determined by evaluating all the facts and circumstances present in the particular case. Terry v. Lock, 343 Ark. 452, 37 S.W.3d 202 [2001].

Under New York law, at time property is found, finder acquires no right to property; all he has is expectation, which may ripen into possessory right at end of prescribed time period, provided that owner has not come forward and that finder makes demand therefor. N.Y.McKinney's Personal Property Law § 252; Bolmino v. Hartford Central School Dist., 113 F. Supp. 2d 591, 147 Ed. Law Rep. 572 [N.D.N.Y. 2000] (applying New York law).

Statute, setting forth responsibilities of finders of money or goods, places a burden on the finder of lost property to discover the owner of the property when the property owner is unknown as in the property's finder; however, if the owner of the lost property is known to the finder, statute does not apply. Or. Rev. Stat. § 98.005; Staev v. Woods, 28 Or. App. 61, 461 P.2d 6 [2017].

[End of Section]
[END OF SUPPLEMENT]

—

14

## RESEARCH REFERENCES

**West's Key Number Digest**

- West's Key Number Digest, Abandoned and Lost Property ⚲19
- West's Key Number Digest, Abandoned and Lost Property ⚲11
- West's Key Number Digest, Abandoned and Lost Property ⚲12
- West's Key Number Digest, Abandoned Property ⚲399
- West's Key Number Digest, Constitutional Law ⚲121
- West's Key Number Digest, States ⚲1
- West's Key Number Digest, States ⚲1
- West's Key Number Digest, United States ⚲91

**Primary Authority**

- 88 U.S.C.A. 310

**A.L.R. Library**

- A.L.R. Quick Index, Abandonment
- A.L.R. Quick Index, Lost Property
- A.L.R. Quick Index, Money or Goods
- A.L.R. Quick Index, Personal Property
- A.L.R. Quick Index, Title and Ownership
- A.L.R. Federal Quick Index, Abandonment, Lost, and Unclaimed Property
- A.L.R. Federal Quick Index, Escheat
- A.L.R. Federal Quick Index, Goods and Merchandise
- A.L.R. Federal Quick Index, Property
- A.L.R. Federal Quick Index, Title and Ownership

What is "Property of Another" Within Statute Proscribing Larceny, Theft, or Embezzlement of Property of Another, 57 A.L.R.6th 445

Validity, Construction, and Application of State Statutes Implementing the Uniform Unclaimed Property Act or its Predecessor—Modern Status, 29 A.L.R.6th 297

Modern status of rule as to ownership of treasure trove and contest of property as which found, 61 A.L.R.4th 1180

---

Validity, construction, and application of lost or abandoned..., 25 A.L.R.6th 1625...

Validity, construction, and application of lost or abandoned..., 25 A.L.R.6th 1625...

**Legal Encyclopedias**

- Am. Jur. 2d, Abandoned, Lost, and Unclaimed Property §§ 1-9
- Am. Jur. 2d, Banks § 12

**Trial Strategy**

- Abandonment of Durable Personal Property, 33 Am. Jur. Proof of Facts 3d 485

**Forms**

- 1 Am. Jur. Legal Forms 2d, Abandoned, Lost, and Unclaimed Property §§ 11:9-11:23, 28, 31
- 16 Am. Jur. Legal Forms 2d, Recent § 223:215
- 1 Am. Jur. Pleading and Practice Forms, Abandoned, Lost, and Unclaimed Property, Forms 1-14

**Additional References**

- Boolean Search Query: compile or apply or valid or invalid or construe or interpret or scope or purpose or meaning w/5 statute or law or regulation or provision or code w/15 stray or theft or abandon w/3 property or goods

Westlaw. © 2011 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

**Footnotes**

1    The present annotation supersedes the annotation at 92 A.L.R. 1135, entitled "Constitutionality, construction, and application of statutes providing for reward to finder of lost property," but is not limited in its scope to the issues discussed in the superseded annotation.

2    Specifically excluded from the scope of the present annotation are those cases arising under the Uniform Disposition of Unclaimed Property Act.

3    Only those cases discussing statutes dealing with lost or abandoned goods in the most general or generic sense have been included herein, and specifically excluded from the scope of this present annotation are those statutes regarding the finding of specific property, as, for example, those statutes

governing bank or broker deposits, or those statutes discussed in the annotation at 47 A.L.R.3d 1164, entitled "Rights of one who acquires bag or stolen treasure trove check."

4    See Abandoned, Lost, and Unclaimed Property § 28.

    But see Demeter v. Woods (1981) 106 Misc. 2d 1000, 436 NYS2d 891, infra, which reflects a statutory change making bearer bonds property rather than instruments.

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.    17

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.    18

88 A.L.R.3d 1399 (Originally published in 1978)

American Law Reports    The ALR databases are made current by the weekly addition of relevant new cases.

ALRM

Kristine Cordier Karnezis, J.D.

Robbery, attempted robbery, or assault to commit robbery, as affected by intent to collect or secure debt or claim

## TABLE OF CONTENTS

Article Outline
Index
Table of Cases, Laws, and Rules
Research References

## ARTICLE OUTLINE

I Preliminary Matters
§ 1[a] Introduction—Scope
§ 1[b] Introduction—Related matters
§ 2[a] Summary and comment—Generally
§ 2[b] Summary and comment—Practice pointers

II General rule
§ 3 Rule that taking with bona fide intent to collect or secure debt or claim will not defeat robbery charge
§ 4[a] Rule that taking with bona fide intent to collect or secure debt or claim, will defeat robbery charge—Generally
§ 4[b] Rule that taking with bona fide intent to collect or secure debt or claim, will defeat robbery charge—Exception to rule where more than is due is taken
§ 4[c] Rule that taking with bona fide intent to collect or secure debt or claim, will defeat robbery charge—Exception to rule where claim is for unliquidated damages

III Particular property taken or sought
§ 5[a] Money, generally—Conviction upheld
§ 5[b] Money, generally—Conviction overturned
§ 6[a] Compensation for services—Conviction upheld
§ 6[b] Compensation for services—Conviction overturned
§ 7[a] Property other than money—Conviction upheld
§ 7[b] Property other than money—Conviction overturned

Research References

## INDEX

Agent acting on behalf of owner, principle of robbery as applying to § 5[a]
Alcohol, debt owed for § 5[a]
Anti-poverty program, compensation fees for services regarding § 6[a]

Automobiles, debts owed in connection with §§ 5[a], 6[a], 7[a]
Barroom fight, robbery in connection with § 5[a]
Bona fide intent to collect or secure debt or claim as affecting robbery charge §§ 3 et seq.
Cash register, compensation for wages due taken from § 6[a]
Cattle, debts involving §§ 5[b], 7[a]
Checks, fees used in writing of §§ 5[a], 6[a]
Comment § 2
Compensation for services as property taken or sought § 6
Consolation fees, compensation for § 6[a]
Conviction in rule where claim is for unliquidated damages § 4[c]
Damages, exception to rule where claim is for unliquidated damages § 4[c]
Death in connection with collection of wages due § 6[b]
Debt, debt owed for killing of §§ 5[b], 7[a]
Debt, claim owed for §§ 5[b], 7[a]
De property, taking of property without § 3
Due, personal of that, obtaining of property without § 3
Electric range relation under written lease contract § 7[b]
Excess of amount due, taking of property in §§ 4[b], 5, 6[b]
Exchange of property, taking of money after refusal to § 5[a]
Fictitious name used in collection of debt § 5[a]
General rules §§ 3, 4
Groceries, use of force as evidenced by snatching of § 5[a]
Introduction § 1
Jewelry taken as compensation § 7[a]
Keys to truck, question of claim of right in taking of § 7[a]
Killing of dog, debt owed for §§ 5[b], 7[a]
Lease contract, property retaken under provisions of written § 7[b]
Machinery and pumps retaken under written lease contract § 7[b]
Mare pledged as security for debt, taking of § 7[b]
Marijuana, money owed for sale of § 5[a]
Medical situation, money taken to pay for § 5[a]
Metal, threatening with piece of § 5[a]
Money as property taken or sought § 5
Meeting regarding anti-poverty program, consolation fees in connection with § 6[a]
Mule, money pledged as security for purchase of § 7[a]
Names, use of fictitious names in collection of debt § 5[a]
Note offered in lieu of cash § 5[b]
Particular property taken or sought §§ 5-7
Personal injuries, money taken in payment for § 5[a]
Physician, compensation taken as compensation for § 6[a]
Pledge for indebtedness, property taken as §§ 6[c], 7[b]
Pledge of property § 7[b]
Preliminary matters §§ 1, 2
Property other than money taken or sought § 7
Pumps and machinery retaken under written lease contract § 7[b]
Range, electric range retaken under provisions of written lease contract § 7[b]
Refusal, taking of money after refusal of § 5[a]
Related matters § 1[b]
Ring and watch taken as compensation for services above § 7[a]
Scope of association § 1[a]

Services, compensation for services as property taken or sought 1.6
Sexual favors, repayment of debt with § 3[a]
Shirt, compensation for debt owed in connection with § 3[a]
Shoes, sneakers relating to purchase of § 3[b], 7[a]
Summary 12
Tort claim as unliquidated damages §§ 9[a], 9[a]
Transportation of passenger, amount owed for § 6[a]
Truck, question as to good faith claim of right in taking of 1.7[b]
Uniform Commercial Code, extent of party taking possession of collateral under provision of 13
Vague statement as property taken or sought 1.6
Watch and ring taken as compensation for stolen sheet 1.7[b]
Wife, property taken as compensation for sexual assault on § 3[a]
Window fan, debt owed for purchase of § 3[b]
Wood, amount owed for purchase of § 3[b]

---

**Table of Cases, Laws, and Rules**

**Second Circuit**
Lebron v. Mann, 944 F. Supp. 160 (D.D. N.Y. 1996) — 3

**Third Circuit**
U.S. v. Nedley, 126 F.2d 200 (3d Cir. 1957) — 2

**District of Columbia Circuit**
Richardson v. United States (1968) 131 App DC 168, 403 F2d 574 — 4[a]

**Alabama**
Barry v. State, 45 Ark. 138, 417 P.2d 203 (1933) — 4[a]
State v. Romero, 128 Ariz. 55, 623 P.2d 1251 (Ct. App. Div. 2 1981) — 4[a]
State v. Hardin, 92 Ark. 44, 486 P.2d 406 (1963) — 4[a]

**California**
People v. Butler, 65 Cal. 2d 569, 55 Cal. Rptr. 511, 421 P.2d 703 (1967) — 4[a], 4[b]
People v. Rosen, 11 Cal. App. 2d 195, 161 P.2d 217 (2d Dist. 1945) — 4[a]
People v. Gallegos, 130 Cal. App. 2d 232, 278 P.2d 771 (1954) — 4[a]
People v. Zambrana, 133 Cal. App. 2d 526, 314 Cal. Rptr. 515 (2d Dist. 1967) — 4[a], 4[b], 2[a]
People v. Tufunga, 21 Cal. 4th 467, 87 Cal. Rptr. 2d 739, 987 P.2d 168 (1999) — 4[a], 2[b]
People v. Sanders, 82 Cal. App. 469, 255 P. 836 (1st Dist. 1927) — 4[a], 2[b]
People v. Smith, 177 Cal. App. 4th 1478, 100 Cal. Rptr. 3d (4th Dist. 2009) — 4[a]

**Colorado**
Alvillar v. People, 62 Colo. 74, 188 P. 212 (1920) — 4[a], 2[b]
People v. Collins, 130 Colo. 212, 274 P.2d 608, 44 A.L.R.2d 1224 (1954) — 4[a], 4[b]
People v. Moseley, 193 Colo. 256, 566 P.2d 331 (1977) — 4[a]

**District of Columbia**
Smith v. U.S., 530 A.2d 1180 (D.C. 1978) — 4[a], 2[b]

**Florida**
Thomas v. State, 584 So. 2d 1022 (Fla. 1st DCA 1991) — 2

**Georgia**
Crawford v. State, 90 Ga. 701, 17 S.E. 628 (1893) — 2
Handy v. State, 265 Ga. App. 791, 595 S.E.2d 570 (2004) — 2
Halbert v. State, 3 Ga. App. 262, 60 S.E. 86 (1908) — 3, 3[b]
Moore v. State, 186 Ga. App. 154, 367 S.E.2d 283 (1988) — 2
Rentz v. State, 87 Ga. App. 154, 73 S.E.2d 224 (1952) — 2

**Hawaii**
State v. Brom, 102 Haw. 314, 126 P.3d 357 (2006) — 7[a]

**Illinois**
People v. Banks, 32 Ill. App. 3d 691, 336 N.E.2d 192 (5th Dist. 1975) — 3, 3[a]
People v. Robinson, 360 Ill. 214, 195 N.E. 670 (1935) — 7[a]
People v. Uselding, 107 Ill. App. 2d 305, 247 N.E.2d 347 (1st Dist. 1969) — 3, 3[a]

**Indiana**
Cates v. State, 275 Ind. 395, 417 N.E.2d 340 (1981) — 7
Rooks v. State, 539 N.E.2d 1297 (Ind. 1989) — 2

**Iowa**
State v. Holbruner, 41 Iowa 200, 1875 WL 408 (1875) — 4[a], 2[b]
State v. Kobylasz, 242 Iowa 1161, 47 N.W.2d 167 (1951) — 4[a], 4[b]

**Kansas**
State v. Conner, 198 Kan. 601, 772 P.2d 202 (1989) — 3[a]
State v. Pierce, 208 Kan. 19, 490 P.2d 584 (1971) — 3[a]
State v. Russell, 217 Kan. 481, 536 P.2d 1392 (1975) — 3, 3[a]

**Kentucky**
Lawry v. Com., 344 Ky. 53, 101 S.W.2d 662 (1937) — 4[a], 2[b]

**Massachusetts**
Com. v. Homer, 235 Mass. 526, 127 N.E. 517 (1920) — 7[a]
Commonwealth v. White, (1977, Mass Apps) 1977 Adv Sheet 835, 363 N.E.2d 1365 — 3[b], 4[a], 4[b]

**Michigan**
Driscoll v. People, 47 Mich. 413, 11 N.W. 221 (1881) — 4[a], 2[b]
People v. Malmum, 392 Mich. 156, 381 N.W.2d 343 (1975) — 4[a]
People v. Karasek, 63 Mich. App. 706, 234 N.W.2d 761 (1975) — 4[a]

**Mississippi**
Harris v. State, 176 Miss. 794, 170 So. 526 (1936) — 7[a]
Thomas v. State, 165 Miss. 897, 148 So. 225 (1933) — 4[a], 2[b]
Williams v. State, 317 So. 2d 425 (Miss. 1975) — 4[a], 4[b], 2[b]

**Missouri**
State v. Brown, 104 Mo. 365, 16 S.W. 406 (1891) — 4[a], 2[b]
State v. Carroll, 168 Mo. 364, 68 S.W. 1061 (1901) — 4[a], 4[b], 2[b]
State v. Calloway, 281 Mo. 252, 218 S.W. 861 (1922) — 2[b]
State v. Hart, 75 S.W.2d 1001 (Mo. 1928) — 2[b], 2[b]

**New Jersey**
State v. Deli, 299 N.J. Super. 128, 611 A.2d 872 (Law Div. 1992) — 3, 2[a]

**Ohio**
State v. Osborne (1816, Ohio) Tappan 68 — 3[a]
State v. Snowden, 7 Ohio App. 3d 358, 455 N.E.2d 1058 (10th Dist. Franklin County 1982) — 4[a]

**New York**
People v. Ahumhua, 76 A.D.3d 1197, 908 N.Y.S.2d 184 (2d Dept. 2010) — 3
People v. Castro, 131 A.D.2d 669, 516 N.Y.S.2d 381 (2d Dept. 1992) — 7[b]
People v. Chess, 177 A.D.2d 470, 576 N.Y.S.2d 254 (1st Dept. 1991) — 3
People v. Davi, 177 A.D.2d 386, 568 N.Y.S.2d 19 (1st Dept. 1991) — 3
People v. Green, 5 N.Y.3d 538, 807 N.Y.S.2d 321, 841 N.E.2d 289 (2005) — 7[b]
People v. Hubbard, 115 A.D.3d 696, 982 N.Y.S.2d 132 (1st Dept. 1987) — 3[b]
People v. Penn, 19 N.Y.3d 457, 949 N.Y.S.2d 336, 972 N.E.2d 509 (2012) — 3[b]
People v. Reid, 69 N.Y.2d 469, 515 N.Y.S.2d 750, 508 N.E.2d 661 (1987) — 3[b]
People v. Winslow, 51 A.D.2d 424, 379 N.Y.S.2d 555 (3d Dept. 1976) — 6[a], 7[b]

**Oklahoma**
Blarn v. State, 31 Okla. Crim. 124, 202 P. 1102 (1921) — 3[a]
Johnson v. State, 24 Okla. Crim. 326, 218 P. 179 (1923) — 2
Kenny v. State, 50 Okla. Crim. 138, 206 P. 100 (1931) — 3, 4[b], 5[b]
Tipton v. State, 21 Okla. Crim. 86, 212 P. 612, 31 A.L.R. 1074 (1922) — 3, 3[b], 7[a]
Tinker v. State, 95 Okla. Crim. 231, 242 P. 815 (1952) — 3, 5[a]

**Oregon**
State v. Martin, 15 Or. App. 498, 516 P.2d 753, 83 A.L.R.3d 1302 (1973) — 3, 6[a]
State v. Trujillo, 7 Or. App. 236, 489 P.2d 977 (1971) — 5, 6[b], 6[a]

**Pennsylvania**
Com. v. English, 446 Pa. 161, 279 A.2d 4 (1971) — 3[b]
Com. v. Sleighter, 495 Pa. 262, 433 A.2d 469 (1981) — 3[b]

**Tennessee**
Elliott v. State, 2 Tenn. Crim. App. 418, 454 S.W.2d 187 (1970) — 3, 3[b]
State v. Smith, 751 S.W.2d 468 (Tenn. Crim. App. 1988) — 2

**Texas**
Barnes v. State, 88 Tex. Crim. 368, 225 S.W. 317, 12 A.L.R. 167 (1921) — 3
Butts v. State, 151 Tex. Crim. 172, 206 S.W.2d 599 (1947) — 3, 6[b], 6[a]
Coffey v. State, 800 S.W.2d 957 (Tex. App. Houston 14th Dist. 1990) — 2
Crawford v. State, 502 S.W.2d 383 (Tex. Crim. App. 1970) — 3, 3[b]
Fetts v. State, 51 Tex. Crim. 41, 100 S.W. 916 (1907) — 3
Franze v. State, 100 Tex. Crim. 432, 342 S.W.2d 115 (1961) — 3, 5[a]
Gideon v. State, 68 S.W. 28 (Tex. Crim. 1902) — 3
Henderson v. State, 149 Tex. Crim. 167, 192 S.W.2d 446 (1946) — 4[a], 5[a]
Miller v. State, 121 Tex. Crim. 416, 52 S.W.2d 253 (1932) — 3
Turner v. State, 150 Tex. Crim. 90, 198 S.W.2d 890 (1946) — 4[a], 5[a]
Wolf v. State, 147 Tex. Crim. 214, 183 S.W.2d 562 (Ct. App. 1944) — 3

**Utah**
People v. Hughes, 11 Utah 100, 39 P. 492 (1895) — 4[a]

**Virginia**

Butts v. Com., 145 Va. 800, 133 S.E. 764 (1926) — 6[a], 6[b]
Pierce v. Com., 205 Va. 528, 138 S.E.2d 28 (1964) — 6[a], 7[a]

**Washington**
State v. Austin, 60 Wash. 2d 227, 373 P.2d 137 (1962) — 6[a], 7[a]
State v. Larsen, 23 Wash. App. 218, 596 P.2d 1089 (Div. 1 1979) — 6[a]

**West Virginia**
State v. Winston, 170 W. Va. 555, 295 S.E.2d 46 (1982) — 6[a]

**Wisconsin**
Austin v. State, 49 Wis. 2d 211, 271 N.W.2d 668 (1970) — 3[b]
Edwards v. State, 49 Wis. 2d 105, 181 N.W.2d 383 (1970) — 3, 3[b]

# I

## I. Preliminary Matters

### § 1[a] Introduction—Scope

This annotation[1] collects and analyzes the cases determining whether the intent to steal, or "animus furandi" which is ordinarily an essential element of robbery,[2] is present so as to sustain a charge of robbery, attempted robbery, or assault to commit robbery, where the taking of property[3] by force or intimidation[4] is done with the intent to collect or secure a debt or claim.[5]

Relevant statutes are discussed only to the extent that they are reflected in the reported cases within the scope of the annotation. The reader is advised, therefore, to consult the latest relevant enactments.

### § 1[b] Introduction—Related matters

Related Annotations are located under the Research References heading of this Annotation.

### § 2[a] Summary and comment—Generally

There is a divergence of views as to whether the taking of property with a bona fide intent to collect or secure a debt or claim will defeat a charge of robbery.[6] While some cases support the view that such an intent is generally not a valid defense to a robbery charge,[7] support of this view has also been implied with reference to a statute which did not make intent to steal an essential element of robbery, thus eliminating the possibility of proving a different intent.[8]

Although other cases support a contrary rule, to the effect that the intent to collect or secure a debt or claim will generally defeat a charge of robbery,[9] it has also been said that exceptions to this rule exist where the accused took more than was due,[10] or where the claim was in the nature of unliquidated damages.[11]

Application of these rules to particular property taken or sought by the accused have, under the circumstances presented, resulted in robbery convictions being upheld[12] or overturned[13] where the property taken or sought was money, generally,[14] or money for wages or similar compensation for services performed by the accused,[15] or property other than money,[16]

**§ 3[a] Summary and comment—Practice pointers**

In those jurisdictions which recognize the rule that a bona fide intent to collect or secure a debt or claim is a good defense to a robbery charge, a prosecutor may, nevertheless, be able to charge the accused with assault or assault and battery, in view of such a possibility, defense counsel may consider plea bargaining for such an offense in order to avoid trying the issue of the accused's intent.

Defense counsel who chooses to rely on the theory that the defendant lacked the requisite felonious intent because the taking was, rather, with a bona fide intent to collect a debt, should introduce sufficient evidence of such intent and not, for instance, rely solely on the claim that the victim voluntarily handed over the property allegedly taken. The court might regard such evidence as going only to the issue of whether force or intimidation was used in the taking, and not to the issue of the accused's intent. [17]

**II. General rule**

**§ 3. Rule that taking with bona fide intent to collect or secure debt or claim will not defeat robbery charge**

**[a] tentative Statement**

The following cases support the rule that the taking of property with a bona fide intent to collect or secure a debt or claim will generally not defeat a charge of robbery.

**Fla.**

Thomas v. State, 584 So. 2d 1022 (Fla. Dist. Ct. App. 1st Dist. 1991), cause dismissed, 587 So. 2d 1331 (Fla. 1991) (recognizing rule)

**Ga.**

Rody v. State (1952) 87 Ga App 134, 73 SE2d 121 (recognizing rule)
Mincey v. State (1992) 265 Ga App 791, 426 SE2d 670, 92 Fulton County D R 3125

For contrary Georgia cases, see infra

**Ill.**

People v. Uselding (1969) 107 Ill App 2d 305, 247 NE2d 13
People v. English (1971) 32 Ill App 3d 691, 336 NE2d 199

**Ind.**

Ronks v. State (1985, Ind) 501 NE2d 1347

**Kan.**

State v. Perez (1971) 208 Kan 12, 490 P2d 584
State v. Russell (1925) 217 Kan 481, 536 P2d 1392

**NJ**

State v. Ortiz (1973) 124 NJ Super 189, 305 A2d 800
State v. Bell (1972) 102 NJ Super 170, 411 A2d 607

**NY**

People v Reasdino (1986) 3d Dept'd 26 App Div 2d 117, 63 NYS2d 183 (by implication)
People v Medford (1967) 1st Dept'd 29 App Div 2d 246, 42? NYS2d 112
People v Dural (1991) 1st Dept'd 172 App Div 2d 44d, 568 NYS2d 98, app den 72 NY2d 916, 573 NYS2d 469 and app den 72 NY2d 894, 571 NYS2d 919, 573 NYS2d 920, 573 NYS2d 406 and app den 72 NY2d 894, 571 NYS2d 919, 574 NYS2d 943, 980 NE2d 415
Labow v Cass (1991 App Div, 1st Dept) 570 NYS2d 288, app den 78 NY2d 864, 574 NYS2d 943, 980 NE2d 415

**Ohio**

For Oklahoma cases, see infra

---

**Or**

State v Martin (1972) 15 Or App 496, 516 P2d 753, 87 ALR3d 1362

For a contrary Oregon case, see infra

**Tenn**

Henry v State (1970) 3 Tenn Crim 10 8, 454 SW2d 167
State v Smith (1986, Tenn Crim) 751 SW2d 468

**Tex**

Porter v State (1907) 51 Tex Crim 41, 100 SW 916
Brower v State (1911) 101 Tex Crim 102, 261 SW2d 115
Crawford v State (1974) Tex Crim 509 SW2d 582
Culver v State (1896) Tex App Houston (14th Dist) 800 SW2d 267

For contrary Texas cases, see infra

**Wis**

Edwards v State (1970) 49 Wis 2d 105, 181 NW2d 383, infra § 5[a]

Overruling an earlier decision which had held that the taking of property by force or intimidation under a bona fide claim of right, for the purpose of applying it to the payment of a debt owed the taker, did not constitute robbery. If the court in Mincey v State (1992) 18 Cal 464, 197 SE 344, 116 ALR 381, said that to justify a taking of property by force or intimidation, the claim under which the taker acts must be a claim of ownership or right of possession to the specific property taken. To hold otherwise would permit a person to be deprived of property of another without due process of law, the court said, and it would not be wise, moreover, to permit citizens to use violence to redress their wrongs.

In People v English (1975) 32 Ill App 3d 691, 336 NE2d 199, the court said that even if a debt is valid, it is the law and policy of the state that a creditor may not employ violence, threats, or weapons to collect the debt but should seek a remedy in the normal channels of peaceful and legal redress.

In State v Perez (1971) 208 Kan 12, 490 P2d 584, the court said that the violent taking of property from the person of another by force or intimidation for the purpose of applying it to the payment of an alleged debt constitutes the offense of robbery where the taker has no bona fide claim of title or right to the possession of the particular property taken.

Similarly, in State v Ortiz (1973) 124 NJ Super 189, 305 A2d 800, the court rejected out of hand the proposition that a bona fide intent to collect or secure a claim against his felonious intent essential to a robbery charge. The court said that the proposition not only is lacking in sound reason and logic, but is utterly incompatible with and has no place in an ordered and orderly society which enforces order by law. Adoption of the proposition would be but one step short of accepting lawless reprisal as an appropriate means of redressing grievances, real or fancied, the court said.

Disapproving dicta in an earlier case to the effect that the requisite animus furandi for the crime of robbery is absent when the taker acts under a bona fide claim that he or she is merely collecting a debt owed, [18] the court in State v Martin (1972) 15 Or App 496, 516 P2d 753, 87 ALR3d 1362, expressly held that a creditor's intent to collect a debt from a debtor is not a defense to a charge of robbery. The court said that the public interest in peaceful resolution of debtor-creditor disputes has been articulated in numerous statutes and judicial opinions and that the legislature intended to make forcible debt collection an exception to the robbery statutes, it could have done so. In the face of legislative silence on the subject, the court said, it was not disposed to attribute to the legislature an intent to incorporate into the requirements of public order and safety. Furthermore, the court explained, there is a significant distinction between situations where a person simply uses self-help to recover a specific chattel to which he or she has the right to immediate possession, and, on the other hand, situations where a person attempts to collect a debt out of another's money, which the debtor has no legal right to the specific coins or bills. A debt is a relationship and in respect to money which finds itself embodied in specific coins and currency of the realm, the court said.

In Elliott v. State (1970) 2 Tenn.Crim.418, 454 SW2d 187, the court said that the law is that state recognized no right to enforce payment of a debt by force and violence and that it is immaterial that the property taken might belong to the accused. The right to recover property, or its value, must be limited to legal means of redress in order to preserve the peace and harmony of society, the court said.

To eliminate confusion from apparently conflicting holdings in prior cases, the court in Crawford v. State (1974, Tex.Crim.) 509 SW2d 582, expressly overruled an earlier case which had recognized the rule that a creditor's assault upon a debtor for the purpose of collecting a debt does not constitute robbery by assault. [20] The court indicated that to hold otherwise would establish a dangerous doctrine, since it would authorize an accused not only to decide his or her own form of injury or damage but to enforce the collection thereof by force and violence, which is contrary to the policy of our form of government.

The rule also finds implicit support in the Uniform Commercial Code, which provides, in § 9-503, that, unless otherwise agreed, a secured party, upon default by the debtor, has the right to take possession of the collateral without judicial process if this can be done without breach of the peace.

In one jurisdiction, the rule that a robbery charge will not be defeated where the taking is with a bona fide intent to collect or secure a debt or claim has been affected by judicial construction of the relevant robbery statute, which did not make intent to steal an essential element of the crime, and which was held to have theretofore afforded no opportunity to defeat the charge by showing a lack of such intent.

Thus, see Traxler v. State (1921) 96 Okla Crim 231, 251 P2d 815, in which the court, pointing out that an earlier decision, in apparent disregard of that state's relevant robbery statute, substantively adopted the common-law definition of robbery which involved felonious intent, [21] and that in robbery statute prescribing "wrongful taking" (1) was more narrowly drawn than the common-law definition in that no state of mind or belief was involved, and (2) required only that personal property be taken against the will of the possessor and accomplished by means of force or fear.

## CUMULATIVE SUPPLEMENT

**Cases:**

It is immaterial, in establishing offense of bank robbery, whether subjective intent of bank robber is to steal than to which he has no claim or to recover his own deposit. 18 U.S.C.A. § 2113(a). U.S. v. Mosby, 126 F.3d 390 (3d Cir. 1997), cert. granted in part, 118 S. Ct. 1298, 140 L. Ed. 2d 465 (U.S. 1998).

Creditor was not justified in taking money by threatening to use force via handgun or by placing debtor in fear. Cable v. State (1981, Ind) 417 NE2d 316.

The rule [Section]

**[END OF SUPPLEMENT]**

## § d4 Rule that taking with bona fide intent to collect or secure debt or claim will defeat robbery charge—Generally

**[Cumulative Supplement]**

The following cases support the rule that the taking of property with a bona fide intent to collect or secure a debt or claim will generally defeat a charge of robbery.

---

**US**
Richardson v. United States (1968) 131 App DC 168, 403 F2d 574

**Ariz**
Baney v. State (1931) 45 Ariz 358, 43 P2d 301

**Cal**
State v. Hardin (1961) 99 Ariz 56, 406 P2d 406

**Cal**
People v. Rosen (1938) 11 Cal 2d 147, 78 P2d 772, 118 ALR 991
People v. Butler (1967) 65 Cal 2d 569, 55 Cal Rptr 511, 421 P2d 703
People v. Gauze (1975) 15 Cal App 3d 190, 162 P2d 117 (by implication)
People v. Poindexter (1958) 51 Cal App 2d 566, 63 Cal Rptr 332

**Colo**
For Colorado cases, see infra

**Ga**
For Georgia cases, see infra [§]

**Iowa**
State v. Hollyway (1872) 41 Iowa 200

**Ky**
State v. Kobylasz (1951) 242 Iowa 1161, 47 NW2d 167 (recognizing rule)

**Mass**
Lamar v. Commonwealth (1931) 268 Ky 53, 103 SW2d 693
Commonwealth v. White (1977, Mass App) 1977 Adv Sheets 814, 363 NE2d 1365

**Mich**
Durand v. People (1881) 47 Mich 413, 11 NW 221 (by implication), infra [§b]
People v. Holcomb (1972) 395 Mich 326, 235 NW2d 343
People v. Karasek (1975) 63 Mich App 706, 234 NW2d 761

**Miss**
Williams v. State (1975, Miss) 317 So 2d 425 (by implication), infra [§b]

**Mo**
State v. Brown (1911) 104 Mo 365, 16 SW 406
State v. Carroll (1901) 160 Mo 368, 60 SW 1067
State v. Calloway (1921) 291 Mo 249, 239 SW 801
State v. Huff (1922, Mo) 161 SW2d 1081 (recognizing rule)

**NY**
People v. Winslow (1976) 51 App Div 2d 824, 379 NYS2d 535 (by implication)

**Ohio**
State v. Snowden (1982) 7 Ohio App 3d 358, 7 Ohio BR 458, 455 NE2d 1058
State v. Coleman (1916) Thomas 55 (by implication), infra [§b]

**Okla**
For Oklahoma cases, see supra [§]

**Or**
For Oregon cases, see supra [§]

**Tex**
For Texas cases, see supra [§]

**Utah**
People v. Winford (1893) 11 Utah 109, 39 P 492

**Va**
Butts v. Commonwealth (1926) 145 VA 800, 133 SE 764

**Pierce v. Commonwealth** (1964) 205 Va. 528, 138 SE2d 28

The general rule is that a charge of robbery fails where the attempt is to collect a bona fide debt, since, to constitute that offense, there must be an animus furandi and that cannot exist if the person takes the property under a bona fide claim of right, the court said in **State v. Shaw** (1972) 65 Ariz. 536, 512 P2d 263.

Although earlier cases hold that the requisite animus furandi to support a robbery conviction is lacking when the accused takes money in satisfaction of a debt, [32] see **People v. Meister** (1972, Colo) 166 P2d 311, a case not otherwise in point for this annotation because the accused did not claim that he took money with the intent to collect a debt, but a case which nevertheless appears to cast doubt on the precedential value of the earlier cases in point for this annotation by its express overruling of **People v. Galdaman** (1956) 130 Colo 232, 274 P2d 669, 46 A.L.R.2d 1224, the animus furandi is required to perpetrate a robbery requires the owner of the item or benefit of the thing taken is required to support a robbery conviction. The court in a friendly Case explained that the relevant robbery statute is to effect at the time of the decision contained no suggestion of a specific intent requirement.

In **People v. Karasek** (1975) 63 Mich App 706, 234 NW2d 761, the court said that the taking of property for the purpose of collecting a debt is a claim or color of right which would be a defense to a charge of robbery.

Similarly, in **Pierce v. Commonwealth** (1964) 205 Va. 528, 138 SE2d 28, the court said that the taking of property under a bona fide claim of right, or in a bona fide attempt to enforce payment of a debt, is not robbery though the taking be accompanied by violence or intimidation.

## CUMULATIVE SUPPLEMENT

### Cases

A bona fide belief, even though mistakenly held, that one has a right or claim to the property negates felonious intent. **People v. Hamman** (16 Cal Rptr. 3d 11 (App. 2d Dist. 2004).

A bona fide belief of a right or claim to the property taken, even if mistaken, negates the element of felonious intent required for robbery. **Ward v. Ann. Cal Penal Code § 211. People v. Smith**, 177 Cal. App. 4th 1478, 100 Cal Rptr. 3d 34 (1st Dist. 2009).

Defense of bona fide ownership to specific property is good against robbery charge, but that defense was unavailable to misdemeanor who entered coin dealer's shop by gunpoint to recover $7,750 debt that misdemeanor claimed was owed for purchase of 500 silver dollars. **State v. Winston** (1982, W. Va.) 295 SE2d 46.

### The of Section

**[END OF SUPPLEMENT]**

**§ 4[d] Rule that raising with bona fide intent to collect or secure debt or claim will defeat robbery charge—Exception to rule where more than is due in taking**

While the following cases support the view that the taking of property with a bona fide intent to collect or secure a debt or claim will defeat a charge of robbery, they recognize an exception to the rule when more than is due is taken.

### CA

**People v. Moulton** (1945) 71 Cal App 2d 195, 162 P2d 317 (by implication), infra § 4[e]

---

### DC

**Smith v United States** (1974, Del Ca App) 330 A2d 519

**Me**

**Williams v State** (1975, Minn) 312 Sc 2d 425 (by implication), infra § 5[a]

**Ne**

**State v Ortwein** (1901) 169 Mo 364, 69 SW 807 (by implication), infra § 5[a]

**Or**

See **State v Trujillo** (1973) 12 Or App 236, 469 P2d 877, infra § 4[a]

**Tex**

**Barton v State** (1972) 141 Tex Crim 172, 206 SW2d 889, infra § 4[e]

Then, in **Smith v United States** (1974, Del Ca App) 330 A2d 519, the court said that the defense that one indeed the specific intent to steal because one was attempting to collect a debt was unavailable to an accused who had taken more than was allegedly due.

### [Cumulative Supplement]

The following cases support the view that the taking of property with a bona fide intent to collect or secure a debt or claim does not defeat a robbery charge where the claim is in the nature of unliquidated damages.

**§ 4[c] Rule that taking with bona fide intent to collect or secure debt or claim will defeat robbery charge—claim where claim is for unliquidated damages**

### [Cumulative Supplement]

The following cases support the view that the taking of property with a bona fide intent to collect or secure a debt or claim is in the nature of unliquidated damages.

### CA

**People v Poindexter** (1967) 255 Cal App 2d 566, 63 Cal Rptr 332

**Mass**

**Thomas v State** (1933) 165 Miss 897, 148 So 225

**Miss**

**Williams v State** (1975, Minn) 312 Sc 2d 425

**Okl**

**Moov v State** (1931) 39 Okla Crim 238, 296 P 1005, infra § 5[a]

**Tex**

**Henderson v State** (1946) 149 Tex Crim 167, 192 SW2d 446

**Turner v State** (1946) 192 Tex Crim 90, 198 SW2d 890

**Wash**

**State v Averin** (1942) 69 Wash 2d 277, 373 P2d 117

It is one thing to constitute a bona fide belief that the victim of a taking owns a sum certain to the taker, and quite another to help oneself to money in satisfaction of an unliquidated, questionable tort claim, the court said in **People v Poindexter** (1967) 255 Cal App 2d 566, 63 Cal Rptr 332.

The taking of property for the purpose of forcibly collecting uncertain, unliquidated damages does not come within the rule that the forcible taking and retention of the property of another for the purpose of paying or securing the payment of a debt does not constitute robbery, the court said in **Thomas v State** (1933) 165 Miss 897, 148 So 225.

As also supporting the view that, in those jurisdictions following the rule that the taking of property with a bona fide intent to collect or secure a debt or claim will defeat a charge of robbery, [32] an exception is made where the claim is in the nature of unliquidated damages, see **Henderson v State** (1946) 149 Tex Crim 167, 192 SW2d 446, infra § 5[a]; and **Turner v State** (1946) 192 Tex Crim 90, 198 SW2d 890, infra § 5[a].

Without deciding the correctness of the rule that the forcible taking of property in the honest belief that it was taken as a pledge for indebtedness does not constitute robbery, the court said that the rule had no application in situations where the debt was of an unliquidated nature, in State v Aument (1951) 60 Wash 2d 377, 373 P2d 127.

## CUMULATIVE SUPPLEMENT

### Cases:

Petitioner's belief was properly convicted of armed robbery after he possessed paraphrase for unliquidated sum of money due provisions for her services. State v Messer (1981, App) 112 Ariz 93, 621 P2d 1121.

## [The Article]

## [END OF SUPPLEMENT]

## III. Particular property taken or sought

## § 9[a] Money, generally—Conviction upheld

## [Cumulative Continued]

Robbery convictions were upheld by the courts in the following cases despite a claim by the accused that money was taken from the victim with a bona fide intent to collect or secure a debt or claim and not with the intent to steal.

In People v Pohodnicz (1982) 241 Cal App 3d 566, 43 Cal Rptr 332, the court sustained a conviction of robbery where the facts did not conclusively establish that the accused took money with a bona fide belief that he had a right to it. It appeared that the accused and another person got into a fight in a bar in which the accused sustained facial injuries, struck the barmaid, and then took $50 from the cash register which was under the barmaid's control and custody. The accused's defense was that he took the money in the belief that his injuries and that the money was taken, to pay for medical attention to them. The court said that under these facts, the trial court was not forced to conclude that the defendant entertained a bona fide belief that he had a right to the money in the till or any part of it. The facts were equally compatible with the conclusion that the defendant intended to steal, and that his acts were coupled with the fabrication of a transparent excuse for doing so, the court said. The court explained that it was one thing to entertain a bona fide belief that the victim of a taking owes a sum certain to the taker, and quite another to help oneself to money in satisfaction of an undefinite, questionable tort claim.

In Smith v United States (1974, Dist Col App) 330 A2d 519, the court held that the trial court had not erred in refusing to instruct the jury on the defendant's "claim of right," that is where the evidence showed that the victim did not know that he owed money to the defendant, that the $50 taken was in excess of the $30 allegedly owed (or had marijuana sold to the defendant by the victim, and that the defendant took money not only from the alleged debtor but from others who were also at the scene of the offense. Accordingly, the defendant's conviction of armed robbery was upheld.

And in Halbert v State (1910) 3 Ga App 292, 68 SE 881, the court affirmed the robbery convictions of the defendants, upon evidence that they took $10 from the victim at the point of a gun, claiming that he owed it to them for having killed their dog. The trial court had instructed the jury that if the defendants accepted the money as a bona fide claim of right, in payment of a debt claimed to be owed, they would not be guilty of robbery.

Where, in a prosecution that the defendant, with a blackjack in his hand and accompanied by two other men, took money from the complaining witness, and the defense was that the money he took, was owed to

---

him for alcohol previously delivered, it was held in People v Bibolitini (1932) 360 Ill 714, 195 NE 670, that the jury was justified in finding that this fact in this case showed robbery and not an honest attempt on the defendant's part to collect a debt, and that the question was one of fact for the jury.

In People v Deriega (1969) 107 Ill App 2d 285, 247 NE2d 35, the court upheld the defendant's conviction for attempted robbery where it appeared that he had robbed the victim at the use of force and had tricked money from the victim. The defendant argued that his intention was only to collect $4 for a window he claimed to the victim, earlier. The court said, however, that the issue to prove actual guilt by the use of force to collect a debt. Declaring that the question of intent is for the jury, the court said that there was sufficient evidence to support the jury's verdict of guilty. That evidence included the complainant's credible testimony that the defendant pushed him against his car, put a gun to his head, and searched his pockets while threatening to kill him by the presence of revealed groceries and by a police officer's testimony that the defendant was pushing the victim against the car and had shown a piece of metal under the car upon the approach of the police officers.

And in People v Badish (1975) 32 Ill App 3d 601, 336 NE2d 196, the court rejected the contention that the existence of a debt owed to the defendants by the victim, apparently for drugs supplied to the victim, should be considered in reviewing the defendant's conviction for armed robbery. The evidence showed that the defendants pushed their way into the home of the victim, were armed, threatened the victim, and took money from them. The court said that even assuming the alleged debt was valid, it was the law and policy of the state, that a creditor may not employ violence, threat, or weapons to collect the debt but should pursue a remedy in the normal channels of peaceful and legal redress.

In State v Cooper (1961) 90 Kan 101, 372 P2d 289, the court rejected the defendant's contention that fabulous intent was lacking in his taking money from the complainant because, through the use of force, he persuaded the complainant to give him $9 toward payment of a debt owed to a friend of the defendant. The court said that the jury was entitled to believe that this was nothing more than a thinly veiled excuse to rob and extort money from the complainant, where the evidence showed that the defendant used a fictitious name in committing the robbery, tried to extort more money than the friend allegedly claimed was due but, but as an inconsistent defense by denying knowledge of the incident or that he knew the alleged friend, and by asserting an alibi in his defense. Accordingly, the defendant's conviction of first-degree robbery was affirmed.

See State v Russell (1972) 212 Kan 451, 516 P2d 1292, in which the court, affirming a conviction for theft, said that the evidence would have supported a conviction for robbery had the defendant been so charged, and that it was no defense that the evidence showed that he had a bona fide claim to the money taken. Indicating that this showed a defense on title, the claim must be to the specific money, and that the taking of money was only a disputed claim to a certain amount of the victim's money and that the taking of money by force, or intimidation, even for the purpose of applying it to the payment of an alleged debt, violates public policy and the relevant theft statute.

In Crittell v Powell (1892, Ct Mich App) 413 Ill NW 221, the court affirmed a conviction of robbery on the jury's finding of guilt, where (1) there was conflicting testimony as to the defendant's intent and an admission by the defendant that he had forcibly taken money from the complainant, and (2) it appeared that the trial court had instructed the jury that the defendant believed that the complainant had taken money from him and was only trying to get it back, they should acquit him.

And in People v Kamela (1975) 61 Mich App 596, 204 NW2d 261, the court held that, although the taking of property for the purpose of collecting a debt is a defense to a charge of robbery, the trial court in the instant case did not err in refusing to instruct the jury on this defense, because the evidence did not support the defendant's theory that he took the property under a bona fide claim of right. The defendant had testified that he was engaged in illegal activities which entailed carrying and transferring money which had been obtained through illegal lending or from the buying of narcotics, and that he went to the home of the complainant, an officer of a loan company, for the purpose of collecting a shortage on a

payment that was due. It appeared that the defendant went to the complainant's home in the morning, produced a gun and tied the complainant's hands, and then waited until the loan company had closed for the day before accompanying the complainant to the loan company offices to obtain negotiable instruments and other valuables. Accordingly, the defendant's conviction of assault with intent to rob while being armed was affirmed.

In Williams v State (1975, Miss) 317 So 2d 425, the court rejected the robbery defendant's argument that the evidence was insufficient to establish his criminal intent because he took the money in question to satisfy a claim for money which he believed was owed him. It appeared that the defendant had purchased a pair of shoes from a shoe store and was told that he could return them if they did not fit, that he did attempt to return them but was refused a refund or exchange, and that he later returned to the store with a pistol which he pointed at the store manager while demanding his money back, and was given the $25.15 amount shown on his sales slip. The court said that under the facts and circumstances of the case the defendant's claim fell short of a fair, bona fide claim and did not justify his taking the law into his own hands. Noting that the rule that felonious intent is absent where the taker is attempting to collect or secure a debt or claim is not applicable where the claim is unliquidated, the court said that the defendant's claim in the instant case was unliquidated because the value of the shoes in their depreciated condition was not fixed or certain.

Where a bartender directed the defendant porter to bring back a customer to pay for drinks in the amount of 60 cents, but the defendant seized the customer and took, not the 60 cents owed, but about $2, the court State v Carroll (1901) 160 Mo 368, 60 SW 1087, in upholding a conviction of robbery, held that the trial court properly refused to instruct the jury that if they should find that the defendant intended to turn the money over to the bartender to whom he believed that a debt was due from the customer, then the defendant was not guilty of robbery. The court stated that a taking under an honest claim of right, no matter what circumstances of violence might occur, lacked one of the elements necessary to make the offense robbery, and that the same principle prevailed where the taking occurred by one who acted as an agent on behalf of another, believed by the taker to be the owner, but that the doctrine had no application where there was no honest belief of ownership or agency, and a dishonest pretense was resorted to in an endeavor to escape punishment.

See State v Ortiz (1973) 124 NJ Super 189, 305 A2d 800, in which the court, affirming a conviction of armed robbery, held that the trial court had not erred in instructing the jury that if the defendant and his codefendant were attempting to collect a debt, this would not be a defense to the charge of robbery and robbery while armed. Presumably the defendants took money, although the court did not reveal the particulars of the evidence. The court said that to accept the proposition that an attempt to collect a debt constitutes a defense to robbery would be utterly incompatible with an orderly society which eschews self-help through violence. Adoption of the proposition would be but one step short of accepting lawless reprisal as an appropriate means of redressing grievances, real or fancied, the court said.

And in Tipton v State (1923) 23 Okla Crim 86, 212 P 612, 31 ALR 1074, it was held that the forcible taking of property for the purpose of collecting uncertain, unliquidated damages as compensation for an alleged felonious assault on the taker's wife, constituted robbery, and did not come within the rule[25] that the forcible taking and retention of the property of another for the purpose of paying or securing the payment of a debt could not be deemed robbery. The court pointed out that to hold otherwise would amount to an invitation to one aggrieved by the criminal acts of others to assume the functions of judge, jury, and sheriff, in order to violently and forcibly compensate himself for the injury or assumed injury to any extent which he himself deemed adequate. It appeared that the accused extorted money and an automobile from his family physician at gunpoint as compensation for the physician's alleged mistreatment of the accused's wife.

Similarly, in Kinsey v State (1931) 50 Okla Crim 258, 296 P 1002, the court upheld the defendant's conviction for robbery upon evidence that he compelled the prosecuting witness by threatening to shoot him with a pistol, to execute checks totaling $2,500 as compensation for alleged misconduct with the defendant's wife. The court said that the purpose of forcibly collecting uncertain unliquidated damages as compensation for an alleged felonious assault on the taker's wife does not come within the rule[25] that the forcible taking and retention of the property of another for the purpose of paying a debt might not be deemed robbery.

On the authority of the Kinsey Case, supra, the court in Elam v State (1931) 51 Okla Crim 124, 300 P 1119, affirmed the conviction of the defendant, who had been jointly charged with the defendant in the Kinsey Case.

And in Henderson v State (1946) 149 Tex Crim 167, 192 SW2d 446, the court held that the trial court properly instructed the jury that the fact that the defendant claimed that the prosecuting witness was to blame for damaging his automobile would not give the defendant the right to extort money in payment thereof by assault or by putting the prosecuting witness in fear of his life or bodily injury. The court, in affirming a judgment of conviction for robbery, stated that whether or not the injured party ran his automobile into that of the defendant and injured it was not of any significance, since the defendant was not legally justified in collecting unliquidated damages by assault or violence or by putting the prosecuting witness in fear of his life or bodily injury, and that to hold otherwise would be to establish a dangerous doctrine, since it would authorize the accused not only to decide his own injury or damage, but to enforce the collection thereof by force and violence.

Similarly, in upholding the defendant's conviction of robbery by assault, the court in Turner v State (1946) 150 Tex Crim 90, 198 SW2d 890, said that the trial court had not erred in instructing the jury that if the victim was indebted to the defendant for damage to the defendant's car, the defendant would not have the right to extort money in payment thereof by putting the alleged victim in fear of bodily injury. Noting that there was conflicting testimony as to what occurred between the defendant and victim, the court said that a jury chose to believe the victim's version of the story, according to which the defendant demanded $25 for damages to his car but took $250 from him by force. The defendant, on the other hand, claimed that the victim had damaged his car, and that the defendant got into a fight with the victim, but that no money was taken from the victim. The court said that whether or not the victim damaged the defendant's automobile was not significant, since the defendant was not legally justified in collecting unliquidated damages by assault, violence, or intimidation. To hold otherwise would be dangerous, the court indicated, for it would authorize the accused not only to decide his own damages but to enforce the collection of them by force and violence.

In Frazier v State (1961) 170 Tex Crim 432, 342 SW2d 115, the court held that the trial court had not erred in refusing to instruct the jurors to acquit the defendant if they found that he forced the prosecuting witness, at gun point, to give him 75 cents in satisfaction of a lawful debt owed to him. The court said that the evidence did not raise such an issue and even if it had, it would not constitute a defense to the crime of robbery with firearms. The defendant produced witnesses who testified in support of his contention that the transaction between him and the prosecuting witness was over a shirt that had been left with the prosecuting witness to be delivered to the defendant. Declaring that the law does not tolerate such strong-arm methods of self-help, the court affirmed the defendant's conviction of robbery with firearms.

In Crawford v State (1974, Tex Crim) 509 SW2d 582, the court upheld the defendant's conviction of robbery by assault, upon evidence that the defendant took more than was due him from the complainant. Although rejecting the rule that a creditor's assault upon a debtor for the purpose of collecting a debt does not constitute robbery by assault, the court said that, even if a debtor-creditor relationship was established, the money actually taken exceeded the debt owed. The defendant had paid a bill of the complainant's in the amount of $14.40, without request, and had, for several days thereafter, threatened her with violence if she did not repay him with sexual favors. Finally, the defendant assaulted the complainant on the street and took some money from her. Although the amount taken was not conclusively determined, it was clearly in excess of $14.40, the court said.

In Edwards v State (1970) 49 Wis 2d 105, 181 NW2d 383, the court upheld the defendant's conviction of attempted armed robbery despite his claim that he was only attempting to collect money the victim owed him. It was disputed whether the defendant and his codefendant forced their way into the victim's apartment at gunpoint or were invited in. The court said that the trial court had not erred in instructing the jury that as a matter of law indebtedness is not a defense to a charge of attempted robbery. The court emphasized the importance of the distinction between reclaiming one's own property by force and the taking of money by force from a debtor to repay a debt which is presently owing, since the

## CUMULATIVE SUPPLEMENT

### Cases

When defendant did not seek to recover two specific ten dollar bills he had allegedly loaned victim but simply attempting to recover twenty dollars, "claim of right" was not available defense to robbery charge. State v Ruff (1992) 129 NJ Super 129, 611 A2d 572.

Defendant did not have right to forcibly take $16 in cash from cab driver that she believed belonged to her, so as to negate incorrect intent element of robbery under a claim of right defense, absent evidence that the particular bills making up the $16, which were change that the driver produced after defendant gave him $20, had any significance for defendant, or that she could identify them as hers. People v. Payne, 12 N.Y.3d 1149, 961 N.Y.2d 1166, 963 N.E.2d 1012.

Good faith claim of right did not negate intent to commit robbery by defendant who used force to recover cash allegedly owed him, where defendant held pistol while demanding that there man hand over money allegedly owed him as return of prior drug transaction. People v Reid (1987) 69 NY2d 469, 515 NYS2d 750, 508 NE2d 661.

Defendant who with accomplice beat victim to death in effort to collect gambling debt was properly adjudged guilty of murder—despite assertion of the defense under "claim of right," defendant could not justify forcible robbery of victim to collect illegal debt. Commonwealth v Stafford (1981) 495 Pa 262, 433 A2d 469, overruling Commonwealth v English (1971, Pa) 446 Pa 161, 279 A2d 4.

Defendant's belief that he was recovering his own money at gunpoint from welder of loaded dice did not preclude conviction for armed robbery where intimidation made defendant unable to establish to specific bills taken from dice player; more possibility that bills threatened dice player period from his pocket were very bills defendant had led did not raise reasonable doubt as to defendant's guilt. Austin v State (1979) 86 Wis 2d 213, 271 NW2d 668.

---

excluded evidence tended to show that the victim had purchased calves from the defendant the previous day and had sought to pay cash for them. The defendant also sought to show that between the time of the sale and the time of the alleged robbery, the victim purchased a mare of the defendant's and offered that to the defendant in lieu of the cash. In reviewing and reversing for a new trial, the court said it cannot be robbery either to take property forcibly from another as security for a but to which the taker in good faith claims, or to intimidate a debtor into paying what is believed in good faith to be a just and honest debt then due, for the fictitious intent is lacking in both cases.

Under a statute denouncing robbery or attempt to rob by means of maliciously assaulting with a deadly weapon or by demanding in a violent manner money or property of another, "both and cannot be correlated with intent to rob, or a committing a robbery," it was held in Lester v Commonwealth (1972) 308 Ky 51, 181 SW2d 692, that the defendant was improperly convicted of committing a violent assault with an offensive weapon upon another and demanding money or property of a violent and forcible manner, where the defendant was merely attempting to collect a debt from the prosecuting witness, whom he threatened with a razor, the court being of the opinion that there was no intent to rob, but, rather, an intent to collect a debt.

When the defendant testified that the prosecuting witness owed them $2.50, and that while they were disputing about the claim, which it was proposed to compromise for $2, one of the defendants pulled one of the prosecuting witness' hand a $1 bill which he was holding, and told him to come along and get his $3 change, whereupon the prosecuting witness gave one of the defendants $2.25 and left, although they called to him to come back and get his $1 bill, the court in State v Brown (1911) 104 Me 365, 167 W 495, reversing a conviction for robbery, held that if the story of the defendants was true, they were guilty of no offense, because the felonious intent was wanting, and that they were entitled to an instruction that if the jury should find from the evidence that they in good faith claimed that the prosecuting witness was indebted to them in any sum whatever, and they took the money from him, even against his will, for the sole purpose of obtaining payment for the amount due them, and they offered to return all the money then obtained except the amount claimed to be due them, then they were not guilty of robbery.

Ordering a noble purpose to be asserted, the court in State v Curran (1116, Ohio) Tappan (Ohio), held that there was no evidence of a felonious intent where all that was shown, in a prosecution for robbery, was that one of the prisoners and the prosecuting witness had a dispute about the amount owed for some wood, that the witness was willing to give $20 if the other would give a receipt in full, on which the defendant assented, whereupon he wrote a receipt which the witness read and laid it all right, and counted out $20 on the table; that after he took his hand away one of the defendants took up the money, that the witness asked him to sign the receipt; and he and if would be the fact to have a witness, and what he did so, they, the defendants, gave him a different receipt for the $20. The court pointed out that the money was taken under a claim of right as money acknowledged to be due to the defendant.

### § 6[a] Compensation for services—Conviction upheld

Robbery convictions were upheld by the courts in the following cases despite the contention that the accused did not intend to steal the money allegedly taken but intended only to collect wages or similar compensation for services performed for the alleged victim.

In People v Madison (1945) 71 Cal App 2d 195, 162 P2d 310, the defendant, who was convicted of robbery in the second degree, contended that the victim owed him $2 for transportation of the victim and two girls in the defendant's automobile, that he took no more than that amount from the victim, although it appeared that the defendant took $9 from the victim's billfold, and that no animus furandi was shown. The court held that these were questions of fact for from the determination of the jury, and that its implied finding adverse to the defendant would not be disturbed on appeal, since there was substantial evidentiary support for it.

See **State v Kelchner** ((1951) 242 Iowa 1161, 47 NW2d 457, wherein (1) the defendant had been indicted for robbery but was convicted of larceny, and (2) the court recognized that issues to collect a bona fide indebtedness was a sufficient to disprove felonious intent but held that the trial court had not erred in refusing to instruct the jury that they might consider, at hearing on the question of the defendant's criminal intent, certain testimony indicating that he took the complainant's billfold and contents as security for, or in payment of, a debt owed him by the complainant for certain services, where he offered no such testimony concerning his intent in taking the property but, to the contrary, testified that he had never charged the complainant anything for a taxi bill.

In affirming robbery convictions of the defendants, the court in **State v Pierce** ((1971) 208 Kan 19, 490 P2d 584, rejected the defendants' contention that there was insufficient evidence on which to convict them because the successor element of taking the victim's property was lacking, where the court held that the successor element of taking of property from another by force or intimidation was present where the victim's taking of property from another by force or intimidation was present where the evidence for the prosecution showed no agreement, either express or implied, to pay the defendants' wages or consideration; there was in connection with a meeting regarding an anti-poverty program and that a colorable atmosphere of hostility and fear was created by the defendants, acting in concert, to force the complainant to write checks for the money allegedly owed.

In **State v Traille** ((1971) 7 Or App 758, 489 P2d 677, the court upheld the defendant's conviction of armed robbery, explaining that the defense that he held taken the money in question as payment for wages due him? It was unmaintainable in the defendant because he had taken more than was due him. The court explained that the defendant, who was regularly paid on Friday, when told by the store manager that he would not be paid the $17.35 due him until Monday, refused a paid from the manager, saying that he had enough money until Monday. On the following day the defendant apparently changed his mind and went to the store to see the manager, who was not there, however. On his third visit to the store that day to contact the manager, he brandished the cashier with a knife, opened the cash register, and, without counting them, took all of the bills in the register. Although testimony regarding the amount taken was objected to on various grounds, the court said that it was reasonable to infer that the defendant took more than was due him and that he had no intention of limiting himself to the sum due him.

The court in **State v Martin** ((1927) 115 Or App 498, 314 P2d 353, 88 ALR4d 1357, upheld the defendant's conviction for robbery upon evidence that the defendant forcibly attempted to take money from another, even though he did so to collect a debt owed to him. Distinguishing between reclaiming specific personal property and taking undifferentiated money from a debtor to repay a debt, the court said that the latter did not come within the rule that the requisite animus furandi is absent where the taking is done under a bona fide claim or right. It appeared that the defendant had done some body work on the victim's car and had been paid part of the $150 claimed to be due him for the work, but that the defendant met the victim sometime after the amount that was still owed, and the defendant consequently filed an action in small claims court. Before the time set for trial, the defendant met the victim, talked briefly, then produced a revolver and demanded to see the victim's wallet. Finding no money in it, he returned it and left the scene.

In **Rex v Sims** ((1907) 1141 The Crim 172, 204 SW2d 599, the court upheld the defendant's conviction of robbery upon evidence that he took $20 from the victim while pointing him a gun, despite the defendant's contention that he was only to take the $3.85 owed him. The court said that the undisputed evidence showed that the defendant allowed to transport the promising witness and his luggage, that the victim paid for some gas and oil for the defendant's car, and that, during the trip, the defendant drew a knife and demanded the money for the fare. The defendant took $20 of the $21 in the victim's wallet and then made him get out of the car. The court said that, despite the defendant's contention

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

that he only intended to take $3.85 when she walked, was bonded to him, the fact that he took more while maintaining the victim completed the offense of robbery.

## CUMULATIVE SUPPLEMENT

**Cases:**

Husband of a postilion was properly convicted of robbery where he had forced safety customer to write another $100 check after customer stopped payment on first check because his indecisiveness had prevented him from receiving expected services, husband who used force to collect debt with no claim of ownership in specific property acquired acted with intent necessary to constitute robbery. **State v Larson** ((1970) 21 Wash App 318, 596 P2d 1089.

## [END OF SUPPLEMENT]

## § 68[ ] Compensation for services — Conviction sustained

The courts in the following cases, where the defendants argued that they did not intend to steal from the alleged robbery victim, but only to collect wages or similar compensation due them for work done for the victim, overturned the defendants' robbery convictions.

See **People v Butler** ((1967) 65 Cal 2d 569, 55 Cal Rptr 511, 421 P2d 703, in which the court held that the defendant's conviction for murder in the perpetration of a robbery had to be reversed because the trial court erred in instructing the jury the issue of the existence of the defendant's honest belief that he was entitled to the money taken from the victim. The court explained that if the intent to take the money did not arise until after the victim had been fatally wounded, the killing could not be murder-robbery. The court declared that if a real long born the rob in the case that a bona fide belief that one has a right or claim to the property taken negates the felonious intent necessary to sustain a charge of robbery and that the trial court's approval of the prosecutor's argument that no defense exists removed from the jury a material issue that had been raised by credible, admissible evidence, and that the defendant had a constitutional right to have every significant issue determined by the jury. The defendant alleged that he went to the victim's home to collect wages due him and that he took the victim's wallet only after the victim pulled a gun on him and caused him to fire his own revolver, killing the victim.

Under the generally accepted doctrine that where property is taken under a bona fide claim of right, the requisite animus furandi to constitute the crime of robbery is lacking, it was held in **People v Gallegos** ((1965) 130 Colo 232, 274 P2d 608, 46 ALR2d 1224, that where a gun, demanding and receiving of approval when wages the payment of which the defendant honestly believed and used a gun, demanding and receiving a check for wages where he became involved in a dispute with his employer and used a gun, demanding and receiving a check for wages which the defendant honestly believed to be due him, the court, ruling that if was entitled law in Colorado that where a creditor took money from his debtor to satisfy an obligation, even though he did so in good faith and in full intention, it could not be regarded as robbery.[ ]

In **Commonwealth v White** ((1977, Mass App) 1977 Adv Sheets 825, 363 NE2d 1365, the court reversed the defendant's conviction of armed robbery upon evidence that the defendant demanded and took from the alleged robbery victim $30 owed for wages due the defendant. The court said that while it did not approve the alleged robbery victim to collect a debt, and that such improper self-help might be a statutory felony, or the commandeer misdemeanor of assault or assault and battery, it was not robbery, because an intent to collect what is justly due does not constitute the felonious intent to steal.

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Where the accused worked for a company for two days and a half at $2 per day, was discharged on a Wednesday, demanded immediate payment of the amount due him, but was told to return on Saturday, and the accused pointed a pistol at the superintendent and demanded his wages at once, and the superintendent paid him $5, after they went to the superintendent's office to ascertain from the account's timecard how much he had earned, it was held in **Rush v. Commonwealth (1926) 143 Va 806, 133 SE 204**, that the accused was not guilty of an attempt at robbery, the court being of the opinion that the accused took unlawful means of collecting his debt, and was guilty of an aggravated assault, but not of robbery, since the criminal intent was lacking. Accordingly, the defendant's conviction of attempted robbery was reversed.

## § 7[b] Property other than money—Conviction upheld

[Cumulation continued]

The courts in the following cases upheld robbery convictions despite the contention that the accused took unlawful property from the victim with a bona fide intent to collect or secure a debt or claim and not with the intent to steal.

In **Commonwealth v. Stewart (1920) 255 Mass 326, 127 NE 417**, where there was a conviction of robbery, the defendant requested the court to rule that if the defendant honestly believed that he had a legal right to take jewelry, then he must be acquitted, and that if the defendant procured the possession of the jewels for the purpose of obtaining money with which to satisfy a debt which he believed to be legally due him, and believed that he had a legal right to so obtain the property, and so to apply the proceeds, then the defendant could not be convicted of robbery. The court held that these requests were properly refused, since there was no evidence to support them, and that as the case was tried, the only question the jury had to decide was whether the jewels were taken from the owner by force and against her will, the defendant contending that the jewels were delivered to him voluntarily by the owner as security for the money which he had left with her.

See **Thomas v. State (1933) 165 Miss 897, 148 So 225**, where the complaining witness killed the defendant's dog, and the defendant, by using a shotgun, compelled the complaining witness to turn over cattle as damages, and where it was held that the defendant was properly convicted of robbery, the court stating that it was not called upon to decide whether or not the defendant was not involved, and that if the defendant had any claim at all against the complaining witness, it was for unliquidated damages for the killing of his dog.

In **Moyers v. State (1920) 186 Miss 793, 179 So 534**, the court rejected the defendant's contention that because he took the mare in question, valued at $50, under the belief that she had a legitimate claim to it, the evidence was insufficient to sustain his conviction for robbery. It appears that since the defendant's father, with the defendant's assistance, in his presence, took a revolver, (or $50 cash) in a later claim, and a note for the balance over the amount the defendant claimed that the $50 had been paid when the mare was forcibly taken from the complainant, the defendant had no claim to it which might defeat the charge of robbery, the court said.

See **Dunkle v. Winslow (1976) 51 App Div 2d 824, 379 NYS2d 555**, in which the court, affirming a robbery conviction, said that jury could reasonably have determined that the defendant had no intention of returning the property taken or that since its return was not subject to the control of the owner or the person from whom it was taken, the natural consequence of the defendant's act was to appropriate the property to his own use. It appeared that the defendant gave $50 to a guest to another person's apartment for the purchase of drugs, and that after the guest told the defendant that the money had been stolen, the defendant and three others appeared at the apartment a few days later and removed, in the

presence of another guest, property owned by the apartment dweller, with the explanation that they were confiscating the property, not stealing it.

See **Tipton v. State (1927) 23 Okla Crim 86, 212 P 612, 31 ALR 1074, supra § 5[b]**, in which the court upheld the robbery conviction of one who forcibly extorted an automobile and money from his family physician as compensation for the physician's alleged assault on his sister.

In **Elliott v. State (1970) 2 Tenn Crim 454, 454 SW2d 187**, the court rejected the defendant's contention that he was justified in taking a watch and ring from a woman to satisfy a debt created by the victim's allegedly having stolen a pair of sunglasses from him a few days earlier. The court said that the law of the state recognized no right to enforce payment of a debt then created by force and violence, even if the defendant had taken the property allegedly stolen from him, the jury would still have been justified in finding that he was guilty of robbery. The right of possession or of title to the property taken is not an issue in a robbery charge, the court said. Accordingly, the defendant's conviction of armed robbery was affirmed.

In affirming the defendant convictions of robbery, the court in **Pierce v. Commonwealth (1966) 205 Va 528, 138 SE2d 28**, held that the trial court was warranted in rejecting the defendant' contention that they acted under a good-faith claim of right in taking coral toys from the alleged robbery victim. The court said that the taking of property under a bona fide claim of right, or in a bona fide attempt to enforce payment of a debt, is not robbery, though the taking is accompanied by violence or intimidation. However, there was conflicting evidence as to whether one of the defendants had bought the truck from the victim and either or whether he took the truck without making any payment, the court said, and the evidence warranted the trial court's acceptance of the commonwealth's evidence.

The refusal of a jury instruction that the defendant would not be guilty of robbery if he took the victim's wristwatch as a pledge for an indebtedness was not error where the record was devoid of testimony that the asserted debt was a liquidated sum, but rather indicated that the amount claimed, based on drinks purchased by the defendant for the victim, was indefinite, the court said in **State v. Austin (1961) 60 Wash 2d 227, 373 P2d 137**. Accordingly, the defendant's conviction of robbery was affirmed.

## CUMULATIVE SUPPLEMENT

Cases:

Defendant was not entitled to a "claim of right" defense in the robbery charge against him; policy of self help through force was discouraged by legislature, and claim of right defense to robbery charge was therefore precluded. **State v. Birrus, 126 P.3d 157 (Haw. 2005)**.

Defendant committed third degree robbery when he snatched gold chains from around neck of victim and engaged in struggle with victim to retain chains in futile judicial effort to recover payment that victim allegedly owed to defendant for bicycle. **People v. Castro (1990) 2d Dept) 151 App Div 2d 690, 542 NYS2d 181, app den 74 NY2d 816, 346 NYS2d 108, 546 NE2d 193**.

[End of Section]

[END OF SUPPLEMENT]

## § 7[c] Property other than money—Conviction sustained

[Caption Supplement]

A robbery conviction was overturned by the court in this following case where the accused claimed that he took tangible property with a bona fide intent only to secure or collect a debt or claim and not with the intent to steal.

The court in People v. Stamber (1977) 91 Cal. App. 459, 315 P.2d 816, reversing a conviction of robbery, held that a conditional seller of chattels to whom instalment payments had not been made or agreed was entitled to an instruction that if he retook the property openly and avowedly, believing in good faith that he had the right of possession, he should not be found guilty of robbery. The defendant had sold two pumps and operating machinery and an electric range to the alleged robbery victim under a written lease contract containing provisions that the seller could retain such property as the owner thereof and that title and ownership of the property remained in the seller until payment had been made in full.

## CUMULATIVE SUPPLEMENT

Cases

A good-faith claim that the chattel taken in an alleged robbery belonged to the taker, would, if believed by the jury, negate the element of larcenous intent and defeat a robbery prosecution. People v. Green, 5 N.Y.2d 538, 807 N.Y.S.2d 311, 841 N.E.2d 287 (2005).

## The of Section

[END OF SUPPLEMENT]

—

## RESEARCH REFERENCES

Primary Authority

- 18 U.S.C.A. §§ 2111–2117

A.L.R. Library

- A.L.R. Quick Index, Assault and Battery
- A.L.R. Quick Index, Collections
- A.L.R. Quick Index, Duress and Coercion
- A.L.R. Quick Index, Robbery

- A.L.R. Federal Quick Index, Assault and Battery
- A.L.R. Federal Quick Index, Robbery
- What is "Property of Another" Within Statute Proscribing Larceny, Theft, or Embezzlement of Property of Another, 49 A.L.R.6th 455
- Another, 57 A.L.R.6th 445
- Sufficiency of evidence to establish criminal participation by individual involved in gang fight or assault, 24 A.L.R.6th 243
- Validity, construction, and application of state statutes prohibiting sale or solicitation of sexual acts near schools or playgrounds, 24 A.L.R.6th 796
- Robbery by false token or representation, 67 A.L.R.6th 263
- Robbery: when does asportation of property begin, and what evidence is sufficient to show asportation, 58 A.L.R.5th 165
- When is property "taken" in presence of victim so as to support robbery charge, 37 A.L.R.5th 1
- What constitutes larceny "from person," 74 A.L.R.3d 271
- What constitutes theft, robbery or other offense within statute extending theft-offense..., 17 A.L.R.4th 1222
- Location intended to constitute offense of robbery in connection for burglary or similar offense, 58 A.L.R.4th 1009
- Distinction between larceny and embezzlement, 146 A.L.R. 532
- Larceny of real property, 170 A.L.R. 146
- Crime of robbery as affected by intention only to collect or secure debt or claim, 188 A.L.R. 438
- Offense of larceny, embezzlement, robbery, or theft as committed by taking or withholding or by deception, 152 A.L.R. 147
- [Several more entries listing A.L.R. references, illegible]

- Admissibility of evidence that one charged with burglary, larceny, or robbery was in possession of property not identified as part of that stolen. 3 A.L.R. 1213
- What Constitutes "Debt Collector" for Purposes of Fair Debt Collection Practices Act (15 U.S.C.A. § 1692a(6)). 173 A.L.R. Fed. 223
- Validity, construction, and application of Federal Debt Collection Procedures Act (28 U.S.C.A. §§ 3001 et seq.). 119 A.L.R. Fed. 505
- What constitutes lesser offenses "necessarily included" in offense charged, under Rule 31(c) of Federal Rules of Criminal Procedure. 11 A.L.R. Fed. 173

**Legal Encyclopedias**

- Am. Jur. 2d, Robbery § 19

**Treatises and Practice Aids**

- 2 Anderson, Wharton's Criminal Law and Procedure(1957) §§ 550, 565

**Trial Strategy**

- Liability of Creditor and Repossession Agent for Wrongful Repossession and Tortious Acts Committed During Repossession, 42 Am. Jur. Proof of Facts 3d 355
- Liability of Debt Collector to Debtor Under the Federal Fair Debt Collection Practices Act, 41 Am. Jur. Proof of Facts 3d 159
- Eyewitness Identification § 18, 20 Am. Jur. Proof of Facts 539
- Defending assault and battery cases, 36 Am. Jur. Trials 241
- Preparing and Using Photographs in Criminal Cases, 3 Am. Jur. Trials 335 § 11
- Investigating Particular Crimes, 2 Am. Jur. Trials 171 §§ 32-36

Westlaw. © 2011 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

Footnotes

1 The annotation at 46 A.L.R.2d 1227 is hereby superseded.

2 Am. Jur. 2d, Robbery § 15.

3 As to the retaking of money lost at gambling as robbery or larceny, see the annotation at 77 A.L.R.3d 1363. Also see Am. Jur. 2d, Robbery § 18.

Robbery, attempted robbery, or assault to commit robbery,..., 88 A.L.R.3d 1309...

4 On the related subject of larceny or embezzlement as affected by a purpose to take or retain property in payment of, or as security for, a claim, see the annotations at 116 ALR 997 and 13 ALR 142. Also see Am. Jur. 2d, Larceny § 41. Moreover, the obtaining of payment by a debtor on a valid indebtedness by false representation as criminal false pretenses is the subject of an annotation at 20 A.L.R.2d 1266.

5 Cases in which it did not clearly appear that there was an independent debt or claim, but which merely involved a taking under a belief or claim of right to the specific property involved, are not within the scope of the annotation. See Am. Jur. 2d, Robbery § 17 for a discussion of the generally accepted rule that a person cannot be guilty of robbery if the property is taken under a bona fide belief that the taker is the owner of the specific property taken or is entitled to its possession.

6 § 3, infra.

7 § 3, infra.

8 § 4(a), infra.

9 § 4(b), infra.

10 § 4(c), infra.

11 §§ 5(a), 6(a), and 7(a), infra.

12 §§ 5(b), 6(b), and 7(b), infra.

13 § 5(a), 5(b), infra.

14 § 6(a), 6(b), infra.

15 § 7(a), 7(b), infra.

16 In this regard, see Commonwealth v White (1977, Mass App) 1977 Adv Sheets 826, 363 NE2d 1365.

17 See, for example, State v Hall (1928, Mo) 7 SW2d 1001.

18 Crawford v State (1893) 90 Ga 701, 17 SE 628. Also overruled, implicitly, was Holland v State (1910) 8 Ga App 202, 68 SE 861.

19 See State v Trujillo (1971) 7 Or App 236, 489 P2d 977, in which the court's implicit approval of the rule was contained in its holding that the defense was not available when more than is believed due is taken.

20 Barton v State (1921) 88 Tex Crim 368, 227 SW 317, 13 ALR 147. Also impliedly overruled were Wolf v State (1883) 14 Tex App 210; Gables v State (1901, Tex Crim) 68 SW 288; Minica v State (1936) 131 Tex Crim 416, 99 SW2d 934, in which the court recognized the rule announced in the Barton Case; and Bass v State (1947) 151 Tex Crim 172, 206 SW2d 599, to the extent that it impliedly recognized the rule that a creditor's assault on a debtor for the purpose of compelling payment of a debt does not constitute a robbery, by holding that the rule did not apply where the creditor took more than was due. In the Gables Case, where the prosecuting witness refused to pay the 50 cents requested for beer purchased, and, as he drew his hand toward his pocket, the accused merely drew his pistol for the purpose of protecting himself against an anticipated assault by the prosecuting witness, who then threw down the 50 cents of which he claimed to have been robbed, the court pointed out that the accused defended against the taking of the 50 cents under a claim of right, that this claim was submitted by the court to the jury in a proper charge, and that the jury might have found, under the facts of the case and under the charge, that the accused did not rob the prosecutor of the 50 cents, but that he was entitled to it. And in the Minica Case, the court said that the jury should have been instructed that if the defendant took more money than was due him, but honestly believed that what he took was the amount due, then he lacked the requisite animus furandi for a charge of robbery.

21 The court said that in Johnson v State (1923) 24 Okla Crim 326, 218 P 179, a case not directly in point for this annotation because the property taken was done so under a claim of ownership to that particular property rather than to collect or secure an independent claim or debt, it was held that felonious intent was a necessary element of robbery so as to defeat the charge of robbery in that case. Although the Traxler Case is similarly not directly in point because the defendant claimed lack of intent on the basis of a defense other than intent to secure a debt, in light of the court's construction of the relevant robbery statute, the following earlier cases recognizing the rule that a taking with a bona fide intent to collect or secure a debt or claim is not robbery appear to be no longer of precedential value. Tipton v State (1923) 23 Okla Crim 86, 212 P 612, 31 ALR 1074; Kinney v State (1931) 50 Okla Crim 258, 296 P 1002; and Blann v State (1931) 51 Okla Crim 124, 300 P 1119.

| | |
|---|---|
| 22 | Annala v Dank (1930) 44 Cam 74, 188 P 111.9 Bentley v Coffman (1941) 183 Cok 222, 224 P2d 684. |
| 23 | Sec, however, Texas cases, supra § 3, indicating that Texas no longer recognizes this rule. |
| 24 | Note, however, that in light of the construction of the relevant robbery statute in Traxler v Dunn (1952) 96 Okla Crim 231, 251 P2d 415, supra § 3, it appears that this rule would no longer be adhered to in Oklahoma. |
| 25 | As to the validity of this rule in Oklahoma, however, see the discussion of Traxler v Dunn (1952) 96 Okla Crim 231, 251 P2d 415, supra § 3. |
| 26 | But see discussion of Colorado cases, supra § 3a. |
| 27 | See Sims v Martin (1972) US Ct App 468, 116 P2d 713, 89 A.L.R.2d 1392, supra § 3, in which the court disapproved the implication that this defense would be available if the accused took no more than was due him. |
| 28 | But see discussion of Colorado cases, supra § 3a. |
| End of Document | © 2019 Thomson Reuters. No claim to original U.S. Government Works. |

**146 A.L.R. 532 (Originally published in 1943)**

American Law Reports    The ALR databases are made current by the weekly addition of relevant new cases.

A.L.R.
C.T. Foster

Distinction between larceny and embezzlement

**[Cumulative Supplement]**
The reported case for this annotation is State v. La Frinere, 165 S.W.3d 624, 146 A.L.R. 529 (Mo. 1943).

## TABLE OF CONTENTS

Article Outline
Table of Cases, Laws, and Rules

## ARTICLE OUTLINE

I. Scope
II. Introduction; historical approach
III. Statutory consideration
IV. Grounds of distinction
  A. In general
  b. Time of formation of felonious intent
    1. In general
    2. View that offense may be embezzlement even though felonious intent existed at time property was obtained
  c. The fiduciary relationship as distinguishable embezzlement
    1. In general
    2. Breach in delivery agency or other fiduciary capacity
  d. Distinction predicated upon difference between "possession" and mere "custody" of subject matter
    1. In general
    2. Instance of "possession" — offense deemed embezzlement
    3. Instance of mere "custody" — offense deemed larceny
    4. Accused's rightful "possession" terminated prior to the appropriation — offense deemed larceny
    5. Effect of broader terms of embezzlement statute
  e. Source from which subject matter received
V. Illustrative cases
  A. Offense deemed embezzlement
  B. Offense deemed larceny
VI. Summary and comment
Research References

## Table of Cases, Laws, and Rules

United States
18 U.S.C.A. § 99. See III
18 U.S.C.A. § 99. See III
18 U.S.C.A. § 100. See III
18 U.S.C.A. § 103. See IVa

Supreme Court
Gira v. Shine, [87 U.S.] 111, 21 S. Ct. 98, 47 L. Ed. 130 (1902) — IVa, IVd2, IVd5
Moore v. United States, [1895] 160 US 268, 40 L ed 422, 16 S Ct 28 — II
Moore v. U.S., 160 U.S. 268, 16 S. Ct. 1021, 40 L. Ed. 422 (1895) — II
U.S. v. Teller, 352 U.S. 607, 77 S. Ct. 197, 1 L. Ed. 2d 80, 56-2 A. F. T. R. 2d 100 (1957) — Supp

First Circuit
Rosmes, In re, 333 B.R. 736 (Bankr. D. Mass. 2005) — Supp

Second Circuit
Graham, In re, 333 B.R. 591 (Bankr. E.D. N.Y. 1983) — Supp
Rankin v. Brownell, 129 F.2d 193 (2d Cir. 1956) — Supp
Sapp Bros. & Co. v. Underwriter Ins. Co. of North America, 24 F. Supp. 2d (S.D. N.Y. 1962) — Supp
U.S. v. Lambert, 446 F. Supp. 890 (D. Conn. 1978) — Supp
U.S. v. Lee, 12 F. 816 (C.N.D. N.Y. 1882) — IVa
U.S. v. Patton, 721 F.2d 159 (2d Cir. 1980) — Supp
U.S. v. U.S. Brokerage & Trading Co., 262 F. 459 (S.D. N.Y. 1919) — IVa

Third Circuit
McComb, In re, 45 B.R. 721 (Bankr. E.D. N.Y. 1983) — Supp
Re Trask, 908 B.R. 416 (Bankr. D. N.J. 2004) — Supp
U.S. v. Goldsmith, 724 F. Supp. 462 (E.D. Pa. 1987) — Supp
U.S. v. Pettit, 458 F.2d 284 (3d Cir. 1972) — Supp

Fourth Circuit
Lenk, In re, 443 B.R. 555 (Bankr. E.D. Va. 2011) — Supp
Troiani, In re, U.S. v. 366 F.2d 139 (C.C.A. 4th Cir. 1939 — Supp
U.S. v. Block, 111 F. 515 (W.D. N.C. 1901) — IVa
U.S. v. Romar, 202 F.2d 451 (4th Cir. 2001) — Supp
U.S. v. Smith, 172 F.2d 264 (4th Cir. 2000) — Supp
Walter, In re, 416 B.R. 449 (Bankr. W.D. N.C. 2009) — Supp

Fifth Circuit
Akers v. Scofield, 167 F.2d 718 (C.C.A. 5th Cir. 1948) — Supp
Akers v. Scofield, 72 F. Supp. 551 (W.D. Tex. 1947) — Supp
Cooks v. Zorne, 99 F.2d 951 (C.C.A. 5th Cir. 1938) — III, IVa
Davenport, In re, 353 B.R. 150 (Bankr. S.D. Tex. 2006) — Supp
U.S. v. Thronton, 491 F.2d 741 (5th Cir. 1974) — Supp

Sixth Circuit
Bernhardt v. U.S., 169 F.2d 983 (6th Cir. 1948) — Supp
CMC Telecom, Inc., In re, 383 B.R. 52 (Bankr. E.D. Mich. 2008) — Supp
Stallman, In re, 404 B.R. 244 (Bankr. E.D. Mich. 2009) — Supp
U.S. v. Horne, 31 F. 671 (C.C.S.D. Ohio 1887) — IVa

U.S. v. Pruit, 446 F.2d 513 (6th Cir. 1971) — Supp

**Seventh Circuit**
Davick v. Barrec, 113 F. Supp. 2d 791 (N.D. Ill. 2000) — Supp
Ernest, In re, 509 B.R. 188 (Bankr. N.D. Ind. 2007) — Supp
U.S. v. Johnson, 718 F. Supp. 668 (N.D. Ill. 1933) — Supp
U.S. v. Worrell, 342 F.2d 116 (7th Cir. 1920) — Supp
Wm, In re, 355 B.R. 193 (Bankr. W.D. Wis. 2006) — Supp

**Eighth Circuit**
Schell v. U.S., 161 F. 931 (C.C.A. 8th Cir. 1908) — III, IVa2
U.S. v. Albu, 139 F. 151 (E.D. Ark. 1908) — IVa1

**Ninth Circuit**
Glenn, In re, 112 F. 786 (C.C.N.D. Cal. 1901) — III
Hubbard v. U.S., 79 F.2d 850 (C.C.A. 9th Cir. 1935) — IVa
U.S. v. Bell, 128 F. Supp. 35 (D.D. Cal. 1954) — Supp

**Tenth Circuit**
Tudor, In re, 546 B.R. 844 (Bankr. E.D. Okla. 2006) — Supp

**Eleventh Circuit**
Ozarde Lumber & Veneer Corp. v. Salem Mach. Co., 139 F. Supp. 126 (M.D. Ga. 1987) — Supp
Morris, In re, 493 B.R. 640 (Bankr. S.D. Ga. 2013) — Supp

**District of Columbia Circuit**
Anthony v. U.S., 2014 WL 21631 (Apr. D.C. 1940) — IVa
Albrecht v. U.S., 144 F.2d 457 (App. D.C. 1940) — Supp
Burns v. U.S., 287 F. 555 (App. D.C. 1923) — IVa1
Classick v. U.S., 202 F. 612 (1) (App. D.C. 1920) — IVa1
Miller v. U.S., 41 App. D.C. 52, 1913 WL 22601 (App. D.C. 1913) — IVa2
Radin v. U.S., 38 App. D.C. 200, 1910 WL 20706 (App. D.C. 1910) — IVa, Va
Turner v. U.S., 57 App. D.C. 39, 16 F.2d 535 (App. D.C. 1926) — IVa, IVa2
U.S. v. Cantor, 217 F.2d 536, 71 F.2d A. Brief S.D. 2001 — Supp
Webber v. U.S., 239 F. 20 (App. D.C. 1916) — Supp
Woodward v. U.S., 38 App. D.C. 323, 1912 WL 19558 (App. D.C. 1912) — IVa2, IVa1, IVa2, IVa3

**Alabama**
Berwell v. State, 1 Ala. App. 178, 56 So. 31 (1911) — IVa1
Bortt v. State, 30 Ala. App. 307, 184 So. 24 (611) (1932) — Supp
Brown v. State, 30 Ala. App. 72, 203 So. 630 (1941) — III, IVa
Cain v. State, 76 Ala. 17, 1885 WL 272 (1885) — IVa3
Eppleson v. State, 174 Ala. 89, 56 So. 522 (1911) — IVa1
Holdnook v. State, 107 Ala. 154, 18 So. 109 (1895) — IVa1
Kaufta v. State, 152 Ala. 45, 44 So. 385 (1907) — IVa1
Kramer v. State, 19 Ala. App. 46, 94 So. 198 (1910) — IVa2, Va
Lambert v. State, 76 Ala. 19, 1884 WL 264 (1884) — IVa1
Lowriatt v. State, 35 Ala. 598, 1859 WL 466 (1859) — IVa3
Lullace v. State, 17 Ala. App. 278, 69 So. 533 (1913) — IVa1
Menham v. State, 35 Ala. App. 472, 26 So. 24 671 (1940) — Supp

3

Rosenblum v. State, 19 Ala. App. 442, 98 So. 216 (1923) — IVa, IVa3
Sharp v. State, 18 Ala. App. 100, 90 So. 72 (1921) — IVa
Slate, Ex parte, 201 Ala. 59, 77 So. 353 (1917) — IVa2
St. John v. State, 22 Ala. App. 57, 148 So. 169 (1928) — IVa
Summey v. State, 22 Ala. App. 228, 148 So. 508 (1923) — IVa2
Wall v. State, 2 Ala. App. 157, 56 So. 57 (1911) — IVa1
Washington v. State, 106 Ala. 58, 17 So. 546 (1895) — IVa1, IVa3
Webber v. State, 17 Ala. App. 48, 81 So. 346 (1919) — IVa, IVa2, IVa

**Arizona**
Phelan v. State, 25 Ariz. 498, 219 P. 589 (1923) — IVa, IVa1, IVa1
State v. Scofield, 7 Ariz. App. 307, 438 P.2d 776 (1968) — Supp
State v. Trostle, 144 Ariz. 48, 691 P.2d 777 (1985) — Supp

**Arkansas**
Pallar v. State, 13 Ark. 168, 1853 WL 462 (1853) — III, IVa, IVa1
Fawn v. State, 161 Ark. 453, 257 S.W. 61 (1923) — IVa, IVa1, IVa3
Hint v. State, 72 Ark. 241, 79 S.W. 769 (1904) — IVa1
Morton v. State, 100 Ark. 579, 275 S.W. 911 (1925) — III, IVa, IVa1
Powell v. State, 34 Ark. 693, 1879 WL 1367 (1879) — IVa1

**California**
Callan v. Superior Court in and For San Mateo County, 204 Cal. App. 2d 652, 22 Cal. Rptr. 508 (1st Dist. 1962) — Supp
Granny v. New Jersey Ins. Co., 186 Cal. App. 29, 291 P. 698 (1st Dist. 1930) — IVa, IVa2
Holtz, Ex parte, 101 Cal. 1965 WL 761 (1866) — IVa, IVa2
People v. Barret, 188 Cal. 4th 111 Cal. Rptr. 3d 726 (3d Dist. 2010) — IVa
People v. Baldwin, 117 Cal. 51, 1897 WL 884 (1897) — IVa, IVa1
People v. Robinson, 51 Cal. App. 138, 196 P. 145 (1921) — IVa, IVa1
People v. Browne, 41 Cal. App. 2d 143, 106 P.2d 34 (1st Dist. 1940) — IVa, IVa1
People v. Cree, 51 Cal. App. 4th 469, 1897 WL 271 (1st Dist. 1917) — IVa1
People v. Cruz, 34 Cal. App. 299, 168 P. 372 (3d Dist. 1917) — IVa1
People v. Corina, 71 Cal. App. 2d 468, 167 P.2d 655 (1st Dist. 1946) — IVa2
People v. Da Costa, 61 Cal. 164, 1882 WL 1836 (1882) — Va
People v. Donnelson, 58 Cal. App. 136, 247 P. 972 (2d Dist. 1925) — III
People v. Dee, 25 Cal. App. 160, 145 P. 1013 (4th Dist. 1915) — IVa, Vb
People v. Fisher, 18 Cal. App. 169, 154 P. 316 (3d Dist. 1915) — Va
People v. Futterman, 36 Cal. App. 253, 247 P. 452 (4th Dist. 1926) — III
People v. Dee, 25 Cal. App. 160, 145 P. 1013 (4th Dist. 1915) — Va, Vb
People v. Gilmore, 38 Cal. 2d 846, 133 P.2d 113 (4th Dist. 1943) — Supp
People v. Gordon, 299 Cal. App. 4th 2d 721, 1958 WL 2601 (1893) — IVa2
People v. Gould, 125 Cal. App. 244 (1932) 20 P.2d 551 (1st Dist. 1934) — Supp
People v. Glenn, 22 Cal. 3d 1, 148 Cal. Rptr. 1, 469 P.2d 464 (1978) — Supp
People v. Gohler, 13 Cal. App. 203, 110 P. 586 (2d Dist. 1910) — IVa1
People v. Morelan, 103 Cal. App. 3d 438, 229 P.2d 150 (1st Dist. 1951) — Supp
People v. Jackson, 31 Cal. App. 167, 160 P. 467 (3d Dist. 1916) — IVa1
People v. Jackson, 138 Cal. 462, 71 P. 566 (1903) — IVa1
People v. Johnson, 81 Cal. 245, 271 P. 661 (1911) — IVa1
People v. Knox, 24 Cal. App. 2d 446, 76 Cal. Rptr. 712 (1st Dist. 1968) — Supp
People v. Kunz, 209 Cal. App. 2d 697, 33 Cal. Rptr. 44 (2d Dist. 1962) — Supp
People v. Krummacher, 17 Cal. App. 433, 114 P. 466 (1st Dist. 1911) — IVa1
People v. Kelly, 69 Cal. App. 558, 231 P. 767 (3d Dist. 1924) — Va

4

## Colorado

Gill v. People, 139 Colo. 401, 339 P.2d 1000 (1959) — Supp
Lewis v. People, 109 Colo. 89, 121 P.2d 398 (1942) — IVa, IVb2
Morton v. People, 65 Colo. 399, 176 P. 476 (1918) — IVa

## Connecticut

State v. Patchesett, 75 Conn. 47, 104 WL 1146 (1886) — II, IVs4
State v. Hamley, 70 Conn. 265, 39 A. 148 (1888) — IVa
State v. Henderson, 102 Conn. 658, 129 A. 724 (1925) — IVa, Va
State v. Lawrence, 83 Conn. 449, 76 A. 1005 (1910) — IVa, IVb
State v. Polley, 81 Conn. 414, 692 A.W 162 (1827) — Supp
State v. Vita, 151 Conn. 258, 224 A.W 764 (1964) — Supp

## Delaware

Hunter v. State, 11 Del. 111, 2 Penne. 111, 43 A. 265 (1899) — III, IVa
State v. Custis, 21 Del. 510, 5 Boyce 510, 95 A. 221 (Gen. Sess. 1915) — IVa
State v. Lyons, 36 Del. 77, 5 Boyce 77, 88 A. 976 (Gen. Sess. 1911) — IVa

## District of Columbia

Rex v. U.S., 44 A.2d 467 (Mun. Ct. App. D.C. 1945) — Supp

## Florida

Chace v. State, 182 So. 2d 125 (Fla. 2d DCA 1966) — Supp
Fightmaster v. State, 46 Fla. 81, 35 So. 201 (1903) — IVb1
Fish v. State, 135 Fla. 361, 185 So. 435, 121 A.L.R. 160 (1938) — IVa, IVb1, IVd3

## Georgia

Bailey v. State, 10 Ga. App. 479, 73 S.E. 630 (1912) — IVd4
Murray v. State, 93 Ga. 708, 112 S.E. 571 (1922) — IVb1, IVb2
Neal v. State, 53 Fla. 180, 44 So. 843 (1890) — IVa, Va
Nero v. State, 892 Ga. 2d 1133 (Fla. 5th DCA 2005) — Supp
Sikes v. State, 76 Fla. 167, 82 So. 778 (1919) — IVa, IVd4
Wilson v. State, 47 Fla. 118, 35 So. 390 (1904) — IVd1

## Idaho

Bottomer v. State, 102 Idaho 60, 625 P.2d 414 (1981) — Supp
State v. James, 45 Idaho 43, 261 P.2d 772 (1972) — Supp

## Illinois

Johnson v. People, 113 Ill. 99, 1883 WL 10164 (1885) — II, IVa, IVb1, IVd1, IVd4
Ker v. People, 110 Ill. 627, 1884 WL 9921 (1884) — IVd1
Kilby v. People, 81 Ill. 599, 1876 WL 10025 (1876) — IVd1
People v. Dim, 273 Ill. 424, 113 N.E. 370 (1916) — IVa
People v. Goldstone, 327 Ill. 416, 158 N.E. 689 (1927) — IVd2
People v. Lanie, 327 Ill. 514, 161 N.E. 60 (1928) — IVd2
People v. Moore, 301 Ill. 469, 134 N.E. 776 (1922) — IVd1
People v. Poldson, 300 Ill. 280, 133 N.E. 240 (1921) — IVa
People v. Raffar, 355 Ill. 258, 182 N.E. 152 (1929) — IVa
People v. Shreve, 339 Ill. 391, 191 N.E. 154 (1929) — IVa
People v. Smith, 361 Ill. 490, 198 N.E. 330 (1935) — IVa
People v. Snow, 363 Ill. 492, 2 N.E.2d 942 (1936) — IVa
Saldiner v. People (1890) 172 Ill. 55, 49 N.E. 822 — IVa

## Indiana

Agar v. State, 176 Ind. 234, 94 N.E. 819 (1911) — IVa, IVd1
Axtell v. State, 173 Ind. 711, 91 N.E. 354 (1910) — IVa, IVd4

**Califo.**
Calif. v. State, 191 Ind. 384, 133 N.E. 772 (1922) — IVa, IVa1, IVa1, IVa1
Davis v. State, 196 Ind. 213, 147 N.E. 766 (1925) — IVa, Va
Linn v. State, 133 Ind. 329, 111 N.E.2d 731 (1926) — Supp
State v. Winn, 190 Ind. 264, 183 W.L. 5330 (1983) — III, IVa, IVa1, IVa2
Vinohre v. State, 167 Ind. 415, 79 N.E. 533 (1906) — IVa, IVa1, IVa2
Warren v. State, 223 Ind. 152, 62 N.E.2d 624 (1945) — Supp
Wymer v. State, 157 Ind. 577, 61 N.E. 34 (1901) — III, IVa, IVa1, IVa5
Zehnder v. State, 189 Ind. 417, 127 N.E. 623 (1921) — IVa, IVa1

**Iowa**
Borst v. State, 3 (Greene) 67, 1851 WL 76 (Iowa 1851) — IVa
State v. Balkcom, 70 Iowa 189, 30 N.W. 476 (1886) — IVa
State v. Colburn, 119 Iowa 156, 113 N.W. 890 (1903) — IVa, IVa2
State v. Plummer, 127 Iowa 236, 103 N.W. 155 (1905) — III, IVa, IVa1
State v. Quinn, 245 Iowa 164, 61 N.W.2d 121, 40 A.L.R.2d 146 (1954) — IVa
State v. Reynolds, 229 Iowa 243, 292 N.W. 811 (1912) — IVa, IVa1
State v. Smith, 200 Iowa 138, 202 N.W. 811 (1925) — IVa, IVa1

**Kansas**
Gard v. Sherwood Const. Co., 194 Kan. 541, 400 P.2d 995 (1965) — Supp
State v. Conn, 190 Kan. 403, 375 P.2d 417 (1962) — Supp
State v. Row, 243 Kan. 457, 749 P.2d 161 (1988) — Supp
State v. Hoffman, 171 Kan. 116, 229 P.2d 914 (1951) — IVa
State v. James, 157 Kan. 703, 143 P.2d 642 (1943) — Supp
State v. Peer, 201 Kan. 199, 477 P.2d 906 (1970) — Supp
State v. Yohe, 24 Kan. 277, 33 P. 290 (1894) — IVa
Walker v. Larson, 181 Kan. 702, 334 P.2d 130 (1958) — IVa

**Kentucky**
Clark v. Com., 355 S.W.2d 458 (Ky. 1963) — Supp
Commonwealth v. Collins, 96 S.W.2d 316, 264 Ky. Rptr. 194, 272 S.W. 411 (1925) — IVa
Mathews v. Com., 311 Ky. 867, 226 S.W.2d 129 (1950) — IVa, IVa2
Wattenalla v. Commonwealth, 81 Ky. 133, 4 Ky. L. Rptr. 957, 1883 WL 7812 (1883) — IVa, IVa1, IVa2

**Louisiana**
Duncan v. St. Paul Mercury Ins. Co., 175 So. 2d 724 (La. Ct. App. 1965) — Supp
State v. Fruge, 99 So. 3d 1025 (La. Ct. App. 2012) — Supp
State v. Henry, 219 La. 1430 (La. Ct. App. 2011) — Supp
State v. Perry, 16 La. 556, 110 So. 870 (1927) — IVa, IVa1
State v. Salmon, 45 La. Ann. 107, 11 So. 681 (1893) — IVa
State v. Wolff, 34 La. Ann. 1153, 1882 WL 1740 (1882) — IVa

**Maryland**
Cooper v. State, 1 Md. App. 209, 235 A.M.4 (1982) — Supp

---

Exchange v. State, 9 Md. App. 115, 262 A.2d 571 (1970) — Supp
Gordon v. State, 5 Md. App. 291, 246 A.2d 521 (1968) — Supp
Leber v. State, 220 Md. 577, 265 A.2d 1111 (1960) — Supp
Leber v. State, 2 Md. App. 1, 132 A.2d 152 (1967) — Supp
Matthews v. State, 194 Md. 497, 71 A.2d 446 (1950) — Supp
Nolan v. State, 213 Md. 298, 131 A.2d 851 (1957) — Supp
Vol v. State, 1 Md. App. 264, 229 A.2d 102 (1967) — Supp
Williams v. U.S. Fidelity & Guar. Co., 195 Md. 489, 66 A. 495 (1907) — IVa

**Massachusetts**
Com. v. Barry, 116 Mass. 1, 1874 WL 9628 (1874) — IVa
Com. v. Barry, 99 Mass. 428, 1868 WL 4531 (1868) — IVa1
Com. v. Concannon, 43 Mass. App. Ct. 771, 686 N.E.2d 1001 (2006) — Supp
Com. v. Davis, 104 Mass. 548, 1870 WL 4684 (1870) — IVa1
Com. v. Doherty, 137 Mass. 245, 1870 WL 9246 (1879) — IVa
Com. v. Hays, 80 Mass. 62, 14 Gray 62, 1859 WL 7433 (1859) — II, IVa, IVa1
Com. v. King, 63 Mass. 284, 9 Cush. 284, 1852 WL 4571 (1852) — IVa
Com. v. O'Malley, 97 Mass. 584, 1867 WL 5679 (1867) — IVa1
Com. v. Ryan, 153 Mass. 133, 30 N.E. 364 (1891) — IVa2, IVa1, IVa, IVa
Commonwealth v. Barry, 124 Mass. 325, 1878 WL 10818 (1878) — IVa

**Michigan**
People v. Bergman, 246 Mich. 68, 224 N.W. 375 (1929) — IVa
People v. Blake, 290 Mich. 179, 127 N.W. 700 (1962) — IVa1
People v. Evans, 321 Mich. 222, 132 N.W.2d 533 (1946) — IVa
People v. Frost, 120 Mich. App. 328, 328 N.W.2d 441 (1982) — Supp

**Minnesota**
State v. Kortgaard, 62 Minn. 7, 64 N.W. 51 (1895) — IVa, IVa5

**Mississippi**
Crosby v. State, 247 Miss. 379, 152 So. 2d 109 (1963) — Supp
McAllister v. State, 56 So. 2d 461 (Miss. 1952) — Supp
Malley v. State, 69 So. 24 (Miss. 1922) — Supp
Montgomery v. State, 891 So. 2d 179 (Miss. 2004) — Supp

**Missouri**
[Unreadable] Inc. Co. v. Schmidt, 112 S.W.2d 1048 (Mo. Ct. App. 1938) — IVa
State v. Britt, 279 S.W. 2d 561 (Mo. 1950) — Supp
State v. Broderick, 70 Mo. 622, 1879 WL 7912 (1879) — IVa1
State v. Beck, 164 Mo. 15, 64 S.W. 93 (1901) — IVa1, IVa1
State v. Bonoa, 314 Mo. 585, 284 S.W. 97, 47 A.L.R. 783 (1926) — IVa3
State v. Castete, 205 Mo. 497, 103 S.W. 135 (1916) — Va
State v. Clark, 207 Mo. 1, 105 S.W. 644 (1907) — IVa, Va
State v. Cochran, 336 Mo. 649, 80 S.W.2d 182 (1935) — III, IVa, IVa3, IVa1
State v. Fish, 195 Mo. 39, 93 S.W. 67 (1906) — IVa, Va
State v. Mangelinn, 214 Mo. 464, 168 S.W. 111, 157 SW 85 — Va
State v. Patton, 255 Mo. 245, 164 S.W. 223 (1914) — IVa1, IVa1, VI
State v. Pohl, 170 Mo. 422, 70 S.W. 1086 (1902) — IVa, IVa1
State v. Gould, 329 Mo. 828, 46 S.W.2d 886 (1932) — IVa1, IVa1
State v. Harris, 823 S.W.2d 499 (Mo. Ct. App. W.D. 1992) — Supp

## Nebraska

State v. Hansen, 106 Neb. 615, 184 N.W. 178 (1921) — IVb1
State v. Harrison, 347 Mo. 1230, 152 S.W.2d 161 (1941) — IVa, IVb1, IVd1
State v. Kenoth, 273 N.W. 607 (Mo. Ct. App. 1937) — IVa, IVb1
State v. Perkins, 382 S.W.2d 631 (Mo. 1964) — Supp
State v. Rumble, 285 S.W. 272, 195 A.L.R. 983 (1926) — Supp
State v. Smith, 243 S.W.2d 317 (1951) — IVb1
State v. Stockton, 303 S.W. 409, 256 S.W. 745 (1923) — IVb1
State v. Stone, 69 Mo. 101, 1878 WL 9632 (1878) — IVb1
State v. Weilbacher, 324 S.W.2d 1751 (Mo. 1939) — Supp
State v. Carter, 572 N.W.2d (1915) — IVb

## Nevada

Barnes v. State, 103 Nev. 267, 737 P.2d 844 (1987) — IVa
Charles v. Lee, 18 Nev. 462, 1884 WL 4082 (1884) — IVa
Rivest Estate, 11 Nev. 247, 1876 WL 4561 (1876) — IVa2
State v. Rothrock, 45 Nev. 214, 200 P. 525 (1921) — IVa

## New Mexico

Territory of New Mexico v. Maxwell, 1882 NMSC-010, 2 N.M. 250, 1882 WL 3764 (1882) — IIb, IVa, Va
State v. Brent, 93 N.M. 109, 1982 NMCA-128, 653 P.2d 181 (Ct. App. 1982) — Supp
State v. Cordova, 165 N.M. 272, 1986 NMCA-082, 727 P.2d 1242 (Ct. App. 1986) — Supp
State v. Her, 61 N.M. 211, 1956 NMSC-076, 301 P.2d 661 (Ct. App. 1956) — Supp
State v. Peke, 1982 NMSC-003, 98 N.M. 66, 371 P.2d 224 (1982) — Supp

## New York

Laidlaw v. Government Emp. Ins. Co., 57 Misc. 2d 489, 293 N.Y.S.2d 174 (N.Y. City Civ. Ct. 1968) — Supp
Los. Roosevelt, H. L. How., 221 N.Y.S.2d 412 (Sup 1961) — Supp
Nichols v. People, 17 N.Y. 114, 1858 WL 7272 (1858) — IVd
People v. Barr, 411 Ken. Pr. 293, 1871 WL 8277 (N.Y. Gen. Sess. 1871) — III, IVa, IVd1, IVs
People v. Dalton, 15 Wend. 581, 1836 WL 2720 (N.Y. Sup 1836) — IVa
People v. Miller, 169 N.Y. 339, 62 N.E. 418 (1902) — IVb1
People v. Rafferty, 167 Misc. 24 266, 640 N.Y.S.2d 749 (Sup 1956) — Supp
People v. Vasman, 105 Misc. 2d 16, 431 N.Y.S.2d 927 (Sup 1981) — Supp
People v. Wood (1823) 2 Park Crim Rep (N.Y) 22 — IVd
People v. Yannili, 49 N.Y.2d 258, 425 N.Y.S.2d 906, 401 N.E.2d 1 (1980) — Supp
People ex rel. Crandon of Shafstone v. Sheridan, 151 Misc. 374, 270 N.Y.S. 685 (Nassau Co. 1935) — IVb1
Stinell v. Lenter, 161 A.D. 764, 147 N.Y.S. 781 (1st Dept 1914) — IVa
Van Voshen v. American Bank Note Ins. Co., 292 N.Y. 303, 146 N.E. 432, 38 A.L.R. 1135 (1925) — VI

## North Carolina

State v. Bailey, 25 N.C. App. 412, 213 S.E.2d 460 (1975) — Supp
State v. Griffin, 239 N.C. 41, 79 S.E.2d 230 (1953) — Supp
State v. Jones, 42 N.C. App. 161, 615 S.E.2d 885 (2005) — Supp
State v. Lovick, 42 N.C. App. 577, 257 S.E.2d 146 (1979) — Supp
State v. McDonald, 133 N.C. 680, 45 S.E. 582 (1903) — IVb

State v. Palmer, 173 N.C. App. 208, 623 S.E.2d 676 (2005) — Supp

### North Dakota

State v. Black, 57 N.D. 567, 223 N.W. 30 (1929) — IVa, IVd1, Va
State v. Collins (LN.D. 433, 61 N.W. 467 (1895) — IVa, IVs
State v. United, 41 N.D. 84, 187 N.W. 237 (1922) — IVa, IVd1

### Ohio

Culler v. State, 11 Ohio St. 365, 1868 WL 36 (1860) — IVb
Keeble v. State, 90 Ohio St. 352, 107 N.E. 782 (1914) — IVd1, VI
State v. Cross, 67 Ohio St. 422, 64 N.E. 537 (1902) — IVd2
State v. Gilliam, 114 Ohio App. 181, 19 Ohio Op. 2d 81 N.E. 666 (1914) — IVb1, IVb2, VI
State v. Cross, 91 Ohio St. 161, 110 N.E. 466 (1914) — IVb1, IVb2, IVd2, VI
State v. Palmoner, 98 Ohio St. 491, 52 N.E. 1027 (1920) — IVd2

### Oklahoma

Brown v. State, 1912 OK CR 11, 6 Okla. Crim. 521, 120 P. 1033 (1912) — IVb1
Chomery v. State, 96 Okla. Crim. 224, 252 P.2d 485 (1969) — Supp
Constitution v. District Court of Tulsa County, 1967 OK CR 181, 412 P.2d 892 (Okla. Crim. App. 1967) — Supp
Ford v. State, 1917 OK 159, 110 Okla. Crim. 675, 167 P. 222 (1917) — IVa, IVb1
Fulre v. Territory, 196 OK 89, 14 Okla. 472, 78 P. 561 (1904) — IVb1
Glover v. State, 1951 OK CR 74, 349 P.2d 711 (Okla. Crim. App. 1951) — Supp
Hunt v. State (1943)—Okla Crim Rep — 134 P.2d 1061 — IVa, IVb1
Mayr v. State, 29 Okla. Crim. 145, 232 P. 1092 (1925) — IVd1
Leeds v. State, 1957 OK CR 155, 446 P.2d 128 (Okla. Crim. App. 1957) — Supp
Rice v. State, 64 Okla. Crim. 136, 77 P.2d 531 (1938) — IVa, IVb1
Soule v. State, 41 Okla. Crim. 136, 271 P. 725 (1928) — IVb1, VI

### Oregon

State v. Browmine, 47 Or. 470, 82 P. 955 (1905) — II, IVa, IVb1
State v. Cohrant, 110 Or. 496, 246 P. 1092 (1926) — IVa, Vb
State v. Dunbar, 102 Or. 561, 202 P. 984 (1922) — IVb1, IVd1, IVd2
State v. Harris, 286 Or. 617, 612 P.2d 1075 (1980) — Supp
State v. Johnson, 14 Or. 281, 22 P. 1175 (1903) — IVa
State v. Kuckes (1922) 103 Or. 172, 203 P. 268 — IVd
State v. Keelin (1922) 104 Or. 172, 2017 P. 266 — IVa1

### Pennsylvania

Com. v. Brundge, 41 Pa. Super. 581, 1921 WL 3712 (1921) — IVa1
Com. v. Thomas, 166 Pa. Super. 14, 70 A.2d 457 (1950) — IVa, Vb
Com. v. Vrooke, 211 Pa. Super. 17, 234 A.2d 63 (1967) — Supp
Erdman v. Glidd, L. Phile, 21 Pa. Dist., Co. 1409 — III, IVd1
Hutchinson v. Com., 82 Pa. 472, 1877 WL 13135 (1877) — IVa

### Rhode Island

State v. Chisolm, 110 R.I. 393, A.3d 412 (1972) — Supp
State v. Talsmer, 14 R.I. 372, 1883 WL 3387 (1883) — III, IVb2, VI

### South Carolina

State v. McClam, 167 S.C. 293, 166 S.E. 411 (1932) — III, IVa, IVa

**Tennessee**

Hill v. State, 192 Tenn. 297, 177 S.W.2d 921 (1920) — IVa
Amny v. State, 109 Tenn. Crim. 62, 2 S.W.2d 491 (1920) — IVb
Stott v. State, 87 Tenn. Crim. 310, 220 S.W. 1061 (1920) — IVb
Bondi v. State, 85 Tenn. Crim. 253, 211 S.W. 948 (1919) — IVe
Cornwell v. State, 106 Tenn. Crim. 646, 214 S.W. 25 (1925) — IVb, IVc3
Cornwell v. State, 106 Tenn. Crim. 206, 172 S.W. 107 (1925) — IVb
Craven v. State, 107 Tenn. Crim. 611, 21 S.W.2d 522 (1929) — IVb
Fletcher v. State, 83 Tenn. Crim. 206, 211 S.W. 997 (1921) — IVb
Golden v. State, 22 Tenn. App. 1, 5 S.W. 531 (Ct. App. 1886) — IVb2
Greel Nez. Lloyds v. Hall, 265 S.W.2d 875 (Tex. Civ. App. Fort Worth 1954) — Supp
Haft v. Great Nat. Lloyds, 154 Tex. 206, 277 S.W.2d 81 (1955) — Supp
Hartford Acc. & Indem. Co. v. Wichita Laundry Co., 215 S.W.2d 265 (Tex. Civ. App. Fort Worth 1920) — IVa
Hogy v. State, 83 Tex. Crim. 612, 215 S.W. 956 (1921) — IVa2
Hainey v. State, 124 Tex. Crim. 366, 344 S.W.2d 314 (1951) — Supp
Mory v. State, 127 Tex. Crim. 38, 74 S.W.2d 497 (1934) — Vb
Pemberton v. State, 122 Tex. Crim. 99, 44 S.W.2d 692 (1930) — IVb
Sechumyer v. State, 138 Tex. Crim. 234, 135 S.W.2d 100 (1939) — Va
Walters v. State, 84 Tex. Crim. 412, 207 S.W. 926 (1918) — IVb2
Witt v. State, 485 S.W.2d 787 (Tex. Crim. App. 1972) — Supp
Witt v. State, 197 Tex. Crim. 514, 264 S.W. 266 (1922) — IVb
York v. State, 140 Tex. Crim. 169, 143 S.W.2d 770 (1940) — Vb

**Utah**

State v. Taylor, 114 Utah 2d 107, 378 P.2d 552 (1963) — Supp

**Virginia**

Gorby v. Com., 51 Va. App. 177, 655 S.E.2d 61 (2008) — Supp
Hubbler v. Com., 41 Va. App. 319, 923 S.E.2d 221 (2004) — Supp
McAfee v. Com., 41 Va. App. 311, 665 S.E.2d 281 (2004) — Supp
Seth v. Com., 222 Va. 666, 281 S.E.2d 296 (1981) — Supp

**Washington**

U.S. v. Com., 215 F. Cas. 488, No. 14319 (C.C.E.D. Pa. 1827) — IVA3
State v. Dorman, 30 Wash. App. 351, 633 P.2d 1240 (Div. 1 1981) — Supp
State v. Gartzen, 76 Wash. 2d 437, 457 P.2d 727 (1969) — Supp
State v. Gillespie, 41 Wash. App. 666, 705 P.2d 994 (Div. 1 1985) — Supp
State v. Markham, 40 Wash. App. 75, 697 P.2d 263 (Div. 1 1985) — Supp
State v. Smith, 2 Wash. 2d 118, 98 P.2d 647 (1939) — IIb, Vb

**West Virginia**

State v. Fraley, 71 W. Va. 100, 76 S.E. 134 (1912) — IVa, IVb2, IVc
State v. Morris, 33 W. Va. 164, 52 S.E. 92 (1905) — IVa
State v. Smith, 97 W. Va. 313, 125 S.E. 90 (1924) — IVa, IVa1

**Wisconsin**

State v. Betts, 183 Wis. 441, 197 N.W. 985 (1924) — IVa

**Wyoming**

McCann v. U.S., 2 Wyo. 274, 1880 WL 3022 (1880) — IVa

## I. Scope

This annotation supersedes that in 11 A.L.R.2d1 and the supplement thereto in 13 A.L.R.3d.

The cases within the scope of this annotation are those which expressly distinguish between larceny and embezzlement, or consider the soundness of a theory of distinction, and those which hold that a particular transaction constituted one or the other of these crimes rather than the other. No attempt is made to review the cases holding merely that the facts in a given case do, or do not, by particular statute, or at common law, constitute the crime of larceny or of that of embezzlement, but the cases which refer to the elements of larceny or of embezzlement as a distinguishing feature between larceny and embezzlement are cited, but those which hold only that certain forward-form existing is considered to larceny...

However, the annotation does not purport to include the cases distinguishing between larceny and those statutory offenses which, although exhibiting general similarity to and being, in some instances, possibly equivalent to embezzlement in its generally understood meaning, are by the statutes and the courts given some other designation, such as, for example, "larceny after trust," "larceny by bailee," or "breach of trust with fraudulent intention." A few such cases are, however, included for illustrative purposes. (For example, there appears, infra, IV 6 1, footnote 36, citation of some of the Georgia cases distinguishing between simple larceny and "larceny after trust.")

It is thought that the practical purpose of the annotation will be best answered by limiting the general treatment to the American cases, and, consequently, English and Canadian cases do not appear herein. There is included, however (in subdivision III) a general summary of the condition of the English law leading to the enactment of the first embezzlement statute, inasmuch as that phase of the English common law of larceny is the basis of the present subject. For a general treatment of the modern English law of embezzlement and kindred offenses, and the various statutory provisions relative thereto, consult 9 Halsbury's Laws of England, 2d ed Criminal Law and Procedure, §§ 895-897, and other modern treatises; and for an extensive review of early English cases distinguishing between larceny and embezzlement, 18 A.L. Dec 126-174.

## II. Introductory; historical approach

Several leading definitions of larceny and embezzlement are quoted in the footnote. 1

The authorities recognize that larceny was an offense at common law,2 whereas embezzlement is wholly statutory.3 Because of this situation, and for other reasons, a brief historical review of the factors leading to the enactment of the earliest embezzlement statutes seems essential to the present investigation of the differences between the two crimes.

To begin with, it is well known that at common—that is, a felonious violation of possession—is an essential element of common-law larceny.4 Consequently, at common law a person who lawfully acquired possession of property (goods or money) belonging to another and subsequently wrongfully converted it to his own use could not be convicted of larceny because he conducted involved no trespass against possession.5

The courts did hold, however, that if the accused had a fiduciary intent at the time of acquiring possession, and the owner parted with the possession only, while retaining the property of the goods in himself, and the accused subsequently converted the goods, he was guilty of larceny.6 Even so, many persons escaped punishment for their wrongful conversion (or their wrongful conversion

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.
WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

or appropriation of another's property because prior to converting it they had lawfully acquired or been intrusted with its possession, even though the conversion was clearly wrongful and fraudulent and morally as culpable as that falling within the operation of the common-law principles of larceny.

The English courts reached a partial solution of the difficulty by developing the theory that one having under his physical control goods of another might have, as to such goods, either (1) possession, in a legal sense, in which event his subsequent wrongful conversion of the goods could not be larceny; or (2) mere custody, the lawful possession being constructively in another, in which event the custodian's wrongful conversion of the goods would violate such other person's possession and consequently be larceny.[7] Thus, for example, a servant who was intrusted with or had access to the property of his master was deemed to have, ordinarily, mere custody thereof, so that a wrongful appropriation by him constituted a trespass against the master's constructive possession and was, consequently, larceny.[8] But it was held that for the master to have constructive possession of the goods he must have had actual possession of them at some time before they came to the hands of the servant, so that if the goods were received by the servant, on behalf of the master, from a third person, rather than directly from the master, and they had never been in the master's actual possession, the servant had lawful possession of the goods and his appropriation of them could not be larceny, there being no trespass against possession.[9]

Under this state of the English law, the crooked path pursued by the fraudulent converter of another's money or property all too frequently brought him to immunity from punishment by leading his footsteps through one of the gaps in the law of larceny. Wharton points to the existence of these gaps in the law, which he describes thus: The first of them, he states, is caused by the position that to maintain larceny it is necessary that the stolen goods should have been at some time in the prosecutor's possession; and the second results from the assumption that when possession of goods is acquired bona fide by a bailee, no subsequent fraudulent conversion (unless there be breaking of bulk or some other rupture of the conditions of bailment[10]) can be larceny while the bailment lasts.[11]

To meet this situation[12] Parliament enacted, in 1799, what is generally thought of as the first[13] of the embezzlement statutes, 39 Geo. III, c. 85, the terms of which appear in the footnote.[14] While this statute (39 Geo. III, c. 85) appears to have served as a model for embezzlement statutes generally in this country (many of which, however, contain markedly different provisions), in England, itself, it has been long since superseded by subsequent embezzlement statutes of modified terminology. Bishop shows that in 1827 it was superseded by 7 & 8 Geo. IV, c. 29, § 47, differing chiefly in employing some briefer forms of expression, which was in turn superseded by 24 & 25 Vict. c. 96, § 68, in which there was omitted the phrase "by virtue of such employment" that appeared in and limited the field of operation of the two earlier statutes.[15]

It is of interest to note that Bishop refers to embezzlement as a statutory larceny, created, he says, "by an apparently bungling attempt to eliminate one of the elements from the common-law offense," for, as he suggests, "the natural and easy way to amend the law would have been to provide that the element of trespass should no longer be essential in larceny."[16]

*III.* Statutory considerations

In dealing with cases distinguishing larceny and embezzlement, it is to be recognized that the embezzlement statutes vary greatly in wording. While the American statutes have in general been patterned along the lines of the English statutes (referred to supra, II), yet many of them are worded so as to include within their purview much which would not be within the English embezzlement statutes, and it appears that the tendency of most American statutes on the subject has been to enlarge the bounds of the offense and the classes of persons who may commit it.[17]

So, in State v. Taberner (1883) 14 RI 272, 51 Am Rep 382, affirming a conviction of embezzlement and holding that the fact the defendant's conduct would be larceny at common law did not prevent it from being embezzlement under the statute, the court remarked: "The old English statutes of embezzlements were very strictly construed, the courts holding that no person could be convicted under them of embezzlement upon proof which would warrant a conviction of theft. The language of those statutes however was less comprehensive than the language of ours, and much more readily yielded to such a construction, if indeed the language of those statutes did not require it. The construction was also favored by the fact that the punishment of the two offenses was not always identical. Mr. Justice Stephen, in his history of the criminal law of England, tells us that the construction led to a long series of cases elaborately distinguishing between embezzlement and theft. 'They turn,' he says, 'upon discussions as to the nature of possession, which are as technical and unsatisfactory as all attempts to affix a precise meaning to a word which has no precise meaning must necessarily be.' The result was to introduce into this branch of the criminal law a degree of intricacy and confusion which caused frequent failures of justice. We do not think therefore that the English precedents, or the similar precedents from other States, considering the freer scope of our statute, are necessarily to be followed." (The terms of this Rhode Island statute appear infra, IV b 2, footnote 19.)

Likewise it is to be noted that in many states larceny is made a statutory crime, or incorporated by statute into a crime given some other designation, and that such statutes may differ in their scope due to differing terminology.

Consequently, in determining whether given conduct constitutes larceny or embezzlement, the local statutory provisions relative to the offenses are of first importance, particularly since their content may be such as to render inapplicable rulings based upon earlier statutes or those in other jurisdictions where the controlling statute lays down different specifications. [The reader is cautioned that this annotation does not purport to show the current statutory provisions of any jurisdiction, but, rather, includes reference only to those statutes which have been construed or applied in the reported cases distinguishing between the two offenses under consideration.]

Many embezzlement statutes are so worded as to be applicable to designated classes of persons only. So, in Foster v. State (1899) 2 Penn (Del) 111, 43 A 265 (affirming judgment in (1898) 1 Penn (Del) 289, 40 A 939), the court stated that "because the statutes vary so much in their terms, embezzlement is, after all, what the particular statute defines it to be. And the offense, so far as it may be punished by the statute, can only be committed by the classes of persons enumerated, and of the kinds of property designated in the particular statute."

See also State v. Lanyon (1910) 83 Conn 449, 76 A 1095, taking the view that a collection agent engaged in the general collection of claims, when employed by another to collect accounts upon commission, is an agent of such other within the meaning of the particular embezzlement statute, and pointing out that statutes of other states and the construction which has been placed upon them "can be of little help in construing our statute, unless such statutes are in substantially the same language as ours."

And in Brown v. State (1941) 30 Ala App 27, 200 So 630 (writ of certiorari denied in (1941) 240 Ala 589, 200 So 634), affirming a conviction of grand larceny, and holding that the defendant's claim of double jeopardy predicated upon the fact that he had previously been charged with and placed upon trial for the offense of embezzlement based upon the same transaction was not good, the court pointed out that upon a charge of the offense of statutory embezzlement, it was necessary and essential to a conviction that the state should show that the accused at the time of the alleged commission of the specific acts complained of committed the act while acting as the officer, agent, or clerk of the alleged injured party, and that since the larceny indictment alleged no such fact, it was clear that the facts necessary to convict on the prosecution for larceny would not have convicted the defendant on the earlier prosecution for embezzlement, so that the prosecution was not a bar to the subsequent prosecution for larceny.

Reversing a conviction under an embezzlement statute by its terms applicable to any "clerk or servant," the court, in People v. Burr (1871) 41 How Pr (NY) 293, said: "To constitute larceny, it is necessary that the property should be taken

from the possession of the owner, or person in possession thereof, with a felonious intent, and it may be committed by any person; whereas embezzlement, under our statutes, can only be committed by a clerk or servant of a private person, or of a copartnership, or an officer, agent, clerk, or servant of an incorporated company, or by a carrier," and held that a boot and shoe maker who occasionally was employed by prosecutor, a shopkeeper, to manufacture shoes out of materials furnished ready cut by the prosecutor, the defendant taking them to his own house where the work was done and returning the completed shoes to the prosecutor, his compensation not being regular wages but being dependent upon the quantity of work performed at fixed prices, paid upon his completion and return of the work, and who also did work for other parties, was not a clerk or servant within the meaning of the statute and therefore not liable to conviction thereunder although he may have fraudulently appropriated shoes belonging to the prosecutor after completing their manufacture.

Where the indictment for embezzlement charged that the defendant as the agent, clerk, and servant of the Woman's Christian Association received money which he unlawfully embezzled and converted to his own use, but the proof showed that he was not the agent, clerk, or servant of the association but was merely president of a trust company, which the Women's Christian Association had by written agreement created its agent for the care, custody, and investment of its money, it was held in State v. Cochran (1935) 336 Mo 649, 80 SW 2d 182, that a conviction of embezzlement could not stand inasmuch as it clearly appeared that the defendant did not occupy the necessary fiduciary relation to the association and that the property did not come into his possession by virtue of any such relation, so that if defendant did take funds and securities of the association, the taking was wrongful in its inception.

In United States v. Hutchinson (1848, DC) 4 Clark (Pa) 211, Fed Cas No. 15,432, it was held that one employed as a clerk for the treasurer of the United States Mint was not within the purview of a Federal embezzlement statute defining the crime of embezzlement and by its terms applying to all officers and other persons "charged by this act or any other act with the safekeeping, transfer and disbursement of public moneys," although the defendant, among the duties assigned to him by the director of the mint, had charge of the ordinary or contingent fund, receiving moneys of that fund and paying them out upon warrants, and had the key to a closet in which such moneys were kept, it being noted that the key to the vault wherein the closet was situated was held by another person and that the books of account were kept in the name of the treasurer, the name of the defendant clerk not appearing in any of the account books either in the mint or in the accounting department at Washington. The court took the position that the act did not apply to mere subordinates and remarked that the defendant clerk's possession, whatever it was, was in law the possession of the treasurer.

It was observed in State v. McCann (1932) 167 SC 393, 166 SE 411, that the embezzlement statute of that state applied only to public funds, but that the statutory offense of breach of trust with fraudulent intention was substantially equivalent to the offense commonly known in other states as embezzlement.

While it is not intended in this annotation to go into the question whether particular statutes operate to merge the offenses of embezzlement and larceny into one offense, for purposes of indictment and proof, as has sometimes been contended, the following illustrative cases thereon seem of general interest in connection with the subject of annotation and will serve to show some of the wide differences found in the embezzlement statutes.

In holding that larceny and embezzlement were separate and distinct offenses and must be treated as such in indictment, the Iowa court remarked in State v. Finnegan (1905) 127 Iowa 286, 103 NW 155, 4 Ann Cas 628: "Larceny, as defined by statute, is like that at the common law, save in the increased number of articles made the subject of larceny. Code §§ 4831, 4834. The crime of embezzlement is purely of statutory origin, intended to cover the misappropriation of property not punishable as larceny. Section 4834 of the Code defines embezzlement by a public officer; section 4841 by a bailee; section 4842 by an agent or employee of a corporation, association, or individual; and section 4844 by carrier for hire; and in each the crime is declared to be larceny. But this is a mere conclusion, evidently intended for the purpose of fixing the punishment, for under similar statutes the charge of larceny has been held not to be sustained by proof of

embezzlement. By giving a particular offense the same name as that borne by some other distinct and different offense, the legislature cannot make the two but one, or change the nature of either."

Similarly, in Fulton v. State (1852) 13 Ark 168, the court took the view that a statute providing that if any carrier or other bailee shall embezzle or convert to its own use any money, etc., he shall be deemed guilty of larceny, and, on conviction, shall be punished as in cases of larceny, did not have the effect of merging the crimes of larceny and embezzlement, but was intended merely to extend and lay down, with greater particularity, the crime of embezzlement and to raise the punishment to the same degree as that applicable to larceny, and held, consequently, that under an indictment charging larceny, evidence of embezzlement is not sufficient to authorize a conviction, and, in fact, is not admissible.

Remarking that because of the similarity between larceny and embezzlement and the contingency that the testimony may show the commission of the one rather than the other, it was provided by statute that a single indictment might change the commission of both separate counts; and that when the offenses are thus charged the state is not required to elect upon which charge the prosecution will be conducted, the court in Morgan v. State (1925) 169 Ark 579, 275 SW 918, said further: "The state may go to the jury upon both charges, leaving it to the jury to decide whether there was a wrongful taking or a wrongful conversion, one offense being larceny, the other embezzlement. The proof of a wrongful taking is essential to support a conviction for larceny, but that proof will not suffice to sustain the charge of embezzlement, nor will the proof of a wrongful conversion sustain the charge of larceny."

The statutes in some jurisdictions, however, would appear to merge the offenses of larceny and embezzlement into one statutory crime. This seems to have been achieved in California, for example, under legislation enacted in 1927 providing in substance that a person who shall feloniously steal, take, etc., personal property of another, or who shall fraudulently appropriate property which has been intrusted to him, or who shall by any false or fraudulent representation or pretense defraud another of money, labor, or property, is guilty of theft. As to the effect of this statute generally, see for example (not an exhaustive list): People v. Myers (1929) 206 Cal 480, 275 P 219 (wherein the court said: "the effect of the section as now appearing is merely to amalgamate the crimes of larceny, embezzlement, false pretenses, and kindred offenses under the cognomen of theft. No elements of the former crimes have been changed by addition or subtraction."); People v. Dempster (1929) 96 Cal App 358, 274 P 592; and People v. Tullos (1943) — Cal App2d —, 134 P2d 280.

But note that, with respect to a Washington statute, it was held in State v. Smith (1939) 2 Wash2d 118, 98 P2d 647, that although the statute specifying what constitutes larceny, in one paragraph defined the offense in terms of common-law larceny and in a separate paragraph defined the offense of felonious appropriation of property lawfully in the possession of a bailee, agent, etc.—such definition being equivalent to the crime usually known as embezzlement—and provided that in each instance the violator shall be guilty of larceny, the crimes denounced in the separate paragraphs were nevertheless distinct offenses and an indictment charging a violation within the terms of one such paragraph was not supported by proof showing a violation of the terms of the other. Consequently, a conviction upon a charge of larceny was reversed where the proof failed to make out the essential elements of that offense, although it was sufficient to prove the commission of the crime of embezzlement.

A Federal statute providing for the punishment of whoever shall "embezzle, steal or purloin" any money, etc., of the United States (Criminal Code, § 47, 18 U.S.C.A. § 100, 7 FCA title 18, § 100) has lately been construed in a case that seems of interest upon this matter of statutes which, upon their face, appear to merge the two offenses.[18]

As pointing out that the statutory offense of larceny defined in a Michigan statute providing that any person to whom any money, goods or other property, which may be the subject of larceny, shall have been delivered who shall embezzle or fraudulently convert to his own use, or shall secrete with the intent to embezzle, or fraudulently use such goods, money or other property, or any part thereof, shall be deemed by so doing to have committed the crime of larceny, was neither common-law larceny nor embezzlement, but was one of the crimes provided by statute law to occupy the no man's land surrounding the offenses against property at common law, and was not to be tested by the common-law rules of larceny

or embezzlement, nor by the implication of statute, such as "larceny by embezzlement," sometimes given it for convenient reference, but to determine were to be found in the statute itself, see People v. Dez (1921) 264 Mich. 673, 259 NW 229.

## IV. Grounds of distinction

### a. In general

The statutory variations render generalization upon the matter of the difference between larceny and embezzlement rather hazardous; yet there are certain basic differences distinguishing the type of offense denounced by the embezzlement statutes, considered as a general class, from common-law larceny, and it is with these grounds of distinction and the practical application thereof that this annotation is primarily concerned.

Ordinarily, a basic distinction between the two offenses is that in embezzlement the property comes lawfully into the possession of the offender, and is subsequently unlawfully appropriated by him, whereas in larceny the offender, instead of having their lawful possession of the property, takes it unlawfully in the first instance, thereby committing a trespass against another's possession.

**United States**

United States v. Lee (1887, CC.) 3 F. 816

United States v. Murray (1887, CC.) 3 F. 421 (approved in United States v. Bress (1904, DC.) 131 F. 915, which is reversed on other grounds in (1906, CCA. 6th) 147 F. 250

See also Moore v. United States (1895) 160 US 268, 40 L ed 422, 16 S Ct. 294

Gthe v. Shine (1920) 283 US 181, 67 L ed 130, 23 S Ct. 98 (affirming (1901, CC.) 112 F. 299

Trested v. United States (1920, CCA. 6th) 264 F. 339 (writ of certiorari denied in (1920) 253 US 494, 64 L ed 1031, 40 S Ct.) 587

Davis v. Zerbst (1934, CCA. 5th) 99 F.2d 562

**Alabama**

Walters v. State (1910) 17 Ala App. 86, 81 So. 596

Rosenbaum v. State (1923) 33 Ala App. 442, 96 So. 218 (writ of certiorari denied in (1923) 210 Ala. 401, 98 So. 219)

St. John v. State (1936) 27 Ala App. 57, 168 So. 193 (writ of certiorari denied in (1936) 232 Ala. 452, 168 So. 195)

See Shirey v. State (1911) 1 Ala App. 102, 56 So. 27 (writ of certiorari denied in (1912) 205 Ala. 167, 90 So. 13)

**Arkansas**

Fields v. State (1921) 154 Ark. 435, 310 F. 89

Waters v. State (1922) 161 Ark. 453, 257 SW 41

Martin v. State (1925) 169 Ark. 573, 276 SW 991

See Fisher v. State (1912) 171 AR 165

**California**

People v. DeConnor (1882) 61 Cal. 134

People v. Dee (1916) 30 Cal App. 169, 157 P. 871

People v. Krug (1916) 32 Cal App. 158, 162 P. 467

People v. Kru (1916) 212 Cal App. 517, 163 P. 696

People v. See (1910) 42 Cal App. 385, 183 P. 663

Cramer v. New Jersey Ins. Co. (1910) 108 Cal App. 280, 291 P. 608 (civil action upon automobile insurance policy)

See People v. Pelkey (1898) 37 Cal. 91

People v. Pietri (1927) 94 Cal. 157, 262 P. 402

People v. Bradford (1939) 14 Cal. 2d 247, 103 P. 2d 569 (reversing judgment in (1939, Cal. App.) 100 P. 2d 795)

People v. Robinson (1917) 33 Cal App. 556, 169 P. 722

**Colorado**

Moore v. People (1916) 65 Colo. 339, 176 P. 676

---

Louis v. People (1920) 109 Colo. 89, 123 P. 2d 396

**Connecticut**

State v. Butler (1890) 70 Conn. 665, 123 P. 2d 46

State v. Lamon (1910) 83 Conn. 669, 78 A. 1095

State v. Heckman (1925) 102 Conn. 658, 129 A. 724

**Delaware**

Foster v. State (1899) 2 Penn. 111, 43 A. 265 (affirming judgment in (1899) 1 Penn. 289, 40 A. 939)

State v. Ivant (1911) 1 Boyce 72, 80 A. 976 (charge to jury)

State v. Curtis (1914) 5 Boyce 518, 95 A. 132 (charge to jury)

**District of Columbia**

See Roider v. United States (1910) 36 App. DC. 290

**Florida**

Talbott v. United States (1910) 42 App. DC. (writ of certiorari denied in (1910) 24 US 363, 58 L ed 1301, 34 S Ct. 927)

Anthony v. United States (1916) 45 App. DC. 117

Filo v. State (1938) 135 Fla. 361, 185 So. 435, 123 A.L.R. 360

See State v. State (1938) 135 Fla. 168, 66 So. 845, 18 LRA NS 371

State v. State (1919) 78 Fla. 167, 82 So. 78

**Georgia**

See Robinson v. State (1900) 109 Ga. 564, 35 SE 57, 77 Am R Rep 392

Carter v. State (1915) 143 Ga. 632, 85 SE 384

(Note: For reference to cases of the numerous Georgia cases distinguishing between simple larceny and "larceny after trust," see infra, IV c 1, footnote 20.)

**Idaho**

Saulsbury v. People (1860) 172 Ill. 55, 49 NE 991

People v. Moore (1927) 243 Ill. App. 378

See People v. Ehr (1916) 273 Ill. 424, 112 NE 870

And see dicta in People v. Peddock (1921) 296 Ill. 599, 131 NE 549

People v. Parker (1954) 319 Ill. 256, 149 NE 352

People v. Stevens (1924) 314 Ill. 291, 191 NE 154

People v. Smeth (1923) 361 Ill. 399, 198 NE 150

People v. Strewe (1926) 361 Ill. 602, 2 NE 2d 942

**Indiana**

Axtell v. State (1910) 178 Ind. 711, 91 NE 354 (overruled upon another question in Axtex v. State (1911) 176 Ind. 374, 96...)

94 NE 119, and Zaksonder v. State (1915) 181 Ind. 187, 190, 102 NE 363

Davis v. State (1925) 196 Ind. 213, 147 NE 266

See State v. Winn (1883) 97 Ind. 398

Colip v. State (1899) 153 Ind. 584, 55 NE 739, 74 Am St Rep 322

Wynsma v. State (1901) 157 Ind. 577, 62 NE 38

**Iowa**

State v. Smith (1925) 200 Iowa 151, 202 NW 311

See State v. State (1918) J. G. Gross 47

State v. Baldwin (1889) 79 Iowa 714, 30 NW 478

State v. Fitzgerald (1885) 120 Iowa 286, 103 NW 155, 4 Ann Cas 628

State v. Calhoun (1888) 118 Iowa 235, 113 NW 869

State v. Reynolds (1902) 269 Iowa 346, 218 NW 281

**Kansas**

See State v. Yates (1896) 54 Kan 277, 38 P 320

**Kentucky**

Morse v. Com. (1892) 241 Ky 713, 42 SW 2d 543

So. Com. v. Clifford (1896) 96 Ky. 4, 27 SW 811

**Louisiana**

State v. Perry (1972) 167 La. 550, 119 So. 679

**Maine**

State v. Thomas (1972) 126 Me. 230, 137 A. 396

**Maryland**

Boyle v. Bernstein (1927) 245 Md. 43, 241 NW 373

**Massachusetts**

So. William v. United States Fidelity & G. Co. (1927) 105 Md. 498, 46 A. 495

So. Com. v. King (1812) 9 Cush. 284

So. Com. v. Hays (1887) 14 Gray 62, 74 Am Dec 662

**Michigan**

Com. v. Berg (1870) 124 Mass. 242

**Minnesota**

State v. Kortgaard (1893) 62 Minn. 7, 64 NW 51

**Missouri**

State v. Rook (1905) 186 Mo. 15, 84 SW 991; 2 Am Crit 1007

State v. Burns (1916) 268 Mo. 407, 188 SW 155

State v. Cochran (1933) 339 Mo. 660, 98 SW2d 187

State v. Harmon (1941) 347 Mo. 1230, 152 SW2d 161

**Nebraska**

State v. La Fleur (reported herewith) ante, 529

State v. Kenrick (1922) 108 Neb. 190, 150 SW 802

State v. Carr (1927) 107 Neb. 1, 105 NW 649, 123 Am St Rep 367, 11 Am Crit 178

State v. Pape (1930) 388 Neb. 482, 208 NW 43

**Nevada**

Davis v. Hersee, Co. v. Schmidt (1934) Mo. Am.) 113 SW2d 1048

State v. Carr (1892) 64 Me. 402, 188 SW 155

Ex'd. v. State (1891) 54 Me. 62 Mo. 14 NW 1087

Cohen v. State (1907) 79 Neb. 811, 113 NW 533, 114 NW 286

So. Chaskin v. Lee (1885) 18 Neb. 669, 24 NW 629

**New Mexico**

So. Territory v. Maxwell (1882) 2 NM 250

**North Carolina**

So. State v. McDonald (1900) 133 NC 366, 45 SE 582

**North Dakota**

State v. Ueland (1922) 48 ND 441, 187 NW 237

State v. Block (1929) 57 ND 367, 222 NW 385

So. State v. Collins (1895) 4 ND 433, 61 NW 467

**Oklahoma**

Burke v. State (1917) 11 Okla. Crim Rep 625, 167 P 229, 1 R.A.1919A 312

Rahn v. State (1939) 64 Okla. Crim Rep 183, 78 P2d 212

So. also Haney v. State (1941) — Okla Crim Rep — 114 P2d 1062

**Oregon**

State v. Coleman (1926) 119 Or. 430, 249 P 1066

So. State v. Browning (1905) 47 Or. 470, 82 P 955

State v. Johnston (1933) 143 Or. 395, 22 P2d 879

**Texas**

Com. v. State (1893) 102 Tex Crim Rep 389, 272 SW 197

Wright v. State (1927) 107 Tex Crim R pc 514, 296 SW 296, not distinguishing embezzlement from theft

16

And see Hartford Acc. & Indem. Co. v. Wichita Laundry Co. (1922, Tex Civ App) 313 SW2d 365

**Washington**

State v. Smith (1932) Wash2d 108, 98 P2d 647

**West Virginia**

State v. Moyer (1905) 58 W. Va. 146, 52 SE 30, 6 Ann Cas 344

So. State v. Fraley (1912) 71 W. Va. 100, 76 SE 134, 42 L.R.A.(NS) 498

State v. Smith (1924) 97 W. Va. 313, 125 SE 90

**Wyoming**

So. McCoan v. United States (1926) 2 Wyo 224

Then, a court has said: "In larceny there is the ingredient of an unlawful taking from the possession of the owner with the intent to deprive him of his property, and to wrongfully appropriate it to the use of the party so taking. The custody or actual possession, in larceny, is acquired by the party unlawfully, in the act of feloniously taking the owner's property without his consent. But in embezzlement there is no wrongful or unlawful acquisition of the custody or possession of the property embezzled, on the contrary, the party embezzling must be lawfully in possession by virtue of some employment, trust, or agency, under and with the consent of the owner, and who is in possession, holding the property in trust or for the benefit of the owner, he wrongfully converts the same to his own use." United States v. Heyer (1867) CC.) 2C 417.

To similar effect, in State v. Colter (1905) 5 Neb. (Unof.) 264, 97 NW 1051, the court remarked that the crime of embezzlement, "differs in but essential ingredient from the crime of larceny, in that that in larceny the possession of the offense is the unlawful and fraudulent of personal property with intent to convert and steal the thing it, while in embezzlement the taking is lawful, because of the trust reposed in the agent, servant, or trustee receiving it, and the gravamen of the offense consists in the conversion of the property so received, with a felonious and fraudulent intent of converting the same to the use of the agent, servant, or trustee."

"Larceny involved the idea of an unlawful acquisition, whereas embezzlement is a fraudulent conversion to his own use of personal property after its possession has been lawfully acquired by the embezzler." State v. Coleman (1926) 119 Or. 430, 249 P 1066.

Particular note should be taken of a dictum by the Supreme Court of the United States in Moore v. United States (1895) 160 US 268, 40 L ed 422, 16 S Ct 294, in these words: "Embezzlement is the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking." The statement was quoted and impliedly approved in Grin v. Shine (1902) 187 US 181, 47 L ed 130, 23 S Ct 98 (affirming (1901, CC) 112 F 790). And it was repeated by New York court in Sinclair v. Levison (1910) 140 App Div 764, 127 NYS 75, considering the meaning of the language "defendant has embezzled and has wrongfully converted to his own use," appearing in a complaint in a civil action. So too, in People v. Paldock (1921) 200 Ill App 131 NE 249, the distinction was expressed in the same words.

Very similar language is found in State v. Corry (1907) Mo.) 105 SW 645, 123 Am St Rep 367, 11 Am Crit 178, the court saying: "The distinction between larceny and embezzlement is not fully recognized in the criminal law of this state as well as in England. While the two offenses have much in common, for the purpose of prosecution they have uniformly been regarded as distinct. In every larceny there must be a trespass in the original taking of the property; that is, in larceny the felonious intent must have existed at the time of the taking . . . Where embezzlement is the foundation and felonious appropriation of another's property by a person to whom it has been intrusted, or into whose hands it has lawfully come."

It has been said that "embezzlement differs from larceny precisely in this: that it does not depend upon a violation of possession." United States v. Yoakum, Brokerage & Trading Co. (1910, CC) 261 F 49.

20

In People v. Parker (1934) 355 Ill 258, 189 NE 352, reversing a conviction of embezzlement because of insufficient evidence of guilt, the court, although it was not contended that the offense, if any, was larceny, had occasion to say: "The crime of embezzlement differs from that of larceny in that in embezzlement the original taking is lawful, as the party acquires the possession of the funds or property by reason of the relation of principal and agent or employee. The gravamen of the offense consists of the subsequent conversion of the property so received with the felonious intent on the part of the agent or employee to convert the property to his own use."

Similarly, in People v. Knox (1916) 32 Cal App 158, 162 P 407, holding that the defendant's offense, if any, was embezzlement rather than larceny, the court said: "The essential gist of the crime of embezzlement is in the breach of trust reposed in the agent, employee, or bailee, by his principal, employer, or bailor, and therefore, the charge of embezzlement always presupposes the lawful acquisition by the agent, employee, or bailee of the possession of the property which has been misappropriated or wrongfully converted to the use of such agent, employee, or bailee. The essential distinction, then, between the crime of embezzlement and that of grand larceny, is that in embezzlement the original taking of the property is lawful, while in grand larceny the original taking involves a trespass or is accompanied by a felonious intent to deprive the owner of the property so taken."

With reference to an early New York embezzlement statute the court said, in People v. Dalton (1836) 15 Wend. (NY) 581: "It is intended to provide for a fraudulent conversion of money or goods by a servant, when they are delivered to him as such, either by his master or mistress, or in their behalf, or by a stranger. That was but a breach of trust at common law, because the money or goods came to his hands by delivery. The statute intended to convert such a breach of trust into a crime."

And in People v. Burr (1871) 41 How Pr (NY) 293, reversing a conviction for embezzlement because defendant was deemed not to be a clerk or servant of the prosecutor and hence not within the purview of the embezzlement statute, the court said: "Embezzlement is a species of larceny, and the term is applicable to cases of furtive and fraudulent appropriation by clerks, servants, or carriers of property coming into their possession by virtue of their employment; it is distinguished from larceny, properly so called, as being committed in respect of property which is not at the time in the actual possession of the owner."

Likewise, in Blackard v. National Biscuit Co. (1926) 125 Me 201, 132 A 386, the court said that embezzlement is distinguished from larceny as being committed in respect of property which is not, at the time, in the actual or legal possession of the owner.

To the same effect, in Hartford Acci. & Indem. Co. v. Wichita Laundry Co. (1929, Tex Civ App) 23 SW2d 765, a civil action upon an indemnity bond covering an employee (a laundry route man), the court, in holding that the proof was sufficient to show embezzlement of money collected by the employee from his employer's customers, quoted the statement from Webster's New International Dictionary: "Embezzlement differs from larceny in that in the former case the property is already in the wrongdoer's possession."

Relative to embezzlement, the court said in State v. Kortgaard (1895) 62 Minn 7, 64 NW 51: "The offense differs from common-law larceny in that the property must have already been in the lawful possession or control of the accused under or by virtue of some employment, trust, or agency under and with the consent of the owner; while common-law larceny involves the element of an unlawful taking of the property from the actual or constructive possession of the owner."

To the effect that the offenses are distinct, it was said in Brown v. State (1941) 30 Ala App 27, 200 So 630 (writ of certiorari denied in (1941) 240 Ala 589, 200 So 634), that while larceny and embezzlement belong to the same family of crime, and are kindred offenses, the two offenses are not identical in law, and in fact, therefore, an acquittal or conviction of the one is not a bar to a prosecution for the other.

And as also pointing out that larceny and embezzlement are distinct offenses, see State v. Perry (1929) 167 La 550, 119 So 870, stated infra, IV b 1, under subhead "Where property was acquired without evil intent: fraudulent conversion deemed embezzlement," and State v. Finnegan (1905) 127 Iowa 286, 103 NW 155, 4 Ann Cas 628, stated infra, IV c 1. Compare, generally, in this connection, comment infra, VI.

With reference to the meaning of the word "embezzle" as used in an embezzlement statute, the court, in State v. Sullivan (1896) 49 La Ann 197, 21 So 688, 62 Am St Rep 644, remarked: "The term ... is one which has a well-recognized and accepted common meaning. ... Webster defines it as 'to appropriate fraudulently to one's own use, as that intrusted to one's care; to apply to one's private use by a breach of trust, as to embezzle public money.' ... It is a broader term than larceny under our law, but is not exclusive of it, as counsel contends."

And in State v. Wolff (1882) 34 La Ann 1153 (to which reference was made by the court in the Sullivan Case (La) supra), affirming a conviction of embezzlement and holding a complaint using the word "embezzle" sufficient as against the objection that it did not set forth that the money alleged to have been wrongfully used had been appropriated to the prisoner's own use and benefit, the court said: "Embezzle means to appropriate to one's own use property or money intrusted to him by his employer. The use of that word [in the complaint] supplies the place of the sentence which the counsel earnestly contends is sacramental. The single word embezzle means all that the sentence does, and something more." And the court remarked that "Embezzlement is not a common-law offense. It had its origin in the efforts to amend the law of larceny."

In reversing a conviction under United States Criminal Code, § 97 (18 U.S.C.A. § 183, 7 FCA title 18, § 183) providing for the punishing of any internal revenue officer who should embezzle or wrongfully convert to his own use any money or property which had come into his possession or under his control in the execution of such office or employment, the court had occasion to say: "Embezzlement is not a common-law offense, but a statutory ingraftment of criminal liability upon a species of common-law conversion. It is generally taken to be the fraudulent or felonious conversion of property which has rightfully come into the possession of the converter." Hubbard v. United States (1935, CCA 9th) 79 F2d 850.

As distinguishing swindling from embezzlement and from theft by false pretext, see Rumfield v. State (1940) 139 Tex Crim Rep 599, 141 SW 2d 630, affirming a conviction of swindling where one H. gave defendant an order to buy for H. certain shares of stock at a designated price, H. to pay defendant therefor after the stock had been purchased, and some days thereafter defendant advised H. that he had purchased the stock, although in fact he had not then and did not thereafter purchase it, and relying upon such representation H. delivered money in payment thereof to defendant, who spent the money and failed to purchase and deliver the stock to H. The court quoted from 39 Tex Jur 1054: "Embezzlement differs from swindling in that in embezzlement the property is fraudulently appropriated by the person to whom it had been intrusted, whereas in swindling the property is wrongfully acquired in the first instance by means of some false pretense or device;" and noted that in the present case, according to the state's evidence, the property was wrongfully acquired in the first instance by means of an alleged false representation by the appellant that he had bought the stock in question for H.

In affirming a conviction under a statute providing that any person committing a breach of trust with a fraudulent intention shall be held guilty of larceny, the court, in State v. McCann (1932) 167 SC 393, 166 SE 411, observed that in other states the same crime was commonly known as embezzlement, and said that the main distinction between breach of trust and larceny was that in common-law larceny possession of the property stolen was obtained unlawfully, while in breach of trust, the possession was obtained lawfully. It was noted that a South Carolina embezzlement statute applied only to public funds.

**Cases emphasizing the element of trespass or wrongful taking.**
The point that larceny involves a trespass, whereas embezzlement does not, has been stressed in several cases. See particularly the following:

**Alabama**
Eggleston v. State (1921) 19 Ala App 442, 98 So 216 (writ of certiorari denied in (1923) 210 Ala 40, 98 So 219)

**California**
People v. Kirk (1917) 32 Cal App 317, 163 P 696

**Colorado**
Mosley v. People (1918) 65 Colo 332, 176 P 54

**Connecticut**
State v. Heller (1909) 76 Conn 365, 70 A 105
State v. Lennon (1910) 83 Conn 469, 76 A 1052
State v. Hetherington (1925) 102 Conn 658, 129 A 724

**District of Columbia**
Roulette v. United States (1910) 34 App DC 242
Anderson v. United States (1916) 45 App DC 112

**Iowa**
State v. Colburn (1908) 138 Iowa 236, 115 NW 693
And see State v. Baldwin (1881) 79 Iowa 189, 30 NW 476
State v. Plummer (1900) 177 Iowa 366, 101 NW 155, 4 Ann Cas 628
State v. Reynolds (1922) 202 Iowa 843, 211 NW 783

**Kentucky**
Com. v. Clifford (1894) 96 Ky 4, 27 SW 811
And see Warmoth v. Com. (1883) 81 Ky 133

**Idaho**

**Missouri**
State v. Thomas (1972) 126 Mo 230, 137 A 295
State v. Oarr (1907) 202 Mo 1, 100 SW 465, 121 Am St Rep 387, 11 Ann Cas 171

**North Carolina**
State v. McDonald (1903) 133 NC 680, 45 SE 582

**North Dakota**
State v. Collins (1923) 4 ND 433, 61 NW 467

**Oregon**
State v. Browning (1905) 47 Or 470, 82 P 955
State v. Johnson (1933) 10 Or 293, 22 P2d 872

**Texas**
State v. Matthews (1929) 143 Tenn 463, 226 SW 203, 13 ALR 314

**Washington**
State v. Smith (1922) 2 Wash 2d 118, 98 P2d 647

**Wyoming**
McCann v. United States (1929) 2 Wyo 274

Thus, it was observed in Anderson v. United States (1916) 45 App DC 112: "The principal difference between larceny and embezzlement lies in the manner in which possession of the property is acquired. In larceny there is a trespass, accompanied by an intent to steal, while in embezzlement there is a fraudulent conversion of the property, the possession of which was lawfully acquired."

And the same court has said: "To constitute larceny the property must be unlawfully taken from the possession of another, with the fraudulent intent to convert the same to his own use. The taker without the consent of the owner commits a trespass. The offense of embezzlement consists in the wrongful conversion of the property which has been intrusted to the possession of another. He commits no trespass or wrong in acquiring the property, but a breach of trust in converting the property to his own use." Roulette v. United States (1910) 34 App DC 242.

Affirming a conviction of embezzlement, the court in State v. Hetherington (1925) 102 Conn 658, 129 A 724, said that in distinguishing larceny between these two crimes is that "in larceny there is the felonious taking, while in embezzlement, the property being in the lawful possession of the party who appropriated it, there was no trespass or breach of the technical possession which is essential to the case of larceny." State v. Lennon (1910) 83 Conn 469, 76 A 1052.

---

Distinction between larceny and embezzlement, 146 A.L.R. 532 [Originally published in...

commits a trespass. The offense of embezzlement consists in the wrongful conversion of the property which has been intrusted to the possession of another. He commits no trespass or wrong in acquiring the property, but a breach of trust in converting the property to his own use." Roulette v. United States (1910) 34 App DC 242.

In State v. Colburn (1908) 138 Iowa 236, 115 NW 693, wherein it was shown that the defendant, an officer of a labor organization, in conjunction with others, converted funds of the union to his breach, it was said: "We admit the facts alleged made out a case of larceny. To constitute larceny there must be a trespass in the taking. That is fundamental in the law on the subject. True, it is not necessary that the taking be by force or stealth. If possession is obtained by fraud with intent to convert the property to the use of the taker, and it is so converted, the property may be charged. But here the taking was in all respects rightful. It was rightful, even though the taker intended to make a wrongful disposition of the money, once it was in his possession. The wrongful disposition, if criminal in character, would be embezzlement."

And in affirming a conviction of larceny by embezzlement, the court, in State v. Reynolds (1922) 202 Iowa 843, 211 NW 783, quoted the statement from State v. Baldwin (1881) 79 Iowa 189, 30 NW 476: "The crime of embezzlement embraces all of the elements of larceny except the actual taking of the property or money embezzled."

See also State v. Plummer (1900) 177 Iowa 366, 101 NW 155, 4 Ann Cas 628, stated infra, IV c 1, recognizing the distinction relative to the matter of trespass but emphasizing that embezzlement involved a fiduciary relationship.

"Embezzlement," the court said in State v. Collins (1923) 4 ND 433, 61 NW 467, "is a statutory expansion of common-law larceny, made to prevent a failure of justice which would occur under the technical rules that the law applied to larceny. It covers cases when the property ... comes into possession of the defendant without any technical trespass; in other words, when property is intrusted to the party."

It was said in State v. McDonald (1903) 133 NC 680, 45 SE 582: "The general object of these [embezzlement] statutes was to punish the misappropriation of property rightfully in the possession of the alleged wrongdoer, who, though civilly liable for a conversion, could not be convicted of larceny, because same was no taking from the owner's possession by a trespass. The result of these statutes, therefore, was to extend the crime of larceny so as to cover cases where the act of taking or conversion must be done with a fraudulent or felonious intent. In embezzlement there must have been not only a violation of trust and confidence between the owner and the person who is charged with the conversion, but the property must have been appropriated with a fraudulent purpose. ... We think, therefore, that the conversion of funds by a person who has been intrusted with them becomes criminal as an embezzlement only by reason of his corrupt intent, and it is necessary for the state to establish the intent as a fact independent of the conversion as it is to prove the bad intent in a prosecution for larceny as a fact apart from the taking."

"Embezzlement at common-law larceny extended by statute to cover cases where the stolen property comes originally into the possession of the defendant without a trespass. The word implies a fraudulent or unlawful intent. One cannot honestly embezzle any more than he can honestly steal. It differs from common-law larceny only in the fact that the

is no trespass in the original taking, but it is stealing. It includes all cases where one intrusts the care of his property to another, as his agent, who fraudulently appropriates it to his own use, or fraudulently misapplies it. It is made to cover a class made up of larceny where the possession is got lawfully, of larceny where the possession is got fraudulently with the consent of the owner, and the proof must be in accord with the description, in the absence of a statute providing otherwise." Mack v. People (1918) 63 Colo. 130, 165 P. 476.

In affirming a conviction of larceny after trust, it appearing that accused, having in his possession 23 bushels of cotton seed belonging to his landlord, fraudulently converted it to his own use, it was said in Smith v. State (1910) 7 Ga. App. 468, 67 S.E. 202: "Larceny after trust differs from other forms of larceny, in that trespass is not an essential element of that offense."

It has been said: "In larceny, there is no breach of any confidential relation as in embezzlement, while in the latter crime, there is no trespass as in larceny." State v. Browning (1892) 47 Or. 470, 82 P. 955.

To similar effect, the Massachusetts court has stated that the distinguishing feature of embezzlement is that the technical taking or asportation essential to larceny is not required, a breach of trust taking its place. Com. v. Ryan (1892) 14 Gray (Mass.) 6, 74 Am Dec 640.

So too, in Hall v. State (1921) 161 Ark. 453, 257 SW 61, affirming a conviction of grand larceny, the court said: "Larceny and embezzlement belong to the same family of crimes. If the actual or constructive possession of the property was in the owner, then the wrongful conversion would be larceny and not embezzlement. There must be lawful possession in the defendant at the time of the conversion to constitute embezzlement. The distinguishing feature of embezzlement is that the taking essential to larceny is not required, a breach of trust taking its place."

Affirming a conviction of larceny as bailee, the court said, in Hutchinson v. Com. (1876) 82 Pa. 472, that: "It is a fraud per se for a bailee to convert to his own use the property committed to his care. The conversion is prima facie evidence of the fraud. Larceny at common law involves something more. It requires the animus furandi. There must be a fraudulent conversion."

"There is a distinction between embezzlement and larceny. The distinguishing element of the latter crime is the taking and carrying away, or asportation, of the property the subject of the larceny. In embezzlement the property is lawfully in the possession of the accused by reason of some fiduciary relation between the accused and the owner." People v. Bale (1910) 272 Ill. 624, 112 NE 670. See also Johnson v. People (1883) 113 Ill. 99, and People v. Moon (1920) 291 Ill. App. 378.

And it has been said: "The principle is well settled that to constitute a larceny there must be a felonious taking of the property, which is lawfully in the custody of an employee or bailee is criminally appropriated to the use of such employee or bailee, the offense may be embezzlement, but it cannot be larceny." State v. Winer (1883) 83 Ind 208, holding that the conviction of term by a barrator was embezzlement, and not larceny.

### A. Time of formation of felonious intent

#### 1. In general

A considerable amount of authority supports the view that if the accused, at the time into the possession of another's property was intrusted to or otherwise received by him, harbored a fraudulent or felonious intent to convert the property to his own use, his subsequent conversion of it is larceny rather than embezzlement, whereas, if he received the property honestly in the first instance and did not form the evil intent until some later time, his offense in converting it is embezzlement and not larceny.

---

**United States**

See Thackell v. United States (1920, CCA 6th) 268 F 326 (writ of certiorari denied in (1920) 253 US 459, 64 L ed 1031, 40 S Ct 567)

Levy v. State (1882) 79 Ala 259
Robinson v. State (1900) 129 Ala 80, 30 So 502, 87 Am St Rep 17
Knight v. State (1907) 152 Ala 56, 44 So 465

**Arizona**

Phillips v. State (1922) 25 Ariz 495, 219 P 589

**Arkansas**

Hall v. State (1909) 72 Ark 247, 79 SW 769, 64 LRA 71, 105 Am St Rep 34, 2 Ann Cas 33
Morgan v. State (1921) 161 Ark 453, 257 SW 61
See Fulton v. State (1921) 13 Ark 168

**California**

People v. Howard (1916) 31 Cal App 158, 160 P 627
People v. Stay (1919) 41 Cal App 365, 182 P 841
People v. Schenke (1921) 51 Cal App 257, 208 P 340
See People v. Smith (1883) 23 Cal 280
People v. Baker (1892) 96 Cal 120
People v. Tomlinson (1894) 102 Cal 19, 36 P 506 (distinguishing larceny, obtaining money by false pretenses, and embezzlement)
People v. Jackson (1901) 138 Cal 462, 71 P 566 (embezzlement)
People v. Eastman (1892) 70 Cal 292, 168 P 977 (embezzlement)
People v. Bohnomme (1871) 35 Cal App 159, 169 P 217 (embezzlement)
People v. Raschal (1913) 95 Cal App 157, P 466 (embezzlement)
Graner v. New Jersey Ins. Co. (1930) 108 Cal App 270, P 468 (civil action upon automobile insurance policy)
People v. Stanford (1940) 16 Cal App2d 243, 105 P2d 969 (judgment reversed in (1940) 16 Cal2d 247, 105 P2d 969)
People v. Browman (1906) 11 Cal App2d 143, 168 P2d 16
(In connection with California cases decided since 1927, take note of statute referred to in supra, III, which in some cases merges the two offenses.)

**Florida**

Finlayson v. State (1903) 46 Fla 81, 35 So 203
See Sowa v. State (1910) 79 Fla 167, 82 So 178
Flint v. State (1913) 64 Fla 435, 115 ALR 360
And see Wilson v. State (1909) 47 Fla 118, 36 So 580 (embezzlement)

**Iowa**

Johnson v. People (1883) 113 Ill 99

**Iowa**

State v. Smith (1925) 200 Iowa 132, 202 NW 511

**Louisiana**

See State v. Parr (1922) 167 La 159, 119 So 470 (embezzlement)

**Missouri**

See v. Harmon (1890) 106 Mo 635, 18 SW 128
State v. Beck (1905) 188 Mo 15, 84 SW 951, 2 Ann Cas 1007
State v. Fiffer (1924) 36 Mo 464, 268 SW 45
State v. Harmon (1891) 167 Mo 1320, 153 SW 9 161
State v. La France (reported herewith) ante, 529

See State v. Shaw (1871) 69 Me. 101 (overruled upon another matter in State v. Broderick (1879) 70 Me. 622, 249)

**Oklahoma**

Flohr v. Territory (1909) 14 Okla. 477, 78 P 565

Bivens v. State (1970) 11 Okla. Crim. Rep. 521, 129 P 1083

Essex v. State (1917) 13 Okla. Crim. Rep. 675, 167 P 229, L.R.A. 1918A 312

Huff v. State (1930) 13 Okla. Crim. Rep. 181, 74 P2d 112

See Hunter v. State (1913) —— Okla. Crim. Rep. ——, 134 P 234

See Keller v. State (1917) 14 Cal. App. 155, 108 SE 51 (distinguishing simple larceny from larceny after trust; and

See State v. Brooks (1923) 92 Or. 545, 212 P 36 (affirming a conviction of larceny and distinguishing the offense of larceny by bailee).

For the essential source of this distinction, see supra, II, note 4.

"As between a larceny of this character [by trick] and an embezzlement, the chief distinction lies in the presence of the fraudulent and felonious intent with which the possession of personal property is procured by the accused in the case of the larceny, and the absence of this in embezzlement." People v. Grider (1910) 13 Cal App 703, 110 P 586.

In Granger v. New Jersey Ins. Co. (1930) 108 Cal App 290, 291 P 698, holding that an automobile insurance policy insuring a dealer and other beneficiaries against theft, robbery, or pilferage, except by persons in the assured household, or in their service or employ, and excepting also the wrongful conversion, embezzlement, or secretion by a mortgagor or vendee in possession under a mortgage, conditional sale, or lease agreement, provided coverage against a loss sustained when a person, giving a fictitious name and representing himself as a prospective purchaser of the automobile, upon being permitted by the dealer's salesman to drive the automobile around the block for demonstration purposes, drove the car away and disappeared with it, the court, while taking the view that under a reasonable construction of the policy's terms it insured not only against loss by theft or other form of larceny, but likewise against a loss by embezzlement, except as to a limited class, within which the absconding party in this instance did not fall, so that it was immaterial whether the offense constituted larceny or embezzlement, expressed the opinion that the facts showed a larceny rather than an embezzlement, and said: "The fundamental proposition that there can be no larceny by one who has already a rightful possession before conceiving a fraudulent intent serves as a line of distinction between larceny and embezzlement. In other words, in embezzlement there is a rightful taking and a subsequent unlawful appropriation. In larceny the animus furandi exists at the very time of the taking. So where property delivered by the owner to another for a purpose not involving transfer of title is by the person to whom it is delivered, in violation of the trust reposed in him, appropriated to his own use, it is larceny and not embezzlement, where he intends at the time of receiving it to convert it to his own use in violation of the trust, for the reason that his fraudulent purpose prevents the possession which is given to him from being lawful."

And it was said in People v. Stanford (1940, Cal App2d) 100 P2d 296: "In order to support a charge of embezzlement 'it must appear that the intent to misappropriate the property was formed after the defendant obtained possession of the property, for if the intent existed at the time the possession was obtained, the offense would be larceny.' 10 Cal Jur p 264, § 23." Note that the judgment in this case was reversed in (1940) 16 Cal2d 247, 105 P2d 969, affirming the trial court's judgment convicting the defendant of grand theft based upon the theory that defendant, an attorney at law, embezzled funds held by him as a trustee.

Under statutes defining larceny as "the taking of personal property accomplished by fraud or stealth, and, with intent to deprive another thereof," and embezzlement as "the fraudulent appropriation of property by a person to whom it has been intrusted," it has been said with reference to the distinction between the two crimes: "In larceny the criminal intent must exist at the time of taking the property, and it must be taken, when taken, with intent to appropriate it to the taker's own use, and to deprive another thereof. It may be taken by stealth with such intent, or it may be taken with the owner's knowledge through fraudulent practice by which the owner was induced to give up possession without parting with the title or right to the property, and if the taker receives it under such circumstances, intending to convert it to his own use and thereby deprive the owner thereof, the crime is larceny. If, on the other hand, the property is received by the taker as a bailment, or the right of possession is intrusted to him by the owner with intent to confer upon the taker the present use and possession of the property, to be afterwards redelivered to the owner, and the taker receives it intending a compliance with the terms upon which he receives it, and after he has received it with such intent he converts it to his own use, intending to deprive the owner thereof, the crime is embezzlement." Flohr v. Territory (1904) 14 Okla 477, 492, 78 P 565. See to the same effect, Bivens v. State (1912) 6 Okla Crim Rep 521, 120 P 1033; Ennis v. State (1917) 13 Okla Crim Rep 675, 167 P 229, LRA1918A 312.

In distinguishing the statutory crime of breach of trust with a fraudulent intention, which the court pointed out was substantially equivalent to the offense commonly known in many jurisdictions as embezzlement from the crime of common-law larceny, it was said in State v. McCann (1932) 167 SC 393, 166 SE 411: "If possession of the property is

obtained through artifice, trick, or other fraud, then such possession is not lawfully obtained and the crime is larceny at common law, rather than that of breach of trust, as contemplated by the statute."

Where during the morning of the same day upon which he had been employed by a grocery company to drive their delivery wagon, the defendant, after making one delivery and returning to the grocery store, was again intrusted with the mule and delivery wagon and sent to deliver other groceries, but instead of doing so, appropriated and made away with the wagon and the mule, a conviction of simple larceny was affirmed in Kelley v. State (1919) 24 Ga App 155, 100 SE 23, over the contention that the only offense of which defendant could have been guilty was larceny after trust. The court, however, pointed out that it was well settled that the same transaction might constitute both larceny after trust and simple larceny; that where a person obtains possession of the property of another, under false pretense of a bailment, with intent to appropriate the property to his own use, and the owner intends to part with the possession only of the property, the possession is obtained unlawfully, and the subsequent appropriation of the property in pursuance of the original intent is simple larceny; that the question of intent was peculiarly one of fact for determination by the jury and that the evidence was sufficient to support the finding by the jury that the accused had the intent to commit the crime charged at the time he obtained possession of the mule and wagon.

Ruling, in answer to certified questions, that an attorney who appropriated money which a client had turned over to him for the express purpose of purchasing certain stock for the client, was subject to punishment under a statute providing that whoever being a bailee of any chattel, money, or valuable security shall fraudulently take or fraudulently convert the same to his own use or the use of any other person other than the owner thereof, shall be guilty of larceny, over the contention that the prosecution should have been under a statute relating to obtaining money under false pretenses, the court remarked, in State v. Burke (1926) 189 Wis 641, 207 NW 406: "The general rule of law is that if through fraud one obtains title as well as possession to money he is guilty of obtaining money under false pretenses. If through fraud he obtains possession of money and then converts it to his own use he is guilty of larceny, and if he is lawfully in possession of money and then converts it to his own use he is guilty of embezzlement."

Where the evidence was to the effect that in some manner the accused fraudulently induced two persons to deposit their money with him for safekeeping overnight, and that he intended from the beginning to appropriate it to his own use, a conviction of larceny was affirmed in Finlayson v State (1903) 46 Fla 81, 35 So 203, the court pointing out that the owners parted with the bare possession only and not with the title, that their consent was not as broad as the taking, and that the fraud vitiated whatever right might otherwise have been acquired by virtue of the apparent voluntary parting with possession by those rightfully entitled thereto, so that the offense was at common law larceny and that, moreover, it did not come within the embezzlement statute, as to which the court said: "The prime object of this statute is to make criminal certain acts that do not come within the common-law definition of larceny, not those acts that were theretofore punishable as such. Taking this view of the object of the statute, we will not hold an act theretofore larcenous to be embraced within its provision, in the absence of clear words to that effect."

And where the defendant received from a corporation, of which he was the president and principal stockholder, large sums of money which were purportedly deposited by the corporation with him at interest, such remittances being made to him from time to time by the manager of the corporation, and defendant failed to repay such amount, the court, in Morgan v. State (1925) 169 Ark 579, 275 SW 918, held that a conviction of embezzlement could not stand inasmuch as the transaction whereby the defendant procured the money was either a legitimate loan by way of deposit made with him, failure to repay which would be neither larceny nor embezzlement, or the device of the apparent deposit was a mere trick or subterfuge whereby the defendant acquired possession of the money, in which event the original taking was wrongful and the crime was larceny rather than embezzlement.

In holding that where the defendant received the money in question by means of a trick, device, or artifice, with the intention at the time of appropriating it to his own use, it was larceny under the statute, as it had been at common law, the court pointed out, in People v. Miller (1902) 169 NY 339, 62 NE 418, 88 Am St Rep 546, that the offense of which the

defendant was guilty was larceny rather than false pretenses or embezzlement, since he procured the money by operating upon the minds of depositors by promises of large profits as a fraudulent device to get possession of the money, and there was no agency, bailment, or trust to give any color of right to his original possession. But note that, in affirming the conviction of larceny, the court observed: "Moreover, the same act may sometimes amount to larceny at common law and embezzlement under the statute, and when it does the offender may be prosecuted upon either charge, at the option of the people, when the two offenses are of the same grade and do not require a different measure of punishment." In this case the defendant's contention was that the offense if any was obtaining money by false pretenses, rather than larceny, so that the court's remarks as to embezzlement must be deemed dicta.

Note that in People ex rel. Sheinberg v. Stemrathal (1935) 154 Misc 130, 276 NYS 689, a hearing before a city magistrate, wherein it appeared that the complainant bet $21 against the defendant's $15 on a prize fight and won the bet but that the defendant not only failed to pay the bet but also refused to return the $21 he had received from the complainant, the magistrate, in deciding, over the contention that the facts did not constitute a crime, that the defendant should be held to await the action of the court of special sessions, said: "If the stakeholder fraudulently obtains possession of the money with the intention at the time he receives it to convert it to his own use, and the person parting with it intends to part with his possession merely and not with his title to the money, the offense is a common-law larceny. On the other hand, if the stakeholder honestly receives the possession of the money to await the result of the bet, and, after receiving the money, fraudulently converts it to his own use, he may be guilty of the crime of embezzlement, which also is larceny under our statute."

**Where property was acquired without evil intent; fraudulent conversion deemed embezzlement.**

Correspondingly, where no fraudulent intent existed at the time the property was acquired by the accused, his offense in subsequently fraudulently converting it is ordinarily deemed to be embezzlement rather than larceny.

So, in Fulton v. State (1852) 13 Ark 168, it was held that evidence showing that the owner of a horse loaned it to the accused for a certain purpose and that the accused, after carrying out such purpose, sold the horse at public auction, did not support a charge of larceny in the absence of a showing of a felonious intent on the accused's part at the time the horse was intrusted to his care, the court taking the view that proof of the crime of embezzlement would not authorize a conviction under an indictment charging larceny.

And where the defendant hired a horse and buggy from a livery stable, saying she wanted to drive to a point about 12 miles from town and would return on the same day, but after driving to the point mentioned, she proceeded to a city more than a hundred miles distant, and defendant testified that when she hired the horse and buggy she intended to make the journey to the nearby town and return as agreed but that on arriving in such town events occurred which induced her to proceed to the distant city, the court in affirming a conviction of embezzlement, in People v. Jackson (1903) 138 Cal 462, 71 P 566, held that under the evidence the trial court properly refused to give instructions asked by the defendant based on the theory that there was some evidence upon which the conclusion might be reached that the defendant's crime was larceny, and not embezzlement, the court saying that there was no occasion for instructions as to larceny, because the evidence showed affirmatively that the conveyance was obtained without any criminal purpose or intention of converting it to defendant's own use, and that such intention must have been formed some time after she was intrusted with the property.

Likewise, in People v. Boinamez (1917) 35 Cal App 350, 169 P 922, it was held that a person who converted a horse hired by him was guilty of embezzlement, rather than larceny, the court saying that the jury were not bound to believe the defendant's testimony as to his intent at the time he rented the property; that there was sufficient evidence to show that the "defendant's intention was to embezzle the property, and was formed after it came into his possession."

As applying the same principle in holding that the offense in wrongfully converting a hired horse was embezzlement rather than larceny, see also, for example, People v. Salorse (1882) 62 Cal 139; Wilson v. State (1904) 47 Fla 118, 36 So 580; and State v. Stone (1878) 68 Mo 101 (overruled upon another matter in State v. Broderick (1879) 70 Mo 622, 624).

In State v. Perry (1929) 167 La 550, 119 So 878, it was held that where a waiter received payment of a patron's meal check directly from the patron but failed to pay the money to his employer's cashier as he should have done, and there was nothing to show that at the time he received the money from the patron he then intended to appropriate it to himself, his offense, if any, was embezzlement rather than larceny. The court said that the distinction between larceny and embezzlement "exists in this state, however, and in every larceny there must be a trespass in the original taking of the property (in this case money), whereas embezzlement is the fraudulent and felonious appropriation of another's property or money by a person to whom its possession has been intrusted, or into whose hands its possession has lawfully come." Noting that the embezzlement statute provided in part that any servant, clerk, broker, agent, mandatory, depositary, bailee, etc., who shall wrongfully use, dispose of, conceal, or otherwise embezzle any money which he shall have received for another, or for his employer, etc., or which shall have been intrusted to his care, keeping, or possession by another or by his employer, upon conviction thereof should be punished as specified, the court said that the very language of the statute established a distinction between the statutory crime of embezzlement and those acts which constitute larceny; that the acts which the statute declared should constitute the crime of embezzlement necessarily exclude the idea that the same act should also constitute the crime of larceny.

Where a lawyer whose client was confined in jail obtained a check for $1,000 from the client upon the representation that he would deposit it as bail and thus secure the client's release, and at the time showed the client a document purporting to be an order for bail signed by a police magistrate, but the lawyer cashed the check and did not use the money to procure the release of the client on bail but instead, upon his trial for embezzlement, contended that it had been paid to him as a fee and not as bail money, a conviction for embezzlement was affirmed in People v. Riccardi (1920) 50 Cal App 427, 195 P 448, over the contention that under the evidence the offense if any was grand larceny and not embezzlement, the court finding the evidence sufficient to support the conclusion that it was after the money came into the defendant's possession that he formed and executed his intent to convert it to his own use, and that his theory that the magistrate's order which was used in obtaining the money from his client was forged and fictitious could not prevail, inasmuch as there was nothing in the evidence to show or indicate that such order for bail was not genuine.

In People v. Crane (1917) 34 Cal App 599, 168 P 377, it was held that the intent to convert money received for investment was not formed until after the receipt thereof, so that the offense was embezzlement, and not larceny.

It has been emphasized that the question of the defendant's intent is one of fact for determination by the jury. Thus, in State v. Gross (1914) 91 Ohio St 161, 110 NE 466, where, on behalf of an agent of an insurance company charged with embezzlement of the company's funds, the argument was advanced that the crime proven was larceny, and not embezzlement, upon the theory that there was a conspiracy between defendant and others to use the agency as a mask or device to steal the money coming into their hands and that, therefore, the intent to appropriate, convert, or embezzle the money preceded the possession of the money, the court, in addition to finding that there was ample evidence to go before the jury upon this issue of fact as to when the intention to appropriate was formed, pointed out that the question of intent is purely a question of fact, with which the courts have nothing whatsoever to do in the trial of a criminal cause, such question being for determination by the jury, and remarked, in sustaining the state's exception to a directed acquittal: "A general criminal intent to convert all moneys coming into one's possession does not satisfy the demands of the statute of embezzlement. It must be an intention to convert the identical money actually converted, and it is difficult for one to imagine that there was any intention to convert the money charged in the indictment until the time at which the money came into the possession of the defendant. ... Courts must get away from these technical tweedledees and tweedledums, especially so in cases entirely beyond their jurisdiction—matters upon which it is the duty of the jury to pass and not the court. Most of our antiquated technical precedents had their beginning in a period of English jurisprudence when more

than two hundred crimes were capital. The hardships and severities of the law were such that it was as difficult for an innocent man to escape conviction as it now is for a guilty person to be convicted."

See also, as emphasizing that the question of intent is one for the jury to determine, Murray v. State (1927) 91 Fla. 706, 117 So. 575, stated infra, IV b 3.

**2. View that offense may be embezzlement even though defendant intended at time property was received**

There is, however, some authority holding that the fact that the wrongful converter of another's property was possessed of a fraudulent intent concerning such property at the time he received or was intrusted with its possession does not preclude a conviction for embezzlement, at least under the controlling statutes of the particular jurisdiction, even though, because of the existence of the wrongful intent at the time of receiving the property, the conduct charged in may also constitute larceny. Wall v. State (1911) 11 Ala. App. 157, 56 So. 57 (but compare statement in 2 I b 1); State v. Tabernor (1881) 11 R.I. 272, 51 Am. Rep. 342; State v. Silva (1886) 21 Nev. 449; (set out in part, supra, IV b 1); State v. Tabernor (1881) 11 R.I. 272, 51 Am. Rep. 342; State v. Wheeler...

So, in Wall v. State (1911) Ala. App. 157, 56 So. 57, it was said: "These charges seem to have been aimed upon the theory that an agent cannot be guilty of embezzlement of his principal's property if he has the secret uncommunicated intent to convert it before he received it, or before it comes into his custody or keeping. Such is not the law. While it is true that, if one receives money with the fraudulent intent at the time of converting it to his own use, he may be, and probably is, guilty of larceny, it is also the law that if before or at the time of receiving the money the intent had been secretly formed to convert it by the party receiving it, he may nevertheless be guilty of embezzlement, if he afterward unlawfully converts it to his own use."

With reference to a Rhode Island embezzlement statute, the court, in affirming a conviction thereunder, said, in State v. Tabernor (1881) 11 R.I. 272, 51 Am. Rep. 342: "The obvious meaning is that any agent who has the possession, which has come into his possession by virtue of his agency, so punishable under the statute if he embezzles or fraudulently converts it. We do not see how the fact that he gets the money by fraud, or that, before he gets it, he has conceived the purpose of appropriating it, can take the case out of the statute, if the money so received can be held to have come into his possession by virtue of his agency. This the case at bar. The agent here got the money by fraud practiced on a follow agent, or in legal effect, by fraud practiced on his principal, fraud on the agent being the same in legal effect as fraud on the principal; but nevertheless the money came into his possession by virtue of his agency, for it was only because he was agent and asked for the money as such that he was permitted to have it. It is only by a resort to some superadmitted refinement or hairsplitting distinction, not countenanced by the statute, that this conclusion can be avoided. The only argument against the conclusion is that the defendant might be convicted on the same proof of larceny at common law. It does not seem to us that this argument should avail; for if it is not insufferable to punish by statute what is already punishable at common law. Moreover, the punishment is the same, and the offense is the same, namely, larceny, whether it be prosecuted as at common law or under the statute."

Affirming a conviction of embezzlement under a statute punishing the embezzlement or fraudulent conversion of money or property which "has come into his possession or under his care in any manner whatsoever," over the argument of counsel that there was variance between the offense charged and the one proved, the court, in Lewis v. Brooks (1951) 109 Colo. 89, 121 P.2d 126, held that even though the defendant meant to convert when he formed prior to the time that the money

came into their possession a conviction of embezzlement had then been, that fact did not preclude a conviction of embezzlement. "In the later case," the court said, "there was no trespass in the original taking. The money lawfully came into the possession of defendant as the agent of the association. The primary element of trespass in common-law larceny is absent; moreover, this is a case where the association, under fiduciary relations, intrusted the care of its funds here involved to defendant as its agent, in other words, the funds reached the hands of its agents with the consent of the association. It is true that in a number of cases in which a fraudulent intent existed at the time of the receiving of the property, and the subsequent conversion thereof, the taking was, under the circumstances involved, held to be larceny and not embezzlement. This primarily is true where the offense involved (charged) was larceny. Here the offense charged is embezzlement. The chief distinction made in practically all cases is that in embezzlement, the property comes lawfully into the possession of the taker and is fraudulently or unlawfully appropriated by him, while in larceny there is a trespass in the unlawful taking of the property. In an Am Jur 573, Embezzlement, § 3. Where a bailee, under a contract of bailment, fraudulently obtains the possession of property with a felonious intent existing at the time, the taking has been held to be larceny. Here, however, no bailment is involved." The defendant were officers and agents of a savings and building association, and it appeared that over a long course of time they unlawfully appropriated to themselves commissions from the sale of the association stock and deposited such commissions in a special bank account at monthly intervals, and that the particular appropriation upon which the embezzlement indictment was predicated occurred many months after the formation of the intention to convert.

In Golden v. State (1889) 22 Tex. App. 1, 2 S.W. 531, wherein it was contended that the conviction should have been for theft instead of for embezzlement, it was said: "Defendant indeed hits, Wesdew to turn over the money to him, concealing and with the understanding that he was to deposit the same for net bank for the enterprise. She intrusted it to him for that and no other purpose. At the very least he obtained it, it is true that at an instant and purpose he was a thief, intending to steal it, but, to so far an end was conveyed, was only creating him but again to take that very money for deposit for use to the bank. The receipt of it may only for a short time, and when he again, out of the trust and his agency, he embezzled, abstracted, and converted to his own use the money so confided to him. The evidence makes a clear and indubitable case of embezzlement."

Likewise, in Brown v. State (1925) 92 Tex. Crim. Rep. 441, 270 S.W. 179, where the defendant while posing as an officer of the law, made an "arrest" for the alleged offense of parking a car by the roadside at night, and obtained from the arrested party certain money in payment of a purported fine and court costs, which he advised the arrested party would be defrayed against him, and which money defendant agreed that he would turn in to the registry of the court under an assumed name so that the arrested party might avoid publicity, but himself appropriated and converted such money, a conviction of embezzlement was returned over the contention that since it appeared that at the time the defendant obtained possession of the money he then intended to fraudulently appropriate it, he could not be guilty of embezzlement but might be convicted of theft by false pretext, the court holding that even if the fraudulent intent was present at the time of receiving the money, that fact did not prevent the crime from being embezzlement, although it might also amount to theft by false pretext. Defining embezzlement as "a fraudulent violation of the property of another, by a person to whom it has been intrusted," the court said: "It would appear anomalous that the fraudulent intent in the mind of the person accused at the time the fiduciary relation was created could not but by him to confront and overturn the fact of that relationship and the receipt of the property from the owner by virtue thereof."

And in Alvarez v. State (1928) 109 Tex. Crim. Rep. Q. 2 S.W.2d 169, affirming a conviction of fraudulent conversion of money over the contention that it amounted to the offense of stealing the money harbored the fraudulent intent to appropriate and convert it, the offense of any was theft by false pretense rather than fraudulent conversion of theft by bailee, the court was of the opinion that under the evidence showing that defendant, upon the pretense that she could work a charm and cure a sick person, induced another to bring her 13,520 bills which the proposed to bury in a pot of earth for a period of thirty days to work the charm, and after so receiving the money appropriated it, the element of the offense charged—fraudulent conversion of money—were made out and it was immaterial whether such evidence

also showed another offense. "It may be true," the court said, "that appellant could have been prosecuted for the offense of theft by false pretext, but the law was not lodged with an accused the option to indicate or discuss for which offense he will be prosecuted, where a proven transaction shows him guilty of more than one offense.... The state could carve only once from this transaction, and this case was in a kind of twilight zone, where any decision made by the prosecuting attorney would have been subject to criticism by appellant."

See also State v. Tlak (1932) 186 Mo 50, 34 SW 921, taking the view that where an employee of a transfer company, being authorized to receive a shipment at a railway depot, upon so receiving the shipment locked the boxes upon his wagon, hauled them away and appropriated the contents to his own use, his offense was embezzlement rather than larceny, and that was so even if he had the intent of appropriating them at the time he received the goods from the railroad company, the court saying that the existence of such intent on his part would not alter the fact that he had the right to receive the goods and did receive them by virtue of his employment. Compare, however, State v. La Franco [sec], (reported herewith) ante, 529.

### 3. Theory of estoppel

In a few cases the view has been taken that when one who has been intrusted with the possession of another's money or property wrongfully appropriates it to his own use, he should be estopped from asserting, as a defense to a charge of embezzlement, that he harbored a felonious intent at the time the subject matter was intrusted to him, and that, consequently, his offense was something other than embezzlement.

Thus, where it appeared that the defendant, who had previously invested money for a customer, received from the customer $400 to be delivered to a borrower together with $1,100 of the customer's money already in the defendant's hands, it being understood that the defendant was to obtain and deliver to the customer the borrower's note and a first deed of trust upon a city lot which the defendant himself inspected and approved as security, but that, instead of so doing, the defendant later on the same day delivered to the customer a forged note, and returned to him a forged deed of trust covering a vacant lot instead of the approved lot agreed upon as security, and it appeared that the defendant had appropriated the money and forged the documents, a conviction of embezzlement was affirmed in State v. Gould (1932) 329 Mo 274, 44 SW2d 84, over the contention that the $400 transaction could not constitute embezzlement by agent because, counsel argued, by the customer's testimony to the effect that she received the forged note from the defendant on the same day she had delivered the $400 to him, it was established that the defendant was possessed of criminal intent at the time that she turned the $400 over to him. In rejecting this contention, the court first pointed out that the jury might well have found that the money was delivered to the defendant under the pretense of obtaining a deed of trust upon a city lot which the customer himself inspected and approved as security, but that, instead of so doing, the defendant had confirmed with the standard theory of trying to associate just at what point defendant conceived the criminal intent. Where a defendant, by his own criminal acts, has placed himself in such a position that the evidence will support a conviction on either one of two theories, such as embezzlement by agent, or stealing money by false pretenses, it should not be the duty of the court to draw the distinction of the mist in such prosecutions. The statute (§4079) says: "If any agent .... shall embezzle or convert to his own use .... he shall, upon conviction, be punished in the manner prescribed by law for stealing property of the value of the article so embezzled, stolen, or converted ...." We quote, from State v. Cross (1910) 34 Mo 551, 161 SW2d 466, an appropriate statement to the case at hand: 'The overwhelming weight of authority, common sense, and reason call for the application of the doctrine known as estoppel against the defendant. We too often lose sight of the primary purpose of criminal statues. They are enacted to protect the public by prohibiting crime and punishing criminals. If a man is agent enough to get possession of money for and in the name of the principal, he is also agent enough to be convicted of

embezzlement as such agent. Wharton, Bishop, and McLoren all agree with this doctrine, and the same has been applied in principle in several Ohio cases.'

The Gould Case was mentioned and distinguished in State v. Cochran (1933) 336 Mo 649, 80 SW2d 182, the court pointing out that in cases applying the doctrine of estoppel to deny the fact of agency it was clear that the defendant received the property embezzlement as agent whereas there was no such evidence in the case at bar. 'If such evidence were present,' the court said, 'we would without hesitation invoke the doctrine of estoppel as we did in the Gould Case.'

(But compare, generally, the Missouri cases cited supra, IV b 1.)

In affirming a conviction of embezzlement, the court in Morey v. State (1927) 93 Fla 704, 112 So 575, remarked that the chief distinction between larceny and the character of the acquirement of possession of the property, and that while the evidence might well have sustained a conviction for larceny, there being grounds for this inference that the defendant was obtained by trick, device, or fraud, neither of the defendant had taken the stand, nor his offense, and the question of the intent with which he had to be inferred from all the circumstances which governed the case when they acquired possession of the money had to be inferred from all the circumstances, the court made out the good and inference, in the question of intent was one to give credit, to in his consideration, the court made out the crime with the possession of law secured by the defendant by the evidence, and Gould that the crime consisted of unlawful appropriation of the money after so obtaining lawful possession. It hardly lies in the mouth of either to say that the verdict of embezzlement should be set aside upon the ground that they intended to commit larceny, but in the court shown that they were guilty, if guilty of anything, of larceny, and not of embezzlement. This plaintiff in error introduced no evidence before the jury to assist them in determining when the criminal intent was formed, and he cannot complain because the jury, on the facts shown by the record, accorded to him a lawful intent at the time he and his co-principal obtained the possession of the money.'

And see remark in Burns v. State (1932) 57 Tex Crim Rep 441, 123 SW 179, stated supra, IV b 2.

Upon the clearly related matter of estoppel to deny the fact of agency, or other fiduciary capacity, as a defense to a charge of embezzlement, see cases stated infra, IV c 2.

### c. The fiduciary relationship as distinguishing embezzlement

#### i. In general

Under the terms of the embezzlement statutes, and from the cases generally, it seems clear that the offense of embezzlement involves a fiduciary relationship of trust by one holding another's property by virtue of some fiduciary relationship, whereas larceny, ordinarily at least, does not.

Because of this situation, some courts have pointed to the defendant's fiduciary character in embezzlement as distinguishing that crime from larceny: Kim v. People (1876) 81 Ill 399; People v. Meseros (1932) 103 Ill 662, 183 NE 720; People v. Sinclair (1911) 176 Cal 324, 268 P 465; Zacheria v. State (1910) 189 Ind 187, 131 NE 625; State v. Flanagan (1920) 85 NH 451, 4 Am Dec 625; State v. Moore (1912) 106 Iowa 39, 76 NW 557; State v. Parry (1922) 83 NH 211, 142 NW 255; State v. Hanson (1921) 80 NH 466; State v. Meldrum (1920) 177 NW 113, 123 SW 39.

Thus, in Kim v. People (1876) 81 Ill 399, 'the defendant's fiduciary character' was said to be 'the distinguishing feature between embezzlement and larceny.'

"To constitute the crime of embezzlement, the property must be lawfully in the possession of the accused by the reason of some fiduciary relation between the accused and the owner." People v. Moore (1927) 243 Ill App 378 (holding that the offense, if any, was larceny).

It was said in State v. Smith (1924) 97 W Va 313, 125 SE 90: "Embezzlement, as distinguished from larceny, presupposes that the money or property, the subject thereof, came to the possession of the accused lawfully, or with the consent of the owner, and that a fiduciary relationship existed between the owner and the offender."

In holding an indictment for embezzlement insufficient because of its failure to positively allege facts constituting the offense, the court in Axtell v. State (1910) 173 Ind 711, 91 NE 354 (overruled upon another question in Agar v. State (1911) 176 Ind 234, 246, 94 NE 819; Zoborosky v. State (1913) 180 Ind 187, 190, 102 NE 825), remarked: "It should be borne in mind that the basic difference between the crime of larceny and that of embezzlement is that the former is predicated upon a wrongful taking of property with intent upon its conversion, and the latter upon a wrongful conversion of property rightfully in possession. The former may take place among strangers, while the latter can only be consummated in cases where, by virtue of a special confidential relation, the defendant has been intrusted with access and possession. ... It is vital to a charge of embezzlement, under § 2285, that it appear on the face of the indictment that at the time of the commission of the alleged offense there existed between the defendant and the injured party, by contract of employment or otherwise, the relation of special confidence, and that by virtue of such relation the accused was intrusted by the party defrauded with the property embezzled." See also Colip v. State (1899) 153 Ind 584, 55 NE 739, 74 Am St Rep 322, and Vianedge v. State (1906) 167 Ind 415, 79 NE 353.

Similarly, in holding that where an indictment charged in separate counts the crime of embezzlement and larceny, the state should have been required to elect upon which count it would proceed, the court in State v. Finnegan (1905) 127 Iowa 286, 103 NW 155, 4 Ann Cas 628, took the view that the crimes were so different in their character that they should be treated in an indictment as distinct and separate offenses, and pointed out: "To constitute larceny, a trespass is essential, while in embezzlement this is not necessary, but a fiduciary relation must be shown. Were the only difference the absence of the element of trespass in embezzlement, it might be included in larceny; but in its stead is that of the trust relation under which possession of the property is obtained, and this clearly distinguished the two crimes as distinct and separate. The charge of one ordinarily cannot be sustained by proof sufficient to convict of the other."

In Com. v. Hays (1859) 14 Gray (Mass) 62, 74 Am Dec 662, holding that one to whom an excess amount of money was delivered by a bank by mistake when he withdrew his funds on deposit from the bank and who, upon being advised of the mistake, refused to return the money, was not within the scope of the embezzlement statute for the reason that, although he converted the money, there was no breach of a trust or violation of a confidence intentionally reposed by one party and voluntarily assumed by the other, the court said, with reference to statutes relating to embezzlement: "It may be said generally that they do not apply to cases where the element of a breach of trust or confidence in the fraudulent conversion of money or chattels is not shown to exist. This is the distinguishing feature of the provisions ... creating and punishing the crime of embezzlement, which carefully enumerate the classes of persons that may be subject to the penalties therein provided."

So too, it was said in State v. Browning (1905) 47 Or 470, 82 P 955: "Embezzlement consists in the breach of some trust relation by one in the lawful possession of the personal property of another who fraudulently converts it to his own use. In larceny, there is no breach of any confidential relation as in embezzlement, while in the latter crime, there is no trespass as in larceny."

Under an Arizona statute defining embezzlement as the fraudulent appropriation of property by a person to whom it has been intrusted, and prescribing the different relations of trust under which it may be committed, it has been pointed

out that the fiduciary relation of the defendant is an essential element of the offense. Phelps v. State (1923) 25 Ariz 495, 219 P 589, reversing a conviction of embezzlement.

See also State v. Cochran (1935) 336 Mo 649, 80 SW2d 182, stated supra, III, reversing a conviction of embezzlement where the accused was not shown to have sustained the necessary fiduciary relationship to the association whose money he was charged with embezzling.

Affirming a conviction of larceny over the contention that the crime if any was embezzlement rather than larceny, the court in State v. Ugland (1922) 48 ND 841, 187 NW 237, remarked: "Section 9913, CL 1913, defines 'larceny' as 'the taking of personal property accomplished by fraud or stealth, with intent to deprive the owner thereof.' Section 9929, CL, defines 'embezzlement' as 'the fraudulent appropriation of property by a person to whom it had been intrusted.' The distinction between these two crimes is at once apparent, and relates chiefly to the manner of acquiring the possession of the property stolen or appropriated. In larceny there must appear the trespass and the appropriation of the property; while in embezzlement there is a fraudulent conversion after its possession has been intrusted to the accused, or after it has lawfully come into the possession of the accused by virtue of his employment with the owner thereof. It is of the essence of the crime of embezzlement that the misappropriation be of property intrusted to the defendant. The word 'intrusted' means something more than naked possession or custody of or access to the property appropriated. Webster's New International Dictionary defines it: 'To confer a trust upon; to deliver to another something in trust, or to commit something to another with a certain confidence regarding his care, use or disposal of it.' ... Something more than mere physical access or opportunity to approach or take the property is intended by the statute in order to make the appropriation embezzlement. There must be a relation of trust and confidence reposed in the recipient of the thing appropriated, and it must be by virtue of such relation of trust and confidence that the accused has access to or possession or control of the property embezzled." Applying these principles, where it appeared that the defendant, after having assigned all of his property including a certain farm, to a trustee for the benefit of creditors, and being employed by the trustee to harvest and assist in the caring for the crops upon that farm, caused flaxseed, a part of such crop, to be secretly transported to an elevator in another town and to be sold in the name of another person and himself obtained the proceeds thereof, the court held that the evidence did not show that the trustee had given the defendant possession of such crop in the sense that his appropriation thereof would be merely embezzlement, but on the contrary, established that defendant in taking this property belonging to the trustee, and in selling and disposing of it stealthily, committed a trespass and was properly chargeable with larceny.

So too, in affirming a conviction of misdemeanor theft the court pointed out that where the property taken was not held in any trust relationship there could be no such offenses as theft by bailee or embezzlement. Bardell v. State (1920) 87 Tex Crim Rep 310, 220 SW 1101 (rehearing denied in (1920) 87 Tex Crim Rep 314, 220 SW 1103).

Emphasizing that to constitute embezzlement under the Texas statute, the conversion must be of money or property of the principal, or employer, and it must have come into the possession of the agent or employee by virtue of such agency or employment, the court held in Copeland v. State (1935) 127 Tex Crim Rep 611, 78 SW 2d 972, that the requisite fiduciary relationship of the defendant charged with embezzlement was not shown by evidence to the effect that defendant conceived the idea of promoting a barbecue for the benefit of unemployed people and for that apparent purpose solicited funds with which to defray the necessary expenses; that he approached the prosecuting witness and made his object known and received from him a donation of $5, and received for like purposes many other donations from other parties, and that he appropriated to his own use almost the entire sum collected, expending only a very minor portion thereof for the barbecue. The court pointed out that the defendant was not acting in the interests of the prosecuting witness, the donor, but was ostensibly acting for and on behalf of the unemployed, whoever they were; that the witness had not authorized or instructed him to promote a barbecue and had nothing to do with it except to donate $5 to what appeared to him to be a worthy cause; and that when the witness made such donation he did not expect the money to be returned to him.

But note that where D., the owner of stock certificates, caused them to be delivered to the defendant with instructions that they were to be used as collateral in borrowing money from a bank, which money defendant was to use to buy certain other stock for D., but defendant without D.'s consent sold the stock intrusted to him and used the money for his own benefit and did not purchase the designated stock for D., a conviction under a charge of theft by bailee was reversed in Akin v. State (1921) 19 Tex. Crim. Rep. 572, 43 S.W.2d 298, inasmuch as the facts did not prove the crime charged but, rather, established that an agency or fiduciary relationship existed so that the offense, if any, was embezzlement.

It is observed that the doctrine of a constructive trust, arising under a statute providing that the defendant is charged with embezzlement as an officer, to wit, "assistant cashier" of a bank, with account or constructive notice of the trust, shall hold as trustee for the beneficiary, was applied in Corchran v. State (1940) 41 Cal.App. 2d, 7 P.2d 46. In affirming a conviction of larceny after the owner of any other officer, was precluded from asserting that the offense, if any, could be only simple larceny. It appeared that after the owner of the money had left it with the cashier to be returned to the owner's use and benefit during his absence from the country, the defendant, by means of a false, fictitious indignant purporting to come from the owner, directing the money to pay out the money for a certain package, obtained the said money from the cashier and, when the owner returned, the cashier, by means of a certain bank office, appeased the owner's mind and turned over to the owner another package, by means of the instrumentality of the cashier, and the offense of the owner was held to be embezzlement of a trustee, or of the owner...

it settles the question: for by it, when a man has received a thing from another under a claim of agency, he cannot turn around and tell the principal, asking for the thing, 'Sir, I was not your agent in taking it, but a deceiver and a scoundrel.'"

See also, as indicating approval of this statement by Mr. Bishop, Ex parte Hedley (1866) 31 Cal 108 and People v. Gallagher (1893) 100 Cal 466, 35 P 80.

As to estoppel precluding a defendant, charged with embezzlement, from asserting that he had a felonious intent at the time the property was intrusted to him, so that his offense, if any, would be something other than embezzlement, see cases treated supra, IV b 3.

*d.* Distinction predicated upon difference between lawful "possession" and mere "custody" of subject matter

*1.* In general

Under a widely recognized distinction between lawful "possession" of property and mere "custody" thereof,[21] the view has been taken that although the property converted was in the accused's physical possession at and prior to the time of the conversion, nevertheless, if he had merely the custody of such property, its possession remaining constructively in another, the fraudulent conversion by the accused violates that possession and constitutes larceny rather than embezzlement, whereas, on the other hand, if the accused had lawful possession of the property, his fraudulent conversion of it is embezzlement rather than larceny.

So it was said, in Warmoth v. Com. (1883) 81 Ky 133, reversing a conviction of larceny against one employed by an express company as a clerk for its local agent: "A distinction exists where a servant has merely the custody, and where he has the possession of the goods. In the former case, the felonious appropriation of the goods is larceny; in the latter, it is not larceny, but embezzlement. The custody alluded to is such as that of a butler or house servant of household goods, a hired hand of the plow and horses of the farmer for whom he is laboring, etc., and the possession mentioned is an actual or constructive possession of the master or employer at the time the goods are taken. ... Generally, where the agent has received goods or money to carry, deliver, control, or manage for the principal, unless the agent parts with the manual possession, and delivers the property to the principal or another for him, or places it in some depository, such as a drawer or safe provided for the purpose, and to which the principal or superior agents have access, or over which they have control, he cannot be convicted of larceny for a felonious appropriation of the goods or money, the offense being embezzlement."

Stating: "The access to, control, or possession of property of the servant or employee intended by the [embezzlement] statute, is such access to, control, or possession as arises from the nature of the employment with reference to the particular article of property feloniously appropriated. Something more than mere physical access, or opportunity of approach to the thing, is required. There must be a relation of special trust in regard to the article appropriated, and it must be by virtue of such trust that the servant has access to, or control, or possession of it. No such relation of trust exists between a farm hand and his employer, with reference to the master's wheat or other farm products with which the servant is not intrusted for the purpose of safekeeping, carriage, delivery, or sale. If such a servant feloniously purloins, secretes, or otherwise appropriates the property of the master, such taking is larceny, and not embezzlement," the court in Colip v. State (1899) 153 Ind 584, 55 NE 739, 74 Am St Rep 322, affirmed a conviction of larceny of one who boarded and lodged at the residence of the prosecuting witness and who occasionally did small jobs of work for the witness such as feeding and caring for livestock, building fences, hauling manure and the like, who, without the knowledge or consent of the prosecuting witness or of such witness's family, broke open a box containing wheat belonging to the prosecuting witness, removed some of the wheat, hauled it away and sold it. (Compare Wynegar v. State (1901) 157 Ind 577, 62 NE 38, stated infra, IV d 5, and State v. Wingo (1883) 89 Ind 204, stated in the footnote.[22])

And it was said in Vinnedge v. State (1906) 167 Ind 415, 79 NE 353: "Where there is at most but a naked possession or control—that is, a bare charge—or where the access consists of a mere physical propinquity as an incident of the employment, the felonious appropriation should be regarded as larceny [rather than embezzlement]."

In United States v. Allen (1906, DC) 150 F 152, holding an embezzlement indictment defective, the court concluded that "an employee of a postoffice engaged in the distribution of the mails solely, who feloniously steals money out of a drawer in which are kept the money order funds, in charge of another clerk, is guilty of larceny, but not of embezzlement; for, although he was an employee of the postoffice, the money stolen did not come to his possession by virtue of his employment, nor with the consent of the owner, without which there can be no embezzlement."

"Larceny and embezzlement belong to the same family of crimes, the distinguishing feature being that to constitute larceny there must have been a trespass or wrong to the possession, but where one gains possession of the property so as to constitute only a bare charge, or custody, or procures it by subterfuge, it does not divest the possession of the true owner; he is still in the constructive possession, and the offense of appropriating the property is larceny." Boswell v. State (1911) 1 Ala App 178, 56 So 21. See to the same effect Washington v. State (1894) 106 Ala 58, 17 So 546; Holbrook v. State (1894) 107 Ala 154, 18 So 109, 54 Am St Rep 65; Ludlum v. State (1915) 13 Ala App 278, 69 So 255. See also Cass v. State (1855) 26 Ala 17.

Thus, in Holbrook v. State (1894) 107 Ala 154, 18 So 109, 54 Am St Rep 65, where defendant, being employed to carry one W. from his home to a depot, received from W. at the depot a quilt which he agreed to return to W.'s home but which, however, he appropriated and sold for his own benefit, the court, affirming a conviction of larceny, took the view that constructive possession of the quilt remained in the owner, W., with the accused having a mere charge or custody thereof, so that the appropriation was larceny rather than embezzlement, and this was so even though the accused had not conceived the wrongful intent to take the quilt until after it had been placed in his hands, the court saying: "The general rule, that to constitute larceny the felonious intent must exist at the time of the 'taking and carrying away,' does not militate against the rule of constructive possession by the owner."

And it has been remarked that there must be possession in the defendant at the time of conversion to constitute embezzlement. If the actual or constructive possession is in the owner, the conversion is larceny. Com. v. Doherty (1879) 127 Mass 20.

But note that where the accused, being employed as a clerk in a liquor store, upon making a sale and receiving the money from the purchaser, dropped the money into the drawer of a cash register but did not, however, register the sale, and after making another sale, and within a minute or so of placing the money in the register, took the money from the cash register drawer, whereupon a detective who had witnessed the transaction caused his arrest, a conviction of embezzlement was affirmed in Com. v. Ryan (1892) 155 Mass 523, 30 NE 364, 15 LRA 317, 31 Am St Rep 560, over the contention that upon placing the money in the money drawer, it passed into the possession of his employer and any subsequent taking by the accused of such money out of the drawer could not be embezzlement but was, if anything, larceny inasmuch as it involved a trespass. In the opinion by Holmes, J., an enlightening resumé of the historical development of the distinction between possession and custody was made and the conclusion reached that the mere physical presence of the money in the money drawer for a moment did not operate to deprive the servant of his possession, where he was on the spot and had not lost his power over it and almost immediately took it out of the money drawer pursuant to his intent to appropriate it which, under the circumstances, it was evident he had possessed from the beginning. The court said that the judge was right in charging the jury that if the defendant, before he placed the money in the drawer, intended to appropriate it, and with that intent simply put it in the drawer for his own convenience in keeping it for himself, that would not make his appropriation of it, just afterwards, larceny. "The distinction may be arbitrary," it was remarked, "but as it does not affect the defendant otherwise than by giving him an opportunity, whichever offense he was convicted of, to contend that he should have been convicted of the other, we have the less uneasiness in applying it."

Distinguishing custody from possession, in holding that proof of a statutory larceny under a statute providing that if any bailee of any bank bill, etc., shall convert the same to his own use, with intent to steal the same, or secrete the same with intent so to do, he shall be deemed guilty of larceny, could not warrant a conviction under an indictment charging a common-law larceny, the court, in Johnson v. People (1885) 113 Ill 99, summarized the law thus: "There are three classes of cases in which convictions for larceny at common law are sustained where the apparent possession is in the accused: first, where the accused has the mere custody of the property, as contradistinguished from possession, as in the case of servants and the like; second, where he obtains the custody and apparent possession by means of fraud, or with a present purpose to steal the property; and third, where one having acquired possession by a valid contract of bailment, which is subsequently terminated by some tortious act of the bailee, or otherwise, whereby the possession reverts to the owner, leaving the custody, merely, in the former, and the bailee, while being thus a mere custodian, feloniously converts the property to his own use. But in all these cases the legal possession is in the owner at the time of the felonious conversion, the accused, in contemplation of law, being regarded as a mere custodian of the property."

An extended discussion of the distinction between custody and possession will be found in People v. Burr (1871) 41 How Pr (NY) 293 reversing a conviction of embezzlement; and some remarks of general interest thereon appear in United States v. Hutchinson (1848, DC) 4 Clark (Pa) 211, Fed Cas No. 15,432, holding that a clerk for the Treasurer of the United States Mint was outside the operation of an embezzlement statute by its terms applying to all officers and other persons "charged by this act or any other act with the safekeeping, transfer and disbursement of public moneys." And see remarks in State v. Dooley (1922) 102 Or 563, 203 P 304, and State v. Keelen (1922) 103 Or 172, 203 P 306 (rehearing denied in (1922) 103 Or 188, 204 P 162), each distinguishing larceny from larceny by bailee.

In accord with the distinction between custody and possession, the view has been taken that for an employee (or another person) to convert property intrusted to him with limited authority for a specific purpose is larceny rather than embezzlement.

Thus, where the statute provided that any agent, attorney, clerk, or servant wrongfully converting to his own use anything of value which should come into his possession or under his care by virtue of his employment or office was guilty of embezzlement, the court, in Talbert v. United States (1914) 42 App DC 1 (writ of certiorari denied in (1914) 234 US 762, 58 L ed 1581, 34 S Ct 997), affirming a conviction of larceny against one who, while acting as an outside salesman contacting prospective customers for a jeweler, and having no authority to consummate the sale of an item until he had reported the proposed purchase to the jeweler and the latter had agreed to make such sale to the designated purchaser, obtained from the jeweler certain merchandise to show to his prospects, but failed to return either the merchandise or the proceeds to the jeweler, ruled that under the circumstances it was for the jury to determine whether the accused acquired such possession as would render the subsequent conversion embezzlement rather than larceny, and apparently approved the trial court's charge that if defendant had possession as an ordinary salesman with authority to pass the title on receiving payment, or such assurances as he was authorized to receive, and then appropriated the articles to his own use, the act would be embezzlement, and not larceny, but that, on the other hand, if his possession was for the purpose of showing the goods to a prospective purchaser to see if he was willing to buy them, and, if, so, to submit the name of the purchaser to his employer and have him determine whether he should consummate the sale, but if no purchaser was found or no sale approved he was to return the article to his employer, the possession, in law, would remain in the employer and the accused's offense in converting the article would be larceny.

For the same reason, in Weisberg v. United States (1919) 49 App DC 28, 258 F 284, a driver for a transfer company was deemed to have committed larceny rather than embezzlement by converting goods which he was hauling for his employer; and in Chanock v. United States (1920) 50 App DC 54, 267 F 612, 11 ALR 799, it was held that a hotel clerk who received from guests items to be placed in the hotel safe for safekeeping was vested with bare custody of such items, possession remaining constructively in their owners, so that the clerk's offense in converting them was larceny instead of embezzlement.

Again, in Atkinson v. United States (1923) 53 App DC 277, 289 F 935, a prosecution under a different statute, the court said: "It is the rule, where property temporarily has been placed in the hands of another for a special or limited purpose, that possession constructively remains with the owner while the other party has the mere custody. The appropriation by the other party to his own use, therefore, is larceny," and held, accordingly, that where one wishing to sell a diamond ring, handed it to one of the defendant's confederates, whom the defendant pointed out as the prospective purchaser, so that he might inspect it, whereupon an altercation developed and the confederate and the defendant refused to return the ring and fled with it, there could be no conviction of defendant for violation of a statute providing that if any person intrusted with the possession of anything of value, for the purpose of applying the same for the use and benefit of the owner or purchaser so delivering it, shall fraudulently convert the same to his own use, he shall be punished, etc., inasmuch as under the evidence there was no element of trust, the court taking the view that under the statute the possession of property must be intrusted for the purpose of applying the same for the use and benefit of the person so intrusting it; that is, the person to whom intrusted must be clothed with some actual dominion and control over the property for the purpose named. "Otherwise," the court said "he is a mere temporary custodian, and, if he wrongfully appropriates the property, he is guilty of larceny, and not of the crime denounced by this section."

(Note that in Woodward v. United States (1912) 38 App DC 323, it was held that, under the circumstances, an agent's conversion of funds intrusted to him by his principal (who was abroad and had left the defendant agent in charge of his business) to pay an attorney's fee of which the agent had advised the principal, was embezzlement, of which he was convicted, rather than larceny.)

Quite similarly, in holding that a conviction of embezzlement could not stand, the proof not making out that offense, but tending to show, rather, a larceny, the court in Com. v. O'Malley (1867) 97 Mass 584, said: "To constitute the crime of embezzlement, the property which the defendant is accused of fraudulently and feloniously converting to his own use must be shown to have been intrusted to him, so that it was in his possession, and not in the possession of the owner. But the facts reported in the bill of exceptions do not show that the possession of the owner of the money was ever divested. She allowed the defendant to take it for the purpose of counting it in her presence and taking from it a dollar, which she consented to lend him. The money is alleged to have consisted of two $10 bills, three $5 bills, a $2 bill, and a $1 bill, amounting in all to $38. The $1 he had a right to retain, but the rest of the money he was only authorized to count in her presence and hand back to her. He had it in his hands, but not in his possession, any more than he would have had possession of a chair on which she might have invited him to sit. ... The true distinction, upon principle and authority, is that ... if the owner puts his property into the hands of another, to use it or do some act in relation to it, in his presence, he does not part with the possession, and the conversion of it, animo furandi, is larceny." (It was noted that the defendant had previously been acquitted of larceny upon proof of the same facts, which factor was later emphasized in a dissenting opinion in a California case (People v. Johnson (1891) 91 Cal 265, 27 P 663) as a reason why the O'Malley Case should not be followed, the dissenter taking the view that although conduct such as that in the O'Malley Case might be larceny, there was no reason why it might not also constitute the offense of embezzlement.)

And in Com. v. Berry (1868) 99 Mass 428, 96 Am Dec 767, it was held to be larceny, rather than embezzlement (of which latter crime defendant was convicted) where defendant, being employed as a servant by a firm of furniture dealers, was by his employers directed to get a sum of money in cash from a man at a warehouse and to bring the same to his employers but, upon so obtaining the money, made away with it, the court pointing out that a servant who received from his master goods or moneys to use for a specific purpose has the custody of them, but the possession remains in the master.

This view, that where the owner puts his property into the hands of another to do some act in relation to it in his presence, he does not part with the possession of it, and the conversion of it animo furandi is larceny, and not embezzlement, was also held to in People v. Montarial (1898) 120 Cal 691, 53 P 355 (affirming a conviction of larceny); and in People v. Johnson (1891) 91 Cal 265, 27 P 663 (reversing a conviction of embezzlement. Note particularly the dissenting views expressed by one of the justices, concurring in the reversal upon other grounds, indicating that under the statutory

definition of embezzlement as the fraudulent appropriation of property by a person to whom it has been intrusted, the offense, under such circumstances, might be embezzlement even though it also constituted larceny).

As to what constitutes a sufficient allegation of possession in the defendant to meet the requirements of a charge of embezzlement, see for example Com. v. Dubrof (1929) 21 Mass 26, overruling conclusion to a conviction under a charge of embezzling a savings bank book. The court said: "This indictment sufficiently alleges by virtue of custom in the trust and confidence, and with the cooperation, that the defendant should thereby receive custody of it, and should hold it until demanded by the owner, and should then deliver up and return it to him. Taken together, this implies that the actual and legal possession was parted with by the owner when he descended. The limitation that the defendant should thereby receive only the custody of it was intended to exclude the inference that the defendant took any interest in the property, except as a mental bailee. ... The court held pointed out that if the actual or constructive possession was in the owner, then the wrongful conversion would be larceny, and not embezzlement, and that the two offenses are distinct and must be charged in such terms as shall indicate the precise offense intended to be charged.

See also Warmuth v. Com. (1932) 81 Ky 153, stated supra, IV d 1 (involving one employed by an express company as clerk for its local agent).

**2. Instance of "trust"—before denial of embezzlement**

Where defendant had been placed in charge of a local office of a telegraph company as manager, and he alone had the combination to the safe in the office, although the telegraph company had on the at another office a sealed envelope containing two combinations for use in the event the defendant should have in charge a key, it became necessary to open the safe, and defendant kept funds of the employer in such safe, placing therein at night the funds which came into the office during the day and in the morning taking them either for use as change or for forwarding to the company, the offense of the defendant, if he wrongly took the funds out of the safe or failed to account for them, was embezzlement as that he was the funds were in the custody of the defendant rather than the mere custody; Montana v. Com. (1932) 242 Ky 713, 47 SW2d 543, reversing a conviction of larceny.

An employee of the United States Mint whose duties, as a laborer in the melting and refining department, with reference to the specific coins alleged to have been embezzled, was to scoop such coins from weighing vats into receptacles upon the defendant and them push the trucks into the vaults with the load upon them, and who was showed to have appropriated to himself certain of the coins as he was scooping them from the weighing vats into the truck, was held, in Scheff v. United States (1923, CCA 8th) 261 F 233, to have had such possession of the coins as to render the offense embezzlement under a Federal embezzlement statute providing, without defining embezzlement, that whoever shall embezzle money of the United States shall be fined, etc., the court affirming the embezzlement as sustained by the evidence and assuming the defendant's contention that under the facts he had merely the custody, as distinguished from possession of the coins, by giving Crist v. State (1923) 21 US 103, 47 L ed 130, 23 S Ct 26, stated infra, IV d 5 (which case, would, however, appear not to be apt authority inasmuch as it was predicated upon a California embezzlement statute having the effect of dispensing with the distinction between custody and possession).

For additional illustrative cases, see Walton v. State (1910) 17 Ala App 48, 81 So 846 (involving a city clerk and tax collector); St. John v. State (1934) 17 Ala App 97, 168 So 196 (writ of certiorari denied in (1936) 231 Ala 670, 168 So 197) (involving one employed as a driver by a company operating an armored car messenger service, both stated infra, IV c. Woodward v. United States (1913) 38 App DC 323 (involving the wrongful conversion by a storekeeper of money which his principal, while traveling abroad, sent to him again to be used for paying an attorney's fee); State v. Wesar (1913) 97 Ind 204, stated supra, IV d 1 footnote 22 involving a farm hand); and Com. v. Ryan (1892) 155 Mass 523, 30 NE 364, 15 LRA 317, 31 Am St Rep 560, stated supra, IV d 1 (involving a store clerk).

45

And note that in holding that where the defendant was in possession of a firm and the improvements thereon under a co-owner lease, but disconnecting from a barn on the premises certain pipe, timbers, and planks and appropriating them to his own use could not constitute larceny, because this generation of the property, even after the timbers were detached from the barn, was exclusive, the court in Hardiman v. State (1912) 89 Tex Crim App 79, 231 SW 927, said that the court, if any, would come, since within the terms of the lessee defining such by bailee, which provided that "any person having in his possession or control over personal property of the owner, by reason of any contract of hiring or borrowing, or otherwise, bailment, who shall fraudulently convert such property to his own use, or deprive the owner of the value of the same, shall be guilty of theft," but constituting bailee doubts whether the defendant's conduct, even conceding the facts to be as shown by the state's evidence, would constitute a violation of that statute.

**3. Instance of "trust"—before denial larceny**

Where one employed as janitor and washman of a barroom was shown to have taken out of the money drawer of a cash register in the barroom money which had been placed there by the defendant's employer in his presence the night before, a conviction of grand larceny was affirmed in Fish v. State (1938) 135 Fla 361, 185 So 453, 121 ALR 360, over the contention that the offense, if anything, was embezzlement, the court pointing out that the evidence strongly tended to show that the defendant merely had custody of the property in the store, including the money which was taken, and that he had no property with reference to the money other than that of a bare custodian, and saying: "The general rule is most jurisdictions is that one who merely has that bare custody of the money or personal property, the legal possession remaining in the owner, may be guilty of larceny, if he had a felonious intent either at the time he acquired such custody or afterwards, it, with such felonious intent, he takes it and converts it to his own use, regardless of the fact that the custody may have been lawfully acquired." The court said further: "There is no evidence in this case which indicates that the employee at the time he took possession of or the title thereto, the larceny was in it as drawer in view of his duties as janitor and washman of the premises had no right to consider it as other than being in the actual possession, when he had a felonious intent, which latter crime generally involves a violation of relations of a fiduciary character."

And where one employed as a shipping clerk for a manufactured company delivered some of his employer's products to the defendant and himself received and retained money paid by the defendant on his order, representing to the defendant that he was authorized to sell such supplies on behalf of the company, it was held in Rapido v. Moore (1927) 243 Ill App 319, that the defendant's offense, if any, was larceny rather than embezzlement, inasmuch as the shipping clerk, with whom defendant allegedly co-operated, had the mere custody of such supplies rather than such possession as would render his conviction thereof embezzlement. However, the judgment convicting defendant of larceny was reversed because the evidence was insufficient to establish that defendant was acting dishonestly.

Where the prosecution's theory was that the defendant, in connection with purchasing scrap cloth and waste paper from a state penitentiary, connived with and procured the state's employees at the prison to include in the carload shipment to him a larger quantity of new cloth belonging to the state, the conviction that the person who had them as bailee and not larceny as at common law was held without merit in People v. Golding (1927) 327 Ill 446, 158 NE 618, the court saying that the employees of the state merely had custody of the mass of goods in the warehouse, and a taking of them by such employees and their confederates would constitute larceny. However, the conviction of larceny was reversed because of insufficient evidence of guilt.

In Spencer v. State (1932) 25 Ala App 230, 143 So 398 (writ of certiorari denied in (1932) 225 Ala 381, 143 So 399) the evidence was held to establish that defendant was the bare custodian of certain shirts and banking material belonging to the partnership employing him and kept in a warehouse of which he had charge, rather than being in possession thereof, so that his fictitious appropriation of such property constituted larceny, of which he was convicted, rather than embezzlement.

46

Where the goods received by the defendant were taken by one employed as a storekeeper of a manufacturing company from his employer and there was no question but that at the time of the taking such goods were in a storeroom owned and controlled by such person's employer and belonged to it and that the one taking them had no authority whatsoever to sell any of the goods, a conviction of receiving stolen property was affirmed over the contention that the property was embezzled rather than stolen, the court in Komito v. State (1914) 90 Ohio St 352, 107 NE 762, pointing out, in its syllabus, that the "possession" required under the embezzlement statute was more than a mere custodianship or naked possession, it being, the court said "a possession for the time and purpose exclusive of the owner's possession," and that such possession as the employee here was shown to have was not the legal possession referred to in the statute.

Note also that in People v. Perini (1892) 94 Cal 573, 29 P 1027, holding that evidence supported a conviction of receiving stolen goods, the court expressed its view that since the person from whom the property was received, although an assistant foreman of a warehouse where the property was stored, had no authority to sell any of it, his offense in taking it was larceny rather than embezzlement, but that, even had his act constituted technical embezzlement the result would be the same and the goods would be regarded as having been stolen, inasmuch as embezzlement is a species of larceny.

And in People v. Kawanamakoa (1918) 37 Cal App 433, 174 P 686, affirming a conviction of larceny, it was held that under the evidence the defendant, being a mere caretaker of his employer's premises, having the principal duty of seeing that no one took anything out of the house, had only custody of the property in such house, as distinguished from possession, and, consequently, his offense in taking such property was larceny and not embezzlement.

In Bonatz v. State (1919) 85 Tex Crim Rep 292, 212 SW 494, it was held that the offense was one of theft rather than embezzlement, if the defendant, being a clerk and foreman of a railway depot warehouse, with the duty of checking goods into the warehouse and out when shipped to their destination, appropriated and caused to be taken out of the warehouse a box of goods which had arrived by train and were by him checked into the warehouse, a majority of the court taking the view that defendant was a mere custodian of such goods. On the other hand, the writer of the opinion expressed his view that defendant had possession by virtue of his employment, and if there was fraud on his part, it was not in the receiving but in the subsequent appropriation.

Upon appeal from a conviction of receiving stolen property, the argument that the person from whom the goods were received was shown to be such agent of the alleged owner of the property as to make his offense embezzlement, so that appellant could not be guilty of receiving stolen property, was held not supportable, in Hoyt v. State (1921) 88 Tex Crim Rep 612, 228 SW 936, the court remarking that such person was but a delivery boy for the owner of the property, appearing to have no care, control, or custody of goods while in the owner's store, and his taking of goods from the store would be theft. It was observed that if it had been shown that the goods had been delivered to such delivery boy to be carried by him to customers, the contention that his offense was embezzlement would be plausible.

And in Com. v. Davis (1870) 104 Mass 548, where one employed in a store as clerk (not a regular salesman) and packer entered the store after it was closed for the evening, utilizing a key which he was allowed to carry, and took away some merchandise, his offense was deemed to be larceny rather than embezzlement, the court ruling that under the evidence, which showed additionally that the clerk occasionally sold goods when the regular salesmen were absent or busy, and had been at times allowed to take goods out and sell them, accounting for the proceeds, there was nothing to show that he had even the bare custody of the goods, much less the legal possession.

In Com. v. Brandler (1923) 81 Pa Super Ct. 585, the wrongful taking of his employer's goods from the clothing store wherein defendant was employed as a receiving and shipping clerk and salesman was held to be larceny, with which defendant was charged, rather than, as he contended, larceny by bailee, embezzlement, or some kindred crime, the court answering the argument by saying that the goods were in the employer's possession, and there was no evidence to show that the defendant had any general control over the goods in the store.

Similarly, in Aabel v. State (1910) 86 Neb 711, 126 NW 316, 136 Am St Rep 719, it was held that under the particular circumstances one employed as a clerk in a grocery store did not have "possession" of merchandise in the store, within the meaning of the embezzlement statute, although he had a key to the front door, opened and closed the store morning and evening, and was authorized to replenish the stock by purchasing groceries when necessary, in the absence of the proprietor, it being shown that the proprietor was in the store the greater part of the time; that his wife also gave her attention to the business; and that the accused was but one of several clerks. Consequently, a conviction of grand larceny was affirmed over the argument that if the accused took goods from the store, his offense could only be embezzlement.

So too, a conviction of grand larceny, predicated upon the felonious taking of some 580 barrels of oil belonging to the defendant's employer, was affirmed in Haley v. State (1921) 20 Okla Crim Rep 145, 200 P 1009, over the objection that under the evidence the offense, if any, was embezzlement, the court saying that while defendant was a servant and employee of the owner of the property, he merely had the care and oversight of the same, and not its possession; and that, having only custody of the property, his conversion thereof to his own use without the consent of the owner was larceny and not embezzlement.

And in Powell v. State (1879) 34 Ark 693, a servant's taking of tools owned by his employer and kept in a stable which it was the accused's duty to care for, he having access to the tools and the right to use them, was held to be larceny, for which he was convicted, rather than embezzlement, the court saying that a servant has mere custody, possession remaining in the master; that if the servant appropriates the master's property to his own use, with intent to steal, it is larceny at common law; and that "the trespass occurs when he changes his custody of his master's property into an adverse possession in himself, with a felonious intent."

So too, in Colip v. State (1899) 153 Ind 584, 55 NE 739, 74 Am St Rep 322, it was held that the taking of wheat from a bin by a farm hand was larceny, and not embezzlement. Likewise, in Watkins v. State (1919) 84 Tex Crim Rep 412, 207 SW 926, the conversion of cotton by a weigher was held to be theft, and not embezzlement.

Where it appeared that defendant, employed by a bank as captain of the watch and porter, upon being sent into the bank vault by the tellers to bring them the notes of other banks which had been deposited there the preceding evening, this being a regular morning duty on defendant's part, appropriated two of such notes, it was laid down, in United States v. Clew (1827) 4 Wash CC 700, Fed Cas No. 14,819, in a charge to the jury, that there was no evidence to support the indictment for embezzlement, inasmuch as the bank notes were not intrusted to the defendant to keep, but merely to convey from one part of the banking house to another, to those persons to whom the custody of them was confided, but that the evidence was, if believed by the jury, sufficient to render defendant guilty under the indictment charging defendant with stealing the property of the bank.

Stating: "Larceny" and embezzlement belong to the same family of crimes, the distinguishing feature being that to constitute larceny there must have been a trespass or wrong to the possession, but, where one gains possession of the property so as to constitute only a bare charge or custody, it does not divest the possession of the true owner, he is still in constructive possession, and the offense of appropriating the property is larceny," the court, in Rosenblum v. State (1923) 19 Ala App 442, 98 So 216 (writ of certiorari denied in (1923) 210 Ala 401, 98 So 219), held that where storekeepers hired a teamster to haul a shipment of flour from the railway station to their store and the teamster set aside twenty sacks of the flour at the station and told the railway agent that the defendant would get them, the teamster's offense was larceny rather than embezzlement, so that defendant, who received such twenty sacks of flour and had it hauled away from the station to his own store was properly chargeable with receiving stolen property.

Similarly, where the defendant was merely employed to haul brick from freight cars to a certain construction project, his appropriation of some of the brick by feloniously taking them to his home was deemed to be larceny rather than embezzlement in Brown v. State (1941) — Ala App —, 200 So 630 (writ of certiorari denied in (1941) 240 Ala 589, 200

So 634) the court remarking that the facts did not tend to show that the defendant had such possession or control of the brick in question that a fraudulent conversion or sale of them would constitute the offense of statutory embezzlement, and not of larceny.

These Alabama cases are in accord with the view taken in Washington v. State (1894) 106 Ala 58, 17 So 546, affirming a conviction of larceny where the accused, being employed to haul coal from railway cars to a designated place, for his employer, sold some of the coal on his own account to third persons and delivered it to them directly from the cars.

In People v. Leggio (1928) 329 Ill 514, 161 NE 60, the offense of larceny, as charged, rather than larceny as bailee, was held to be shown where defendant, being employed at a public garage as "night man" having the duty of taking care of the storage of cars, doing repair work, selling gasoline, etc., took from the garage at night and made away with an automobile belonging to a third person and stored in the garage by arrangement with the garage owner. The court said that the car, while in the garage, was in the possession of the garage owner, and the defendant, when on duty at night as an employee, merely had the property in his care or custody, so that there could be no relationship of bailor and bailee applicable to defendant.

And in People v. Belden (1869) 37 Cal 51, a stable hand who usually slept in the livery stable where he was employed was deemed to have mere custody of horses kept there, so that his wrongful taking of such horses from the stable during the absence of his employer was larceny rather than embezzlement.

Likewise, in People v. Wood (1823) 2 Park Crim Rep (NY) 22, where the accused, being a servant having the duty of caring for his employer's horse kept in a stable, took the horse out of the stable, during the absence of his employer and the latter's family, and rode away some ten miles before being apprehended, he was convicted of horse stealing over the contention that the indictment should have been for embezzlement, the court saying that under the facts there could be no pretense that the horse was in the legal possession of the accused at the time it was taken.

Where the owner of a promissory note left it with a bank merely for safekeeping, and thereafter defendant, who was president of such bank, indorsed the note, caused his personal account to be credited with the amount of it and the note to be placed among the assets of the bank, and subsequently caused it to be delivered to a third person in settlement of the bank's indebtedness to him, the defendant's offense was held to be larceny rather than embezzlement, in State v. Bunton (1926) 314 Mo 585, 285 SW 97, 47 ALR 783 (affirming a conviction of larceny). The court took the view that where the note was merely left with the bank for safekeeping purposes, no official or employee of the bank had any legal right to the possession of or power to dispose of the note, and the defendant, therefore, when he first indorsed the note and directed that it be placed among the bank securities and entered upon its books as an asset, and that his account be credited with the amount thereof, was guilty of acts which constituted an unlawful obtaining of the possession of the note or a taking of the same with a felonious intent to convert it to the taker's use and to deprive the owner of her property. "The possession of the note by the bank," the court continued, "being purely physical, or that of a custodian, it is unnecessary to notice the defendant's conclusion, drawn upon the assumption of a legal possession of the same. It is enough to say that the evidence shows that every act of the defendant relating to this note was maculated with fraud. Whatever may have been the bank's relation, this could have conferred no power upon him as an individual (and he did not pretend to act otherwise) to attempt by his indorsement to criminally convert the note and to appropriate the value of same to his own use. How or upon what basis it can be contended that a bailment was created which would carry with it legal possession in this transaction between the owner of the note and the bank we have difficulty in understanding."

Affirming a conviction of larceny, over the contention that the offense, if any, was merely embezzlement, the court, in State v. Harrison (1941) 347 Mo 1230, 152 SW2d 161, took the view that under the state's evidence the defendant, who was acting director of finance of the state social security commission and as such procured a voucher to be issued for the announced purpose of establishing a revolving fund, and thereupon forged the indorsement upon the voucher and used it to pay for a boat purchased by himself, had no right to the lawful possession of the negotiable checks or funds

of the State of Missouri and remarked: "Even a mere right to custody of property without lawful possession will make a felonious taking larceny instead of embezzlement."

Where the board of control for state charitable institutions, of which defendant was the chairman, issued vouchers to a company in payment for merchandise sold to the state, and upon the filing of the vouchers with the auditor of the state, warrants were drawn by the auditor upon the state treasurer for said amount, and thereafter defendant personally took or had his secretary take such warrants to the office of the state treasurer and receive payment thereof from the treasurer, it being shown that the defendant had no authority to collect the warrants for the company to whom they were issued, it was held, in Hall v. State (1923) 161 Ark 453, 257 SW 61, that such conduct rendered the defendant guilty of larceny rather than embezzlement, even though the warrants had never been actually delivered to the company in payment of whose claims they were issued, the court taking the view that defendant's wrongful taking possession of a warrant after it had been rightfully issued, and procuring the money on it, constituted a constructive delivery of the warrant to the rightful owner, and consequently his conversion of the money collected on the warrant constituted a wrongful taking of it under such circumstances as amounted to larceny, and that, defendant never being rightfully in possession of the warrants or of the money derived by cashing them, the offense was not embezzlement. Conviction of grand larceny was affirmed.

*4. Accused's rightful "possession" terminated prior to the appropriation — offense deemed larceny*

Under the theory of distinction between possession and custody, it has been held that although property has been placed in the hands of a person as a bailee, if the bailment is terminated, leaving such person the mere custody of the property, a subsequent conversion by him is larceny rather than embezzlement.

On this principle, a breaking of bulk or other severance by a carrier of part of a shipment has been held so far to terminate the bailment that the conversion of the part so severed or taken from bulk was larceny, and not embezzlement. Nichols v. People (1858) 17 NY 114. See also State v. Fairclough (1860) 29 Conn 47, 76 Am Dec 590.

Where a stevedore employed by a contractor to unload nitrate of soda from a ship and to reload it into railway cars, and bill the cars to various munition plants as directed by the Ordnance Department of the Federal government, which was importing the nitrate of soda for use in munition factories, billed a number of cars to other consumers, to whom he sold the nitrate through a broker, and, in such instances, sent fictitious bills of lading to the officers in charge of the munition plants to which the material should have been sent, it was held in Tredwell v. United States (1920, CCA 4th) 266 F 350 (writ of certiorari denied in (1920) 253 US 496, 64 L ed 1031, 40 S Ct 587), that such conduct on the part of the stevedore amounted to larceny, with which he was charged and convicted, rather than embezzlement, the court taking the view that although the defendant had lawful possession of the nitrate for the purposes of his employment, it was clear that such possession ceased when the loading of the cars was completed, and that the property then passed into the possession of the railroad company, so that when he thereupon caused it to be billed to his own customers, his diversion of the property was in substance a felonious taking of it from the railroad company, there being evidence to the effect that the defendant, as agent of the contractor and with the government's consent, had the custody of the nitrate for the government up to the time it was delivered to the railroad, and that he was the agent of the railroad in loading it into the cars, so that after its loading, any conversion by the defendant was not embezzlement of property held by him for the government, but the stealing of government property in the hands of the railroad.

And where a servant, having been sent with a wagon to get sacks of grain purchased by his employer and transport them to the employer's barn, on arriving at the barn unloaded all except two sacks of the grain, and thereupon drove to a third person's place of business and delivered the two sacks of grain to him, the servant's offense was deemed to be larceny rather than embezzlement, and the third person therefore subject to conviction for the crime of receiving stolen goods. Hatcher v. State (1917) 74 Fla 112, 76 So 694. The court said that if the grain did not pass into the constructive and legal possession of the employer when it was placed in the wagon, it did so pass when the wagon with the grain arrived at the employer's barn; and that when the servant left the two sacks of grain in the wagon and took them away with a

**Page 51**

Relations intent to deprive the owner of them he committed a trespass and the crime of larceny and, moreover, that it was immaterial whether the two ends were subsisted at the employer's behest.

Where a bank teller received the bank's ample, after business hours, having previously by accomplices manufactured knowledge of the ca... transaction of the latter such funds were kept, his offense as after he a obtained access to the funds, and the removal thereof, although from his position and placed in such custody that he could not lawfully remove possession until the return of business hours and the concurrent of the cashier authorized him to do so.

In distinguishing larceny at common law from statutory larceny under a statute providing that if any bailee of any bank, bill, note, etc., shall convert the same to his own use, with intent to steal the same with intent to do so, shall be deemed guilty of larceny (while, it is thought, may still, properly be considered as embezzlement statute), the court remarked, in *Robinson v. People* (1880) 113 Ill. 32: "But even in cases where the contract of bailment is valid, and the possession has passed to the bailee, if the party to the bailment is valid, whereby the contract is terminated, the possession will result [revert] to the bailor, although the actual custody of the property holed remains in the bailee, and if the latter, after the contract has been thus terminated, appropriate it to his own use with intent to steal it, he will be guilty of larceny at common law."

Where it appeared that the owner of the automobile had the defendant drive him to a railway station in another town and then left the defendant and the automobile after instructing the defendant to return it to the town from which they had started, and to there leave it at a certain public garage; that the defendant did so, having the automobile at the agreed garage for several days, in the course of which the owner through an agent advised the garage keeper to place the car in dead storage and not permit anyone to use it, but that thereafter the defendant took the car from the garage and sold it, a conviction of larceny was affirmed in *State v. Dodge* (1912) 86 Vt. 366, over the contention that the offense was larceny by bailee, which, under the statute, was a separate and distinct crime. The court pointed out that the bailment was not the servant of the owner, as he was to receive any compensation for his services; that if he was a bailee, the bailment was terminated when he delivered the car prior to such delivery to the garage, as he had of the car; that only the constructive possession remaining in the owner, and that after delivering keys to the garage as he had of the owner's delivery of the car to the garage, then, in any event, at the time that his possession of that car at the garage and had it placed in storage.

The view that the defendant in the Dodge Case (Vt) supra, had at most mere custody of the car rather than such possession as would prevent the taking thereof from being larceny, was followed in *State v. Keller* (1922) 105 Or. 172, 209 P. 396 (referring decided in (1922) 103 Or. 118, 204 P. 160), an appeal from a conviction of larceny of the same automobile.

And where a defendant, while occupying a farm held as tenant of a portion thereof and as caretaker of the remaining portion, cut, removed and sold timber from both portions of such land without permission of the owner and landlord, his offense was simple larceny rather than "larceny after trust." *Harmon v. State* (1923) 19 Ga. App. 652, 118 SE 169, and in *Hanley v. State* (1923) 19 Ga. App. 652, 119 SE 169. Answering the argument that the offense if any was larceny after trust, the court said: "This argument overlooks the fact that the defendant's lawful possession of the trees as tenant and caretaker extended to them as a part of the realty only, when, as such, they were not the subject of the trees as personalty, i. e., when severed from the earth. The defendant had no semblance of a right in either capacity to sever the trees for the purpose of sale.... And with reference to the trees as personalty, his possession of the trees so personally was at once wrongful and unlawful. And where he took the same status forward he was manifestly guilty of simple larceny."

---

**Page 52**

**5. Effect of broader terms in embezzlement statute**

(As to statutory variations generally, see supra, III.)

Under the more comprehensive provisions of some embezzlement statutes, that offense may be committed by one having something less than "lawful possession" of the money or property wrongfully appropriated.

Such an interpretation of the controlling statute seems to have been adopted in *Smith v. State* (1929) 42 Okla Crim Rep 24, 275 P 349, affirming a conviction of embezzlement under a statute providing that if any clerk or servant fraudulently appropriates to his own use, or secrets with a fraudulent intent to appropriate to his own use, any property of any other person which has come into his "control or care" by virtue of his employment as such clerk or servant, he is guilty of embezzlement. It appeared that defendant, being employed as a farm hand by the owner of certain hogs, was directed by his employer to take the hogs to market; that he took an hogs to town and sold them, receiving from the sale thereof two checks, cashed payment of two hogs and the other covering one hog, each payable to himself; and that defendant reported to his employer that he had sold only five hogs and had left the sixth one at his farm. Responding to the argument that the offense, if any, was larceny, the court stated in its opinion that it was the intention of the makers of the statute to make one guilty of embezzlement if property did not pass from the owner, and said: "This court cannot split hairs on points of law. Under the old English procedure, a misdescription of the crime was fatal; but under our Code, technicalities and legal technicalities are done away with, and with latitude is given to the courts in drafting what constitutes a particular crime.... The property of the owner itself makes it embezzlement in case defendant takes possession or control of property by virtue of his employment and appropriated the property to his own use."

And in *Key v. People* (1840) 110 Ill 627, 51 Am Rep 206 (judgment affirmed in (1884) 112 Ill 4 (LS, 39 L ed 421, 7 SC 225), affirming a conviction of embezzlement, under a statute providing that if any clerk or servant of any private person embezzle money, bonds, and property out of the vaults of his employer from time to time, the court assumed the conviction that the offense if any was larceny at common law could not be embezzlement under a statute specifying that the property shall have come into his "possession or under his care by virtue of his employment" (the conviction being apparently that such property was not in his direct "possession" by virtue of his employment), by saying that such statute reasoning would not satisfy the common understanding, that it was so decided that this defendant converted to his own use large sums of money and securities belonging to the bank while he was in the employ as a clerk, and that such funds did not come into his possession, that had he not been in the employ of the banking house he could have had no access to their vaults; that it was enough that his position with the bank, whatever it was, gave him access for some purposes at least, to the vaults where the funds and securities were kept, and brought the funds and securities embezzled into his possession, that it was clear by virtue of the employment and not otherwise he got possession of the employer's money and securities and converted them to his own use and that this was embezzlement as denounced by the specific terms of the statute. The court pointed out: "The statute of that state defining the crime of embezzlement is much more comprehensive than any English statute on the same subject; that the state defining the crime of embezzlement action which define embezzlement, by a clerk or confidential agent who converts to his own use funds belonging to the employer which may come to his possession or under his care by virtue of the employment, and the decisions of the English courts, construing their own statutes, do not in any way assist us a correct understanding of the statute of the state on the same subject. Much of what is said by our courts is decidedly different from that notion of the statute of this state under which the defendant was indicted."

Similarly, in *Wimmer v. State* (1891) 127 Ind 577, 22 NE 38, it was held that when the proceeding wheat delivered to the accused, who was a subsidakeeper, under an agreement that the accused would keep such money in his safe for the wheat from Saturday night until Monday morning, but on the intervening Sunday the accused took the money from the safe, without the wheat owner's knowledge or consent, and left town, he was guilty of embezzlement, being...

an agent for the prosecuting witness within the meaning of the controlling embezzlement statute, the court considering it to be immaterial that his safekeeping was to be gratuitous and that he was but a naked bailee. It was contended that the offense was larceny rather than embezzlement, upon the theory that the constructive possession remained in the prosecuting witness, but the court held that even if this were so and the conduct did constitute larceny under a former statute, that did not preclude a conviction under the embezzlement statute by its terms applying to every officer, agent, attorney, clerk, servant, or employee of any person, having access to, control, or possession of any money, etc.

So, too, in Grin v. Shine (1902) 187 US 181, 47 L ed 130, 23 S Ct 98 (affirming (1901, CC) 112 F 790), dismissing a writ of habeas corpus sued out by a Russian subject whom the Federal court in California had ordered held for extradition to Russia upon a charge of embezzlement, the Supreme Court held that, in view of the California statutes defining embezzlement as the fraudulent appropriation of property by a person to whom it has been intrusted and providing that every clerk, agent, or servant of any person who fraudulently appropriates to his own use any property of another which has come into his "control or care" by virtue of his employment as such clerk, agent, or servant, is guilty of embezzlement, the fact that the accused, being a clerk, had, as he contended, merely custody as distinguished from possession of a check which his employer had handed to him for delivery to a railway company, did not take his conduct out of the operation of the California embezzlement statute. The court said: "As Grin was clerk of the firm, and as the money was delivered to him in his capacity as clerk for a special purpose, it certainly came into his control or care. We do not care to inquire into the soundness of the distinction made in some of the older cases between the custody and possession of property, because under the section above quoted, nothing more is necessary to constitute embezzlement than that the party charged should have the control or care of the money. The cases in California upon that subject are decisive." The court moreover pointed out that in an extradition proceeding, it is sufficient that a prima facie case of embezzlement is made out and that this was done in the case at bar.

The opinion of the Circuit Court in this same case, in (1901; CC) 112 F 790, takes the same view, that the distinction between custody and possession cannot avail the accused where, as here, his conduct clearly comes within the express provision of the particular embezzlement statute upon which the accusation is founded, and in response to his contention —that the taking of the check at a time when it was in accused's hands for delivery to the railway company could not amount to embezzlement inasmuch as the lawful possession was in his employer and was violated by such taking—said: "That was the early rule, when the statutory crime of embezzlement was created to provide for the punishment of those fraudulently converting money or property to their own use, which had been intrusted to them. As the element of trespass was wanting, the common-law crime of larceny would not cover the offense, and the offender escaped punishment. The creation of the distinct offense of embezzlement supplied a remedy for this defect in the law, but technical difficulties still frequently arose, owing to the strict construction of the common law of the relationship of master and servant, employer and employee, holding the servant or employee to be merely the extended hand of the master or employer, the possession of the master or employer thereby continuing, even when the custody or control was in the servant or employee, until the interposition of some third party. ... To overcome the difficulties still existing, and to meet the necessities of larger commercial relations with the corresponding increase of responsibility upon employees, many states have introduced into their statutes governing embezzlement words indicating that conversion of property merely 'in the care or custody' of the employee shall constitute embezzlement, thus taking the crime more definitely and decidedly from the domain of larceny."

See also Calkins v. State (1868) 18 Ohio St 366, 98 Am Dec 121, affirming a conviction of embezzlement, and holding that under the evidence a clerk employed by a railway company as a clerk at its terminal grain elevator, who was authorized to issue grain orders (receipts for grain received and stored therein), and who issued and sold for his own benefit fictitious grain orders, was shown to have the wheat in the elevator sufficiently "under his care" to render his offense embezzlement within the meaning of the statute applicable to property, etc., "which shall come into his possession or under his care by virtue of such employment or office." Note that the court said: "There is no more reason why courts should allow themselves to be misled by mere names and shadows in the administration of justice in criminal than in civil cases. Calkins, under and by virtue of his employment, had the wheat in the warehouse of his employers so far under his care

and in his possession and control as to give him the power to make an efficient transfer of title to any part of it to any person who should become the bona fide purchaser of a grain order issued by him. ... This power he used to divest his employers of their property, and to put the proceeds of it into his own pocket. We think he had all the care of the property which the statute contemplates."

In Woodward v. United States (1912) 38 App DC 323, the court commented that under the particular embezzlement statute, reading, in part, "anything of value which shall come into his possession or under his care by virtue of his employment or office," the common-law distinction between custody and possession did not exist. But this statement was later qualified in Talbert v. United States (1914) 42 App DC 1 (writ of certiorari denied in (1914) 234 US 762, 58 L ed 1581, 34 S Ct 997) (affirming a conviction of larceny), the court saying that in the Woodward Case it was merely held that the accused had possession of the money under the circumstances contemplated by the embezzlement statute; that some general expressions in the Woodward opinion must be considered in the light of the particular facts; and that no hard and fast construction of the embezzlement statute as regards possession was declared therein. See the Talbert and other District of Columbia cases referred to supra, IV d 1, making a distinction as to instances wherein the property has been intrusted to an employee or agent with limited authority for a specific purpose.

Note that the argument that the accused president of a bank had no such possession, custody, or control of the bank's funds as would bring him within the purview of the embezzlement statute was held not well taken in State v. Kortgaard (1895) 62 Minn 7, 64 NW 51, affirming a conviction of embezzlement. Counsel for the accused argued that the cashier of a bank is the officer who has the exclusive possession and custody of its funds, whereas the president has by virtue of his office no such possession or control, but is merely a member of the board of directors, and although exercising general supervision of the affairs of the bank, has no more custody or control of its funds than any other director. The court, however, pointed out that the question was not what custody or control over the funds of bank presidents generally have, merely by virtue of their office, but what custody or control this defendant had in fact over the funds of this bank. "If he in fact had the lawful custody or control over them," the court said, "whether in the capacity of president or otherwise, and appropriated them to his own use with intent to deprive or defraud the bank of them, he was guilty of embezzlement. If his position or employment gave to defendant a superior or joint and concurrent possession, custody, or control with subordinate employees or agents of the bank, that would constitute such possession, custody, or control as would satisfy the requirements of the statute." That the accused did in fact have the requisite possession, custody, or control was held to be amply established by the evidence tending to show that he was the managing officer of the bank and had general direction and control of its affairs; that it had no discount committee; that he directed and controlled the making of all loans and discounts; and that he made loans for the bank to himself and to corporations of which he was a member and principal stockholder to the amount of between $300,000 and $400,000 upon which little had ever been realized.

*e.* Source from which subject matter received

Under a distinction which has carried over from the early English law, it has been held in some jurisdictions that where the property of an employer comes into the hands of the employee directly from a third person rather than from the employer, and has never been in the latter's possession, the employee's offense in fraudulently converting it is embezzlement rather than larceny, whereas, conversely, if he receives the property directly from his employer and subsequently feloniously converts it, his offense is larceny rather than embezzlement.[23]

So, in State v. Matthews (1920) 143 Tenn 463, 226 SW 203, 13 ALR 314, upholding the sufficiency of a count in an indictment charging embezzlement and ruling that a second paragraph in that count did not, as contended, constitute a charge of larceny, the court remarked: "If the money or property goes into the possession of the employer before it goes into the possession of the employee, his taking and appropriating it does not constitute embezzlement, but larceny. Embezzlement is the fraudulent appropriation of such property as the statute makes the subject of embezzlement, under the circumstances in the statute, by the person embezzling, to the injury of the owner. To constitute embezzlement the money or property must come directly from a third person into the hands of the employee, in the course of his

employment, and be appropriated by him. A larceny cannot be perpetrated when the servant, in the course of his duty, takes his master's property from a third person, though he means to appropriate it to his own use, and does so, for he commits no trespass." It appeared herein that defendant, an officer or employee of a collection agency, was charged with having appropriated payments received by him from third persons paying same upon debts in the hands of the agency for collection.

And where the defendant, being the secretary and treasurer of a corporation, issued a check on the corporation bank account in favor of a motor company in payment of his personal obligation, but stubbed the check on the corporation's books as a payment to another firm for seed, his contention that the offense was embezzlement rather than larceny or fraudulent breach of trust, so that his conviction under counts charging larceny and fraudulent breach of trust could not stand, was rejected in Hill v. State (1929) 159 Tenn 297, 17 SW 2d 913, the court following the rule that to constitute embezzlement the money or property must come directly from a third person into the hands of the employee, in the course of his employment, and be appropriated by him before it goes into the possession of the employer. Moreover, the court stated that in its view the transaction was not larceny, because there was no trespass but, it being a misappropriation from general funds of the employer, over which the defendant alone had control, it fell within the statute defining fraudulent breach of trust as "the fraudulent appropriation of personal property or money by anyone to whom it has been delivered on deposit, pledge, sequestration, or to be carried or repaired, or in whose hands or under whose control it may be by his position as clerk, agent, actor, or bailee, or on any other contract or trust by which he was bound to deliver or return the thing received or its proceeds."

In a rather early New York case, People v. Burr (1871) 41 How Pr (NY) 293, the court said that embezzlement "cannot be committed with respect to property in the possession of the owner, employer, or master, but only of such property as shall have come into the possession of the class of persons described, by virtue of their employment or office. The law contemplates a lawful possession in the servant, acquired from some person other than the master, but by virtue of his employment and his appropriation while in transitu before it reaches the hands of such master or employer, or is applied to the purpose directed by him. When the property or money received is delivered to the owner by the servant, or applied as directed by him, it ceases to be the subject of embezzlement, and if taken thereafter feloniously, it is larceny, not embezzlement."

Where the defendant as city clerk and tax collector was under the duty to collect all money due the city and the light and water commission and to deposit it in the bank, but the evidence tended to prove the conversion of such money by the defendant before it was deposited in the bank to the credit of the city or of the light and water commission, it was held in Weldon v. State (1919) 17 Ala App 68, 81 So 846, that the defendant could not be guilty of larceny inasmuch as there was no trespass, the money never having been in the possession of the city or the light and water commission. The court said: "In efforts to maintain and uphold judgments of court in cases of dishonesty, the appellate courts have clouded, rather than elucidated, the distinction between embezzlement and larceny. But one thing remains clear, and that is that in larceny there must be a trespass and a trespass is a wrong to the possession. ... If the money comes to the possession of the servant from a third person and has never been in the possession of the master, and the servant converts it, it may be embezzlement, but not larceny. ... In other words, a servant has possession, as distinguished from custody, where property is received from a third person for the master, until he delivers it to the master or has put the master in possession by depositing it in a depository provided by the master for that purpose; until he has done this, if he fraudulently appropriates the property, it is embezzlement. ... If, on the other hand, the property has been delivered to the master, and a fraudulent conversion takes place by the servant, it is larceny."

And in St. John v. State (1936) 27 Ala App 97, 168 So 190 (writ of certiorari denied in (1936) 232 Ala 452, 168 So 193) it was held that where one employed as a driver of an armored car for a company operating an armored car messenger service, whose duty it was to transport certain sealed packages of money from a grocery store to a bank, while en route with such package from the store to the bank broke into the package and took money therefrom, and then resealed the package and delivered it to the bank, the offense was embezzlement rather than larceny. The court pointed out that

ownership of the property was alleged and proven to be in the defendant's employer rather than in a grocery company; that the defendant was the agent of his employer rather than of the grocery company; that the money came directly into his hands from the third person and had never been in the possession of his employer at the time it was taken by the defendant; that this was not a case wherein possession of the property was obtained by trick, subterfuge, or fraud and that cases holding that the element of fraud in obtaining the possession takes the place of the trespass ordinarily necessary in larceny had no application here, the possession of the money package having been delivered to the defendant in the ordinary and usual course of business.

(But compare with these Alabama cases the ruling in Lowenthal v. State (1858) 32 Ala 589, stated infra, this subdivision, affirming a conviction of embezzlement and stressing the difference between the English statute and the Alabama statute involved in that case.)

See in this connection Com. v. Ryan (1892) 155 Mass 523, 30 NE 364, 15 LRA 317, 31 Am St Rep 560, affirming a conviction of embezzlement against a clerk who appropriated money paid to him by the purchaser of goods from the store, wherein the court points out that it is settled that it is not larceny for a servant to convert property delivered to him by a third person for his master, provided he does so before the goods have reached their destination, or something more has happened to reduce him to a mere custodian while, on the other hand, if the property is delivered to the servant by his master, the conversion is larceny. Note that Holmes, J., writing the court's opinion, remarked that "This distinction is not very satisfactory, but it is due to historical accidents in the development of the criminal law, coupled, perhaps, with an unwillingness on the part of the judges to enlarge the limits of a capital offense."

On the other hand, the wording of many embezzlement statutes is such that they apply to instances where the property was received by the accused directly from his employer or principal, as well as where it was received by him from a third person. Under such statutes the foregoing distinction cannot properly serve as a basis of defense to a charge of embezzlement.

Thus, in answering the argument that since, under the evidence, the money was received by the defendant directly from his principal, rather than from some third person for and on the principal's account, the offense could not be embezzlement, the court, in Territory v. Maxwell (1882) 2 NM 250, affirming a conviction of embezzlement, pointed out that the rule contended for was laid down in cases decided under the English embezzlement statutes or similar statutes and was a proper interpretation of the statutory language controlling those cases, but that the New Mexico statute did not contain a provision, "which shall be delivered to, or received or taken into possession by him, for, or in the name or on account of his master," as did the English and similar statutes, but, instead, provided that if any officer, etc., shall embezzle or fraudulently convert to his own use any money or property of another which shall have come to his possession, or shall be under his care by virtue of his employment, he shall be deemed, etc., under which provision there was no limitation as to the manner of the coming to his possession, or under his control, or the person from whom the property might so come, the consequence being that the scope of the New Mexico embezzlement statute was much broader than that of the other statute and rendered the decisions made under the more restrictive language of the older statute entirely inapplicable.

In State v. Fraley (1912) 71 W Va 100, 76 SE 134, 42 LRA(NS) 498, it was argued that accused charged with embezzlement of a check could not be guilty of that offense, inasmuch as the check came into his hands directly from the principal rather than from a third person, but the court took the view that under the broad terms of the statute it was immaterial whether the accused obtained possession directly from his principal or master or from a third person. Conceding that the English cases appear to support the accused's contention, the court pointed out that in 2 Bishop, Criminal Law, § 366, it was shown that in this country the court gives the embezzlement statutes a much wider range, making them cover fraudulent conversions of money or other property delivered to the agent, whether by the principal or in his behalf by a stranger.

Likewise, in Lowenthal v. State (1858) 32 Ala 589, it was held that the fact that a servant received the bill of exchange embezzled directly from his master, rather than from some third person for his master, did not preclude his conviction

See also State v. Collins (1891) 2 WD 413, 61 NW 467, wherein the court observed that under the particular statute punishing and defining embezzlement, it was immaterial whether the property was intrusted to the accused by the owner of a check, or by some other person for such owner.

## V. Remedies case

### c. Offense denied embezzlement

Where defendant was treasurer of a county farm bureau during the period in which the farm bureau was attempting to secure from its members and all nonmembers the sum of $2,500 for the state federation of farmers association, to save as a pension fund, and as such treasurer the defendant received currency and checks from various contributors in a total of $2,500 and advised the secretary of the county farm bureau that he had submitted to the state federation the entire amount, but in fact the state federation received from the defendant only $1,041, a conviction of embezzlement was affirmed in Davis v. State (1923) 98 Tex 147 NE 766, over the contention that the crime if any was larceny. The court said: "The distinction between larceny and embezzlement turns on the question whether or not defendant's original possession was rightful before the fictitious appropriation took place, and when defendant had rightful possession with the Newton County Farm Bureau. There was a relation of special trust in regard to the property alleged to have been appropriated, and it was by virtue of such trust that the defendant had access to or control of it."

For the treasurer of a labor union, an unincorporated association, having in his charge funds of the association, to fraudulently appropriate them, was held to be embezzlement rather than larceny in Reddy v. United States (1910) 3 CCA DC 202, affirming a conviction of embezzlement. The court said: "As the defendant only offense it was, if it amounted to embezzlement..."

Where the charge of embezzlement against an attorney was based upon his retaining out of amounts collected by him upon settlement of his client's action much more than the agreed 10 per cent fee, that in letter of instruction had not made out the case without the claim's knowledge or consent, he had given the attorney, as pointed out in Pooler v. State (1910) 9 Ga App DC 240, affirming a conviction of embezzlement. The court said that, as the attorney had authority to make collection of amounts owing to his former client, by client or whose behalf, in making larceny and not conversion of property by a person to whom it had been intrusted, constitute only of a fraudulent appropriation of property by a person to whom it had been intrusted, the defense was held to be untenable, in Pooler v. State (1910) 9 Ga App 771 P 708, inasmuch as if the defendant did convert an attorney in the action he had instituted for his client, if any, was clearly embezzlement and did constitute an attorney in the action he had instituted for his client, if, on the other hand, he was in fact discharged as attorney by the client, conversion in the later transaction whereby he entitled the action and over a long period of law received payments from the debtor, to him as such agent, and as such, his crime, constitutes agent of his former client in the handling of property intrusted to him and not larceny.

---

And where an attorney at law, having entered into a written contract with his client whereby he was to file a claim with the industrial accident board and to represent him and was to receive a designated percentage of the recovery as a fee and was given full authority to settle, adjust, and compromise the claim at his might client's claim, and proper, with full power and authority to collect the amount, sign all receipts, checks, and releases, did receive on behalf of his client a check payable to the client and converted the money thereof and appropriating it to his own use, thereby was guilty of embezzlement and not larceny. It was observed in State v. State (1931) 132 Tex Crim Rep 364, 133 SW2 1362, over the contention that the offense, if any, was theft by bailee rather than embezzlement, and that, if the offense was embezzlement, he was not guilty of embezzlement of money, as charged, but of a check. Saying that neither contention was tenable, the court pointed out that defendant was the trusted agent and attorney for the client and by virtue of the employment he came into possession of the check, which was that the money by which he obtained the money, and this money he converted to his own use and benefit.

Where the owner and payee of a check (or $4,200 indorsed it and sent it by mail to the defendant with the request that he deposit it for her in a designated bank, and defendant took the check to the bank and cashed it, but deposited only $3,200 to the owner's credit, and himself retained $1,000 of her money without her knowledge or consent, a conviction of theft was reversed in York v. State (1940) 140 Tex Crim Rep 199, 143 SW2 778, because under the circumstances the defendant was shown to be the agent for the payee of the check and to have received it into his possession as her agent, so that the subsequent conversion thereof by him was embezzlement and not theft.

And where the owner of bonds handed them to the accused so that he might ascertain for her their market value, and a few days later the accused wrongfully sold the bonds and converted the proceeds to his own use, a conviction of embezzlement was affirmed in State v. Henderson (1915) 130 Conn 658, 192 A 724, over the accused's contention that the "fictitious issue to appropriate" the bonds came into the hands of the accused as the owner's agent. "To constitute embezzlement by agent," the court said, "the statute requires, the information charges, and the court finds, a statement of these elements constituting said crime: (1) the agency; (2) the receipt of the bonds as agent; (3) the conversion or appropriation of the accused to his own use; (4) the fictitious intent to defraud."

In Territory v. Maxwell (1882) 2 NM 250, where it was shown that the accused was a partner in a general merchandise business, that the other partner intrusted the accused with $10,000 in money to use at interest, which money was part of our so different profits for his account, and finally was loaned by the accused to the partnership firm and was lost to the owner's use by the partnership firm, a conviction for embezzlement was refused, the court ascertaining the broader knowledge of the person intrusted was affirmed, the court recognizing the distinction between the accused in this instance clearly did.

Where the embezzlement statute in question provided that any officer, agent, clerk, or servant of any bank who embezzles or fraudulently converts to his own use any money, property, or effects "belonging to or in the possession of such bank, or deposited therein," must be punished, on conviction, as if he had stolen it, the argument on behalf of a bank officer that he could not be convicted of embezzlement of certain money received by him from an express company on behalf of the bank and that had his offense relative to that particular bank embezzlement, was held not well taken in Kinney v. State (1911) 16 Ala App 656, 71 So 718 (state's petition for writ of certiorari denied in (1918) 201 Ala 700, 78 So 590), the court pointing out that in this particular the embezzlement was the agent and an officer of the bank, charged with the duties of receiving for and on behalf of such bank the sum of money specified; that a corporation can only act through its agents, and the possession by the defendant of this money, which it was a part of his duty as an officer of the bank to receive, was in fact possession by the bank of said money, so that his appropriation thereof was within the terms of the particular embezzlement statute, and remedied. "Larceny involves a trespass upon the possession of another, and in the fictitious taking and carrying away of the property of another with the intent to deprive the owner of another, and is the fictitious taking and carrying away of the property of another with the intent to deprive the owner of

the use thereof." The conviction for embezzlement, was, however, reversed because of error in refusing to admit evidence tending to show that the books of the bank contained evidence showing the disposition made of certain of the money, and that the defendant did not in fact embezzle it.

In Roach v. Kelly (1924) 69 Cal.App. 459, 231 P. 767, it was held that a defendant who assisted a bank teller (his co-defendant) in misappropriating funds of the bank, which were intrusted to the possession of such teller, committed the offense of embezzlement rather than larceny, the conduct coming within the provision of the statute providing "that every clerk, servant or agent of any association, society or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust, or secrets it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement."

Where defendant, who was manager of a warehouse company and as such had complete control of all the business of the defendant, including the bank deposits and the paying out of money, with the only person who was authorized to draw checks against the account, drew such funds out in payment of certain salaries purported to have been earned by him personally and to cover up the transaction had the purported drawn checks payable to a fictitious person from whom each was supposed purchased checks payable to the company, which checks were kept by the defendant in his office cashbox, it was held in Brown v. State (1929) 9 Wash., etc., that embezzlement rather than larceny and that, therefore, the conviction upon an indictment charging defendant with the crime of larceny could not stand, the money lawfully came into the possession and control of the defendant before it was appropriated by him, and failing to show that it harbored any criminal intent at the time he acquired possession and control over the property which is essential to the crime of larceny, was absent, and the proof did not constitute the crime with which defendant was charged.

In Neal v. State (1906) 55 Fla. 46 So. 845, 19 L.R.A.(N.S.) 171, it was held, by a divided court, that a teamster who found a sum of money in clothes sent for for laundering and at first intended to return it, but was persuaded by another person to appropriate it to himself, was guilty of embezzlement within the meaning of the statute providing that if any servant embezzles or fraudulently disposes of or converts to his own use or takes or secrets with intent so to do anything of value which has been intrusted to him, he shall be punished as if he has been convicted of larceny, the court pointing out that the statute was much broader than that of other states and included whatever may have come into employment's possession, care, or custody by reason of his employment. The statute, "is not in terms restricted to an indictment rather than larceny and that, therefore, the conviction upon an indictment rather than larceny and that, therefore, the money lawfully came to an indictment charging defendant with the crime of larceny could not stand, the money lawfully came into the possession and control of the defendant before it was appropriated by him, and failing to show that it harbored any criminal intent at the time he acquired possession and control over the property which is essential to the crime of larceny, was absent, and the proof did not constitute the crime with which defendant was charged.

And where the driver of a wagon for a transfer company, being instructed to haul certain boxes of tobacco from one railroad station to another railroad station, received the goods into the transfer company's wagon at his first station, and on that night left the wagon with the goods loaded thereon at the transfer company's warehouse, and thereafter the same evening arranged with the defendants, a subterfuge, to handle the sale of such tobacco, and on that next morning drove the tobacco out of the transfer wagon with the employer's warehouse, and instead of delivering it to the railway, delivered it to the driver and the defendant who participated in the scheme with him was embezzlement rather than larceny. The court said that there could be no doubt that this driver received the goods from the railroad company lawfully and by virtue of his employment, and that there was no evidence tending to show any intention on his part to feloniously convert the tobacco to his own use until the night after he had left the tobacco and he came at the transfer company's warehouse. And that the mere fact that he so left the tobacco and he came at

the warehouse of the transfer company that night for convenience or from necessity and returned the next morning and started with the team and the tobacco intact did not change his relation to the transfer company, the court pointing out that that the confidence and trust reposed in him by the transfer company on the morning of the actual appropriation was the same as had been confided in him on the previous afternoon when he received the tobacco from the railway company. The court thought that the circumstances were indistinguishable from those in State v. Park (1923) 196 Mo. 86, 84 S.W.(2d), noted supra, IV b 2, and that in each case was convicting upon the facts.

Likewise, in State v. Coter (1913) 170 Mo.App 559, 156 SW 773, 157 SW 83, conversion by the driver of a delivery wagon was held to be embezzlement, and not larceny.

The evidence in a prosecution for grand larceny showing that with the knowledge of the complaining witness and of the defendant, a certain kettle belonging to the complaining witness was allowed to remain with the defendant, and he and the defendant, in an inclosed pasture, that the defendant, who had a right to hold it until certain moneys were paid, and to hold it until certain rights the defendant was under obligation to return to the complaining witness was subject to a condition that it could not be sold or disposed for some time before the defendant hardboard and thirty appropriated it, the holder could not be guilty if larceny terminated at the time the defendant thus took it and held larceny because the being in lawful possession of the animal at the time of the appropriation thereof, State v. Black (1929) 57 ND 257, 221 NW 343.

## A. Officer should have levied.

In State v. Coleman (1924) 119 Or 430, 249 P 1046, where it appeared that the defendant was employed by a county as head janitor of the courthouse and that he was also a deputy sheriff of the county specially charged with the performance of the duties of janitor, but that he was not charged with any duty of collecting taxes, such tax collections being taken care of by other deputies in the sheriff's office who, when the tax money was collected, placed it in a vault of the sheriff's office, and it was also held that when, during the noon hour when the employees of the of the sheriff and tax collect deputies, entered such office and stole certain tax money from the sheriff's vault and carried it away with him, and was guilty of a defalcation by another statute which he had charged and convicted from the county-law as lawful custody of property or moneys directed to his office) with which he was charged and convicted, was held not embezzlement, insomuch as the money, when appropriated by the defendant, was in the constructive possession of the sheriff, and defendant, although he was a deputy sheriff, nevertheless committed a trespass when he entered the office in which its money was kept for unlawful purpose of taking it, or even if he entered the sheriff's office for a lawful purpose, but, after such entry, conceived and executed a felonious design to take and convert the moneys from the vault, he was also a trespasser in such office and in abstracting the moneys from the vault.

Where a patient of a hygienic institute, upon being directed to disrobe for purpose of treatment, did so and hung his clothes upon a peg in the room occupied by him, and defendant, who was the doctor in charge of the institution, being told by the patient at the time he was undressing that there was money in his clothing, assured the patient that it would be safe, but nevertheless it appeared that at least by the next day the defendant had taken the money from the patient's clothes, which remained upon the hook in the same room for about a week, during which the patient was undergoing treatment and occupying another room, a conviction of grand larceny was affirmed in People v. Dan (1912) 20 Cal.App 160, 128 P 832, over the contention that the defendant was a bailee of the patient's property, the court pointing out that even if the defendant did not form the felonious conviction of taking the patient's property until the day following the time upon which the patient left his clothes in the room, the defendant taking would nevertheless constitute larceny, for the reason that the patient's property had not been placed in the defendant's custody and keeping. The court noted that the patient testified that he did not authorize the defendant nor a custodian of any charge of the money which he took, and that the patient told him where to put the money at there and told that he was not told how long he would have to remain in the same room for the purpose of which he so directed. The facts that the patient testified that he had no reason to distrust the defendant and that he trusted everything he was told so, under the circumstances, the court concluded,

to be construed as having clothed the defendant with the authority of a bailee with respect to the patient's clothes and the money therein.

And in **Bunch v. Territory (1894) 102 Okl 19, 36 P 266**, where it appeared that the accused had advertised an offer of employment stating that $150 cash would be required and, when the prosecuting witness responded to the advertisement, advised him that he could have the position but would be required to give $150 as security, whereupon the witness gave the accused such sum of money and the accused gave the witness a receipt therefor reciting that it was received "as security deposit on situation," and at the same time gave the witness a promissory note for the same sum of $150, payable sixty days after date, but within a few weeks discharged the witness, ostensibly by reason of lack of business, and returned to him only the sum of $20, although he had stated when the employment contract was made that the $150 would be returned in the event of the witness' discharge, and there was proof tending to show that the accused had not acted in good faith, the court, in affirming a conviction of larceny over the contention that the evidence showed the offense if any committed to be embezzlement only, took the view that the facts that the witness was the victim of a fraudulent scheme and deposited it with the accused only under the influence of the fraud, entitled the prosecution to show that the accused did not intend to part with ownership but that it was merely put into the hands of the defendant as security for the faithful performance of services to be rendered and that the defendant at the time of receiving it was possessed of the fraudulent and felonious purpose to convert it to his own use. The court concluded that under the evidence it was a question for the jury to decide whether the defendant took the money, and whether the prosecuting witness intended to part with his ownership of it.

In **Nevo v. Sass (1894) 171 Tex. Crim. Rep. 52, 74 SW2d 607**, reversing a conviction of embezzlement because the proof showed that the embezzlement, if any, was of an assignment rather than of a sum of money as charged in the indictment, the court had occasion to remark that the facts apparently brought the case within the purview of the statutes relating to theft, and that it was doubtful whether the transaction was within the statute denouncing embezzlement. It appeared that one R. had $4,200 on deposit in a closed bank in the process of liquidation but which had practically enough money on hand to pay all of the depositors and that the full amount due would eventually have been paid; that defendant proposed to R. that he buy some postal bonds and purchase for R.'s deposit in the closed bank, upon the understanding that defendant would purchase for R. $4,200 worth of postal bonds; that thereafter defendant transferred the assignment to one A. for $10,000 worth of bullion and bar stock and A. received various payments from the closed bank representing dividends that were paid upon such account so assigned to him; and that defendant sold the building and bar bonds for approximately $3,000, whereas R. received nothing from his assignment, as defendant did not purchase any postal bonds for him but, on the contrary, according to the state's version, appropriated the money to his own use, and thereupon the defendant falsely took the money, and whether the prosecuting witness had received.

Many additional illustrative cases wherein the offense was deemed larceny rather than embezzlement are stated supra, IV § 3 and IV § 4.

## VI. Summary and comment

The early English embezzlement statutes were of extremely limited scope, being expressly designed not to infringe upon the field of operation of common-law larceny, but the American statutes, while some of them were originally of this kind, have, generally speaking, incorporated more inclusive language, and have been given, consequently, a considerably wider application. Because, however, of the marked differences between the various embezzlement statutes in this country, some of the distinctions that have been laid down in one jurisdiction in differentiating that offense from larceny may be wholly inapplicable in a state where a different embezzlement statute prevails. It will be readily recognized, therefore, that whatever it is necessary to determine whether a particular transaction constitutes larceny or embezzlement, or what the difference are between those offenses in a given jurisdiction, the terminology of the local statutes relative to those offenses, and the local decisions construing such statutes, are of prime importance.

Bearing in mind the fact that in some jurisdictions the terms of the embezzlement statute may be such as to render the general distinctions inapplicable, it can be said from the cases generally that the elements of larceny and embezzlement are ordinarily distinguishable in that (1) in embezzlement, the property comes lawfully into the possession of the offender, and is subsequently unlawfully appropriated by him, whereas, in larceny, the offender, instead of having prior lawful possession of the property, takes it unlawfully in the first instance, thereby committing a trespass against another's possession (this distinction is treated supra, IV A); and (2) embezzlement involves a fraudulent breach of trust by one holding another's property by virtue of some fiduciary relationship, whereas larceny, ordinarily, at least, does not involve any element of trust (see treatment of this distinction supra IV c 1).

Additionally, in good many cases the view has been taken that the offense of one fraudulently appropriating property of another which was in the accused's hands before the actual appropriation or conversion to his own use, is larceny, rather than embezzlement, if the accused harbored a fraudulent or felonious intent concerning the property at the time it was intrusted to or otherwise received by him. (This distinction is treated supra, IV § 1.) In jurisdictions where the embezzlement statute is deemed not to apply to anything that was larceny at common law, this view seems proper, for before an accused can be held guilty of only common-law larceny, under such a statute, it must be shown that it is requisite that under the doctrine mentioned such a transaction was larceny. But it would seem that in a jurisdiction where the embezzlement statute is broad enough, the fraudulent conversion of property by one to whom it has been intrusted, the offense of larceny and embezzlement should be considered as overlapping in this respect, so that, consequently, where the money or property was intrusted to the accused and, so far as was apparent to the person so intrusting it with the lawful intent to abide by his duty concerning it, the mere fact that when the accused so received the property he harbored a secret intent to subsequently convert it and to eventually actual and to a defense to a charge of embezzlement. See, as indicating, cases supra, IV § 2 and IV b 3.

The distinction developed at common law between lawful "possession" and mere "custody" of money or property has sometimes served as a basis of distinguishing between embezzlement and larceny, the theory of a good many decisions being that, although the subject matter was in the accused's hands prior to his felonious conversion of it, if he had only the "custody" of it, the conversion, being a violation of another's constructive possession, is larceny rather than embezzlement, whereas, if the accused had lawful "possession," his offense in converting the property so possessed is embezzlement rather than larceny. (This distinction is considered by one having something less than lawful "possession" of some embezzlement statutes, the offense may be committed by one having something less than lawful "possession" of property in question (see supra, IV d 3). It is submitted that, while the distinction seems proper when resorted to in being one within the purview of a charge of larceny, inasmuch as it was developed by the English courts for that very purpose, it should not confuse, ordinarily at least, a basis of distinguishing the offender must have had his property in his lawful possession. At best, the distinction is an indefinite and most unsatisfactory one, and to allow it to be availed of as a defense to a charge of embezzlement against a person who, whatever his legal position was concerning the property in question, did have it in his actual possession and control, with the permission of the owner, to such an extent that he was thereby enabled to and did fraudulently convert or appropriate it to his own use and benefit, would be, it is suggested, under many of the embezzlement statutes, an unwarranted and overtechnical function upon the prosecution. This is particularly true in view of the vast fields of modern business operations, their being untold numbers of instances under which one having in his hands the money or another or another person and property, if originally charged with larceny, plainly advance the argument that the had "possession" rather than "custody," and, on the other hand, if originally charged with embezzlement because of the same transaction, may just as plausibly argue that he had, not "possession," but mere "custody."

The view that to constitute embezzlement the accused directly from some third person on behalf of his accused's employer owning such property, rather than from the employer himself, and that if the property is received by the accused directly from his employer, his offense is later appropriating it is larceny and not embezzlement, is professed upon the peculiar wording of the early English embezzlement statutes, and

Distinction between larceny and embezzlement, 148 A.L.R. 832 (Originally published in...

## CUMULATIVE SUPPLEMENT

Crimes of embezzlement and stealing are inconsistent; embezzlement presupposes lawful possession and theft does not. 18 U.S.C.A. § 1709; U.S. v. Thurston, 491 F.2d 74 (9th Cir. 1974).

Under Texas law, the distinction between theft and embezzlement and swindling is that in the former title to property acquired never passes, while in the latter title does pass. Pen.Code Tex.1925, art. 1545; Alexa v. Scofield, 167 F.2d 718, 48 U.S.Tax Cas (CCH) P 9269, 36 A.F.T.R. (P-H) 781 (C.C.A. 5th Cir. 1948).

The distinction between theft and embezzlement, on the one hand, and swindling, on the other, is that in the former case title to property acquired never passes, while in the latter case title does pass. Pen.Code Tex.1925, art. 1545; Alexa v. Scofield, 71 F. Supp. 553, 47-2 U.S. Tax Cas. (CCH) P 9358, 36 A.F.T.R. (P-H) 787 (N.D. Tex. 1947).

In the distinguishability context, both larceny and embezzlement involve the fraudulent appropriation of another's property, and differ only in taining: "larceny" applies when debtor unlawfully appropriates property after it has been entrusted to debtor's care. 18 U.S.C.A. § 53(a)(4); In re Dennison, 513 B.R. 150 (Bankr. S.D. Tex. 2006).

Bank messenger had mere custody rather than possession of bank funds, and where messenger delivered money to acquaintance as part of scheme to make it appear that messenger had been robbed, messenger was guilty of larceny or stealing of bank funds, despite conviction that he was guilty of most of embezzlement. 18 U.S.C.A. § 656; In re Denk, 446 F.2d 515 (6th Cir. 1971).

Embezzlement and theft are inconsistent crimes, for embezzlement presupposes lawful possession and theft does not. Bartlett v. U.S., 166 F.2d 921 (6th Cir. 1948).

"Larceny" occurs when a thief breaks into a home and steals jewelry for the purpose of converting it to cash for his/her own use. In re Spallone, 404 B.R. 341 (Bankr. E.D. Mich. 2009).

"Larceny" is distinguished from "embezzlement," by requirement that the original taking of property must be unlawful. In re ChoCchocm, Inc., 381 B.R. 531 (Bankr. E.D. Mich. 2008).

Where the taker has been entrusted with possession of the property, the taking is more aptly described as embezzlement. U.S. v. Waronek, 582 F.2d 1158 (7th Cir. 1978).

Embezzlement occurs when a person who has lawfully received funds willfully diverts them to his own unauthorized use. Dunkel v. Burns, 311 F. Supp. 3d 796, R.I.C.O. Bus. Disp. Guide (CCH) P 10657 (N.D. Ill. 2008).

Knowing exercise of dominion over another property by stealing it from that person, though possession is wrongful in inception, is just as much conversion as knowing, wrongful exercise of dominion over property after lawfully obtained possession. 18 U.S.C.A. § 656; U.S. v. Johnson, 741 F. Supp. 666 (N.D. Ill. 1989).

For purposes of discharge exception applicable to debts for larceny or embezzlement, "embezzlement" is defined as the fraudulent appropriation of creditor's property by debtor, to whom it has been entrusted or into whose hands it has lawfully come, whereas "larceny" involves an original taking of property that was not lawful; embezzlement differs from larceny only in that the original taking was lawful. 11 U.S.C.A. § 523(a)(4); In re Ferraro, 360 B.R. 883 (Bankr. N.D. Ind. 2007).

"Embezzlement" requires evidence that property was rightfully in the possession of a non-owner and that the non-owner thereafter misappropriated that property to a fraudulent manner. In re Wren, 255 B.R. 130 (Bankr. W.D. Wis. 2000).

---

Where persons who steal money to officer of charitable organization intended to part with all title to it, officer conversion of the money constituted embezzlement, not larceny; U.S. v. Barl, 126 F. Supp. 3d (N.D. Cal. 1954).

"Embezzlement" under federal law is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come; In re Trekor, 244 B.R. 841 (Bankr. E.D. Okla. 2000).

Under Georgia law, where foreign corporation has a resident agent within the state, who through solicitation obtains an order from a resident, whereupon it is subject to approval of corporation at its foreign office, such corporation may be required to answer for a cause of action arising out of business so initiated. Georgia Lumber & Veneer Corp. v. Home Mach. Co., 150 F. Supp. 126 (N.D. Ga. 1957).

"Embezzlement," unlike larceny, presupposes that the property stolen was voluntarily turned over by the victim. In re Moulton, 495 B.R. 440 (Bankr. S.D. Fla. 2013).

"Embezzlement" is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. U.S. v. Carr, 471 F.2d 144 (D.C. Cir. 2006).

Where it was duty of assistant manager of the Sauret Restaurant to receive and disburse receipts from restaurant but during assistant manager vacation, manager chose to receive the money nor deposit in bank, a conversion of the money by the manager would constitute embezzlement rather than larceny since manager had only custody and had legal possession. C.Code 127; 18 U.S.C.A. § 641; Abbotko v. U.S., 168 F.2d 654 (Gen. D.C. 1948).

Where defendant had control of firemen relief funds by virtue of his office in firemen association, jury could have found his taking of funds to constitute larceny by trick from payee, rather than embezzlement from association, because of possessive method by which defendant secured cash proceeds of association check and covered his misappropriation of the funds. U.S. v. Dwirk, 147 F. Supp. 405 (D.D.C. 1957).

It is essential to embezzlement conviction that proof show that accused, having come rightfully into possession of money, property, or effects as agent, etc., fraudulently converted such to his own use, or fraudulently secreted it with intent to convert it to his own use or to use of another. Code 1940, Tit. 14, § 133; Reed v. State, 41 Ala. App. 175 So. 2d 491 (1965).

A person honestly receiving possession of another goods, chattels or money on express or implied trust and fraudulently converting them to his own use may be guilty of embezzlement, but not of larceny, unless embezzlement is made larceny by statute. Murchison v. State, 32 Ala. App. 427, 26 So. 2d 622 (1946).

Theft from the person is a separate crime, the elements of which should be restrictively interpreted and differentiated from theft on the one hand and robbery on the other; in adopting the statute prohibiting theft from the person, legislature intended a single crime of theft, combining the common-law crimes of larceny, fraud, embezzlement, obtaining money by false pretenses, and other similar offenses. A.R.S. § 13-1802; State v. Tramble, 144 Ariz. 48, 695 P.2d 737 (1985).

Larceny is common-law crime, while embezzlement is creature of statute. A.R.S. § 13-1802, subsec. 4; State v. Scofield, 7 Ariz. App. 307, 438 P.2d 776 (1968).

To support conviction of larceny, defendant must have intended to steal property at time he took it; if intent rose after act of taking, crime may be embezzlement or lesser offense but it cannot be larceny. West Ann. Pen. Code, § 20, 484; People v. Olson, 232 Cal. App. 3d 1396, 284 Cal. Rptr. 1 (6th Dist. 1991).

As with larceny by trick and obtaining property by false pretenses, embezzlement and grand theft by larceny are aimed at different criminal acquisitive techniques, but, with other larcenous crimes, have been consolidated into the single crime of theft. West's Ann.Cal.Penal Code §§ 484, 490(a), 503. People v. Fenderson, 188 Cal. App. 4th 625, 2010 WL 3609383 (1st Dist. 2010).

Incident in which defendant and two others allegedly staged an accident at the ski resort where they worked in order to obtain medical treatment for a prior injury to defendant's knee and to collect a cash settlement did not constitute theft by embezzlement, in absence of evidence that defendant had been in a position of trust with employer, giving him access to property that he appropriated for his own benefit. West's Ann.Cal.Penal Code § 503. People v. Beaver, 186 Cal. App. 4th 107, 2010 WL 2584204 (3d Dist. 2010).

The offense of embezzlement contemplates a principal's entrustment of property to an agent for certain purposes and the agent's breach of that trust by acting outside his authority in his use of the property. West's Ann.Cal.Penal Code § 503. People v. Sisuphan, 181 Cal. App. 4th 800, 104 Cal. Rptr. 3d 654 (1st Dist. 2010).

Police officer appropriation of his official vehicle to steal lawnmower was not an embezzlement of public funds, which would be a felony regardless of the value of the property embezzled, but rather was a theft of value of its use, and in absence of proof that value of loss exceeded $400, the embezzlement was a misdemeanor. West Ann.Cal.Penal Code §§ 504, 514. People v. Redondo, 19 Cal. App. 4th 1428, 24 Cal. Rptr. 2d 143 (5th Dist. 1993).

Included within statute defining theft is not only the offense of taking personal property (larceny), but also embezzlement, theft by trick and device, and theft by false pretenses. West Ann.Pen.Code, § 484. People v. Shirley, 78 Cal. App. 3d 424, 144 Cal. Rptr. 282 (2d Dist. 1978).

Gist of embezzlement is appropriation to one own use of property delivered for devotion to a particular purpose other than one own enjoyment of it. West Ann.Pen.Code, §§ 484, 487. People v. Kagan, 264 Cal. App. 2d 648, 70 Cal. Rptr. 732 (1st Dist. 1968).

Consolidation of offenses of nonforcible appropriation of another property, larceny, embezzlement and false pretenses through amendment to Penal Code did not create new crimes or enlarge the scope of any of the old ones. West Ann.Pen.Code, § 484. People v. Kassab, 219 Cal. App. 2d 687, 33 Cal. Rptr. 494 (2d Dist. 1963).

Although larceny, embezzlement, obtaining money by false pretenses and kindred offenses have been consolidated by statute into single crime of theft, elements of several offenses have not been changed thereby. West Ann.Pen.Code, § 484. Collins v. Superior Court In and For San Mateo County, 204 Cal. App. 2d 652, 22 Cal. Rptr. 508 (1st Dist. 1962).

Gist of offense of embezzlement is appropriation to one own use of property held by him for devotion to a specified purpose other than his own enjoyment of it. West Ann.Pen.Code, §§ 487, subd. 1, 503. People v. Miller, 188 Cal. App. 2d 156, 10 Cal. Rptr. 326 (2d Dist. 1961).

Where an official of a union had control of union realty, and directed the making of a sale thereof, and appropriated to his own use part of the proceeds of the sale, he was guilty of embezzlement and not larceny. West Ann.Pen.Code, §§ 503, 504, 506. People v. Swanson, 174 Cal. App. 2d 453, 344 P.2d 832, 38 Lab. Cas. (CCH) P 65892 (3d Dist. 1959).

Prosecution under embezzlement statute is not to be limited exclusively to embezzlement of public moneys, in view of absence of any direct reference to public moneys in statute and inclusion therein of appropriation by private persons of any property belonging to any association, society or corporation of either a public or private nature. West Ann.Pen.Code, § 504. People v. Coe, 171 Cal. App. 2d 786, 342 P.2d 43 (2d Dist. 1959).

Where defendant agreed to sell machines belonging to victim and upon consummation of sale failed to turn over proceeds, even if defendant had received money for machines before victim delivered them to defendant for sale, moment defendant delivered machines to buyer proceeds of sale became impressed with the trust for benefit of victim and appropriation of trust property with intent to defraud victim would constitute embezzlement. West Ann.Pen.Code, § 506. People v. Martin, 153 Cal. App. 2d 275, 314 P.2d 493 (2d Dist. 1957).

Offense of grand theft, as defined in Penal Code section, includes crimes of larceny, embezzlement, and obtaining money by false pretenses, and judgment of conviction of grand theft, based on general verdict of guilty, can be sustained only if evidence discloses elements of one of the consolidated offenses. West Ann.Pen.Code, § 484. People v. Massey, 151 Cal. App. 2d 623, 312 P.2d 365 (2d Dist. 1957).

Both embezzlement and larceny by trick and device require that the victim not part with title to his money or property. People v. Gould, 125 Cal. App. 2d 447, 270 P.2d 551 (1st Dist. 1954).

The statutory offense of grand theft includes the former crimes of larceny, embezzlement and obtaining money by false pretenses. West Ann.Pen.Code, § 503. People v. Hewlett, 108 Cal. App. 2d 358, 239 P.2d 150 (1st Dist. 1951).

The Penal Code now amalgamates the crimes of larceny, embezzlement, false pretenses and kindred crimes under the cognomen of theft. West Ann.Pen.Code, § 484. People v. Moorhead, 104 Cal. App. 2d 688, 232 P.2d 268 (2d Dist. 1951).

Statute substituting word theft for larceny, embezzlement or stealing in statutes did not change any elements of the former crimes. Pen.Code, § 484. People v. Frazier, 88 Cal. App. 2d 99, 198 P.2d 325 (2d Dist. 1948).

The consolidation by statute of the crimes of larceny, embezzlement, and obtaining money or property by false pretenses, into the single crime of grand theft, has not changed the elements of the several offenses. West Ann.Pen.Code, § 484. People v. Craygns, 79 Cal. App. 2d 658, 180 P.2d 453 (1st Dist. 1947).

When a person takes goods which he honestly believes are his own under a claim of title, he is not guilty of larceny nor is such person guilty of embezzlement of property if it is openly and avowedly taken under a claim of title preferred in good faith. Pen.Code, § 511. Singleton v. Singleton, 68 Cal. App. 2d 681, 157 P.2d 886 (2d Dist. 1945).

Theft includes the offenses formerly known as larceny, of obtaining property by false pretenses, and embezzlement. People v. Pillsbury, 59 Cal. App. 2d 107, 138 P.2d 320 (2d Dist. 1943).

Defendant need not have had express authorization from his principal to possess property in order to satisfy requirements of embezzlement statute; and where advertising solicitor had at least implied authority to receive cash payments for advertising on behalf of his employer, money was in his possession or under his care within meaning of statute. C.R.S. 3, 40-5-16. Gill v. People, 139 Colo. 401, 339 P.2d 1000 (1959).

Where principal is tricked into parting with possession by agent who, at time of taking, has felonious intent to convert property to his own use, the offense is larceny and not embezzlement, and thus time of forming of felonious intent to take is of paramount importance in determining whether taking constitutes embezzlement or larceny. State v. Vars, 154 Conn. 255, 224 A.2d 744 (1966).

Significant distinction exists between traditional larceny and larceny by embezzlement as to time when intent to steal arises; if defendant intends to steal property at moment it comes into his possession, it is traditional larceny; if defendant receives property honestly and at later time forms the intent to steal it, larceny by embezzlement has taken place. C.G.S.A. § 53a-119. State v. Pulley, 46 Conn. App. 414, 699 A.2d 1042 (1997).

Taxicab driver tendered bill for fare and returning inadequate change with intention of converting difference to his own use is guilty of larceny, though possession of the money is not obtained by trick or design. Rice v. U.S., 64 A.2d 567 (Mun. Ct. App. D.C. 1949).

Omnibus theft statute includes a variety of offenses related to unlawful appropriation of property, including larceny, obtaining by false pretenses, and misappropriation. West's F.S.A. § 812.014. Nooe v. State, 2005 WL 170875 (Fla. Dist. Ct. App. 5th Dist. 2005), reh'g denied, (Feb. 16, 2005).

All former distinctions between larceny, embezzlement and obtaining money or other property by false representations are abolished and are merged into one offense of larceny. F.S.A. § 811.021. Cuozo v. State, 182 So. 2d 252 (Fla. Dist. Ct. App. 2d Dist. 1966).

An embezzlement differs from larceny in that in an embezzlement accused comes into possession of property lawfully, whereas in larceny property comes into hands of thief secretly and unlawfully, and in the former there is an entrustment and in the latter there is not. Code, § 26-2809. Mavrikis v. State, 110 Ga. App. 26, 137 S.E.2d 730 (1964).

In embezzlement cases, property must come into hands of officer lawfully, and if it comes into hands of officer unlawfully it is simple larceny or, in some cases, larceny after trust. Howard v. State, 93 Ga. App. 147, 91 S.E.2d 118 (1955).

In embezzlement, as distinguished from larceny, defendant must convert property to his own use or steal it before it rests ultimately, actually or constructively, in the possession of the owner, and, if the taking of the property is after it is in possession of the owner, then the taking is but larceny. Code, § 26*2803. Simmons v. State, 79 Ga. App. 390, 53 S.E.2d 772 (1949).

Since the reference to felonious stealing in larceny statute included both felony and misdemeanor offenses, the same was true of embezzlement statute which resorted to larceny statutes to define the punishment for embezzlement. I.C. §§ 18 *2413, 18 *4601 et seq., 18*4604, 18*4605. Sparrow v. State, 102 Idaho 60, 625 P.2d 414 (1981).

Defendants, who engaged in a scheme whereby, after weighing empty truck at weigh station and then getting a load of grain, they would stop on the way back to the weigh station and transfer some of the grain to a smaller pickup truck, were properly charged with petit larceny rather than with embezzlement or obtaining property under false pretenses. I.C. §§ 18 *2401, 18 *3101, 18 *4601, 18 *4603 to 18 *4605, 18 *4607. State v. Jesser, 95 Idaho 43, 501 P.2d 727 (1972).

Even if defendant police officer had not broken into store, but had found it broken and had entered while on patrol duty, his authority was essentially custodial and carried with it at most an opportunity of access and a naked and limited possession; hence relationship out of which the crime of embezzlement could arise was wholly lacking and rifling of cash register and removing of garbage disposal unit from the store were felonious and the crime was larceny. Liess v. State, 233 Ind. 250, 118 N.E.2d 731 (1954).

An employee who has mere custody of personal property, as distinguished from legal possession, and who with animo furandi converts such property to his own use, is guilty of larceny rather than embezzlement because of absence of relation of special trust in regard to article appropriated necessary to an embezzlement. Warren v. State, 223 Ind. 552, 62 N.E.2d 624 (1945).

The gist of the offenses of larceny, embezzlement, and false pretenses is the felonious taking and conversion of the property of another, and the three crimes differ only in means by which the taking and conversion is accomplished, and a partner of a going partnership cannot be guilty of such crimes, in view of the community of property and interest of partners in the partnership effects. I.C.A. § 713.1. State v. Quinn, 245 Iowa 846, 64 N.W.2d 323, 43 A.L.R.2d 1240 (1954).

Separate acts of theft or embezzlement may constitute felony theft if acts were result of one larcenous impulse or plan. State v. Fox, 242 Kan. 457, 749 P.2d 16 (1988).

While felonious intent is necessary element in both larceny and embezzlement, larceny requires intent to permanently deprive owner of property at time of wrongful taking whereas embezzlement requires intentional misappropriation to own use by wrongdoer while in lawful possession and intention to return or restore misappropriated property by the embezzler is no defense. K.S.A. 21*545, 21*547; 1970 Supp. 21*3701. State v. Piper, 206 Kan. 190, 477 P.2d 940 (1970).

Driver may generally assume that approaching motorist will obey rules of road, absent knowledge to contrary, but driver will not be permitted to act on assumption where factual basis for it has disappeared, as when it appears that driver of vehicle on wrong side of road either will not or cannot turn back to his own side. Gard v. Sherwood Const. Co., 194 Kan. 541, 400 P.2d 995 (1965).

Defendant who allegedly, as refinery loading dock biller, had gasoline under his care as bailee and who participated in loading filling station operator truck in payment for defendant debt was properly charged with embezzlement, rather than larceny, even if element of possession was indispensable. G.S.1949, 21*547. State v. Cross, 190 Kan. 463, 375 P.2d 607 (1962).

When the taking of property is lawful in the first instance and it is afterwards converted animo furandi to the taker use, it is not larceny but embezzlement. Watkins v. Layton, 182 Kan. 702, 324 P.2d 130 (1958).

Crime of embezzlement is committed when one who is intrusted with money or property of another fails to have it forthcoming on lawful demand of the person to whom it belongs. G.S.1949, 21*545. State v. Hoffman, 171 Kan. 116, 229 P.2d 768 (1951).

Larceny is distinguished from embezzlement in that the element of trespass is inherent in commission of the former while in the latter possession of the res is obtained for a lawful purpose but is later perverted by wrongdoer to an unlawful use or purpose of his own. Gen.St.1935, 21*533, 21*545. State v. James, 157 Kan. 703, 143 P.2d 642 (1943).

Larceny and conversion are not degrees of one another but are distinct offenses. KRS 433.220, 434.220. Clark v. Com., 386 S.W.2d 458 (Ky. 1965).

An essential element of the offense of converting to one own use property of another without his consent is criminal intent. KRS 434.220. Robinson v. Com., 311 Ky. 867, 226 S.W.2d 29 (1950).

Embezzlement, unlike larceny, is a fiduciary's conversion of property that was entrusted to him because of his status as a fiduciary. State v. Frost, 99 So. 3d 1075 (La. Ct. App. 4th Cir. 2012).

"Embezzlement" differs from larceny in that the original taking is lawful; the gravamen of the offense is the subsequent felonious conversion of the property with the intent to convert it to the accused's own use. State v. Henry, 73 So. 3d 958 (La. Ct. App. 2d Cir. 2011).

A motorist may assume that approaching driver will obey the law, and may act upon such assumption in determining his own manner of using the road, and hence driver proceeding on right side of traveled way may assume that driver of vehicle approaching on same side, or on his left hand side, will do all that reasonable person under all circumstances would do to avoid a collision, which ordinarily would be to yield half the way, or turn out in time to avoid a collision. LSA-R.S. 32:72. Patterson v. St. Paul Mercury Ins. Co., 173 So. 2d 224 (La. Ct. App. 3d Cir. 1965).

Embezzlement is larceny committed by a certain class of persons, without a trespass. 17 M.R.S.A. § 2107, State v. Reno, 228 A.2d 217 (Me. 1966).

Under statute providing that whoever embezzles property delivered to him or any part thereof, which may be the subject of larceny, shall be deemed guilty of larceny and shall be punished accordingly, the criminal offense is the embezzlement of goods held in trust and confidence rather than the breach of trust which such embezzlement constituted and such separate act of embezzlement constitutes larceny. Rev.St.1930, c. 131, § 10. Smith v. State, 142 Me. 1, 45 A.2d 438 (1946).

Statute providing that one who embezzles or fraudulently converts to his own use shall be guilty of larceny created a peculiar species of larceny, where the fabulous taking is wanting. Rev.St.1930, c. 131, § 10. State v. Smith, 140 Me. 255, 37 A.2d 246 (1944).

Accused must have actual possession before he can successfully maintain that his crime was embezzlement rather than larceny. Lehr v. State, 229 Md. 477, 265 A.2d 84 (1950).

Evidence was insufficient to sustain conviction for statutory embezzlement, Code 1951, art. 27, § 134. Nolan v. State, 213 Md. 298, 131 A.2d 851 (1957).

Simple common-law larceny is wrongful and fraudulent taking and removal of personal property from possession of another against his will, with intent to deprive person entitled thereto of the ownership therein; the taking refers to the taking of possession from possession of one entitled thereto; that it must be a trespassory taking, and trespass against possession is the matrix of the common-law larceny concept. Putinac v. State, 9 Md. App. 515, 265 A.2d 578 (1970).

The distinction between the crime of larceny and the crime of embezzlement is larceny involves a trespass, actual or constructive, while in embezzlement the original taking was lawful. Century v. State, 7 Md. App. 120, 255 A.2d 411 (1969).

Embezzlement is a statutory offense designed to penalize those fraudulent conversions of money and other property which could not be prosecuted as common law as larceny because there was no trespassory taking. Code 1957, art. 27, § 129. Coulan v. State, 3 Md. App. 627, 240 A.2d 670 (1968).

In Maryland, embezzlement statutes do not absorb all cases of larceny by servants, agents or employees. Code 1957, art. 27, § 129. Loker v. State, 2 Md. App. 1, 233 A.2d 342 (1967).

Even though the accused may guilty of embezzlement, that of itself is no reason why he cannot, in the alternative, be guilty of larceny after trust. Acts 1945, c. 831. Vau v. State, 1 Md. App. 247, 229 A.2d 102 (1967).

Larceny can be established by evidence warranting a conviction on any of the three formerly statutes charges of larceny, embezzlement, or obtaining by false pretenses. M.G.L.A. c. 266 § 30. Com. v. Cheromcka, 66 Mass. App. Ct. 771, 539 N.E.2d 1081 (2006).

Larceny by conversion is neither common-law larceny nor embezzlement, as gist being the conversion, and whether original charge of defendant was wrongfully believed is not an element. Pub.Acts 1931, No. 328, § 362. People v. Franz, 321 Mich. 379, 32 N.W.2d 533 (1948).

Despite trial court admonition to defendant not to say that she was trying to steal good just because she wanted to plead guilty, defendant insisted on admitting requisite intent, and thus sufficient factual basis existed for acceptance of defendant plea of guilty to larceny in a building. People v. Fetui, 120 Mich. App. 128, 328 N.W.2d (1982).

"Embezzlement" is the wrongful conversion of property lawfully possessed by the person charged. Montgomery v. State, 781 So. 2d 179 (Miss. 2000).

"Embezzlement" differs from larceny in that it is wrongful appropriation or conversion of property where original taking was lawful or with consent of owner; larceny involves trespass and fabulous intent must exist at time of such taking. Code 1972, §97-17-25. Mallory v. State, 860 So. 2d 1031 (Miss. 2002).

Where one takes custody of another property than legal possession and he converts property to his own use, he is guilty of larceny. Mallory v. State, 303 So. 2d 681 (Miss. 1974).

Embezzlement itself is precisely synonymous with wrongful appropriation of property of another. Gladney v. State, 241 Miss. 379, 172 So. 2d 692 (1965).

The purpose of new and simplified stealing statute was to eliminate technical and confusing distinctions between larceny, embezzlement and obtaining money or property by false pretenses, and as a whole it attempts to deal with all forms of stealing including false pretenses. Section 560.156, subd. 2 RSMo 1959, V.A.M.S. State v. Perkins, 380 S.W.2d 433 (Mo. 1964).

Purpose of statute respecting statutory crime of stealing is to eliminate the technical distinctions between offenses of larceny, embezzlement and obtaining money under false pretenses. V.A.M.S. State v. Weikel, 334 S.W.2d 726 (Mo. 1960).

The primary purpose of statutes dealing with larceny, embezzlement, and obtaining money under false pretenses. V.A.M.S. § 560.156, 560.161. State v. Gale, 322 S.W.2d 852 (Mo. 1959).

Where recipient of goods voluntarily delivered to him by owner receives such goods with intent to convert them to his own use, his act is thereafter converting them to his own use constitutes larceny as distinguished from embezzlement. Section 560.156 RSMo, State v. Zang, 540 S.W.2d 515 (Mo. 1976).

Larceny, embezzlement and obtaining money under false pretenses stand on an equal footing, the distinction resting in the time of forming the criminal intent. State v. Rennul, 265 S.W.2d 175, 45 A.L.R.2d 417 (Mo. 1954).

In larceny taking of possession of money converted is unlawful, a trespass, whereas in embezzlement, the taking is lawful and unlawful conversion subsequently occurs. V.A.M.S. § 560.155, 560.288. State v. Rennul, 354 Mo. 572, 189 S.W.2d 981 (1945).

The breach of a contractual duty does not amount to embezzlement or larceny by false pretenses. State v. Kienda, 627 S.W.2d 349 (Mo. Ct. App. W.D. 1982).

Intent to steal or to deprive owner permanently of property is not element of embezzlement. N.R.S. 205.300, subd. 1. Batson v. State, 165 Nev. 757, 783 P.2d 444 (1989).

Embezzlement is larceny by clerk or servant of agent, act of appropriating to himself that which he receives in trust for another. N.R.S. 205.300. Livingston v. State, 84 Nev. 403, 441 P.2d (1968).

Evidence was sufficient to warrant finding of entrustment necessary for embezzlement conviction. 1953 Comp. § 40-45-19. State v. Peke, 70 N.M. 108, 371 P.2d 226 (1962).

Probable cause to arrest exists when facts and circumstances within officers knowledge and of which they had reasonably trustworthy information are sufficient to warrant man of reasonable caution to believe that offense has been, or is being, committed; probable cause means more than suspicion but less than certainty and requires only that probability of criminal conduct be shown, and officers do not need to positively know that crime was committed nor to specify exact crime as long as it is serious. State v. Copeland, 105 N.M. 27, 727 P.2d 1342 (Ct. App. 1986).

For purpose of determining whether larceny or embezzlement was committed, entrust means to commit or surrender to another with a certain confidence regarding his care, use, or disposal of that which has been committed or surrendered; a clerk taking money from his employer till is guilty of larceny unless he is authorized to dispose of such money at his discretion. State v. Eder, 103 N.M. 211, 704 P.2d 465 (Ct. App. 1985).

Embezzlement differs from crime of larceny in that property which is subject of embezzlement was originally lawfully obtained by accused and was later fraudulently converted or appropriated to his own use with intent to deprive the owner thereof, while larceny involves element of original wrongful taking or trespass. State v. Bryant, 99 N.M. 149, 655 P.2d 161 (Ct. App. 1982).

Essence of crime of larceny by embezzlement is conversion by embezzler of property belonging to another which has been entrusted to embezzler to hold on behalf of owner. Penal Law § 155.05, subds. 1, 2. People v. Yannett, 49 N.Y.2d 296, 425 N.Y.S.2d 300, 401 N.E.2d 410 (1980).

Existence of lease agreement of vehicle does not preclude charge of larceny by embezzlement for theft of vehicle by lessee; once lessee forms intent to convert vehicle for his own benefit and permanent derogation of rights of owner, he may not assert as against lessor any possessory rights law is bound to respect. People v. Rafferty, 167 Misc. 2d 946, 640 N.Y.S.2d 740 (Sup 1996).

A trustee who withholds monies held in trust commits the crime of larceny by embezzlement. Penal Law § 155.05, subd. 2(a). People v. Valenza, 108 Misc. 2d 86, 436 N.Y.S.2d 937 (Sup 1981).

Common-law distinctions between obtaining property under false pretenses, embezzlement and larceny no longer exist in New York and all such crimes are embraced within definition of larceny. Penal Law 1965, § 155.05. Lapidus v. Government Emp. Ins. Co., 57 Misc. 2d 649, 293 N.Y.S.2d 174 (N.Y. City Civ. Ct. 1968).

Under Massachusetts law, the words stealing or larceny may be used to convey the meaning of criminal taking, obtaining or converting of personal property with intent to defraud or deprive the owner permanently of the use of it including all forms of larceny, criminal embezzlement and the obtaining by criminal false pretenses. People ex rel. Leo v. Hoy, 225 N.Y.S.2d 412 (Sup 1962).

Larceny is a common law offense not defined by statute; while embezzlement is a criminal offense created by statute to cover fraudulent acts which did not contain all the elements of larceny. G.S. § 14-90. State v. Griffin, 239 N.C. 41, 79 S.E.2d 230 (1953).

To be guilty of embezzlement, defendant must have been entrusted with and received into his possession lawfully the personal property of another. State v. Palmer, 622 S.E.2d 676 (N.C. Ct. App. 2005).

"Embezzlement" is a criminal offense created by statute to cover fraudulent acts which did not contain all the elements of larceny. State v. Jones, 615 S.E.2d 896 (N.C. Ct. App. 2005).

In absence of any evidence to show that employer in any sense entrusted certain hams to employees who removed the hams from the store and sold them to defendant, the employees acquired possession of their employer property illegally, making their crime larceny rather then embezzlement. State v. Lovick, 42 N.C. App. 577, 257 S.E.2d 146 (1979).

Where furniture which defendant allegedly took had been placed by landlord in mobile home which defendant had rented and defendant had complete access to, as well as control over, the furniture by virtue of his tenancy, defendant had lawful possession of the property at time of the alleged taking, there was no taking by trespass and, therefore, defendant could not be convicted of larceny. G.S. § 14-168.1. State v. Bailey, 25 N.C. App. 412, 213 S.E.2d 400 (1975).

One who secures possession of property of another with intent to steal or convert it to his own use commits larceny and not embezzlement, even if property is that of his employer. R.C. § 2907.34. State v. Glaros, 114 Ohio App. 185, 19 Ohio Op. 2d 83, 85 Ohio L. Abs. 417, 173 N.E.2d 146 (7th Dist. Mahoning County 1961).

Whether larceny is committed by fraud or whether taker is guilty of embezzlement is determined with reference to time when fraudulent intent to convert property to taker own use arises and, if criminal intent exists at time of taking of property, it is larceny, but if intent does not arise until after defendant receives possession, then it is embezzlement. 21 O.S.1971, § 1455. Lovick v. State, 1982 OK CR 80, 646 P.2d 1296 (Okla. Crim. App. 1982).

In embezzlement the taker receives property from the owner and has legal possession thereof, intending at the time a compliance with the terms of the bailment, or to conform to the owner wishes concerning the property, and he afterwards fraudulently appropriates the property to his own use, intending to deprive the owner thereof. Cunningham v. District Court of Tulsa County, 1967 OK CR 183, 432 P.2d 992 (Okla. Crim. App. 1967).

Whether larceny is committed by fraud or taker is guilty of embezzlement is determined with reference to time when fraudulent intent to convert property to taker own use arises. Gibson v. State, 1958 OK CR 74, 328 P.2d 718, 35 Lab. Cas. (CCH) P 71732 (Okla. Crim. App. 1958).

If automobile was lawfully rented, and later an intent was formed by the one who rented it to steal it, then he is guilty of embezzlement. Chapman v. State, 90 Okla. Crim. 224, 212 P.2d 485 (1949).

Conviction of larceny by restaurant cook who had limited authority in mornings to place sum of funds from safe into cash register for change could not be resisted on theory that offense, if any, was embezzlement. ORS 164.310, 165.005. State v. Harris, 246 Or. 617, 427 P.2d 107 (1967).

If title in addition to possession is obtained by the defendant, his subsequent acts in regard to that property cannot constitute the crime of fraudulent conversion because the property no longer belongs to any other person. 18 P.S. § 4834. Com. v. Yocum, 211 Pa. Super. 17, 234 A.2d 43 (1967).

One who is in lawful possession of the goods or money of another cannot commit larceny by feloniously converting them to his own use, since larceny, being a criminal trespass on the right of possession, cannot be committed by one who, being invested with right of possession, is incapable of trespassing on it. Com. v. Tluchak, 166 Pa. Super. 16, 70 A.2d 657 (1950).

Basic distinction between larceny and embezzlement is that, in embezzlement, property comes lawfully into possession of offender while in larceny the offender, instead of initially having lawful possession of the property, takes it unlawfully in the first instance thereby committing a trespass against another possession. State v. Crescenzo, 114 R.I. 242, 332 A.2d 421 (1975).

Removal of goods by department store employee with intent to wrongfully possess them created trespass, as well as taking, which are elements of larceny, even though goods in question never left department store and even though employee had charge of merchandise to dispose of by sale or any other instructions of her employer. T.C.A. § 39-3-1103, 39-3-1104. State v. Roberts, 698 S.W.2d 81 (Tenn. Crim. App. 1985).

Testimony, in defendant judicial confession to crime of felony theft of grain surplus, indicating that on morning of alleged offense defendant was neither in custody nor possession of the grain was sufficient to support judgment entered on the plea of guilty, despite contention that, in light of his testimony that he was the right manager of the mill from which the grain was taken that evidence showed only the offense of embezzlement. Vernon Ann.P.C. art. 1531. Wheeler v. State, 488 S.W.2d 190 (Tex. Crim. App. 1972).

Servant possession of property put in his custody by master is not adverse to that of master, and servant fraudulent conversion of such property to his own use, without master consent and with servant intent to deprive master of value of the property, constitutes theft under theft policy. Vernon Ann.P.C. art. 1534. Holt v. Great Nat. Lloyd's, 154 Tex. 580, 275 S.W.2d 88 (1955).

Indictment charging theft, rather than embezzlement, was proper where defendant accomplice had set fiduciary relationship in regard to his employer money and when defendant and accomplice had formed intent to steal the money before the accomplice opened the safe containing the money. Hudson v. State, 152 Tex. Crim. 366, 245 S.W.2d 114 (1951).

Theft is fraudulent taking of property with intent to appropriate it, while embezzlement is fraudulent appropriation of property by a person to whom it has been intrusted by owner. Great Nat. Lloyd's v. Hall, 265 S.W.2d 125 (Tex. Civ. App. Fort Worth 1954).

Fundamental nature of embezzlement is coming into possession of property honestly, by virtue of one trust, and then converting it to one own use in violation of trust. State v. Taylor, 14 Utah 2d 107, 378 P.2d 352 (1963).

Person entrusted with possession of another property who converts such property to his own use or benefit is guilty of statutory offense of embezzlement. Code 1959, § 18.2-111. Smith v. Com., 222 Va. 646, 283 S.E.2d 292 (1981).

A person entrusted with possession of another's personalty who converts such property to his own use or benefit is guilty of the statutory offense of embezzlement. West's V.C.A. § 18.2-111. George v. Com., 51 Va. App. 137, 655 S.E.2d 43 (2008).

Larceny is a common law crime, although it is regulated by statute. West's V.C.A. § 18.2-95. McArthur v. Com., 665 S.E.2d 762 (Va. Ct. App. 2008).

Legislature did not alter common law elements of robbery and larceny by codifying such offense, but merely specified in statutory form punishment therefor. West V.C.A. §§ 18.2-95, 18.2-96. Hudson v. Com., 43 Va. App. 219, 597 S.E.2d 221 (2004), judgment rev'd, 267 Va. 692, 611 S.E.2d 362 (2005).

In order to sustain conviction under embezzlement subsection of larceny statute, state must show actor initially took property lawfully and then fraudulently misappropriated it. RCWA § 9A.56.010(3). Suter v. Garman, 76 Wash. 2d 637, 458 P.2d 382 (1969).

Embezzlement occurs when property that comes lawfully into taker possession is fraudulently or unlawfully appropriated by him. West RCWA 9A.56.020(1)(b). Suter v. Gilmore, 41 Wash. Ann. 646, 705 P.2d 86 (Div. 1 1985).

Theft by taking involves trespass, whereas in embezzlement, property comes lawfully into possession of taker. West RCWA 9A.56.020(1)(a). Suter v. Markham, 49 Wash. Ann. 75, 607 P.2d 363. Rev. Stat. v. Rev. (CCH) P 22227 (Div. 1 1985).

Statute prohibiting theft by exerting unauthorized control over the property of another includes what was embezzlement under prior law. West RCWA 9A.56.020(1)(a). State v. Dorman, 30 Wash. Ann. 351, 633 P.2d 1340 (Div. 1 1981).

## [End of Section]

## END OF SUPPLEMENT[?]

---

## RESEARCH REFERENCES

### A.L.R. Library

- What Is Theft or Desire[?] Sufficient to Sustain Liability for Civil or Statutory Theft, 35 A.L.R.7th A.L.1
- What Is Theory of Another" While Bernie Procedural Liberato, That of a Determinant of Recovery of ... A.L.R., 57 A.L.R.6th 445
- Article Constituted Instrumentalities of Crime Materials, 173 A.L.R.5th 315
- Validity, Construction, and Application of State Carjacking Statutes, 100 A.L.R.5th 263
- Prosecution of[...] acts or embezzlement of funds relationship of custodial judiciary matters, 65 A.L.R.5th 239
- Destination in larceny or theft or another[...] conviction for conviction of revealing the stolen amount, 29 A.L.R.5th 39
- Conviction of making unlawful records, or others[?] offenses, when stolen property should under color[...] control, 77 A.L.R.4th 419
- What constitutes theft within meaning theft insurance policy—modern cases, 67 A.L.R.4th 87
- On number of Owners, 67 A.L.R.4th 88
- Criminal liability for theft of, interference with, or unauthorized use of computer programs, files, or systems, 51 A.L.R.4th 271
- Burden and proof of intent or element not removal, concealment, or disposal of denial of property subject to security interest under UCC, 45 A.L.R.4th 19
- Validity, construction, and application of theft or shoplifting statutes, 21 A.L.R.4th 105
- Robbery, atten[...] robbery, or assault to commit robbery, as affected by intent to collect or secure debt or claim, 88 A.L.R.3d 1102
- Bailee, lessee, hirer, or similar obligated return of money, commodity property, making for failure of conspiracy, who was unjust money from owner or own failure of property, 79 A.L.R.3d 362
- Relation of money held as collateral or indorse or bearer, 27 A.L.R.3d 1183
- What constitutes "knowingly" obtained within stolen-control-return statute, 17 A.L.R.3d 1072

## Footnotes

Westlaw. © 2017 Thomson Reuters. No Claim to Orig. U.S. Govt. Works

accused had agreed to deliver for another and taking jewels therefrom held to be larceny); and Johnson v. People (1885) 113 Ill 99, which is stated infra, IV d 1.

11 2 Wharton, Criminal Law, 12th ed. § 1258.

12 Wharton shows that the English embezzlement statutes, and, he adds, those of most of the United States, were enacted for the purpose of curing these two defects in the law of larceny, by making penal two phases of theft not previously penal, and that larceny at common law and embezzlement under the English statutes and those containing equivalent provisions do not in any way overlap. 2 Wharton, Criminal Law, 12th ed. §§ 1258, 1277.

"It was to make punishable misappropriations without trespass that embezzlement statutes were passed." 1 Bishop, Criminal Law, 9th ed. § 800.

It was said in Com. v. Hays (1859) 14 Gray (Mass) 62, 74 Am Dec 662: "The statutes relating to embezzlement, both in this country and in England, had their origin in a design to supply a defect which was found to exist in the criminal law. By reason of nice and subtle distinctions, which the courts of law had recognized and sanctioned, it was difficult to reach and punish the fraudulent taking and appropriation of money and chattels by persons exercising certain trades and occupations, by virtue of which they held a relation of confidence or trust towards their employers or principals, and thereby became possessed of their property. In such cases the moral guilt was the same as if the offender had been guilty of an actual felonious taking; but in many cases he could not be convicted of larceny, because the property which had been fraudulently converted was lawfully in his possession by virtue of his employment, and there was not that technical taking or asportation which is essential to the proof of the crime of larceny. ... The statutes relating to embezzlement were intended to embrace this class of offenses and it may be said generally that they do not apply to cases where the element of a breach of trust or confidence in the fraudulent conversion of money or chattels is not shown to exist."

And in People v. Talbot (1934) 220 Cal 3, 28 P2d 1057, affirming a conviction of grand theft by embezzlement, the court remarked: "The crime of embezzlement is purely statutory, and legislation with reference thereto resulted from the failure of prosecutions under the common-law crime of larceny to reach a case where the possession of property was obtained by consent, and the resulting breach of trust by the agent, officer, or bailee, although it as effectually deprived the owner of his property as though it had been taken out of his possession by stealth, was not punishable at common law."

13 Bishop states that the first statute on the subject was 21 Hen. VIII, c. 7, making it felony for a servant to "go away with" or to "embezzle" or to "otherwise convert" to his own use with purpose to steal any "caskets, jewels, money, goods or chattels" which had been delivered to him by his master "to keep," but he directs attention to a report of the English Criminal Law Commission stating that this statute was superseded by subsequent declarations of the common law, which were more extensive in their operation than the statute itself. 2 Bishop, Criminal Law, 9th ed. §§ 319, 320.

14 39 Geo. III, c. 85, provided: "If any servant or clerk, or any person employed for the purpose in the capacity of servant or clerk, to any person or persons whomsoever, or to any body corporate or politic, shall, by virtue of such employment, receive or take into his possession any money, goods, bond, bill, note, banker's draft, or other valuable security or effects, for or in the name or on the account of his master or masters or employer or employers, and shall fraudulently embezzle, secrete, or make away with the same, or any part thereof, every such offender shall be deemed to have feloniously stolen the same from his master or masters, employer or employers, for whose use or in whose name or names or on whose account the same was or were delivered to or taken into the possession of such servant, clerk, or other person so employed, although such money, goods, bond, bill, note, banker's draft, or other valuable security was or were no otherwise received into the possession of his or their servant, clerk, or other person so employed." Additionally, it provided for punishment by transportation for any term not exceeding fourteen years.

15 2 Bishop, Criminal Law, 9th ed. §§ 322, 323.

16 1 Bishop, Criminal Law, 9th ed. § 567. He points out that the common instance which presented itself to the legislative thought was that of a clerk or other servant to whom money or an article was delivered for the master, and who thereupon took it himself; whereby, without any trespass, he did what was equivalent to stealing it; that Parliament declared such a transaction to be larceny and defined the

punishment therefor; and that our states have followed more or less closely the pattern set by the English act.

17 Bishop emphasizes the wide divergence of some American statutes from the pattern of the English embezzlement acts, and notes that the original English act (39 Geo. III, c. 85) dates from after our independence was established, so is not common law here. 2 Bishop, Criminal Law, 9th ed. §§ 321–324. And in Re Grin (1901, CC) 112 F 790 (affirmed in (1902) 187 US 181, 47 L ed 130, 23 S Ct 98), the court pointed out: "It is undoubtedly a legislative prerogative to define the crime of embezzlement, and include within its terms such elements as it deems proper."

Along this line, it was well said in Wynegar v. State (1901) 157 Ind 577, 62 NE 38 (affirming a conviction of embezzlement over the contention that the offense could only be larceny): "It frequently happens that the same facts fall within the statutory definition of more than one public offense. The legislature has the undoubted right to declare to be criminal any wilful or wrongful trespass upon the rights of another, and to call the crime by any name it chooses. It may therefore declare to be embezzlement a state of facts which, under a former statute, constituted larceny. The only material question, then, is whether the facts bring the case within the provisions of the statute under which the appellant was convicted." (Compare, however, earlier remarks in State v. Wingo (1883) 89 Ind 204, summarized infra, IV d 1.)

It was emphasized in Territory v. Maxwell (1882) 2 NM 250, that the embezzlement statute in the case at bar expressly extended its scope to "agents" and therefore was much broader in its coverage than English statutes confining the operation of the law of the embezzlement to any servant or clerk or person employed for the purpose or in the capacity of a servant or clerk. This opinion contains an illuminating discussion stressing the matter of differences in the statutes.

Affirming a conviction of embezzlement of moneys of the United States, defendant having taken coins from a government mint in which he was employed at duties which involved his handling of such coins, the court, in Schell v. United States (1919, CCA 8th) 261 F 593, remarked: "The respective contentions, therefore, resolve themselves into a discussion of the differences between larceny and embezzlement. No good purpose can be served by an extended consideration of such differences. The term 'embezzlement' has been used in many different statutes, and, as it is a statutory offense, but little aid can be derived from the construction put upon local statutes by the courts of the various states."

18 In Crabb v. Zerbst (1938, CCA 5th) 99 F2d 562, a petitioner in a habeas corpus proceeding advanced the contention that the offense of feloniously taking and carrying away property of the United States as defined in Criminal Code, § 46, 18 U.S.C.A. § 99, 7 FCA title 18, § 99 (providing that: "whoever shall rob another of any kind or description of personal property belonging to the United States, or shall feloniously take and carry away the same, shall be," etc.) under which he had been convicted, was identical with the offense of stealing, as defined in § 47, Criminal Code, 18 U.S.C.A. § 100, 7 FCA title 18, § 100 (providing: "Whoever shall embezzle, steal or purloin any money, property, record, voucher or valuable thing whatever of the moneys, goods, chattels, records, or property of the United States, shall be fined," etc.), under which a maximum sentence of five years for stealing the property of the United States was authorized, so that so much of § 46 (18 U.S.C.A. 99, 7 FCA title 18, § 99) as authorized imposition of a maximum sentence of ten years for feloniously taking and carrying away property of the United States was repealed or superseded by § 47 (18 U.S.C.A. § 100, 7 FCA title 18, § 100). Pointing out that both sections were re-enacted by Congress at the same time, so that neither stood upon any prior enactment, the court held that the offenses denounced were not synonymous and that there was no conflict between the two statutory provisions. "The modern tendency," the court said, is to broaden the offense of larceny, by whatever name it may be called, to include such related offenses as would tend to complicate prosecutions under strict pleading and practice. In some of these statutes the offense is denominated 'theft' or 'stealing.' No statute offers a clearer example of compromise between the common law and the modern code than the two sections here involved. Section 46 deals with robbery and larceny, the description of the latter being taken from the common law. Section 47 denounces the related offenses which might be included with those described in § 46 under a code practice seeking to avoid the pitfalls of technical pleading. In it the offense of embezzlement is included by name, without definition. Then to cover such cases as may shade into larceny, as well as any new situation which may arise under changing modern conditions and not envisioned under the common

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

**End of Document**